EXHIBIT C

**ORIGINAL**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

CV 05 **1986**

| | |
|---|---|
| DAVID ALTMAN, Derivatively On Behalf of VEECO INSTRUMENTS, INC., ) | Civil Action No.: |
| Plaintiff, | SHAREHOLDER VERIFIED DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, ABUSE OF CONTROL, GROSS MISMANAGEMENT, WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT |
| vs. | |
| EDWARD H. BRAUN, JOHN F. REIN, JR., WALTER J. SHERR, IRWIN H. PFISTER, ROGER D. MCDANIEL, PAUL R. LOW, DOUGLAS A. KINGSLEY, HEINZ K. FRIDRICH, JOEL A. ELFTMANN, and RICHARD A. D'AMORE, PETER J. SIMONE, | JURY TRIAL DEMANDED |
| Defendants, | |
| and | |
| VEECO INSTRUMENTS, INC., a Delaware corporation, | |
| Nominal Defendant. | |

TOWNES, J.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
APR 2 2 2005
★ BROOKLYN OFFICE ★

MATSUMOTO, M.J.

Plaintiff, by his attorneys, submits this Derivative Complaint (the "Complaint") against the defendants named herein.

### NATURE OF THE ACTION

1.      This is a shareholder derivative action brought by a shareholder of Veeco Instruments, Inc. ("Veeco" or the "Company"), a Delaware corporation, on behalf of the Company against certain of its officers and directors seeking to remedy defendants' violations of state law, including breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment that occurred between November 3, 2003 and the present (the "Relevant Period") and

that have caused substantial losses to Veeco and other damages, such as severe injury to its reputation and goodwill.

## SUMMARY OF THE ACTION

2.      Each of the defendants aided, abetted and afforded substantial assistance in the wrongs complained of herein. In substantially assisting in the commission of the wrongdoing complained of herein, each defendant acted with knowledge of the primary wrongdoing and was aware of his overall contribution to and furtherance of the wrongdoing.

3.      Veeco purports to "provide solutions for nanoscale applications in the worldwide semiconductor, data storage, compound semiconductor/wireless and scientific research markets."

4.      On November 3, 2003, defendants caused the Company to announce the acquisition of Emcore Corporation's TurboDisc(R) Metal Organic Chemical Vapor Deposition ("MOCVD") business.

5.      During the Relevant Period, defendants caused the company to issue numerous positive statements and file quarterly reports with the Securities and Exchange Commission ("SEC") which credited the Company's increasing financial performance to the success of its TurboDisc division. Specifically, defendants caused the Company to report that it had exceeded its quarterly guidance for the first and second quarters of 2004, even though these statements were materially false and misleading because they failed to disclose and misrepresented the following adverse facts, among others: (a) that Veeco was materially overstating its financial results by engaging in improper accounting practices. As set forth herein, defendants caused the Company to admit that its prior financial reports are materially false and misleading by virtue of defendants' recent announcement that Veeco will restate its financial results for the first three quarters of 2004; (b) that the Company

lacked adequate internal controls and was therefore unable to ascertain its true financial condition; and (c) that as a result of the foregoing, the values of the Company's inventory, accounts payable, revenue and net income were materially overstated at all times during the relevant period.

6.     Then, on February 11, 2005, defendants caused the Company to announce that it would delay release of its fourth quarter and yearly results while the Company examines the improper accounting at its TurboDisc division.  According to the press release, the Company's investigation is focusing mainly on the value of inventory, accounts payable and certain revenue items.

7.     After this shocking news, shares of the Company's stock fell $1.83 per share, or almost 10%, to close at $16.96 per share on unusually heavy trading volume.

8.     As a result of defendants' actions, Veeco's market capitalization has been damaged by over $375.4 million.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. §1332(a)(2), because complete diversity exists between the plaintiff and each defendant, and the amount in controversy exceeds $75,000.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

10.    This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with New York so as to render the exercise of jurisdiction by the New York courts permissible under traditional notions of fair play and substantial justice.

11.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein, occurred in this District. One or more of the Defendants either resides in or maintains executive offices in this District, and Defendants have received substantial compensation in this District by engaging in numerous activities and conducting business here, which had an effect in this District.

## PARTIES

12.    Plaintiff David Altman is, and was at all relevant times, a shareholder of nominal defendant Veeco. Plaintiff is a citizen of New Jersey.

13.    Nominal Defendant Veeco is a Delaware corporation and maintains its principal executive offices in Woodbury, New York. Veeco designs, manufactures, markets and services a line of equipment primarily used by manufacturers in the data storage, semiconductor, compound semiconductor/wireless and high-brightness light emitting diode industries.

14.    Defendant Edward H. Braun ("Braun") was, at all relevant times, Chairman and Chief Executive Officer of Veeco. Defendant Braun, has been Chairman and Chief Executive Officer of Veeco since January 1990, was President of Veeco from October 2000 to March 2003 and from January 1990 to May 2000. Prior to 1990, Mr. Braun served as Executive Vice President and Chief Operating Officer of Veeco's predecessor. Mr. Braun joined the predecessor in 1966 and held numerous positions with the predecessor, including Director of Marketing, General Manager and Chief Operating Officer. Because of Braun's positions, he knew the adverse non-public information about Veeco's finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees,

4

attendance at management and Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Braun participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and Securities and Exchange Commission ("SEC") filings. For FY:03, Veeco paid defendant Braun $636,538 in salary and granted him long term options to purchase 140,000 shares of Veeco stock. Braun is a citizen of New York.

15.    Defendant John F. Rein, Jr. ("Rein") was, at all relevant times, Executive Vice President, Chief Financial Officer and Secretary of Veeco. Because of Rein's positions, he knew the adverse non-public information about Veeco's finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Rein participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. For FY:03, Veeco paid defendant Rein $331,385 in salary, benefits and other compensation. According to the Company's proxy statement filed with the SEC on April 5, 2004, defendant Rein beneficially owned 4,688 shares of Veeco stock and 212,832 options/warrants to purchase additional shares. Rein is a citizen of New York.

16.    Defendant Walter J. Scherr ("Scherr"), at all times relevant to this action, served as the Company's President and as a director of the Company. Scherr has been employed by Veeco as a consultant since December 1995. From December 1993 through December 1995, he was Executive Vice President of Veeco. From January 1990 through December 1993, he was the Chief

Financial Officer of Veeco. Mr. Scherr joined Veeco's predecessor in 1986 as General Manager of its UPA Technology Division. Because of Scherr's positions, he knew the adverse non-public information about the Company's finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Scherr participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. For FY:03, Veeco paid defendant Scherr $104,200 as compensation for his consulting services, in addition to the compensation he received as a director. According to the Company's proxy statement filed with the SEC on April 5, 2004, defendant Scherr beneficially owned 780 shares of Veeco stock and 25,333 options/warrants to purchase additional shares. Scherr is a citizen of Arizona.

17.    Defendant Irwin H. Pfister ("Pfister"), at all times relevant to this action, served as a director of Veeco and was the chairman of the Board's Audit Committee. Because of Pfister's positions, he knew the adverse non-public information about the Company's finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Pfister participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. According to the Company's proxy statement filed with the SEC on April 5, 2004,

6

defendant Pfister had 45,000 options/warrants to purchase shares of Veeco stock. Pfister is a citizen of New York.

18.    Defendant Roger D. McDaniel ("McDaniel"), at all times relevant to this action, served as a director of Veeco and was chairman of the Board's Compensation Committee and a member of the Board's Nominating and Governance Committee. Because of McDaniel's positions, he knew the adverse non-public information about the Company's finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, McDaniel participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. According to the Company's proxy statement filed with the SEC on April 5, 2004, defendant McDaniel had 31,000 options/warrants to purchase shares of Veeco stock. McDaniel is a citizen of Arizona.

19.    Defendant Paul R. Low ("Low") is, and at all times relevant hereto was, a director of Veeco. Low also at all relevant times was a member of the Compensation and Nominating and Governance Committees of the Board. Because of Low's positions, he knew the adverse non-public information about the Company's finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Low participated in the issuance of false and/or misleading statements, including the

7

preparation of the false and/or misleading press releases and SEC filings. According to the Company's proxy statement filed with the SEC on April 5, 2004, defendant Low had 55,333 options/warrants to shares of Veeco stock. Low is a citizen of New York.

20.    Defendant Douglas A. Kingsley ("Kingsley"), is, and at all times relevant hereto was, a director of Veeco. Kingsley also at all relevant times was Chairman of the Nominating and Governance Committee of the Board and was a member of the Audit Committee of Board. Because of Kingsley's positions, he knew the adverse non-public information about the Company's finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Kingsley participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. According to the Company's proxy statement filed with the SEC on April 5, 2004, defendant Kingsley had 31,860 options/warrants to purchase shares of Veeco stock. Kingsley is a citizen of Massachusetts.

21.    Defendant Heinz K. Fridrich ("Fridrich"), is, and at all times relevant hereto was, a director of Veeco. Fridrich also at all relevant times was a member of the Audit Committee of the board. Because of Fridrich's positions, he knew the adverse non-public information about the Company's finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Fridrich

8

participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. According to the Company's proxy statement filed with the SEC on April 5, 2004, defendant Fridrich had 45,000 options/warrants to purchase shares of Veeco stock.   Fridrich is a citizen of Florida.

22.    Defendant Joel A. Elftmann ("Elftmann") is, and at all times relevant hereto was, a director of Veeco. Elftmann also at all relevant times was a member of the Audit Committee of the board.  Because of Elftmann's positions, he knew the adverse non-public information about the Company's finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith.  During the Relevant Period, Elftmann participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. According to the Company's proxy statement filed with the SEC on April 5, 2004, defendant Elftmann beneficially owned 5,333 shares of Veeco stock and 58,666 options/warrants to purchase additional shares. Elftmann is a citizen of Minnesota.

23.    Defendant Richard A. D'Amore ("D'Amore") is, and at all times relevant hereto was, a director of Veeco. D'Amore also at all relevant times was a member of the Compensation Committee of the board.  Because of D'Amore's positions, he knew the adverse non-public information about the Company's finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors' meetings and committees thereof

9

and via reports and other information provided to him in connection therewith. During the Relevant Period, D'Amore participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. D'Amore, based on his knowledge of material non-public information regarding the Company, during the Relevant Period sold 3,333 shares of Veeco common stock at a selling price of $21.83 per share for proceeds of $72,726. According to the Company's proxy statement filed with the SEC on April 5, 2004, defendant D'Amore beneficially owned 43,701 shares of Veeco stock and 61,999 options/warrants to purchase additional shares. D'Amore is a citizen of Massachusetts.

24.    Defendant Peter J. Simone ("Simone") is, and from July 2004 was, a director of Veeco. From July 2004 to the present Simone has served on the Company's Compensation Committee. Because of Simone's positions, he knew the adverse non-public information about the Company's finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith. During the Relevant Period, Simone participated in the issuance of false and/or misleading statements, including the preparation of the false and/or misleading press releases and SEC filings. As of July 22, 2004, defendant Simone had 10,000 options to purchase shares of Veeco stock. Simone is a resident of the Commonwealth of Massachusetts.

25.    The defendants identified in ¶¶14, 16-24 are referred to herein as the "Director Defendants." The defendants identified in ¶¶14-15 are referred to herein as the "Officer Defendants." The defendant identified in ¶23 is referred to herein as the "Insider Selling Defendant."

Collectively, the Director Defendants, the Officer Defendants and the Insider Selling Defendant are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

26.    By reason of their positions as officers, directors and/or fiduciaries of Veeco and because of their ability to control the business and corporate affairs of Veeco, the Individual Defendants owed Veeco and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage Veeco in a fair, just, honest and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Veeco and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

27.    Each director and officer of the Company owes to Veeco and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's revenue, margins, operations, performance, management, projections and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

28.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of Veeco, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial and directorial positions

11

with Veeco, each of the Individual Defendants had access to adverse non-public information about the financial condition, operations, and improper representations of Veeco.

29.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Veeco, and was at all times acting within the course and scope of such agency.

30.     To discharge their duties, the officers and directors of Veeco were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of Veeco were required to, among other things:

(a)     refrain from acting upon material inside corporate information to benefit themselves;

(b)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(c)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(d)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e)    remain informed as to how Veeco conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

(f)    ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable federal, state and local laws, rules and regulations.

31.    Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Veeco, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and/or directors of the Company during the Relevant Period has been ratified by the remaining Individual Defendants who collectively comprised all of Veeco's Board during the Relevant Period.

32.    The Individual Defendants breached their duties of loyalty and good faith by allowing defendants to cause or by themselves causing the Company to misrepresent the saftey of its products, together with the Company's financial results and prospects, as detailed herein *infra*, and by failing to prevent the Individual Defendants from taking such illegal actions. In addition, as a result of defendants' illegal actions and course of conduct during the Relevant Period, the Company is now

13

the subject of an SEC investigation, several class action law suits that allege violations of federal securities laws, and will be subjected to personal injury lawsuits as a result of the misrepresentations regarding the safety of its products. As a result, Veeco has expended and will continue to expend significant sums of money. Such expenditures include, but are not limited to:

(a) Costs incurred to carry out internal investigations, including legal fees paid to outside counsel; and

(b) Costs incurred in investigating and defending Veeco and certain officers in the class actions, plus potentially millions of dollars in settlements or to satisfy an adverse judgments.

33. Moreover, these actions have irreparably damaged Veeco's corporate image and goodwill. For at least the foreseeable future, Veeco will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Veeco's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

34. In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breach of their respective duties.

35. During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did: (I) maintain the Individual

14

Defendants' executive and directorial positions at Veeco and the profits, power and prestige that the Individual Defendants enjoyed as a result of these positions; and (ii) deceive the investing public, including shareholders of Veeco, regarding the Individual Defendants' management of Veeco's operations, the Company's financial health and stability, and future business prospects throughout the Relevant Period. In furtherance of this plan, conspiracy and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

36.    The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct commencing by at least November 2003 and continuing thereafter. During this time the Individual Defendants caused the Company to conceal the true facts about Veeco's financial results, financial performance and future business prospects, as alleged herein.

37.    The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment; to conceal adverse information concerning the Company's operations, financial condition and future business prospects; and to artificially inflate the price of Veeco common stock so they could: (I) dispose of over tens of thousands of dollars of their personally held stock; and (ii) protect and enhance their executive and directorial positions and the substantial compensation and prestige they obtained as a result thereof.

38.    The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently misrepresent its financial results. Because the actions described herein occurred under the authority of the Board of Directors, each of the Individual Defendants was a direct, necessary and substantial

15

participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

39.    Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## SUBSTANTIVE ALLEGATIONS

40.    On November 3, 2003, The Individual Defendants caused Veeco to announce that it would acquire TurboDisc, "creat[ing] a Global Leader in Compound Semiconductor Deposition Technologies."  The Company stated:

> Woodbury, NY, November 3, 2003—Veeco Instruments Inc. (Nasdaq: VECO) today announced that it has purchased Emcore Corporation's (Nasdaq: EMKR) TurboDisc Metal Organic Chemical Vapor Deposition (MOCVD) business. Combined with Veeco's molecular beam epitaxy (MBE) business, the acquisition makes Veeco the only company that provides both key compound semiconductor epitaxial deposition technologies. Emcore's MOCVD revenue was $51.1 million for the trailing twelve months ended June 30, 2003.
>
> The ability to provide complementary MBE and MOCVD technologies will enable Veeco to address the full range of applications requiring the high performance aspects of compound semiconductor technologies, including lower power, higher frequency operation, and light-emitting characteristics. MOCVD tools are particularly well-suited for the critical first step in the growth of high speed electronic, wireless and optoelectronic compound semiconductor materials employed in advanced wireless telecommunications and rapidly growing high brightness light-emitting diode (LED) lighting applications.
>
> *    *    *    *
>
> About Emcore's MOCVD Business:

16

Emcore is a recognized industry leader in MOCVD production systems, with over 500 TurboDisc reactors shipped worldwide. TurboDisc reactors are used in the growth of III-V compounds for numerous compound semiconductor applications, including data and telecommunications modules, cellular telephones and solar cells. Emcore's GaNzilla production systems are the recognized leader in growing gallium nitride-based devices, most notably green, blue and white high brightness LEDs used in backlighting wireless mobile devices, and automotive applications. Emcore's patented TurboDisc technology is known for its unique, high-speed rotating disc deposition technique ideal for high production rates. TurboDisc reactors are capable of depositing a wide variety of materials—GaAs, AlGaAs, InP, InGaAlP, InGaN, AlGaN, SiC and GaN—onto a substrate to grow compound semiconductor materials on the atomic scale.

Management Commentary:
Edward H. Braun, Chairman and CEO of Veeco, commented, "This acquisition strengthens Veeco's position in the compound semiconductor market, as we are now uniquely able to provide "one-stop" shopping for epitaxial deposition solutions—both MOCVD and MBE. The MOCVD market is twice the size of the MBE available market. Emcore's MOCVD business is a good fit with Veeco's acquisition criteria: history of technology leadership and innovation, complementary technology for an existing Veeco market, leading market position, strong R&D and high market growth potential. We believe that Emcore's MOCVD business will be accretive to Veeco on a cash basis by the second quarter of 2004."

Mr. Braun added, "The addition of MOCVD strengthens our existing compound semiconductor and wireless/telecommunications position and permits penetration of the rapidly emerging LED market opportunity." Strategies Unlimited projects the GaN LED market to exceed $1.9B in 2003, growing at 24% CAGR to reach over $4B by 2007.

41.     On November 10, 2003, the Individual Defendants caused the Company to issue its quarterly report on Form 10-Q for the period ended September 30, 2003. The Company reported revenues of $63.1 million for the quarter and a net loss of ($2.1) million. The Company reported inventory assets of $86.1 million and deferred income tax assets of $39.5 million. The Company also reported $14.2 million in accounts payable. The Company reiterated its statements concerning the TurboDisc acquisition referenced above.

17

42.    On February 6, 2004, the Individual Defendants caused Veeco to announce its financial results for the quarter and year ended December 31, 2003. The Company announced revenues of $76.9 million for the quarter, up 22% from the previous quarter. The Company reported a net loss of $4.8 million, or $0.16 per share. Defendant Braun stated:

> "Veeco's fourth quarter orders revenues in EBITA improved both sequentially and year over year. Order strength reflected a broad industry upturn across all of our markets and in all geographic regions. Capacity and technology drivers were evident in semiconductor data storage, wireless, compound semiconductor and scientific research. Fourth quarter orders of $96.8 million (up 51% sequentially) were Veeco's strongest overall orders in 10 quarters. Fourth quarter revenue of $76.9 million was up 22% sequentially.
>
> \*    \*    \*    \*
>
> *The November 2003 acquisitions of TurboDisc MOCVD and Advanced Imaging Inc.'s precision lapping technologies allowed us to significantly broaden our product and technology offerings to Veeco's core markets in 2004."*

For the full year, Veeco announced its sales were $279.3 million. The Individual Defendants further stated:

> Veeco incurred an operating loss of $9.3 million in 2003 compared to an operating loss of $137.9 million in 2002. Included in the 2003 operating loss was a $1.5 million charge for the write-off of in-process RND, a $1.7 million reduction in gross profit from purchase accounting adjustments due to the required capitalization of profit in inventory and permanent elimination of certain deferred revenue, and $5.4 million of merger and restructuring costs. Exclusive of these charges Veeco's 2003 EBIDTA was $13.0 million compared to $1.3 million in 2002 which also excludes restructuring charges. Veeco's net loss for 2003 was $9.7 million ($0.33) per share compared to a net loss of $123.7 million ($4.25 per share in 2002). Excluding certain charges, 2003 earnings were $0.11 per diluted share compared to the loss of $.010 per share in 2002. Mr. Braun commented, "Industry market conditions improved dramatically in the fourth quarter and we appear to be at the start of a sustainable recovery cycle after two years of historically low capex investment by our customers. Veeco's diversification strategy should serve us well as multiple Veeco markets are forecasted to experience 2004 growth.

18

We intend to work closely with our key customers to be aligned with their technology roadmaps and capacity planning requirements including: the continued 80 Gb production ramp and 120 Gb disc drive development programs, 90 mm and 300 mm ramps in semiconductor, growth in high brightness and light emitting diodes (HB-LEDS) for backlighting of color displays, RF devices and other wireless/lighting applications, and continued use of our atomic force microscopes in nanoscience research. *Veeco's goal is to achieve higher levels of revenue profitability in 2004 through combinations of improved business conditions, the continued focus on cost control, and a broadened product line of key enabling process equipment and metrology technologies.*

43.    On March 12, 2004, the Individual Defendants caused the Company to file its annual report on Form 10-K for the period ended December 31, 2003, signed by each of the Individual Defendants. The Company confirmed its previously announced results, and reported year-end inventories of $97.6 million and deferred income tax assets of $18.1 million. The Company also reported accounts payable of $19.6 million. Defendants Braun and Rein also signed certifications in conjunction with the annual report which stated:

Based on my knowledge, this annual report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this annual report.

Based on my knowledge, the financial statements, and other financial information included in this annual report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this annual report.

The registrant's other certifying officers and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-14 and 15d-14) for the registrant and have:

(a)    designed such disclosure controls and procedures to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this annual report is being prepared;

19

(b)     evaluated the effectiveness of the registrant's disclosure controls and procedures as of a date within 90 days prior to the filing date of this annual report (the "Evaluation Date"); and

(c)     presented in this annual report our conclusions about the effectiveness of the disclosure controls and procedures based on our evaluation as of the Evaluation Date.

The registrant's other certifying officers and I have disclosed, based on our most recent evaluation, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent functions):

(a)     all significant deficiencies in the design or operation of internal controls which could adversely affect the registrant's ability to record, process, summarize and report financial data and have identified for the registrant's auditors any material weaknesses in internal controls; and

(b)     any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal controls.

The registrant's other certifying officers and I have indicated in this annual report whether there were significant changes in internal controls or in other factors that could significantly affect internal controls subsequent to the date of our most recent evaluation, including any corrective actions with regard to significant deficiencies and material weaknesses.

44.     On April 26, 2004, the Individual Defendants caused Veeco to announce its financial results for the quarter ended March 31, 2004. The Company reported first-quarter 2004 revenues of $94.5 million, up 23% sequentially from the prior quarter, and a net loss of $0.7 million, or ($0.02) per share. Defendant Braun stated:

"We are pleased to report the first quarter revenue's earnings and bookings all exceeded our quarterly guidance.... *Veeco received several multiple system orders for our TurboDisc MOCVD products from worldwide customers who are increasing their manufacturing capacity of green, blue and white light emitting diodes (LEDs). The growth of this newly acquired product line has surpassed our initial expectations* and we see the LED market as an exciting growth opportunity

for Veeco in 2004 and 2005. . . . First quarter 2004 orders were the strongest in 13 quarters and are indicative of the first growth opportunities available to Veeco through our multi-market strategy."

45.    On May 3, 2004, the Individual Defendants caused the Company to issue its quarterly report on Form 10-Q for the period ended March 31, 2004, in which it confirmed the above-referenced results. The Company also reported inventory assets of $104.4 million, deferred income tax assets of $9.7 million, and accounts payable of $25.1 million. The Individual Defendants also stated:

> By region, there continues to be a shift in sales from the U.S. to the Asia Pacific region, although *all regional sales have increased due to the TurboDisc business* and Aii acquisitions, particularly the Asia Pacific region, which saw a $10.2 million increase in sales in the first quarter of 2004 due to the acquired companies. The Company believes that there will continue to be quarter-to-quarter variations in the geographic distribution of sales.

46.    On July 26, 2004, the Individual Defendants caused the Company to announce its financial results for the quarter ended June 30, 2004. The release was entitled "Results Were Above Prior Quarter and Prior Year and at High-End of Guidance." The Company reported second quarter 2004 sales of $102.9 million with net income of $1.6 million or earnings per diluted share of $0.05 per share. Defendant Braun stated:

> "We are pleased to report that Veeco's second quarter 2004 orders, revenue and earnings all exceeded the prior year and prior quarter, and met or exceeded our guidance as we continue to experience a multi-market recovery in our core semiconductor, compound semiconductor/wireless and data storage markets.
>
> * * * *
>
> We are pleased to report that Veeco's second quarter 2004 orders, revenue and earnings all exceeded the prior year and prior quarter, and met or exceeded our guidance as we continue to experience a multi-market recovery in our core semiconductor, compound semiconductor/wireless and data storage markets."

47.    On August 3, 2004, the Individual Defendants caused the Company to issue its quarterly report on Form 10-Q for the period ended June 30, 2004, in which it confirmed the above-stated results. The Company also reported inventory assets of $108.1 million, deferred income-tax assets of $16.1 million, and accounts payable of $46.5 million. The report attributed much of the Company's financial success to businesses, such as TurboDisc, acquired in 2003:

Highlights of the Second Quarter of 2004:

- Orders of $124.7 million, up from $64.0 million in the second quarter of 2003. *The order growth included $43.1 million from companies acquired in 2003* and $17.6 million (27.6%) from Veeco's historical business.

- Sales of $102.9 million, up from $73.4 million in the second quarter of 2003. *The sales growth included $21.3 million from companies acquired in 2003* and $8.2 million (11.1%) from Veeco's historical business.

- Return to profitability, with net income of $1.6 million, compared with a net loss of $1.1 million in the second quarter of 2003.

- Cash generation of $5.6 million, compared with cash generation of $1.8 million in the second quarter of 2003.

Highlights of the First Half of 2004:

- Orders of $241.8 million, up from $136.7 million in the first half of 2003. *The order growth included $79.0 million from companies acquired in 2003* and $26.1 million (19.0%) from Veeco's historical business.

- Sales of $197.4 million, up from $139.2 million in the first half of 2003. *The sales growth included $40.9 million from companies acquired in 2003* and $17.3 million (12.4%) from Veeco's historical business.

- Return to profitability, with net income of $0.9 million, compared with a net loss of $2.8 million in the first half of 2003.

- Cash generation of $10.6 million, compared with cash use of $3.9 million in the first half of 2003.

The report was signed by defendants Braun and Rein. Defendants Braun and Rein also signed certification that confirmed that these results for the period ended June 30, 2004, did not contain any untrue statements of material facts or omit material facts necessary to make them, in light of the circumstances under which the statements were made, not misleading. Those certifications were essentially identical to those referenced in above paragraph 35.

48.    On October 12, 2004, Veeco announced its financial results for the quarter ended September 30, 2004. The Company stated:

> Veeco Instruments Inc. (Nasdaq: VECO) today announced that weak industry-wide capital equipment conditions, particularly in compound semiconductor adversely impacted its results for the quarter ended September 30, 2004.
>
> As a result Veeco's orders for the third quarter of 2004 are expected to be approximately $80 million, compared to $64 million in the third quarter of 2003 and $125 million in the second quarter of 2004. (Veeco's order guidance provided on 7/26/04 was $125-130 million).
>
> Veeco expects third quarter 2004 revenues to be approximately $93 million, compared to $63 million in the third quarter of 2003, and $103 million in the second quarter of 2004. (Revenue guidance was $105-110 million).
>
> Veeco's third quarter 2004 GAAP loss is expected to be between ($0.06) and ($0.04) per share compared to third quarter 2003 GAAP loss of ($0.07 per share and GAAP earnings of $0.05 per diluted share in the second quarter of 2004. (Veeco's third quarter guidance was GAAP earnings between $0.06 and $0.09 per diluted share on a GAAP basis).
>
> *    *    *    *
>
> Like many suppliers in the semiconductor capital equipment industry, Veeco typically books approximately 60% of its orders in the last several weeks of the quarter. However, in the third quarter, many of these late quarter orders did not occur as customers carefully managed their capital spending. Compared to the second quarter, Veeco's orders for MOCVD equipment from light emitting diode (LED) manufacturers decreased approximately 70%. This dramatic decrease in MOCVD business resulted from spending previews initiated by many Asian customers at the end of the quarter as they paused to absorb the significant amount of Veeco equipment purchased in the first half of 2004. Veeco's data storage and

semiconductor orders declined approximately 30% from the second quarter while scientific research orders increased approximately 20% from the same period.

Defendant Braun commented:

"We were disappointed not only by our third quarter performance but by our lack of visibility of this slowdown. In the near term we expect our customers' current capital spending reluctance to continue but believe it will be outweighed by their need to fund their 2005 new product technology roadmaps and to invest in the expected high growth of next generation consumer electronics. Despite this setback, we still expect 2004 to be a strong growth year for Veeco compared to 2003. Veeco remains well positioned to provide leadership technologies for growth applications in semiconductor data storage, compound semiconductor and scientific research."

49.    On November 9, 2004, the Individual Defendants caused the Company to file its quarterly report on Form 10-Q for the period ended September 30, 2004. The Company confirmed the above results - net sales for the quarter of $92.4 million and net loss of ($0.6 million). The Company also reported inventory assets of $123.9 million, deferred income tax assets of $15.3 million and accounts payable of $47.1 million. The Individual Defendants further reported that:

"*the improvement in epitaxial process equipment is primarily due to $21.3 million in sales from the TurboDisc business*, partially offset by a $0.2 million net decrease in other business. . . . Compared to the second quarter orders to HB-LED/Wireless customers decreased 71.4% due to a $30.3 million decrease in TurboDisc orders. This decrease in business resulted from spending freezes initiated by many Asian customers at the end of the quarter as they paused to absorb the significant amount of Veeco account purchases in the first half of 2004."

The Company further stated:

"*Epitaxial process equipment margins improved from 37.0% to 39.5%, due to the favorable mix of TurboDisc MOCDD sales which are higher in margin than the MBE products.*"

The quarterly report was signed by defendants Braun and Rein and certified as stated above in Paragraph 35.

50.     The above statements were false and misleading because the defendants knowingly
or recklessly failed to disclose that the Company had (a) improperly valued the inventory and
accounts payable at TurboDisc in order to make the acquisition look more attractive to the market;
(b) falsely recognized revenue at TurboDisc during the Class Period; and (c) improperly overvalued
the Company's deferred tax assets. As a result of defendants' false and misleading statements, the
financial results of Veeco were artificially and materially inflated at all times during the Relevant
Period.

### The Truth Begins To Emerge

51.     On February 11, 2005, the Individual Defendants were forced to cause Veeco to
announce that it was postponing the release of its financial results for the fourth quarter and full year
2004 pending completion of an internal investigation of improper accounting transactions at its
TurboDisc division. The Individual Defendants further revealed:

> Veeco is conducting an internal investigation of improper accounting transactions
> recorded at its TurboDisc division, causing a postponement in the release of Veeco's
> earnings. The investigation focuses principally on the value of inventory, accounts
> payable and certain revenue items carried on the books of TurboDisc. Veeco
> acquired the assets of TurboDisc in November 2003. The investigation was
> commenced after Veeco's internal audit staff and corporate financial management
> discovered improper accounting transactions in the course of a Veeco internal audit
> and transitioning the division to Veeco's SAP accounting system during the fourth
> quarter of 2004.

> The Audit Committee of the Company's Board of Directors has been supervising the
> accounting investigation and authorized Veeco's outside counsel, Kaye Scholer LLP,
> to hire Jefferson Wells to be actively involved in performing forensics work as part
> of the investigation.

> Veeco expects that this investigation will lead to adjustments requiring the
> restatement of the financial statements previously issued for the quarterly periods and
> nine months ended September 2004. While there can be no certainty as to the
> amount of the adjustment to earnings until the investigation and audited financial

statements are completed, Veeco currently expects that the pre-tax earnings impact will be between $5.5 million and $7.5 million for the nine months ended September 30, 2004.    Veeco is unable to comment on fourth quarter earnings until the investigation and year-end audit are complete.

Commenting on the accounting review, Edward H. Braun, Chairman and CEO of Veeco said, "Errors and improper entries were uncovered by Veeco's internal audit staff and were limited to a single Veeco business unit, TurboDisc, which was acquired in November 2003.    We have taken prompt corrective action and are working diligently to finish the audit and report complete financial results in conjunction with our March filings."

John F. Rein, Jr., Executive Vice President and Chief Financial Officer, added, "We have taken swift action to resolve this accounting issue, including making appropriate staffing changes and transitioning TurboDisc's accounting system to Veeco's SAP system.    We will announce revenue and earnings for the fourth quarter and year ended December 31, 2004 once the internal investigation is complete and our results have been audited by Ernst & Young." Veeco intends to release these results and file its Annual Report on Form 10-K for the year ended December 31, 2004 on or before March 16, 2005.    However, there can be no assurance that the review will be complete during this timeframe or that, even if completed, the Form 10-K will be finalized in time to meet such deadline.

\*    \*    \*    \*

In accordance with Statement of Financial Accounting Standards ("SFAS") No. 109, Accounting for Income Taxes, Veeco will record in the fourth quarter of 2004 a non-cash valuation allowance of approximately $50 million related to its deferred tax assets.    SFAS No. 109 requires an assessment of a Company's current and previous performance and other relevant factors when determining the need for such a valuation allowance.    Under this pronouncement, factors such as current and previous operating losses are given greater weight than the outlook for future profitability in determining deferred tax asset carrying value.    This adjustment will have no impact on the Company's cash flow or future prospects, nor does it diminish the Company's ability to utilize the underlying tax net operating loss and credit carry-forwards in the future.

As previously announced, Veeco will record a pre-tax charge in the fourth quarter related to staffing and cost reductions and product rationalization costs and an in-process R&D write-off related to the acquisition of MTI.    This charge is currently expected to be approximately $5.7 million.

52.    Market reaction to this announcement was swift and severe. On this news, shares of Veeco dropped $1.83 to $16.96 per share, or approximately 10%.

53.    On March 16, 2005, the Individual Defendants caused the Company to issue a press release in which Veeco announced its financial results for the quarter and full year ended December 31, 2004. The press release reported substantial losses for both the fourth quarter and the full 2004 fiscal year:

> Fourth quarter 2004 revenues were $103.0 million, a 34% increase from fourth quarter 2003 revenues of $76.9 million. Veeco's fourth quarter 2004 net loss was $56.0 million (which included a $54.0 million deferred tax allowance), or ($1.88) per share, compared to a net loss of $4.8 million, or ($0.16), per share in the fourth quarter of 2003. Fourth quarter 2004 earnings excluding certain charges were $0.03 per diluted share for both 2004 and 2003.

> *    *    *    *

> Veeco's 2004 revenues were $390.4 million, up 40% from the $279.3 million reported in 2003. Veeco's 2004 net loss was $62.6 million (which included a $54.0 million deferred tax allowance), or $(2.11) per share, compared to a net loss of $9.7 million, or ($0.33) per share, in 2003. Excluding certain charges, Veeco's 2004 earnings per diluted share was $0.12 in 2004, compared to $0.11 in 2003.

54.    The March 16, 2005 press release also revealed for the first time the Company's internal investigation of improper accounting transactions at TurboDisc:

> Veeco has completed its internal investigation of improper accounting transactions recorded at its TurboDisc business unit, and Jefferson Wells, a firm retained under the direction of the Audit Committee of Veeco's Board of Directors, has reported the findings of its forensic investigation to Veeco's Audit Committee. The Jefferson Wells report and completion of the work brings to a close the investigation of the TurboDisc unit. Conclusions reached during the investigation included that the improper entries were made by a single individual at TurboDisc whose employment had been terminated prior to the commencement of the investigation.

> The investigation focused principally on the value of inventory, accounts payable and certain liabilities, as well as certain revenue transactions of TurboDisc. The investigation began after Veeco's corporate financial management and internal

27

audit staff discovered improper accounting transactions in the course of a Veeco internal audit. The results of the investigation led to accounting adjustments requiring the restatement of financial statements previously issued for the three quarterly periods and nine months ended September 2004.

\*   \*   \*   \*

*The restatement includes $8.1 million in pre-tax earnings adjustments related to inventory, accruals and accounts payable (estimated on February 11th to be in the range of $5.5-$7.5 million) and $2.1 million in pre-tax earnings adjustments related to revenue recognition issues uncovered during the investigation. The total effect of the restatement was a $10.2 million decrease in pre-tax earnings for the first nine months of 2004.* The quarterly impact of the $10.2 million pre-tax decrease to earnings was $2.8 million, $4.3 million and $3.1 million for the three month periods ended March 31, 2004, June 30, 2004 and September 30, 2004, respectively. The revenue impact from the adjustments to previously reported results are $(3.6) million, $(3.6) million and $5.0 million for the three month periods ended March 31, 2004, June 30, 2004, and September 30, 2004, respectively.

55.     Also on March 16, 2005, the Individual Defendants caused the Company to issue its

annual report on Form 10K, filed with the SEC which revealed further details with regard to the

improper accounting practices that occurred at Veeco's highly touted TurboDisc business unit.

Moreover, the Individual Defendants revealed that the Company was forced to incur "$0.8 million

for costs related to the internal investigation of improper accounting transactions at TurboDisc."

Furthermore, with respect to the internal investigation the Individual Defendants revealed:

On February 11, 2005, Veeco announced the postponement of the release of audited results for the fourth quarter and year ended December 31, 2004, pending completion of an internal investigation of improper accounting transactions at its TurboDisc® business unit. Veeco acquired the assets of TurboDisc in November 2003. The investigation focused principally on the value of inventory, accounts payable and certain liabilities, as well as certain revenue transactions of TurboDisc. The investigation was commenced after Veeco's internal audit staff and corporate financial management discovered improper accounting transactions in the course of a Veeco internal audit and transitioning the business to Veeco's SAP accounting system during the fourth quarter of 2004. The Audit Committee of the Company's Board of Directors supervised the accounting investigation and authorized Veeco's outside counsel, Kaye Scholer LLP, to hire Jefferson Wells International to perform forensics and accounting reconstruction work as part of the investigation. The

28

investigation has been completed. Conclusions reached during the investigation included that the improper accounting entries were made by a single individual at TurboDisc whose employment had been terminated prior to the commencement of the investigation, and that there was no evidence found of embezzlement or diversion of corporate assets.

*The results of the investigation led to the restatement of financial statements previously issued for the three quarterly periods and nine months ended September 30, 2004. The restatement included a $10.2 million adjustment to pre-tax earnings, comprised of $8.1 million in adjustments relating to inventory, accruals and accounts payable and $2.1 million in adjustments relating to revenue recognition issues. . . .* Veeco has made a number of personnel changes to help strengthen the management of the epitaxial process equipment group and the TurboDisc business unit since the discovery of the accounting issues giving rise to the investigation, including the replacement of the General Manager of the epitaxial process equipment group, creation of the positions of General Manager of the TurboDisc business unit, General Manager of the St. Paul MBE site, Group Controller of the epitaxial process equipment group and the appointment of a new controller of the TurboDisc business unit.

Thus, the Individual Defendants were forced to admit:

*The most serious profitability issue Veeco faced during 2004 was at its TurboDisc business unit. . . . Veeco discovered improper accounting at our TurboDisc business unit in New Jersey, which led to an internal investigation and accounting adjustments resulting in the restatement of our financial statements for the first nine months of 2004, including a decrease in our pre-tax earnings by $10.2 million.*

56.    Moreover, the Individual Defendants were forced to admit in the annual report that the internal controls at TurboDisc were grossly inadequate throughout the Relevant Period, stating:

As required by SEC Rule 13a-15(b), Veeco conducted an evaluation, under the supervision and with the participation of Veeco's management, including Veeco's Chief Executive Officer and Chief Financial Officer, of the effectiveness of the design and operation of the Company's disclosure controls and procedures as of the end of the fiscal period covered by this report and evaluated the Company's internal control over financial reporting as defined in Rules 13a-15(f) and 15d-15(f). *As a result of the discovery by management of improper accounting entries made at its TurboDisc business unit which led to adjustments requiring the restatement of the Company's financial statements for the quarterly periods ended March 31, 2004, June 30, 2004 and September 30, 2004, management has now determined that a deficiency existed in the internal control over financial reporting at the end of such*

29

*quarterly periods.* Since November 10, 2003, the date of the acquisition of the assets constituting the TurboDisc business unit, the business unit was operating under a legacy accounting system which was under the supervision of one individual and did not provide management with the depth of information Veeco is typically accustomed to. Management determined to institute a new accounting system at the business unit and in the course of the final implementation of such system in the quarter ended December 31, 2004, the improper accounting entries were discovered. Management believes that the new accounting system and attendant control process, together with the replacement of financial personnel at the TurboDisc business unit has remedied the deficiency in control over financial reporting that lead to the restatement and that the Company maintained effective internal control over financial reporting as of December 31, 2004.

57.    Following the release of Veeco's year end results, including the results of the internal investigation of accounting irregularities at TurboDisc and the quantification of its charges related to the Company's deferred tax allowance, Veeco's stock closed at $14,51 per share, well below the Relevant Period high of $31.65.

## Illegal Insider Selling

58.    On September 14, 2004, Defendant D'Amore, based on his knowledge of material non-public information regarding the Company, sold 3,333 shares of Veeco common stock at a selling price of $21.83 per share for proceeds of $72,726.    D'Amore he acquired these shares through the exercise of an option at just $4.50 per share.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

59.    Plaintiff brings this action derivatively in the right and for the benefit of Veeco to redress injuries suffered, and to be suffered, by Veeco as a direct result of the breaches of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants. Veeco is named as a nominal

30

defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

60.     Plaintiff will adequately and fairly represent the interests of Veeco in enforcing and prosecuting its rights.

61.     Plaintiff is and was an owner of the stock of Veeco during times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company.

62.     The Board of Directors of Veeco consists of the following ten individuals: defendants Braun, Scherr, Pfister, McDaniel, Low, Kingsley, Fridrich, Elftmann, Simone and D'Amore. Plaintiff has not made any demand on the Board of Directors of Veeco to institute this action because such a demand would be a futile, wasteful and useless act, particularly for the following reasons:

(a)     As a result of their access to and review of internal corporate documents; conversations and connections with other corporate officers, employees and directors; and attendance at management and Board meetings, each of the defendants knew the adverse non-public information regarding the improper accounting. While in possession of this material adverse non-public information regarding the Company, the following current members of the Veeco Board participated in the illegal insider selling:

1.     During the Relevant Period, D'Amore sold 3,333 shares of Veeco common stock, garnering total proceeds of $72,726;

(b)     The Compensation Committee of the Board the Compensation Committee determines salaries and bonuses and considers employment agreements for elected officers of the

31

Company, and prepares reports on these matters; considers, reviews and grants options under the Company's compensation plans and administers the plans; and considers matters of director compensation, benefits and other forms of remuneration. The Compensation Committee is comprised of defendants McDaniel, Low and D'Amore. The Director Defendants, other than Braun, receive a retainer of $5,000 per quarter ($6,250 for committee chairman), a fee of $2,000 for attending each board meeting held in person, $1,000 for attending each board meeting held by conference call and $1,000 for attending each committee meeting. Each Director Defendant other than Bruan also receives an automatic annual grant of 7,000 options to purchase Veeco stock Furthermore, at the direction of the Compensation Committee, the Company made an additional discretionary grant to each non-employee director of 3,000 options. Pursuant to a proposal submitted by the Compensation Committee, there will be a further increase in the automatic annual grant to non-employee Directors to 10,000 options. In 2003, D'Amore, Elftmann, Fridrich, Kingsley, Low, McDaniel and Pfister each received a grant of 10,000 options at an exercise price. As the members of the Compensation Committee singularly control the other defendants' awards, the remaining members of the Board will not institute this action against defendants McDaniel, Low and D'Amore. To do so would jeopardize each defendant's personal financial compensation. Thus, demand on defendants Braun, Scherr, Pfister, Kingsley, Fridrich, Simone and Eltfmann is futile;

(c)      The principal professional occupation of defendant Braun is his employment with Veeco, pursuant to which he received and continues to receive substantial monetary compensations and other benefits. Specifically, for FY:03, Veeco paid defendant Braun $636,538 in salary, bonus and other compensation and a grant of options to purchase 140,000 shares of Veeco stock. Accordingly, defendant Braun lacks independence from defendants, McDaniel, Low and

32

D'Amore, defendants who are not disinterested and/or independent and who exert influence over defendant Braun's compensation by virtue of their position as the Compensation Committee. This lack of independence renders defendant Braun incapable of impartially considering a demand to commence and vigorously prosecute this action;

(d)     According to Veeco's Proxy Statement filed with the SEC on or about April 5, 2004, defendants Pfister, Kingsley, Fridrich, and Elftmann were, during the Relevant Period, members of the Audit Committee. Defendant Simone became a member of the Audit Committee in July 2004. The Audit Committee is responsible for assisting the Board in fulfilling its oversight responsibilities regarding (i) the integrity of the Company's financial statements; (ii) the independent auditor's qualifications and independence; and (iii) the performance of the Company's internal audit function and internal. Specifically, the Audit Committee is responsible for (a) reviewing and discussing with the Company's management and the independent accountant the Company's annual financial statements and the auditor's report thereon to be included in the Company's Annual Report on Form 10-K and make a recommendation to the Board whether such financial statements should be included in the Company's Annual Report; (b) reviewing and discussing with management and the independent auditor, the Company's interim financial statements before quarterly results are released publicly; and (c) reviewing with the independent auditor, the internal auditor, and/or management any significant deficiencies in the design or operation of internal controls, any fraud, whether or not material, that involves management or other employees who have a significant role in the Company's internal controls, and any significant changes in internal controls or other factors that could significantly affect internal controls, including any corrective actions taken with regard to deficiencies and weaknesses. Thus, the Audit Committee discusses with the Company's

33

management the Company's earnings press releases, including the use of "pro forma" or "adjusted" non-GAAP information, and hold general discussion on financial information and earnings guidance provided to analysts and rating agencies, and is responsible for monitoring the Company's internal controls. Nonetheless, the Audit Committee recommended that the Board include the improper financial statements and publish the improper and misleading press releases, including the false and misleading information disseminated throughout the Relevant Period with regard to the Company's TurboDisc business unit. By such actions, defendants breached their duties by causing or allowing the improper financials and press releases described above. As a result of these defendants' breach of their duties, any demand upon them is futile;

(e)     The entire Veeco Board and senior management participated in the wrongs complained of herein. Veeco's directors are not disinterested or independent due to the following: defendants Braun, Scherr, Pfister, McDaniel, Low, Kingsley, Fridrich, Elfmann, Simone and D'Amore served on the Veeco Board during the Relevant Period. Pursuant to their specific duties as Board members, each was charged with the management of the Company and to conduct its business affairs. Each of the above referenced defendants breached the fiduciary duties that they owed to Veeco and its shareholders in that they failed to prevent and correct the improper financials. Thus, the Veeco Board cannot exercise independent objective judgment in deciding whether to bring this action or whether to vigorously prosecute this action because its members are interested personally in the outcome as it is their actions that have subjected Veeco to millions of dollars in liability for possible violations of applicable securities laws;

(f)     The Individual Defendants, because of their inter-related business, professional and personal relationships, have developed debilitating conflicts of interest that prevent

34

the Board members of the Company from taking the necessary and proper action on behalf of the Company as requested herein. In addition to the conflicts that exist as a result of their participation in the improper public statements and insider selling, as detailed herein *supra*, the majority of the Board, including the defendants listed below, are subject to the following prejudicial entanglements:

1.     Defendants D'Amore, Fridrich, and Low all jointly serve as directors of Solectron, Inc. In addition, Fridrich and Low worked at IBM. Defendant Fridrich spent 43 years at IBM in various high-level capacities and Defendant Low served as vice president-general manager, technology products for IBM from 1989 through 1992 and a member of IBM's Managment Board from 1990 to 1992. Because of long-standing and entangling business and professional relationships, defendants D'Amore, Fridrich, and Low will not take the action requested by plaintiff herein against one another or the remainder of the Individual Defendants;

2.     Defendant Braun is  is a Director Emeritus of Semiconductor Equipment and Materials International ("SEMI"), of which he was Chairman of the Board in 1993. Defendant Elftmann is also a Director Emeritus of SEMI. Defendants Pfister and McDaniel are also a past Chairmen of SEMI. Because of long-standing and entangling business and professional relationships, defendants Braun, Elftmann, Pfister and McDaniel will not take the action requested by plaintiff herein against one another or the remainder of the Individual Defendants; and

3.     Defendant Simone serves as a consultant for North Bridge Venture Partners ("North Bridge") of which Defendant D'Amore is co-founder and general partner. Because of this entangling business and professional relationship, defendants D'Amore and Simone will not take the action requested by plaintiff herein against one another or the remainder of the Individual Defendants; and

4.      Defendant Scherr has been employed by Veeco as a consultant since December 1995. From December 1993 through December 1995, he was Executive Vice President of Veeco. From January 1990 through December 1993, he was the Chief Financial Officer of Veeco. Scherr joined Veeco's predecessor in 1986 as General Manager of its UPA Technology Division, a Director of Veeco, pursuant to which he is employed as a consultant to Veeco with respect to acquisitions and new business opportunities, as well as certain other matters. Pursuant to his consulting agreements with Veeco, Scherr received $104,200 for his services in such advisory capacity as well as $27,000 in directors fees in 2003. On April 1, 2003 defendant Scherr also received options to purchase 10,000 shares of Veeco stock at an exercise price of $15.48 per share. Because of this long-standing and entangling business and professional relationship, defendant Scherr will not take the action requested by plaintiff herein against the remainder of the Individual Defendants. Each of the Director Defendants knew of and/or directly benefitted from the wrongdoing complained of herein.

(g)      The defendant directors of Veeco, as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Veeco's stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties;

(h)      In order to bring this suit, all of the directors of Veeco would be forced to sue themselves and persons with whom they have extensive business and personal entanglements, which they will not do, thereby excusing demand;

(i)      The acts complained of constitute violations of the fiduciary duties owed by Veeco's officers and directors and these acts are incapable of ratification;

36

(j)     Each of the defendant directors of Veeco authorized and/or permitted the false statements disseminated directly to the public or made directly to securities analysts and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various of the false and misleading statements and are principal beneficiaries of the wrongdoing alleged herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them;

(k)     Any suit by the current directors of Veeco to remedy these wrongs would likely expose the Individual Defendants and Veeco to further violations of the securities laws that would result in civil actions being filed against one or more of the Individual Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves;

(l)     Veeco has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Veeco any part of the damages Veeco suffered and will suffer thereby;

(m)     If the current directors were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies allegations against them contained in class action complaints for violations of securities law, which admissions would impair their defense of the class actions and greatly increase the probability of their personal liability in the class actions, in an amount likely to be in excess of any insurance coverage available to the Individual Defendants. In essence, they would be forced to take positions contrary to the defenses they will likely assert in the securities class actions. This they will not do. Thus, demand is futile; and

37

(n)    If Veeco's current and past officers and directors are protected against personal liability for their acts of mismanagement, abuse of control and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of Veeco. However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, the directors' and officers' liability insurance policies covering the defendants in this case contain provisions that eliminate coverage for any action brought directly by Veeco against these defendants, known as, *inter alia*, the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of Veeco, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. If there is no directors' and officers' liability insurance at all then the current directors will not cause Veeco to sue them, since they will face a large uninsured liability.

63.    Plaintiff has not made any demand on shareholders of Veeco to institute this action since such demand would be a futile and useless act for the following reasons:

(a)    Veeco is a publicly held company with approximately 29.73 million shares outstanding, and thousands of shareholders;

(b)    Making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c)    Making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

38

## COUNT ONE

### Against the Insider Selling Defendant for Breach of Fiduciary
### Duties for Insider Selling and Misappropriation of Information

64.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

65.    At the time of the stock sales set forth herein, the Insider Selling Defendant knew the information described above, and sold Veeco common stock on the basis of such information.

66.    The information described above was proprietary non-public information concerning the Company's product safety,   financial condition and future business prospects.   It was a proprietary asset belonging to the Company, which the Insider Selling Defendant used for his own benefit when he sold Veeco common stock.

67.    At the time of his stock sales, the Insider Selling Defendant knew that the Company's products, financial results and prospects were not as stated.   The Insider Selling Defendant's sales of Veeco common stock while in possession and control of this material adverse non-public information was a breach of his fiduciary duties of loyalty and good faith.

68.    Since the use of the Company's proprietary information for his own gain constitutes a breach of the Insider Selling Defendants' fiduciary duties, the Company is entitled to the imposition of a constructive trust on any profits the Insider Selling Defendant obtained thereby.

## COUNT TWO

### Against All Defendants for Breach of Fiduciary Duty

69.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

70. The Individual Defendants owed and owe Veeco fiduciary obligations. By reason of their fiduciary relationships, the Officer Defendants and Director Defendants owed and owe Veeco the highest obligation of good faith, fair dealing, loyalty and due care.

71. The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

72. Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent its product safety, financial prospects and results and failed to correct the Company's public statements, as well as its publicly reported financial results and guidance. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

73. As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, Veeco has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

74. Plaintiff on behalf of Veeco has no adequate remedy at law.

### COUNT THREE

#### Against All Defendants for Abuse of Control

75. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

76. The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence Veeco, for which they are legally responsible.

77. As a direct and proximate result of the Individual Defendants' abuse of control, Veeco has sustained significant damages.

78.    As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

79.    Plaintiff on behalf of Veeco has no adequate remedy at law.

## COUNT FOUR

### Against All Defendants for Gross Mismanagement

80.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

81.    By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Veeco in a manner consistent with the operations of a publicly held corporation.

82.    As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, Veeco has sustained significant damages in excess of hundreds of millions of dollars.

83.    As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

84.    Plaintiff on behalf of Veeco has no adequate remedy at law.

## COUNT FIVE

### Against All Defendants for Waste of Corporate Assets

85.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

86.    As a result of the improper public statements, financial results and prospects as alleged herein, and by failing to properly consider the interests of the Company and its public shareholders by failing to conduct proper supervision, defendants have caused Veeco to waste valuable corporate assets by paying incentive based bonuses to certain of its executive officers and incur potentially millions of dollars of legal liability and/or legal costs to defend defendants' unlawful actions.

87.    As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

88.    Plaintiff on behalf of Veeco has no adequate remedy at law.

## COUNT SIX

### Against All Defendants for Unjust Enrichment

89.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

90.    By their wrongful acts and omissions, defendants were unjustly enriched at the expense of and to the detriment of Veeco.

91.    Plaintiff, as a shareholder and representative of Veeco, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

42

A.    Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment;

B.    Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Veeco has an effective remedy;

C.    Awarding to Veeco restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the defendants;

D.    Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.    Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: April 22, 2005

FARUQI & FARUQI, LLP

By:  _____

NADEEM FARUQI (NF-1184)
SHANE ROWLEY (SR-0740)
BETH A. KELLER (BK-9421)
320 East 39th Street
New York, NY 10016
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

Attorneys for Plaintiffs

43

**VERIFICATION**

I, David Altman, am a plaintiff in the within action and a resident of the State of New Jersey. I have read the foregoing complaint and know the contents thereof, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

April 21, 2005

_____
David Altman