UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ANDREW MCINTOSH, Individually and On Behalf of All Others Similarly Situated, | : : : : : : : : : : : | Civil Action No. 2:05-CV-00889-LDW-ETB <br><br> **ELECTRONICALLY FILED** <br><br> CLASS ACTION |
| Plaintiff, | | |
| vs. | | |
| VEECO INSTRUMENTS, INC., et al., | | |
| Defendants. | | |
| BARRY LINZER, On Behalf of Himself and All Others Similarly Situated, | : : : : : : : : : : | Civil Action No. 2:05-CV-00957-DRH-ETB <br><br> CLASS ACTION |
| Plaintiff, | | |
| vs. | | |
| VEECO INSTRUMENTS, INC., et al., | | |
| Defendants. | | |
| BRUCE KANTOR, On Behalf of Himself and All Others Similarly Situated, | : : : : : : : : : : : | Civil Action No. 2:05-CV-00967-LDW-ETB <br><br> CLASS ACTION |
| Plaintiff, | | |
| vs. | | |
| VEECO INSTRUMENTS, INC., et al., | | |
| Defendants. | | |

[Caption continued on following page.]

OPPOSITION OF NECA-IBEW PENSION FUND (THE DECATUR PLAN) TO
COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND TO APPROVE
LEAD PLAINTIFF'S CHOICE OF LEAD COUNSEL

|  | x |  |
|---|---|---|
| GEORGE F. WALKER, Individually and On Behalf of All Others Similarly Situated, | : : : | Civil Action No. 2:05-CV-01003-JS-ETB |
| Plaintiff, | : : | CLASS ACTION |
| vs. | : : : |  |
| VEECO INSTRUMENTS, INC., et al., | : : |  |
| Defendants. | : : |  |
| PHILIP G. COLLINS, On Behalf of Himself and All Others Similarly Situated, | : : : | Civil Action No. 2:05-CV-01277-LDW-ETB |
| Plaintiff, | : : | CLASS ACTION |
| vs. | : : : |  |
| VEECO INSTRUMENTS, INC., et al., | : : |  |
| Defendants. | : : |  |
| SERVAAS HOLTHUIZEN, Individually and On Behalf of All Others Similarly Situated, | : : : | Civil Action No. 2:05-CV-01337-LDW-ETB |
| Plaintiff, | : : | CLASS ACTION |
| vs. | : : : |  |
| VEECO INSTRUMENTS, INC., et al., | : : |  |
| Defendants. | : : |  |
| GERALD J. VOGT, et al., On Behalf of Themselves and All Others Similarly Situated, | : : : | Civil Action No. 2:05-CV-01430-LDW-ETB |
| Plaintiffs, | : : | CLASS ACTION |
| vs. | : : : |  |
| VEECO INSTRUMENTS, INC., et al., | : : |  |
| Defendants. | : : x |  |

[Caption continued on following page.]

|  | x |  |
|---|---|---|
| TIMOTHY JOE GROVE, On Behalf of Himself and All Others Similarly Situated, | : : : | Civil Action No. 2:05-CV-01552-LDW-ETB |
|  | : | CLASS ACTION |
| Plaintiff, | : |  |
|  | : |  |
| vs. | : |  |
|  | : |  |
| VEECO INSTRUMENTS, INC., et al., | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |
|  | x |  |

## I. INTRODUCTION

NECA-IBEW Pension Fund (The Decatur Plan) ("NECA") respectfully submits this memorandum in opposition to the competing motions for appointment as lead plaintiff.[1] In addition to NECA's motion filed on April 18, 2005, four other motions for appointment as lead plaintiff were filed by the following plaintiffs: (1) the Steelworkers Trust; (2) Ratan LalChandani; (3) Joel Mandel; and (4) the Capitanio Group. On May 2, 2005, Joel Mandel filed a notice of non-opposition to the Steelworkers Trust's motion, and did not file oppositions to any of the other motions for appointment as lead plaintiff.

NECA should be appointed as lead plaintiff in this case because it is the only movant that has *both* the largest financial interest in the litigation and which also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The Steelworkers Trust, which claims the largest financial interest, cannot be appointed as lead plaintiff because it has demonstrated that it is incapable of adequately representing the class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (movant cannot be appointed as lead plaintiff if it "will not fairly and adequately protect the interests of the class; or is subject to unique defenses that render such plaintiff incapable of adequately representing the class"). In fact, the Steelworkers Trust has conceded that it is

---

[1] NECA filed its opposition on May 5, 2005, and not May 2, 2005 as the Steelworkers Pension Trust ("Steelworkers Trust") and Ratan LalChandani did because under Rule 6(e) of the Federal Rules of Civil Procedure and Local Rule 6.4, the parties are allowed three extra days for responding to a filing where they are served by electronic means. Although local counsel for the Steelworkers Trust has indicated in the past that it believes the three extra days are not warranted, the clear Federal and Local Rules allow for the three extra days. This issue has been recently raised in the Southern District of New York in front of Judge Sidney Stein. Ex. A (for extensive analysis of the issue). In short, because the Federal and Local Rules specifically allow for the three days, NECA's opposition filed on May 5, 2005 is timely. All Exhibits are attached to the Declaration of Mario Alba, Jr. in Support of Opposition of NECA-IBEW Pension Fund (The Decatur Plan) to Competing Motions for Appointment as Lead Plaintiff and for Approval of Lead Plaintiff's Choice of Lead Counsel, filed concurrently herewith, unless otherwise noted.

unwilling to represent the interests of the entire class. *See* Section II.A.2., *infra*. *See also Borenstein v. Finova Group*, 2000 U.S. Dist. LEXIS 14732, at *26-*27 (D. Ariz. 2000) (holding that appointing a proposed lead plaintiff that had emphatically argued against the claims of a large subclass "would pose a significant risk that the complete interests of all class members would not be fairly and adequately protected").

Ratan LalChandani and Joel Mandel cannot adequately represent the interests of the class because, as individuals, they may be unable to meet the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Malasky v. IAC/InteractiveCorp*, 04 Civ. 7447 (RJH), 2004 U.S. Dist. LEXIS 25832, at *9 (S.D.N.Y. Dec. 21, 2005) (expressing concern that individual with the largest financial interest could not meet Rule 23's adequacy requirement because he was not an institutional investor, and appointing an institutional investor with him).

NECA, on the other hand, is precisely the type of institutional investor Congress intended would lead securities actions like this one. *See Schulman v. Lumenis, Ltd*., No. 02 Civ. 1989 (DAB), 2003 U.S. Dist. LEXIS 10348, at *10 (S.D.N.Y. June 17, 2003) (holding that institutional investors are in the best position to prosecute securities fraud claims and to negotiate with and supervise counsel); *IAC*, 2004 U.S. Dist. LEXIS 25832, at *9 (appointing institution as lead plaintiff even though it did not have the largest financial interest).[2] Although the Steelworkers Trust attempts to disqualify NECA based upon the unremarkable fact that NECA sold all of its shares in Veeco prior to the end of the Class Period, such a fact does not prevent NECA from appointment as lead plaintiff. Indeed, numerous cases, including those in the Southern District of New York, include in

---

[2] *See also In re Star Gas Sec. Litig.*, No. 3:04cv1766 (JBA), 2005 U.S. Dist. LEXIS 5827, at *16 (D. Conn. Apr. 8, 2005); *Bassin v. Decode Genetics, Inc.*, 04 Civ. 7050 (RJH), 2005 U.S. Dist. LEXIS 51, at *8 (S.D.N.Y. Jan. 4, 2005).

and out losses in calculating lead plaintiff movants' financial interests. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, No. 03 Civ. 8264 (RWS), 2004 U.S. Dist. LEXIS 9571, at *65-*66 (S.D.N.Y. May 27, 2004); *In re Catalina Mktg. Corp. Sec. Litig.*, 225 F.R.D. 684, 687 (M.D. Fla. 2003); *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 411 (D. Minn. 1998); *In re Vesta Ins. Group, Inc. Sec. Litig.*, No. 98-AR-1407-S, 1999 U.S. Dist. LEXIS 22233, at *15 (N.D. Ala. Oct. 25, 1999); *In re Critical Path, Inc.*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001); *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, No. 00-152 (JEI), 2000 U.S. Dist. LEXIS 5481 (D.N.J. Apr. 24, 2000); *Burke v. Ruttenburg*, 102 F. Supp. 2d 1280, 1299-1302 (N.D. Ala. 2000); *Thompson v. Quest Software, Inc.*, Slip Op. at 4-5 (C.D. Cal. Oct. 23, 2003) (Ex. B); *Yates v. Vimpel-Communications*, Slip Op. at 3, 5 (S.D.N.Y. Apr. 29, 2005) (Ex. C).

In addition, because there was a partial disclosure during the Class Period, resulting in a significant decline in Veeco's stock price, NECA can adequately demonstrate loss causation. *See Greater Pa. Carpenters Pension Fund v. Whitehall Jewellers, Inc.*, No. 04 C 1107, 2005 U.S. Dist. LEXIS 376, at *13-*15 (N.D. Ill. Jan. 10, 2005) (finding adequate loss causation where defendants issued partial disclosures during the class period); *Danis v. USN Communs., Inc.*, 73 F. Supp. 2d 923, 943 (N.D. Ill. 1999) (same); *Catalina Mktg*, 225 F.R.D. at 687.

Finally, even were NECA subject to a defense based upon the fact that it sold all of its shares prior to the end of the Class Period, the defense is not *unique* to NECA, but would be asserted regardless of who is appointed as lead plaintiff in this case. *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92 (SAS), 2004 U.S. Dist. LEXIS 20497, at *168 n.380 (S.D.N.Y. Oct. 13, 2004) ("'The problems presented by "in and out sellers" *are bound to inhere in any securities action alleging a fraud on an open securities market*.'") (quoting *In re Rent-Way Sec. Litig.*, 218 F.R.D. 101, 119

(W.D. Pa. 2003)).[3] Consequently, such a defense does not render NECA inadequate under the PSLRA. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (requiring a defense be "unique" before a plaintiff is rendered inadequate).

In short, NECA is the only plaintiff that has the largest financial interest and which also satisfies Rule 23's requirements. Consequently, NECA should be appointed as lead plaintiff and its choice of Lerach Coughlin Stoia Geller Rudman & Robbins LLP as lead counsel should be approved.

## II. ARGUMENT

### A. The Steelworkers Trust Cannot Be Appointed As Lead Plaintiff Because It Is Unable and Unwilling to Adequately Represent the Entire Class

#### 1. The Steelworkers Trust Has Not Been Forthright with the Court

The Steelworkers Trusts' counsel has put its candor with the Court in serious issue by attempting to hide a significant sale of Veeco stock during the long class period. Indeed, the Steelworkers Trust did not disclose the additional sale in the longer class period until it had notice that another competing movant had discovered the sale and would likely use it in its opposition. For this reason, the Steelworkers Trust cannot be appointed as lead plaintiff. *See Savino v. Computer*

---

[3] *See Finova*, 2000 U.S. Dist. LEXIS 14732, at *28 (defense raised as to an entire subclass is not "unique" and does not render a plaintiff subject to the defense atypical); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1993 U.S. Dist. LEXIS 21272, at *24-*25 (C.D. Cal. Feb. 26, 1993) (same); *In re ML-Lee Acquisition Fund II, L.P.*, 848 F. Supp. 527, 559 (D. Del. 1994) (same); *Yadlosky v. Grant Thornton L.L.P.*, 197 F.R.D. 292, 302 (E.D. Mich. 2000) (same); *Honorable v. Easy Life Real Estate Sys.*, 182 F.R.D. 553, 559 (N.D. Ill. 1998) (same); *Borcherding-Dittloff v. Transworld Sys.*, 185 F.R.D. 558, 565 (W.D. Wis. 1999) (same); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) ("there is a danger that absent class members will suffer if their representative is preoccupied with defenses ***unique to it***").

*Credit*, 164 F.3d 81, 87 (2d Cir. 1998) ("To judge the adequacy of representation, courts may consider the honesty and trustworthiness of the named plaintiff"); *Kline v. Wolf*, 702 F.2d 400, 402-03 (2d Cir. 1983) (refusing class certification where named plaintiff's credibility was at issue); *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 549-50 (1949) (class representative is a fiduciary, and interests of the class are "dependent upon his diligence, wisdom and integrity"); *Zemel Family Trust v. Philips Int'l Realty Corp.*, 205 F.R.D. 434, 437 (S.D.N.Y. 2002) ("courts may consider 'honesty and trustworthiness of the named plaintiff' in judging the 'adequacy of representation'"). Because the Steelworkers Trust has put its credibility at issue, it should not be appointed as lead plaintiff in this case.

> **2.     The Steelworkers Trust Has Abandoned A Big Portion of the Class and Conceded No Damages for A Partial Disclosure during the Class Period that Caused a Significant Decline in the Stock**

Even if the Court did not disqualify the Steelworkers Trust based upon its attempt to hide significant information from the Court, the Steelworkers Trust is still inadequate to represent the class. Indeed, it has seriously attacked two different large subclasses of purchasers which demonstrates its inability to adequately represent the entire class. *Finova*, 2000 U.S. Dist. LEXIS 14732, at *26-*27 (D. Ariz. 2000). First, the Steelworkers Trust attacks the plaintiffs who purchased in the longer class and outrightly refuse to adequately represent them by suggesting those plaintiffs should not be part of the class. *See* The Steelworkers Pension Trust's Memorandum of Law in Further Support of Its Motion for Appointment as Lead Plaintiff and in Opposition to the Competing Motions for Appointment as Lead Plaintiff ("Steelworkers Trust's Oppo."), at 9-10. In fact, the Steelworkers Trust has concede that "no false and misleading statements were made until the April 26, 2004 press release," thus making it impossible for the Steelworkers to plead the longer class period starting in November 2003. *See* Steelworkers Trust's Oppo. at 10 n.7. This concession by

the Steelworkers Trust, which certainly will not be lost on defendants, demonstrates that without question, it cannot adequately represent those plaintiffs who purchased stock in the longer Class Period which has admittedly been alleged in several of the complaints that the Steelworkers Trust requests be consolidated.  Indeed, although the Steelworkers attempts to downplay its concessions by claiming that it will research the longer class period to see if it has merit is illogical – it has claimed already that it has researched the class periods and has concluded that the longer class period has no merit.  Consequently, the Steelworkers Trust has demonstrated its own inadequacy and cannot be appointed as lead plaintiff.

In addition, the Steelworkers Trust has conceded that several other plaintiffs do not have damages in the class, adding additional support to the contention that the Steelworkers Trust is not an adequate plaintiff.  The Steelworkers Trust attacks in and out traders that sold stock after a partial disclosure which caused a significant drop in Veeco's stock.  *See* Steelworkers Trust's Oppo. at 13-16.  Based upon the volume after the disclosure, numerous plaintiffs in the class will be in the same position as NECA.  *See* Steelworkers Trust's Oppo. at 13 n.10 (conceding the volume of shares traded after defendants' partial disclosure was "***heavy***" and reached over 2.2 million shares traded).  The Steelworkers Trust's unabashed willingness to quickly cast aside large portions of the class where doing so might benefit its chances of being appointed as lead plaintiff is a serious red flag that indicates that not only is the Steelworkers Trust not able to adequately represent the interests of the entire class, but that the Steelworkers Trust is ***unwilling*** to represent the interests of the entire class.  For this reason alone, in order to protect the class, the Steelworkers Trust's motion must be denied.  *Finova*, 2000 U.S. Dist. LEXIS 14732, at \*26-\*27 (D. Ariz. 2000).

In *Finova*, a proposed lead plaintiff group argued that certain note-holders would not be able to rely upon the fraud-on-the-market doctrine, and thus would be subject to unique defenses.  *Id*.

The court noted that appointing that proposed group when it had already emphatically argued against the claims of a large subclass "would pose a significant risk that the complete interests of all class members would not be fairly and adequately protected." Consequently, the court denied the group's motion.

Similarly, here, appointing the Steelworkers Trust would pose a significant risk that those plaintiffs in the longer class period, and those plaintiffs that sold stock after the partial disclosure, would not be adequately protected. This is especially true given that the Steelworkers Trust has requested that it be appointed sole lead plaintiff – leaving these large subclasses without adequate representation. Such a result was certainly not intended by the PSLRA. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (movant cannot be appointed as lead plaintiff if it "will not fairly and adequately protect the interests of the class").

### B. Ratan LalChandani and Joel Mandel Cannot Adequately Protect the Interests of the Class

Ratan LalChandani and Joel Mandel do not satisfy the adequacy requirement of Rule 23 of the Federal Rules of Civil Procedure because they are not institutional investors. *IAC*, 2004 U.S. Dist. LEXIS 25832, at *11-*12. In *IAC*, Judge Holwell expressed concern that an individual with the largest financial interest may not adequately represent the class because it was not an institutional investor. 2004 U.S. Dist. LEXIS 25832, at *11-*12. Because the PSLRA intended to heavily favor institutional investors, the Court appointed an institution to serve as lead plaintiff with the individual, despite the individual having a larger loss. *Id*. at *13. Here, although Ratan LalChandani and Joel Mandel claim to have larger financial interests than NECA, they are not institutions. Consequently, to adequately protect the interests of the class, in the event the Court is inclined to appoint an individual, NECA should be appointed with the individual.

Indeed, several courts have appointed an institution with an individual in order to ensure adequacy and diversity of representation. *See In re Party City Litigation,* 189 F.R.D. 91, 114 (D.N.J. 1999) (appointing individual investor and institutional investor as co-lead plaintiffs and remarking that the individual investor "will be able to benefit from the investment experience of Slater Asset, as an institutional investor."); *In re Cable & Wireless, PLC, Securities Litigation*, 217 F.R.D. 372, 376 (E.D.Va. 2003) (appointing individual investor and teachers' pension plan as co-lead plaintiffs and reasoning that the "purpose of the PSLRA's selection-of-lead-plaintiff provision was to get institutional investors involved in the prosecution of securities class action suits."); *In re Microstrategy, Inc. Securities Litigation*, 110 F. Supp. 2d 427, 439 (E.D. Va. 2003) (appointing two-person family and union pension fund as co-lead plaintiffs); *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, No. 00 Civ. 152, 2000 U.S. Dist. LEXIS 5481 (D.N.J. Apr. 24, 2000) (appointing individuals and an institution as co-lead plaintiffs and anticipating that each party would bring a "unique perspective" to the litigation); *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1071 (C. D. Cal. 1999) (appointing an individual investor and an institutional investor as co-lead plaintiff to serve a broad range of interests), *In re Oxford Health Plans, Inc. Securities Litigation*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (appointing a group with individuals and an institution as lead plaintiff and commenting that the PSLRA "expressly contemplates the appointment of more than one plaintiff" regardless of whether the groups move jointly or independently). Consequently, even were the Court to appoint Ratan LalChandani or Joel Mandel, it should also appoint NECA in order to ensure the adequate protection of the class.

### C. NECA IS NOT INADEQUATE SIMPLY BECAUSE IT SOLD ALL ITS SHARES DURING THE CLASS PERIOD

The Steelworkers Trust's attacks on NECA for selling all of its shares prior to the end of the Class Period are unavailing.

### 1. Courts Routinely Include In-and-Out Losses When Determining the Plaintiff with the Largest Financial Interest

Courts routinely include in-and-out losses when determining the plaintiff with the largest financial interest in the litigation. *Pirelli*, 2004 U.S. Dist. LEXIS 9571, at *65-*66; *Catalina*, 225 F.R.D. at 687; *Chill*, 181 F.R.D. at 411 (using in-and-out losses to appoint a lead plaintiff); *Vesta*, 1999 U.S. Dist. LEXIS 22233, at *15 (the class will always include class members who purchased and sold at different times and that the timing of sales does not create any adequacy or typicality issues since "the overriding goal of the class, and of its representatives, will virtually always be to demonstrate the liability of the defendant"); *Critical Path*, 156 F. Supp. 2d at 1108 ("in-and-out losses ... are recoverable, and because the PSLRA defines financial interest in terms of 'recovery sought,' they should be included"); *Campbell Soup*, 2000 U.S. Dist. LEXIS 5481 (same); *Burke*, 102 F. Supp. 2d at 1299-1302 (same); *Quest Software*, Slip Op. at 4-5 ("no distinction between retention traders and in-and-out traders for the purpose of appointing lead plaintiffs") (Ex. B); *Vimpel-Communications*, Slip Op. at 3,5 (rejecting defendants' arguments that movant who sold all its shares prior to the end of the class period could not be appointed as lead plaintiff) (Ex. C).

In *Catalina*, the competing movants made the ***same*** arguments that the Steelworkers Trust makes against NECA in this case – that NECA will be subject to a unique defense of loss causation because it sold all of its shares before the end of the Class Period. The *Catalina* court found that the fact that the presumptive lead plaintiff "sold their Catalina stock prior to the time the alleged fraud was ***fully*** disclosed ***does not indicate an absence of loss causation*** and ***does not pose an obstacle, in and of itself, to meeting the requirements in Fed. R. Civ. P. 23(a)***. 225 F.R.D. at 687.[4] This is true

---

[4] Citing *Blackie v. Barrack*, 524 F.2d 891, 908-10 (9th Cir. 1975); *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 493-94 (S.D. Fla. 2003); *Schwartz v. Harp*, 108 F.R.D. 279, 282-83 (C.D. Ca

because where a plaintiff sells its shares after a partial disclosure, the plaintiff's "damages may be affected by the timing of the sale of their stock, *[but it] does not render them unable to prove loss causation*." *Id*.

In addition, Judge Robert W. Sweet recently held that in light of the contradictory case law regarding unique defenses against in-and-out traders, arguments against a proposed lead plaintiff for being an in-and-out trader do "not suffice to establish ... a unique defense." *Pirelli*, 2004 U.S. Dist. LEXIS 9571, at *65-*66. To the extent the competing movants argue that NECA is unable to demonstrate damages, Judge Sweet recognized that "courts do not require a movant for lead plaintiff to establish its damages at this stage." *Id*. at *62 n.30; *see also Vimpel-Communications*, Slip Op. at 3,5 (Ex. C) (stating arguments regarding in and out plaintiffs are premature at the lead plaintiff stage). The Steelworker Trust itself admits that a lead plaintiff movant's losses "are not necessarily the same as its legally compensable damages, measurement of which is often a complex legal question *which cannot be determined at this stage of the litigation*." Steelworkers Trust's Memo at 1 n.2. In addition, based upon the Steelworkers Trust's trading in the longer Class Period, it itself is an in and out plaintiff as it sold just as many shares during the class period as it purchased, but unlike NECA which suffered a loss, the Steelworkers Pension Trust appears to have realized a gain on its class period transactions. In short, the Steelworkers Trust cannot dispute that NECA lost over $40,000 in connection with its purchases and sales of Veeco securities during the Class Period, and thus is an appropriate lead plaintiff.[5]

---

1985); *Koenig v. Smith*, 88 F.R.D. 604 (E.D. N.Y. 1980); *Kassover v. Coeur D'Alene Mines Corp.*, No. 92-0015-N-HLR, 1992 WL 509995 (D. Idaho Sept. 2, 1992).

[5] *See also In re Dynegy, Inc. Sec. Litig.*, No. H-02-1571, 2004 U.S. Dist. LEXIS 26492, at *45 (S.D. Tex. Dec. 31, 2004) (concluding "that Lead Plaintiff's divestiture of *all its DI stock before the end of the proposed class period does not render it an atypical plaintiff*").

## 2. Partial Disclosures During the Class Period Demonstrate Loss Causation for Shares Sold After the Disclosures

Courts frequently find loss causation established on the basis of partial disclosures during the class period. *See, e.g., Whitehall Jewellers*, 2005 U.S. Dist. LEXIS 376, at *13-*15; *Danis*, 73 F. Supp. 2d at 943 (same); *Catalina*, 225 F.R.D. at 687. Here, NECA sold its shares ***after*** a partial disclosure, and thus, will not be subject to a loss causation defense.

NECA purchased the majority of its shares in Veeco by September 14, 2004, before the partial disclosure at prices as high as $22.95. On October 13, 2004, the Company disclosed that "weak industry-wide capital equipment conditions, particularly in compound semiconductor, adversely impacted its results for the quarter ended September 30, 2004," and that the Company would have to lower its previous guidance for the third quarter of 2004. *See* Steelworkers Trust's Oppo. at 13 n.10. This disclosure took some of the inflation out of the stock because even the Steelworkers Trust admits that the stock declined on ***heavy volume*** from $21.83 to $19.60. *Id*. That it did not specifically relate to the disclosures that end the class period in February 2005 is not relevant – indeed, the Steelworkers Trust has not cited to any authority that such a link must be demonstrated in order to plead loss causation. That defendants partially disclosed the true affairs of the Company, while at the same time continuing to stand by its financial results it knew were based upon inappropriate accounting which would require a restatement, is enough to demonstrate loss causation. By requiring more of plaintiffs at this stage contradicts the clear language of the Supreme Court in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. ___, No. 03-932, 2005 U.S. LEXIS 3478, at *18 (Apr. 19, 2005).

The Supreme Court in *Dura* held that in order to adequately plead loss causation, a plaintiff need only meet Rule 8(a)'s requirement of "'a short and plain statement of the claim showing that the pleader is entitled to relief'." In addition, the *Dura* court found that the pleading rules with

- 11 -

regard to loss causation "are not meant to impose a great burden on plaintiff," but plaintiff need only "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Id.* at 10. NECA's demonstration of loss causation meets this standard, and there is no evidence that NECA will be subject to any greater loss causation defense than that of any other plaintiff. Indeed, the *Dura* court held ***no plaintiff*** can rely only upon the inflation in the stock price at the time of purchase to demonstrate loss causation. Therefore, ***every member of the class*** will be required meet Rule 8(a)'s pleading requirement with regard to loss causation, and any loss causation arguments will not be limited to NECA. *See* Section II.C.3., *infra*.

The cases cited by the Steelworkers Trust which refused to appoint an in-and-out trader as lead plaintiff are distinguishable because there was no evidence of partial disclosures in those cases, and those courts ignored the fact that the defense is not unique to the named plaintiff, but will be asserted regardless of who is appointed. *See, e.g., In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 998 (N.D. Cal. 1999) (court found "little evidence of partial corrective disclosures reaching investors"). In addition, unlike NECA which clearly sold its shares ***after the truth began to trickle out***, and can clearly link its loss to defendants' misrepresentations, the plaintiffs in the competing movants' cases sold their stock "***before the alleged fraud was first revealed***," and failed to "link their losses to the alleged misrepresentations." *See Arduini/Messina P'shp. v. Nat'l Med. Fin. Servs. Corp.*, 74 F. Supp. 2d 352, 361 (S.D.N.Y. 1999) (plaintiffs were "unable to link their losses to the alleged misrepresentations and omissions or even to the general fraudulent manipulation scheme"); *In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 379 (D. Va. 2003) ("West Virginia sold all of its shares ***before the fraud allegedly perpetrated by C&W was revealed to the public***"); *In re Bally Total Fitness Sec. Litig.*, No. 04 C 3530, 2005 U.S. Dist. LEXIS 6243, at *17-

*18 (N.D. Ill. Mar. 15, 2005) (plaintiff "sold all of its stock during the class period, many months before the alleged fraud was *first revealed*").[6]

### 3. The Steelworkers Trust's Loss Causation Argument Is Not "Unique" to NECA

There is no disputing that in order for a potential defense to render a plaintiff inadequate to serve as lead plaintiff, the defense must be "unique" to that plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(bb). The Steelworkers Trust meritlessly argues that NECA might be subject to a "unique" defense because it sold all of its shares during the Class Period. This defense will be raised, if at all, against all plaintiffs who sold during the Class Period regardless of who is appointed as lead plaintiff, especially since it is likely ***hundreds*** of the members of the class in this case sold during the Class Period because of defendants' partial disclosure.[7] Thus, anyone appointed lead plaintiff here will have to face the loss causation defense against plaintiffs who sold shares during the Class Period after the partial disclosure, and the defense is neither "unique" to NECA, nor renders NECA inadequate. *IPO.,* 2004 U.S. Dist. LEXIS 20497, at *168 n.380 ("'The problems presented by "in and out sellers" *are bound to inhere in any securities action alleging a fraud on an open securities market*.'").[8]

---

[6] *In re Comdisco Sec. Litig.*, 2005 WL 627960 (N.D. Ill. March 15, 2005) is likewise distinguishable because in that case, the plaintiff was a net seller, having sold more shares during the class period than it purchased. Here, NECA is not a net seller.

[7] *See* the Steelworkers Trust Oppo. at 13 n.10, conceding that the trading volume after the partial disclosure increased to over 2.2 million shares.

[8] *See Borenstein v. Finova Group*, No. CIV 00-619-PHX-SHM, 2000 U.S. Dist. LEXIS 14732, at *28 (D. Ariz. Aug. 28, 2000) (defense raised as to an entire subclass is not "unique" and does not render a plaintiff subject to the defense atypical); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, MDL No. 901, 1993 U.S. Dist. LEXIS 21272, at *24-*25 (C.D. Cal. Feb. 26, 1993) (same); *In re ML-Lee Acquisition Fund II, L.P.*, 848 F. Supp. 527, 559 (D. Del. 1994) (same); *Yadlosky v. Grant Thornton L.L.P.*, 197 F.R.D. 292, 302 (E.D. Mich. 2000) (same); *Honorable v. Easy Life Real*

Moreover, *the Steelworkers Trust* also claim losses from the partial disclosures during the Class Period, and will *necessarily* have to submit evidence of them to prove loss causation for *their* claimed losses. Veeco stock traded over $30 at the beginning of the long class period and in the days leading up to the partial disclosure on October 12, 2004, the stock was trading at above $22 per share. *See* Ex. D (historical trading information of Veeco stock from November 1, 2003 to February 12, 2005). After that partial disclosure on October 12, 2004, the stock never again traded at those levels. *Id*. By the end of the Class Period, the stock was trading around $19.00. *Id.* After the final disclosure on February 10 2005, the stock fell to as low as $16.23. *Id*. Thus, regardless of who is appointed as lead plaintiff, that plaintiff will have demonstrate that the partial disclosures during the Class Period caused any losses above $19.00 per share in order for *any of the plaintiffs*, including those that retained their shares, to recognize loss from the $30 to $19 declines. The Steelworkers Trust claims a loss from its purchase of stock at prices from $23.47 to $23.84. In calculating its loss, the Steelworkers Trust did not disclaim the loss from $23.84 to $19.00, despite it having conceded that losses from those declines were not attributable to defendants' fraud. Instead, the Steelworkers Trust itself has included losses from defendants' partial disclosure in its loss calculation. Thus, even if the Steelworkers Trust were appointed, it would have to deal with the stock drops during the class period in order to demonstrate loss causation for its entire claimed loss.

Where arguments (like evidence of the partial disclosure here) will benefit the entire class, the fact that they will need to be made *supports* a plaintiff's typicality. *See id*. at *93-*96 (defense that will be raised as to a subclass is not "unique" and where defeating the defense would benefit *the*

---

*Estate Sys.*, 182 F.R.D. 553, 559 (N.D. Ill. 1998) (same); *Borcherding-Dittloff v. Transworld Sys.*, 185 F.R.D. 558, 565 (W.D. Wis. 1999) (same); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) ("there is a danger that absent class members will suffer if their representative is preoccupied with defenses *unique to it*").

*entire class*, a plaintiff subject to the defense is "*typical*"). In addition, the Third Circuit recognizes that plaintiffs who *retain shares until after the class period* (Hold Plaintiffs) and those that sell their shares before the end of the class period (Sell Plaintiffs) face the *same defenses* that do not bar class certification and are not appropriate at the lead plaintiff stage. *Cendant*, 264 F.3d at 244 n.25 ("it is *equally problematic* to have a Sell Plaintiff represent a class that includes Hold Plaintiffs as it is to have a Hold Plaintiff represent a class that includes Sell Plaintiffs").[9] Consequently, here *no* plaintiff is inadequate to serve as lead plaintiff merely on the basis that they sold or hold their shares.

DATED: May 5, 2005

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN (SR-7957)
DAVID A. ROSENFELD (DR-7564)
MARIO ALBA, JR. (MA-7240)


        */s/ Mario Alba, Jr.*
        MARIO ALBA, JR.

200 Broadhollow Road, Suite 406
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

[Proposed] Lead Counsel for Plaintiffs

---

[9] *See also* 4 Newberg on Class Actions § 22.32, at 22-137-140 (3d ed. 1995) ("a plaintiff who has acquired and retained securities can thoroughly and adequately represent parties who purchased and then sold them, *and vice versa*"); *In re Cirrus Logic Sec.*, 155 F.R.D. 654, 661 (N.D. Cal. 1994) ("the *vast majority* of courts which have addressed the in/out trader issue" certified classes with in-and-out traders); *In re Proxima Corp. Sec. Litig.*, No. 93-1139-IEG (LSP), 1994 U.S. Dist. LEXIS 21443 (S.D. Cal. May 4, 1994) (No conflict of interest between sell and hold class members); *In re Rent-Way Sec. Litig.*, 218 F.R.D. 101, 119 (W.D. Pa. 2003), (to "refuse certification because of the existence of 'in and out' traders would perhaps establish a precedent that rewards the most egregious violations of §10(b) by making class certification unattainable"); *Kassover*, 1992 WL 509995, at *5 (certifying an in-and-out trader as class representative despite defendants' arguments that he was inadequate as an in-and-out trader).