UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
U.S. IN CLERKS OFFICE
DISTRICT COURT E.D.N.Y.

FEB 18 2005

BROOKLYN OFFICE

| | |
|---|---|
| BARRY LINZER, on behalf of himself and all others similarly situated, | Civ. No. |
| Plaintiff, | CLASS ACTION |
| vs. | COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| VEECO INSTRUMENTS, INC., EDWARD H. BRAUN, and JOHN F. REIN, JR. | DEMAND FOR JURY TRIAL |
| Defendants. | |

Plaintiff, Barry Linzer, individually and on behalf of all other persons and entities similarly situated, by its undersigned attorneys, for its complaint against the above-captioned defendants, alleges upon personal knowledge as to itself and its own acts, and upon information and belief as to all other matters, based upon, *inter alia,* the investigation made by and through its attorneys, which investigation included, among other things, a review of the public documents, Securities and Exchange Commission ("SEC") filings, analyst reports, news releases and media reports concerning Veeco Instruments, Inc. ("Veeco" or the "Company"), as follows:

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of all persons and entities, other than defendants, who purchased or otherwise acquired the securities of Veeco between November 3, 2003 and February 10, 2005, inclusive, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims alleged herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t, and Rule 10b-5, 17 C.F.R. §240.10b-5 promulgated thereunder.

3.      The jurisdiction of this Court is based on Section 27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1331 (federal question jurisdiction).

4.      Venue is proper in this judicial district pursuant to Section 27 of the Exchange Act. Many of the acts and transactions giving rise to the violations of law complained of herein, including the preparation and dissemination to the investing public of materially false and misleading information, occurred in this judicial district.  The Company is incorporated in Delaware and maintains its principal place of business is at 100 Sunnyside Boulevard, Suite B, Woodbury, New York.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, Barry Linzer, purchased Veeco common stock during the Class Period, as set forth in the certification attached hereto and incorporated herein by reference, and was damaged thereby.

7.      Defendant Veeco is a Delaware corporation and maintains its principal executive offices in located at 330 Meadowview Avenue, Hewlett, New York.  Veeco designs, manufactures, markets and services a line of equipment primarily used by manufacturers in the data storage, semiconductor, compound semiconductor/wireless and high-brightness light emitting diode industries.

- 2 -

8.      Defendant Edward H. Braun ("Braun") was, at all relevant times, Chairman and Chief Executive Officer of Veeco.   Braun participated in making the false and misleading statements outlined herein.

9.      Defendant John F. Rein, Jr. ("Rein") was, at all relevant times, Executive Vice President, Chief Financial Officer and Secretary of Veeco.   Rein participated in making the false and misleading statements outlined herein.

10.     Defendants Rein and Braun are herein referred to as the Individual Defendants.

## SCIENTER

11.     During the Class Period, both of the Individual Defendants were privy to non-public information concerning the Company's finances, markets and present and future business prospects via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

12.     It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above.  Both of the defendant officers/directors of Veeco, by virtue of their high-level positions with the Company, directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels and were privy to confidential proprietary

- 3 -

information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein. The Individual Defendants were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

13. As officers and controlling persons of a publicly-held Company whose securities were and are registered with the SEC pursuant to the Exchange Act, and were traded on the NASDAQ and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

14. The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

15. Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Veeco securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme (i) deceived the investing public regarding Veeco's business, operations, management and the intrinsic value of Veeco securities; and (ii) caused Plaintiff and other members of the Class to purchase Veeco securities at artificially inflated prices.

16. In knowing or reckless disregard of the truth, defendants issued and/or participated in the issuance of materially false and misleading statements to the investing public, as particularized below. The below material and adverse facts were known to, or recklessly disregarded by defendants and defendants knew, or recklessly disregarded that the following material and adverse facts misled members of the Class and caused the Class to purchase Veeco securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

17. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of itself and all persons and entities other than defendants who purchased or otherwise acquired the securities of Veeco between November 3, 2003 and February 10, 2005 (the "Class"). Excluded from the Class are defendants herein, members of the immediate family of each of the defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any defendant has a controlling interest or which is related to or affiliated with any of the defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

18. The members of the Class are so numerous that joinder of all members is impracticable. Veeco has almost 30 million shares outstanding. The precise number of Class

members is unknown to plaintiff at this time but is believed to be in the thousands. In addition, the names and addresses of the Class members can be ascertained from the books and records of Veeco. Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in class actions arising under the federal securities laws.

19.     The members of the Class are located in geographically diverse areas and are so numerous that joinder of all members is impractical. While the exact number of Class members is unknown to the plaintiff at this time, and can only be ascertained through appropriate discovery, plaintiff believes there are, at a minimum, thousands of members of the Class.

20.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     Whether defendants engaged in acts or conduct in violation of the securities laws as alleged herein;

(b)     Whether defendants had a duty to disclose certain information;

(c)     Whether defendants knowingly or recklessly in making materially false and misleading statements or in failing to correct such statements upon learning that they were materially false and misleading during the Class Period;

(d)     Whether the market price of the Company's securities during the Class Period was artificially inflated because of defendants' conduct complained of herein; and

(e)     Whether members of the Class have sustained damages and, if so, the proper measure of damages.

21.     Plaintiff's claims are typical of the claims of the members of the Class because

plaintiff and members of the Class sustained damages arising out of defendants' wrongful

conduct in violation of federal law as complained of herein.

22.     Plaintiff will fairly and adequately protect the interests of the members of the

Class and has retained counsel competent and experienced in class and securities litigation.

Plaintiff has no interests antagonistic to or in conflict with those of the Class.

23.     A class action is superior to other available methods for the fair and efficient

adjudication of this controversy since joinder of all members of the Class is impractical.

Furthermore, because the damages suffered by individual Class members may be relatively small,

the expense and burden of individual litigation make it impossible for the Class members

individually to redress the wrongs done to them. There will be no difficulty in the management of

this action as a class action.

## FALSE AND MISLEADING STATEMENTS

24.     On November 3, 2003, the first day of the Class Period, Veeco announced it would

acquire TurboDisc, "creat[ing] a Global Leader in Compound Semiconductor Deposition

Technologies." The Company stated:

> Woodbury, NY, November 3, 2003—Veeco Instruments Inc. (Nasdaq:
> VECO) today announced that it has purchased Emcore Corporation's
> (Nasdaq: EMKR) TurboDisc Metal Organic Chemical Vapor Deposition
> (MOCVD) business. Combined with Veeco's molecular beam epitaxy
> (MBE) business, the acquisition makes Veeco the only company that
> provides both key compound semiconductor epitaxial deposition
> technologies. Emcore's MOCVD revenue was $51.1 million for the
> trailing twelve months ended June 30, 2003.
>
> The ability to provide complementary MBE and MOCVD technologies
> will enable Veeco to address the full range of applications requiring the
> high performance aspects of compound semiconductor technologies,
> including lower power, higher frequency operation, and light-emitting
> characteristics. MOCVD tools are particularly well-suited for the critical
> first step in the growth of high speed electronic, wireless and

- 7 -

optoelectronic compound semiconductor materials employed in advanced wireless telecommunications and rapidly growing high brightness light-emitting diode (LED) lighting applications.

\* \* \* \*

About Emcore's MOCVD Business:

Emcore is a recognized industry leader in MOCVD production systems, with over 500 TurboDisc reactors shipped worldwide. TurboDisc reactors are used in the growth of III-V compounds for numerous compound semiconductor applications, including data and telecommunications modules, cellular telephones and solar cells. Emcore's GaNzilla production systems are the recognized leader in growing gallium nitride-based devices, most notably green, blue and white high brightness LEDs used in backlighting wireless mobile devices, and automotive applications. Emcore's patented TurboDisc technology is known for its unique, high-speed rotating disc deposition technique ideal for high production rates. TurboDisc reactors are capable of depositing a wide variety of materials—GaAs, AlGaAs, InP, InGaAlP, InGaN, AlGaN, SiC and GaN—onto a substrate to grow compound semiconductor materials on the atomic scale.

Management Commentary:

Edward H. Braun, Chairman and CEO of Veeco, commented, "This acquisition strengthens Veeco's position in the compound semiconductor market, as we are now uniquely able to provide "one-stop" shopping for epitaxial deposition solutions—both MOCVD and MBE. The MOCVD market is twice the size of the MBE available market. Emcore's MOCVD business is a good fit with Veeco's acquisition criteria: history of technology leadership and innovation, complementary technology for an existing Veeco market, leading market position, strong R&D and high market growth potential. We believe that Emcore's MOCVD business will be accretive to Veeco on a cash basis by the second quarter of 2004."

Mr. Braun added, "The addition of MOCVD strengthens our existing compound semiconductor and wireless/telecommunications position and permits penetration of the rapidly emerging LED market opportunity." Strategies Unlimited projects the GaN LED market to exceed \$1.9B in 2003, growing at 24% CAGR to reach over \$4B by 2007.

25.     On November 10, 2003, the Company issued its quarterly report on Form 10-Q for the period ended September 30, 2003. The Company reported revenues of \$63.1 million for the quarter and a net loss of (\$2.1) million. The Company reported inventory assets of \$86.1 million and deferred income tax assets of \$39.5 million. The Company also reported \$14.2

- 8 -

million in accounts payable. The Company reiterated its statements concerning the TurboDisc acquisition referenced above.

26.     On February 6, 2004, Veeco announced its financial results for the quarter and year ended December 31, 2003. The Company announced revenues of $76.9 million for the quarter, up 22% from the previous quarter. The Company reported a net loss of $4.8 million, or $0.16 per share. Defendant Braun stated:

> "Veeco's fourth quarter orders revenues in EBITA improved both sequentially and year over year. Order strength reflected a broad industry upturn across all of our markets and in all geographic regions. Capacity and technology drivers were evident in semiconductor data storage, wireless, compound semiconductor and scientific research. Fourth quarter orders of $96.8 million (up 51% sequentially) were Veeco's strongest overall orders in 10 quarters. Fourth quarter revenue of $76.9 million was up 22% sequentially.

> *     *     *     *

> The November 2003 acquisitions of TurboDisc MOCVD and Advanced Imaging Inc.'s precision lapping technologies allowed us to significantly broaden our product and technology offerings to Veeco's core markets in 2004."

For the full year, Veeco announced its sales were $279.3 million. The Company further stated:

> Veeco incurred an operating loss of $9.3 million in 2003 compared to an operating loss of $137.9 million in 2002. Included in the 2003 operating loss was a $1.5 million charge for the write-off of in-process RND, a $1.7 million reduction in gross profit from purchase accounting adjustments due to the required capitalization of profit in inventory and permanent elimination of certain deferred revenue, and $5.4 million of merger and restructuring costs. Exclusive of these charges Veeco's 2003 EBIDTA was $13.0 million compared to $1.3 million in 2002 which also excludes restructuring charges. Veeco's net loss for 2003 was $9.7 million ($0.33) per share compared to a net loss of $123.7 million ($4.25 per share in 2002). Excluding certain charges, 2003 earnings were $0.11 per diluted share compared to the loss of $.010 per share in 2002. Mr. Braun commented, "Industry market conditions improved dramatically in the fourth quarter and we appear to be at the start of a sustainable recovery cycle after two years of historically low capex investment by our customers. Veeco's diversification strategy should serve us well as multiple Veeco markets are forecasted to experience 2004 growth.

- 9 -

We intend to work closely with our key customers to be aligned with their technology roadmaps and capacity planning requirements including: the continued 80 Gb production ramp and 120 Gb disc drive development programs, 90 nm and 300 mm ramps in semiconductor, growth in high brightness and light emitting diodes (HB-LEDS) for backlighting of color displays, RF devices and other wireless/lighting applications, and continued use of our atomic force microscopes in nanoscience research. Veeco's goal is to achieve higher levels of revenue profitability in 2004 through combinations of improved business conditions, the continued focus on cost control, and a broadened product line of key enabling process equipment and metrology technologies.

27.     On March 12, 2004, the Company filed its annual report on Form 10-K for the period ended December 31, 2003. The Company confirmed its previously announced results, and reported year-end inventories of $97.6 million and deferred income tax assets of $18.1 million. The Company also reported accounts payable of $19.6 million. The annual report was signed by defendants Braun and Rein. Defendants Braun and Rein also signed certifications in conjunction with the annual report which stated:

Based on my knowledge, this annual report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this annual report.

Based on my knowledge, the financial statements, and other financial information included in this annual report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this annual report.

The registrant's other certifying officers and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-14 and 15d-14) for the registrant and have:

(a)     designed such disclosure controls and procedures to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this annual report is being prepared;

     (b)     evaluated the effectiveness of the registrant's disclosure controls and procedures as of a date within 90 days prior to the filing date of this annual report (the "Evaluation Date"); and

     (c)     presented in this annual report our conclusions about the effectiveness of the disclosure controls and procedures based on our evaluation as of the Evaluation Date.

The registrant's other certifying officers and I have disclosed, based on our most recent evaluation, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent functions):

     (a)     all significant deficiencies in the design or operation of internal controls which could adversely affect the registrant's ability to record, process, summarize and report financial data and have identified for the registrant's auditors any material weaknesses in internal controls; and

     (b)     any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal controls.

The registrant's other certifying officers and I have indicated in this annual report whether there were significant changes in internal controls or in other factors that could significantly affect internal controls subsequent to the date of our most recent evaluation, including any corrective actions with regard to significant deficiencies and material weaknesses.

28.     On April 26, 2004, Veeco announced its financial results for the quarter ended

March 31, 2004. The Company reported first-quarter 2004 revenues of $94.5 million, up 23%

sequentially from the prior quarter, and a net loss of $0.7 million, or ($0.02) per share.

Defendant Braun stated:

> "We are pleased to report the first quarter revenue's earnings and bookings all exceeded our quarterly guidance. . . . Veeco received several multiple system orders for our TurboDisc MOCVD products from worldwide customers who are increasing their manufacturing capacity of green, blue and white light emitting diodes (LEDs). The growth of this newly acquired product line has surpassed our initial expectations and we see the LED market as an exciting growth opportunity for Veeco in 2004 and 2005. . . . First quarter 2004 orders were the strongest in 13 quarters

- 11 -

> and are indicative of the first growth opportunities available to Veeco through our multi-market strategy."

29.    On May 3, 2004, the Company issued its quarterly report on Form 10-Q for the

period ended March 31, 2004, in which it confirmed the above-referenced results. The Company

also reported inventory assets of $104.4 million, deferred income tax assets of $9.7 million, and

accounts payable of $25.1 million. The Company also stated:

> By region, there continues to be a shift in sales from the U.S. to the Asia Pacific region, although all regional sales have increased due to the TurboDisc business and Aii acquisitions, particularly the Asia Pacific region, which saw a $10.2 million increase in sales in the first quarter of 2004 due to the acquired companies. The Company believes that there will continue to be quarter-to-quarter variations in the geographic distribution of sales.

30.    On July 26, 2004, the Company announced its financial results for the quarter

ended June 30, 2004. The release was entitled "Results Were Above Prior Quarter and Prior

Year and at High-End of Guidance." The Company reported second quarter 2004 sales of

$102.9 million with net income of $1.6 million or earnings per diluted share of $0.05 per share.

Defendant Braun stated:

> "We are pleased to report that Veeco's second quarter 2004 orders, revenue and earnings all exceeded the prior year and prior quarter, and met or exceeded our guidance as we continue to experience a multi-market recovery in our core semiconductor, compound semiconductor/wireless and data storage markets.

> *    *    *    *

> We are pleased to report that Veeco's second quarter 2004 orders, revenue and earnings all exceeded the prior year and prior quarter, and met or exceeded our guidance as we continue to experience a multi-market recovery in our core semiconductor, compound semiconductor/wireless and data storage markets."

31.    On August 3, 2004, the Company issued its quarterly report on Form 10-Q for the

period ended June 30, 2004, in which it confirmed the above-stated results. The Company also

reported inventory assets of $108.1 million, deferred income-tax assets of $16.1 million, and

- 12 -

accounts payable of $46.5 million. The report was signed by defendants Braun and Rein. Defendants Braun and Rein also signed certification that confirmed that these results for the period ended June 30, 2004, did not contain any untrue statements of material facts or omit material facts necessary to make them, in light of the circumstances under which the statements were made, not misleading. Those certifications were essentially identical to those referenced in above paragraph 27.

32.     On October 12, 2004, Veeco announced its financial results for the quarter ended September 30, 2004. The Company stated:

> Veeco Instruments Inc. (Nasdaq: VECO) today announced that weak industry-wide capital equipment conditions, particularly in compound semiconductor adversely impacted its results for the quarter ended September 30, 2004.
>
> As a result Veeco's orders for the third quarter of 2004 are expected to be approximately $80 million, compared to $64 million in the third quarter of 2003 and $125 million in the second quarter of 2004. (Veeco's order guidance provided on 7/26/04 was $125-130 million).
>
> Veeco expects third quarter 2004 revenues to be approximately $93 million, compared to $63 million in the third quarter of 2003, and $103 million in the second quarter of 2004. (Revenue guidance was $105-110 million).
>
> Veeco's third quarter 2004 GAAP loss is expected to be between ($0.06) and ($0.04) per share compared to third quarter 2003 GAAP loss of ($0.07 per share and GAAP earnings of $0.05 per diluted share in the second quarter of 2004. (Veeco's third quarter guidance was GAAP earnings between $0.06 and $0.09 per diluted share on a GAAP basis).
>
> *    *    *    *
>
> Like many suppliers in the semiconductor capital equipment industry, Veeco typically books approximately 60% of its orders in the last several weeks of the quarter. However, in the third quarter, many of these late quarter orders did not occur as customers carefully managed their capital spending. Compared to the second quarter, Veeco's orders for MOCVD equipment from light emitting diode (LED) manufacturers decreased approximately 70%. This dramatic decrease in MOCVD business resulted from spending previews initiated by many Asian customers at the end of the quarter as they paused to absorb the significant amount of Veeco

- 13 -

equipment purchased in the first half of 2004. Veeco's data storage and semiconductor orders declined approximately 30% from the second quarter while scientific research orders increased approximately 20% from the same period.

Defendant Braun commented:

> "We were disappointed not only by our third quarter performance but by our lack of visibility of this slowdown. In the near term we expect our customers' current capital spending reluctance to continue but believe it will be outweighed by their need to fund their 2005 new product technology roadmaps and to invest in the expected high growth of next generation consumer electronics. Despite this setback, we still expect 2004 to be a strong growth year for Veeco compared to 2003. Veeco remains well positioned to provide leadership technologies for growth applications in semiconductor data storage, compound semiconductor and scientific research."

33. On November 9, 2004, the Company filed its quarterly report on Form 10-Q for the period ended September 30, 2004. The Company confirmed the above results - net sales for the quarter of $92.4 million and net loss of ($0.6 million). The Company also reported inventory assets of $123.9 million, deferred income tax assets of $15.3 million and accounts payable of $47.1 million. The Company further reported that:

> "the improvement in epitaxial process equipment is primarily due to $21.3 million in sales from the TurboDisc business, partially offset by a $0.2 million net decrease in other business. . . . Compared to the second quarter orders to HB-LED/Wireless customers decreased 71.4% due to a $30.3 million decrease in TurboDisc orders. This decrease in business resulted from spending freezes initiated by many Asian customers at the end of the quarter as they paused to absorb the significant amount of Veeco account purchases in the first half of 2004."

The Company further stated:

> "Epitaxial process equipment margins improved from 37.0% to 39.5%, due to the favorable mix of TurboDisc MOCDD sales which are higher in margin than the MBE products."

The quarterly report was signed by defendants Braun and Rein and certified as stated above in Paragraph 27.

34. The above statements were false and misleading because the defendants knowingly or recklessly failed to disclose that the Company had (a) improperly valued the inventory and accounts payable at TurboDisc in order to make the acquisition look more attractive to the market; (b) falsely recognized revenue at TurboDisc during the Class Period; and (c) improperly overvalued the Company's deferred tax assets. As a result of defendants' false and misleading statements, the financial results of Veeco were artificially and materially inflated at all times during the Class Period.

**The Truth Begins to Emerge**

35. On February 11, 2005, Veeco announced that it was postponing the release of its financial results for the fourth quarter and full year 2004 pending completion of an internal investigation of improper accounting transactions at its TurboDisc division. The Company further revealed:

> Veeco is conducting an internal investigation of improper accounting transactions recorded at its TurboDisc division, causing a postponement in the release of Veeco's earnings. The investigation focuses principally on the value of inventory, accounts payable and certain revenue items carried on the books of TurboDisc. Veeco acquired the assets of TurboDisc in November 2003. The investigation was commenced after Veeco's internal audit staff and corporate financial management discovered improper accounting transactions in the course of a Veeco internal audit and transitioning the division to Veeco's SAP accounting system during the fourth quarter of 2004.

> The Audit Committee of the Company's Board of Directors has been supervising the accounting investigation and authorized Veeco's outside counsel, Kaye Scholer LLP, to hire Jefferson Wells to be actively involved in performing forensics work as part of the investigation.

> Veeco expects that this investigation will lead to adjustments requiring the restatement of the financial statements previously issued for the quarterly periods and nine months ended September 2004. While there can be no certainty as to the amount of the adjustment to earnings until the investigation and audited financial statements are completed, Veeco currently expects that the pre-tax earnings impact will be between $5.5 million and $7.5 million for the nine months ended September 30, 2004.

Veeco is unable to comment on fourth quarter earnings until the investigation and year-end audit are complete.

Commenting on the accounting review, Edward H. Braun, Chairman and CEO of Veeco said, "Errors and improper entries were uncovered by Veeco's internal audit staff and were limited to a single Veeco business unit, TurboDisc, which was acquired in November 2003. We have taken prompt corrective action and are working diligently to finish the audit and report complete financial results in conjunction with our March filings."

John F. Rein, Jr., Executive Vice President and Chief Financial Officer, added, "We have taken swift action to resolve this accounting issue, including making appropriate staffing changes and transitioning TurboDisc's accounting system to Veeco's SAP system. We will announce revenue and earnings for the fourth quarter and year ended December 31, 2004 once the internal investigation is complete and our results have been audited by Ernst & Young." Veeco intends to release these results and file its Annual Report on Form 10-K for the year ended December 31, 2004 on or before March 16, 2005. However, there can be no assurance that the review will be complete during this timeframe or that, even if completed, the Form 10-K will be finalized in time to meet such deadline.

\* \* \* \*

In accordance with Statement of Financial Accounting Standards ("SFAS") No. 109, Accounting for Income Taxes, Veeco will record in the fourth quarter of 2004 a non-cash valuation allowance of approximately $50 million related to its deferred tax assets. SFAS No. 109 requires an assessment of a Company's current and previous performance and other relevant factors when determining the need for such a valuation allowance. Under this pronouncement, factors such as current and previous operating losses are given greater weight than the outlook for future profitability in determining deferred tax asset carrying value. This adjustment will have no impact on the Company's cash flow or future prospects, nor does it diminish the Company's ability to utilize the underlying tax net operating loss and credit carry-forwards in the future.

As previously announced, Veeco will record a pre-tax charge in the fourth quarter related to staffing and cost reductions and product rationalization costs and an in-process R&D write-off related to the acquisition of MTI. This charge is currently expected to be approximately $5.7 million.

36.     On this news, shares of Veeco dropped $1.83 to $16.96 per share, or approximately 10%.

**Fraud on the Market Presumption**

37.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a)     Defendants made public misrepresentations or failed to disclose material facts regarding Veeco' financial situation during the Class Period;

(b)     the omissions and misrepresentations were material;

(c)     the securities of the Company were actively traded at all relevant times on the NASDAQ, an efficient and open market;

(d)     the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

(e)     Plaintiff and the members of the Class, without knowledge of the misrepresented facts, purchased their Veeco securities between the time defendants failed to disclose and/or misrepresented material facts and the time the truth was disclosed.

38.     Veeco trades on the NASDAQ.  The price of Veeco's stock reflects the effect of news disseminated in the market.

39.     Based upon the foregoing, plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

**The Safe Harbor Provision is Inapplicable**

40.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward-looking, they were not adequately identified as "forward-looking statements" when made, and there were no meaningful cautionary statements identifying

important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor is intended to apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker had actual knowledge that the particular forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized and/or approved by an executive officer of Veeco who knew that those statements were false when made.

### FIRST CLAIM FOR RELIEF

#### For Violations of Sections 10(b) and Rule 10b-5 Thereunder

41. Plaintiff incorporates by reference and realleges each of the foregoing paragraphs.

42. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43. During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Veeco securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

44. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to

maintain artificially high market prices for Veeco securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

45. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Veeco as specified herein.

46. These defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Veeco value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Veeco and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Veeco securities during the Class Period.

47. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections

and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

48.    The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Veeco's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

49.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Veeco securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Veeco's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by

defendants during the Class Period, Plaintiff and the other members of the Class acquired Veeco securities during the Class Period at artificially high prices and were damaged thereby.

50.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Veeco was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Veeco securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

51.     By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

52.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM FOR RELIEF

### Violation Of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

53.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of Veeco within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had

- 21 -

the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

56.     As set forth above, Veeco and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiffs counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 18, 2005

Respectfully submitted,

**ABBEY GARDY, LLP**

By:

Mark C. Gardy (MG-0338)
212 East 39th Street
New York, New York 10016
Tel. (212) 889-3700
Fax (212) 684-5191

**Attorneys for Plaintiff**

- 23 -

**05    0957**

HURLEY, J.

BOYLE, M.J.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★    FEB 18 2005    ★

★    BROOKLYN OFFICE

## CERTIFICATION OF BARRY LINZER
## IN SUPPORT OF CLASS ACTION COMPLAINT

Barry Linzer ("plaintiff") declares, as to the claims asserted under the federal

securities laws, that:

1.    Plaintiff has reviewed the complaint prepared by counsel and has

authorized its filing.

2.    Plaintiff did not purchase the security that is the subject of the complaint at

the direction of plaintiffs' counsel or in order to participate in any private action arising under the

federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of a class,

including providing testimony at deposition and trial, if necessary.

4.    During the proposed Class Period, plaintiff executed the following

transactions relating to Veeco Instruments, Inc.:

Purchase of 100 shares at $20 5/8 per share on 08/23/04

5.    In the past three years, plaintiff has not sought to serve as a representative

party on behalf of a class in an action filed under the federal securities laws.

6.    Plaintiff will not accept any payment for serving as a representative party

on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs

and expenses (including lost wages) directly relating to the representation of the Class as ordered

or approved by the Court.

The foregoing are, to the best of my knowledge and belief, true and correct statements.

February 16, 2005

Barry Linzer