ORIGINAL

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

05 FILED 1003

IN CLERK'S OFFICE
U.S DISTRICT COURT E.D.N.Y.

FEB 23 2005

★ BROOKLYN OFFICE ★

| | |
|---|---|
| GEORGE F. WALKER, Individually And On Behalf Of All Others Similarly Situated, | CASE NO. |
| Plaintiff, | |
| vs. | CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS |
| VEECO INSTRUMENTS, INC., EDWARD BRAUN and JOHN REIN, JR., | |
| Defendants. | JURY TRIAL DEMANDED |

SEYBERT, J.
BOYLE, M.J.

Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of regulatory filings and reports, securities analyst reports and advisories about Veeco Instruments, Inc. ("Veeco" or the "Company"), press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND SUMMARY OF ALLEGATIONS

1. This is a federal class action on behalf of purchasers of the securities of Veeco between April 26, 2004 through February 10, 2005 inclusive (the "Class Period"), and who were damaged thereby, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Veeco, together with its consolidated subsidiaries, designs, manufactures, markets and services a broad line of equipment primarily used by manufacturers in the data storage,

semiconductor, compound semiconductor/wireless and HB-LED (high brightness light emitting diode) industries. These industries help create a wide range of information-age products such as computer integrated circuits, personal computers, hard disk drives, network servers, digital cameras, wireless phones, TV set-top boxes and personal digital assistants.

3. Defendants' Class Period representations were materially false and misleading when made, and defendants knew or recklessly disregarded that they were materially false and misleading when made, because they failed to disclose and misrepresented the following material adverse facts, among others:

>  (a) Veeco at all relevant times lacked adequate internal controls and, therefore, defendants' class-period statements with respect to Veeco's financial condition and performance were inherently unreliable;
> 
> (b) Veeco overstated its net revenue for the first three quarters of 2004 by at least $7.5 million; and
> 
> (c) Veeco's financial statements were not prepared in accordance with GAAP (Generally Accepted Accounting Principles).

4. On February 11, 2005, the Company issued a press release in which it announced that an internal investigation into accounting allegations at its TurboDisc unit could lead to a downward restatement of up to $7.5 million for the first nine months of 2004, causing it to delay releasing fourth-quarter results. Defendants admitted that "errors and improper entries" with respect to inventory valuation and accounts payable and "certain revenue items" had occurred.

5. On this news, the Company's share price fell $2.14, or 11.6%, from their closing price of $18.37 on February 10, 2005, to a low of $16.23 on February 11, 2005, after the announcement.

## JURISDICTION AND VENUE

6. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j (b) and 78t (a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5].

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act.

8. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b). Many of the acts charged herein, occurred in substantial part in this District and Veeco conducts business and is headquartered in this District.

9. In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

10. Plaintiff George F. Walker, as set forth in the accompanying certification, incorporated by reference herein, purchased the common units of Veeco at artificially inflated prices during the Class Period and has been damaged thereby.

11. Defendant Veeco is a Delaware corporation headquartered in Woodbury, New York at 100 Sunnyside Boulevard.

12. Defendant Edward Braun was at all relevant times Veeco's Chief Executive Officer and Chairman of the Board.

13. John Rein was at all relevant times Veeco's Chief Financial Officer.

14. Defendants Braun and Rein are referred to herein as the "Individual Defendants."

- 3 -

15. During the Class Period, the Individual Defendants, as senior executive officers and/or directors of Veeco, were privy to confidential and proprietary information concerning Veeco, its operations, finances, financial condition, present and future business prospects. The Individual Defendants also had access to material adverse non-public information concerning Veeco, as discussed in detail below. Because of their positions with Veeco, the Individual Defendants had access to non-public information about its business, finances, products, markets and present and future business prospects *via* access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and board of directors meetings and committees thereof and *via* reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

16. The Individual Defendants are liable as direct participants in, and as co-conspirators, with respect to the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of Section 20 of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of Veeco's business.

17. The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein

- 4 -

to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

18. As senior executive officers and/or directors and as controlling persons of a publicly-traded company whose securities were, and are, registered with the Securities and Exchange Commission (the "SEC") pursuant to the Exchange Act, and was traded on the NASDAQ and governed by the federal securities laws, the Individual Defendants had a duty to disseminate promptly accurate and truthful information with respect to Veeco's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Veeco's securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

19. The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Veeco securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme (i) deceived the investing public regarding Veeco's business, operations and management and the intrinsic value of Veeco securities and (ii) caused plaintiff and members of the Class to purchase Veeco securities at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the

securities of Veeco between April 26, 2004 and February 10, 2005, inclusive, and who were damaged thereby. Excluded from the Class are defendants, the officers and/or directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

21. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Veeco had more than 29 million shares outstanding that were actively traded on NASDAQ. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Veeco or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

22. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

23. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

24. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

>  (a) whether the federal securities laws were violated by defendants' acts as alleged herein;

(b) whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Veeco; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

25. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements Issued During the Class Period

26. The Class Period begins on April 26, 2004. On that day, Veeco announced its financial results for the first quarter ended March 31, 2004. The Company reported revenues of $94.5 million, up 23% sequentially from the prior quarter, and a net loss of $0.7 million, or ($0.02) per share. Defendant Braun stated:

> We are pleased to report the first quarter revenue's earnings and bookings all exceeded our quarterly guidance . . . . Veeco received several multiple system orders for our TurboDisc MOCVD products from worldwide customers who are increasing their manufacturing capacity of green, blue and white light emitting diodes (LEDs). The growth of this newly acquired product line has surpassed our initial expectations and we see the LED market as an exciting growth opportunity for Veeco in 2004 and 2005 . . . . First quarter 2004 orders were the strongest in 13 quarters and are indicative of the first growth opportunities available to Veeco through our multi-market strategy.

29. On May 3, 2004, the Company issued its quarterly report on Form 10-Q for the period ended March 31, 2004, in which it confirmed the above-referenced results. The Company

also reported inventory assets of $104.4 million, deferred income tax assets of $9.7 million, and accounts payable of $25.1 million. The 10-Q stated, in relevant part, as follows:

> By region, there continues to be a shift in sales from the U.S. to the Asia Pacific region, although all regional sales have increased due to the TurboDisc business and Aii acquisitions, particularly the Asia Pacific region, which saw a $10.2 million increase in sales in the first quarter of 2004 due to the acquired companies. The Company believes that there will continue to be quarter-to-quarter variations in the geographic distribution of sales.

30. On July 26, 2004, the Company announced its financial results for the second quarter ended June 30, 2004 under the headline, "Results Were Above Prior Quarter and Prior Year and at High-End of Guidance." The Company reported second quarter 2004 sales of $102.9 million with net income of $1.6 million or earnings per diluted share of $0.05 per share. Defendant Braun stated:

> We are pleased to report that Veeco's second quarter 2004 orders, revenue and earnings all exceeded the prior year and prior quarter, and met or exceeded our guidance as we continue to experience a multi-market recovery in our core semiconductor, compound semiconductor/wireless and data storage markets.

\* \* \* \*

> We are pleased to report that Veeco's second quarter 2004 orders, revenue and earnings all exceeded the prior year and prior quarter, and met or exceeded our guidance as we continue to experience a multi-market recovery in our core semiconductor, compound semiconductor/wireless and data storage markets."

31. On August 3, 2004, the Company issued its quarterly report on Form 10-Q for the period ended June 30, 2004, in which it confirmed the above-stated results. The Company also reported inventory assets of $108.1 million, deferred income-tax assets of $16.1 million, and accounts payable of $46.5 million. The report was signed by defendants Braun and Rein. Defendants Braun and Rein also signed certifications that confirmed that these results for the

- 8 -

period ended June 30, 2004, did not contain any untrue statements of material facts or omit material facts necessary to make them, in light of the circumstances under which the statements were made, not misleading.

32. On October 12, 2004, Veeco announced its financial results for the third quarter ended September 30, 2004. The Company stated:

> Veeco Instruments Inc. (Nasdaq: VECO) today announced that weak industrywide capital equipment conditions, particularly in compound semiconductor adversely impacted its results for the quarter ended September 30, 2004.
>
> As a result Veeco's orders for the third quarter of 2004 are expected to be approximately $80 million, compared to $64 million in the third quarter of 2003 and $125 million in the second quarter of 2004. (Veeco's order guidance provided on 7/26/04 was $125-130 million).
>
> Veeco expects third quarter 2004 revenues to be approximately $93 million, compared to $63 million in the third quarter of 2003, and $103 million in the second quarter of 2004. (Revenue guidance was $105-110 million).
>
> Veeco's third quarter 2004 GAAP loss is expected to be between ($0.06) and ($0.04) per share compared to third quarter 2003 GAAP loss of ($0.07 per share and GAAP earnings of $0.05 per diluted share in the second quarter of 2004. (Veeco's third quarter guidance was GAAP earnings between $0.06 and $0.09 per diluted share on a GAAP basis).
>
> \* \* \* \*
>
> Like many suppliers in the semiconductor capital equipment industry, Veeco typically books approximately 60% of its orders in the last several weeks of the quarter. However, in the third quarter, many of these late quarter orders did not occur as customers carefully managed their capital spending. Compared to the second quarter, Veeco's orders for MOCVD equipment from light emitting diode (LED) manufacturers decreased approximately 70%. This dramatic decrease in MOCVD business resulted from spending previews initiated by many Asian customers at the end of the quarter as they paused to absorb the significant amount of Veeco equipment purchased in the first half of 2004. Veeco's data storage and semiconductor orders

declined approximately 30% from the second quarter while scientific research orders increased approximately 20% from the same period.

Defendant Braun commented:

"We were disappointed not only by our third quarter performance but by our lack of visibility of this slowdown. In the near term we expect our customers' current capital spending reluctance to continue but believe it will be outweighed by their need to fund their 2005 new product technology roadmaps and to invest in the expected high growth of next generation consumer electronics. Despite this setback, we still expect 2004 to be a strong growth year for Veeco compared to 2003. Veeco remains well positioned to provide leadership technologies for growth applications in semiconductor data storage, compound semiconductor and scientific research."

33. On November 9, 2004, the Company filed its quarterly report on Form 10-Q for the period ended September 30, 2004. The Company confirmed the above results - net sales for the quarter of $92.4 million and a net loss of ($0.6 million). The Company also reported inventory assets of $123.9 million, deferred income tax assets of $15.3 million and accounts payable of $47.1 million. The Company further reported that:

> ... the improvement in epitaxial process equipment is primarily due to $21.3 million in sales from the TurboDisc business, partially offset by a $0.2 million net decrease in other business.... Compared to the second quarter orders to HBLED/Wireless customers decreased 71.4% due to a $30.3 million decrease in TurboDisc orders. This decrease in business resulted from spending freezes initiated by many Asian customers at the end of the quarter as they paused to absorb the significant amount of Veeco account purchases in the first half of 2004.

The Company further stated, "Epitaxial process equipment margins improved from 37.0% to 39.5%, due to the favorable mix of TurboDisc MOCDD sales which are higher in margin than the MBE products."

27. Defendants' Class Period representations were materially false and misleading when made, and defendants knew or recklessly disregarded that they were materially false and

- 10 -

misleading when made, because they failed to disclose and misrepresented the following material adverse facts, among others:

>    (a) Veeco at all relevant times lacked adequate internal controls and, therefore, defendants' class-period statements with respect Veeco's financial condition and performance were inherently unreliable;
>
>    (b) Veeco overstated its net revenue for the first three quarters of 2004 by at least $7.5 million; and
>
>    (c) Veeco's financial statements were not prepared in accordance with GAAP (Generally Accepted Accounting Principles).

### THE TRUTH BEGINS TO EMERGE

28. The truth was revealed on February 11, 2005 when Veeco shocked the market by announcing that it would be filing its fourth quarter and year end audited financial statements late due to an internal enquiry into the errors in accounting of their TurboDisc business that could lead to a downward restatement of up to $7.5 million for the first three quarters of 2004. Additionally, for the first quarter, the company forecast sales of $85 million to $90 million, well below Company-guided analyst estimates of $93 million. On this news, the Company's share price fell $2.14, or 11.6%, from their closing price of $18.37 on February 10, 2005, to a low of $16.23 on February 11, 2005, after the announcement.

### Applicability Of Presumption Of Reliance:
### Fraud-On-The-Market Doctrine

29. At all relevant times, the market for Veeco's securities was an efficient market for the following reasons, among others:

>    (a) Veeco's units met the requirements for listing, and were listed and actively traded on NASDAQ, a highly efficient and automated market;
>
>    (b) As a regulated issuer, Veeco filed periodic public reports with the SEC and NASDAQ;

- 11 -

   (c) Veeco regularly communicated with public investors *via* established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

   (d) Veeco was followed by several securities analysts employed by major brokerage firms who wrote reports, which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

30. As a result of the foregoing, the market for Veeco's securities promptly digested current information regarding Veeco from all publicly available sources and reflected such information in Veeco's stock price. Under these circumstances, all purchasers of Veeco's securities during the Class Period suffered similar injury through their purchase of Veeco's securities at artificially inflated prices and a presumption of reliance applies.

## ADDITIONAL SCIENTER ALLEGATIONS

31. As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Veeco, their control over, and/or receipt and/or modification of Veeco's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Veeco, participated in the fraudulent scheme alleged herein.

## NO SAFE HARBOR

32. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Veeco who knew that those statements were false when made.

## FIRST CLAIM

### Violation Of Section 10(b) Of The Exchange Act And Rule 10b-5 Promulgated Thereunder Against All Defendants

33. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

34. During the Class Period, Veeco and the Individual Defendants, and each of them, carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (a) deceive the investing public, including plaintiff and other Class members, as alleged herein; (b) artificially inflate and maintain the market price of Veeco's securities; and (c) cause plaintiff and other members of the Class to purchase Veeco's securities at artificially

inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

35.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Veeco's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

36.     In addition to the duties of full disclosure imposed on defendants as a result of their making of affirmative statements and reports, or participation in the making of affirmative statements and reports to the investing public, defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC as embodied in SEC Regulation S-X (17 C.F.R. Sections 210.01 *et seq.*) and Regulation S-K (17 C.F.R. Sections 229.10 *et seq.*) and other SEC regulations, including accurate and truthful information with respect to the Company's operations, financial condition and earnings so that the market price of the Company's securities would be based on truthful, complete and accurate information.

37.     Veeco and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Veeco as specified herein.

38. These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Veeco's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Veeco and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Veeco's securities during the Class Period.

39. The Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (a) the Individual Defendants were high-level executives and directors at the Company during the Class Period; (b) the Individual Defendants were privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; and (c) the Individual Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

40. The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Veeco's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities.

- 15 -

As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

41. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Veeco's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Veeco's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiff and the other members of the Class acquired Veeco securities during the Class Period at artificially high prices and were damaged thereby.

42. At the time of said misrepresentations and omissions, plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the other members of the Class and the marketplace known of the true financial condition and business prospects of Veeco, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their Veeco securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

43. By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

44.  As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation Of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

45.  Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46.  The Individual Defendants acted as a controlling person of Veeco within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47.  In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to

- 17 -

control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

48. As set forth above, Veeco and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions each as a controlling person, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Veeco's and the Individual Defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action, designating plaintiff as lead plaintiff and certifying plaintiff as class representatives under Rule 23 of the Federal Rules of Civil Procedure and plaintiff' counsel as lead counsel;

B. Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

C. Such other and further relief as the Court may deem just and proper.

DATED: February 23, 2005

**MILBERG WEISS BERSHAD & SCHULMAN LLP**

By: _____
Steven G. Schulman (SS-2561)
Peter E. Seidman (PS-8769)
One Pennsylvania Plaza
New York, NY 10119-0165
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

**LAW OFFICE OF CHARLES J. PIVEN**

Charles J. Piven, Esq.
401 East Pratt Street, Suite 2525
Baltimore, Maryland 21202
Telephone: (410) 332-0030
Facsimile: (410) 685-1300

**Attorneys for Plaintiff**

## PLAINTIFF'S CERTIFICATION

GEORGE F. WALKER ("Plaintiff") declares under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary, and Plaintiff is willing to serve as a lead plaintiff either individually or as part of a group, a lead plaintiff being a representative party who acts on behalf of other class members in directing the action.

4. Plaintiff's transactions in Veeco Instruments, Inc. securities during the Class Period are as follows:

(Complete only one trade per line; place any additional trades on the attached sheet)

| # of Shares | Purchased (P) / Sold (S) | Price Per Share | Date of Purchase/Sale |
|---|---|---|---|
| 1000 | PURCHASE | 17.18 | 2-1-05 |
| 1000 | SOLD | 15.971 | 2-16-05 |

5. During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class under the federal securities laws.

LOSS $1,209.00

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court. Plaintiff understands that this is not a claim form, and that Plaintiff's ability to share in any recovery as a member of the class is unaffected by Plaintiff's decision to serve as a representative party.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 17th day of FEBRUARY 2005.