

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

PHILIP G. COLLINS, on behalf of
himself and all others similarly situated,

**P05- -1277**

**Civil Action No.**

Plaintiff,

v.

VEECO INSTRUMENTS, INC.,
EDWARD H. BRAUN and JOHN F.
REIN, JR.,

Defendants.

**CLASS ACTION COMPLAINT FOR
VIOLATIONS OF FEDERAL
SECURITIES LAWS**

WEXLER, J.

**JURY TRIAL DEMANDED**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

MAR - 9 2005

**BOYLE, M.J.**

★ BROOKLYN OFFICE ★

Plaintiff has alleged the following based upon the investigation of counsel, which

included a review of United States Securities and Exchange Commission ("SEC") filing by Veeco

Instruments Inc. ("Veeco" or the "Company"), as well as regulatory filings and reports, securities

analysts' reports and advisories about the Company, press releases and other public statements

issued by the Company, and media reports about the Company, and plaintiff believes that

substantial additional evidentiary support will exist for the allegations set forth herein after a

reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of purchasers of the common stock of

Vecco between April 26, 2004, and February 10, 2005, inclusive (the "Class Period"), seeking to

pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the

Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the

Securities and Exchange Commission ("SEC") [17 C.F.R. §240.10b-5].

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1337 and Section 27 of the Exchange Act [15 U.S.C. §78aa].

4.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b), as and many of the acts and practices complained of herein occurred in substantial part in this District.

5.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

**PARTIES**

6.     Plaintiff Philip Collins, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of Veeco at artificially inflated prices during the Class Period and has been damaged thereby.

7.     Defendant Veeco is a Delaware corporation with its principal place of business located at 100 Sunnyside Boulevard, Suite B, Woodbury, New York 11797.  The Company designs, manufactures, markets and services a broad line of equipment primarily used by manufacturers in the data storage and semiconductor industries.

8.     (a )     Defendant Edward H. Braun ("Braun") is, and was at all relevant times, Veeco's Chairman and Chief Executive Officer ("CEO").

(b)     Defendant John F. Rein Jr. ("Rein") is, and was at all relevant times, Veeco's Executive Vice President and Chief Financial Officer ("CFO").

(c)     Defendants Braun and Rein are collectively referred to herein as the "Individual Defendants."

2

9. Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

10. It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of Veeco, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

11. As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded

3

on the NASDAQ National Market ("NASDAQ"), and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

12. The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Veeco, each of the Individual Defendants had access to the adverse undisclosed information about Veeco's business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Veeco and its business issued or adopted by the Company materially false and misleading.

13. The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the

4

Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

14. Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Veeco common stock by disseminating materially false and misleading statements and/or concealing material facts. The scheme: (i) deceived the investing public regarding Veeco's business, operations, management and the intrinsic value of Veeco common stock; and (ii) caused plaintiff and other members of the Class to purchase Veeco's common stock at artificially inflated prices.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

15. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the common stock of Veeco between April 26, 2004, and February 10, 2005, inclusive ("the Class") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

16. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Veeco common shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Veeco or its transfer agent and may be notified of the

5

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

17.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

18.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

19.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

        (a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

        (b)    whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Veeco; and

        (c)    to what extent the members of the Class have sustained damages and be proper measure of damages.

20.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

6

## SUBSTANTIVE ALLEGATIONS

21.     Veeco purports to "provide[] solutions for nanoscale applications in the worldwide semiconductor, data storage, compound semiconductor/wireless and scientific research markets."

22.     Prior to the start of the Class Period, on November 3, 2003, the Company announced the acquisition of Emcore Corporation's TurboDisc(R) Metal Organic Chemical Vapor Deposition (MOCVD) business.

23.     Throughout the Class Period, defendants issued numerous positive statements and filed quarterly reports with the SEC which described the Company's increasing financial performance due in part to the success of its TurboDisc division. In fact, defendants reported that the Company exceeded its quarterly guidance for the first and second quarters of 2004. These statements were materially false and misleading because they failed to disclose and misrepresented the following adverse facts, among others: (a) that Veeco was materially overstating its financial results by engaging in improper accounting practices. As detailed herein, Veeco has admitted that its prior financial reports are materially false and misleading as it announced that it is going to restate its results for the first three quarters of 2004; (b) that the Company lacked adequate and was therefore unable to ascertain its true financial condition; and (c) that as a result of the accounts payable, revenue and net income were foregoing, the values of the Company's inventory, accounts payable, revenue and net income were materially overstated at all relevant times.

24.     Then, on February 11, 2005, Veeco announced that it would delay releasing its fourth-quarter and yearly results while it examines improper accounting at its TurboDisc

7

division.   According to the press release, the Company's investigation is focusing mainly on

the value of inventory, accounts payable and certain revenue items. Concerning the internal

investigation, the Company announced, in pertinent part, as follows:

> Internal Accounting Investigation
>
> Veeco is conducting an internal investigation of improper accounting transactions recorded at its TurboDisc division, causing a postponement in the release of Veeco's earnings.   **The investigation focuses principally on the value of inventory, accounts payable and certain revenue items carried on the books of TurboDisc.**   Veeco acquired the assets of TurboDisc in November 2003.   The investigation was commenced after Veeco's internal audit staff and corporate financial management discovered improper accounting transactions in the course of a Veeco internal audit and transitioning the division to Veeco's SAP accounting system during the fourth quarter of 2004.
>
> The Audit Committee of the Company's Board of Directors has been supervising the accounting investigation and authorized Veeco's outside counsel, Kaye Scholer LLP, to hire Jefferson Wells to be actively involved in performing forensics work as part of the investigation.
>
> Veeco expects that this investigation will lead to adjustments requiring the restatement of the financial statements previously issued for the quarterly periods and nine months ended September 2004.  While there can be no certainty as to the amount of the adjustment to earnings until the investigation and audited financial statements are completed, Veeco currently expects that the pre-tax earnings impact will be between $5.5 million and $5.5 million for the nine months ended September 30, 2004.   Veeco is unable to comment on fourth quarter earnings until the investigation and year-end audit are complete. (Emphasis added.)

25.   Following this news, shares of the Company's stock fell $1.90 per share, or

almost 10%, to close at $16.96 per share, on unusually heavy trading volume.

**Materially False and Misleading Statements Issued During the Class Period**

26.   The Class Period begins on April 26, 2004. On that date, Veeco issued a press

release announcing its financial results for the first quarter of 2004, the period ending March

31, 2004.  For the quarter, the Company reported revenues of $94.5 million and a net loss of

$0.7 million, or a loss of $0.02 per share. Earnings excluding certain charges were $0.11 per

8

diluted share. Defendant Braun commented on the Company's performance, stating, in pertinent part, as follows:

> **We are pleased to report that first quarter revenues, earnings and bookings all exceeded our quarterly guidance**. Revenues were $94.5 million and earnings before interest, taxes and amortization (EBITA) were $7.5 million, representing increases of 44% and 148%, respectively, from last year's first quarter. Revenues increased sequentially in all markets, led by a 60% increase in compound semiconductor/wireless and a 41% increase in semiconductor, and represent Veeco's strongest performance in nine quarters. Veeco's balance sheet remains strong, with a cash balance of $112 million, up $5 million in the quarter.

> Our first quarter 2004 bookings were $117.1 million - exceeding our guidance and representing a 61% increase over the prior year first quarter and a 21% sequential increase.

> Veeco's data storage orders doubled sequentially to $45.0 million in the first quarter of 2004 from $22.4 million in the fourth quarter of 2003, driven by technology and capacity purchases at thin film magnetic head (TFMH) manufacturers. First quarter data storage orders, which included orders from the world's five largest TFMH manufacturers for process equipment and metrology product lines, were the highest over three years. Compound semiconductor/wireless orders were $39.0 million in the first quarter of 2004, a 47% sequential increase. **Veeco received several multiple system orders for our TurboDisc MOCVD products from worldwide customers who are increasing their manufacturing capacity of green, blue and white light emitting diodes (LEDs)**. The growth of this newly acquired product line has surpassed our initial expectations, and we see the LED market as an exciting growth opportunity for Veeco in 2004 and 2005. First quarter scientific research orders were down 26% sequentially due to traditional seasonal buying among research and university customers, but were up 11 % from the first quarter of 2003. Veeco's semiconductor orders decreased 41% following a record fourth quarter. On a regional basis, the Asia Pacific market showed strength during the first quarter with orders up 78% sequentially.

> First quarter 2004 orders were the strongest in 13 quarters and are indicative of the diverse growth opportunities available to Veeco through our multi-market strategy. [Emphasis added.]

Concerning the Company's outlook, the press release continued, in pertinent part, as follows:

Veeco's Outlook

> Mr. Braun commented, "Our improved financial results reflect a broad upturn across data storage, semiconductor, wireless and research markets, and we currently expect that 2004 will be a strong growth year for Veeco across all major product lines. We continue to see growth opportunities in all of our core

9

markets: the transition to 100+ GB drives in data storage, sub-90nm development in semiconductor, worldwide investments in blue LED technology and the continued use of Veeco's technology for nanoscience research."

Veeco currently forecasts that second quarter orders are expected to be in the range of $120 to $125 million and that revenues are expected to be in the range of $95 to $100 million. The Company currently forecasts that it will earn between $0.01 and $0.04 per share on a GAAP basis and will earn between $0.1 and $0.14 per share, excluding amortization of $4.6 million, using a 35% tax rate.

27.     Veeco's financial results for the first quarter of 2004, the period ending March

31, 2004, were repeated in the Company's Report on Form 10-Q filed with the SEC on or

about May 3, 2004, which was signed by defendants Braun and Rein.

28.     On July 26, 2004, Veeco issued a press release announcing its financial results

for the second quarter of 2004, the period ending June 30, 2004. For the quarter, the Company

reported sales of $102.9 million and net income of $1.6 million or earnings per diluted share of

$0.05 per share. Earnings excluding certain charges were $0.15 per diluted share. Defendant

Braun commented on the Company's performance, stating, in pertinent part, as follows:

**We are pleased to report that Veeco's second quarter 2004 orders, revenue and earnings all exceeded the prior year and prior quarter, and met or exceeded our guidance as we continue to experience a multi-market recovery in our core semiconductor, compound senmiconductor/wireless and data storage markets.**

Veeco's second quarter revenues of $102.9 million increased 9% sequentially from $94.5 million in the first quarter, and included revenue growth in both Process Equipment and Metrology product lines, as well as sequential increases from the data storage (up 13%), semiconductor (up 17%) and compound semiconductor/wireless (up 19%) markets. Compared with the second quarter of 2003, Veeco's revenues increased 40% and EBITA (earnings excluding certain charges before interest, taxes and amortization) nearly tripled from $3.2 million in the second quarter of 2003 to $9.3 million in the second quarter of 2004. Veeco's backlog at the end of the quarter was approximately $164 million. Veeco's balance sheet remains strong and the Company generated $5.6 million in cash during the quarter.

10

Our second quarter orders of $124.7 million were up 7% sequentially due to strength in both the compound semiconductor/wireless market (up 31% sequentially) and the semiconductor market (up 121% sequentially). **This strong performance included $42.4 million in second quarter 2004 orders for Veeco's TurboDisc(R) metal organic chemical vapor deposition (MOCVD) products required for high brightness light-emitting diode (HB-LED) manufacturing** and a quarterly record $13.7 million in orders for automated atomic force microscopes (AFM) used by worldwide semiconductor customers for their in-line, 90nm metrology at etch, chemical mechanical planarization (CMP) and photomask steps. Veeco's data storage orders decreased 41% sequentially following a record first quarter, and orders for our scientific research products were up 8% due to normal seasonal increases in university and research buying patterns. [Emphasis added.]

Concerning the Company's outlook, the press release continued, in pertinent part, as follows:

Veeco's Outlook

Veeco's strong backlog provides it with added visibility, and therefore the Company is providing both a forecast for the third quarter and an initial outlook for the fourth quarter, as follows:

Q3 2004 Forecast: Veeco currently forecasts that third quarter 2004 bookings will be in the range of $125-$130 million and that third quarter 2004 sales will be in the range of $105-$110 million. The Company currently forecasts that it will earn between $0.06 and $0.09 per diluted share on a GAAP basis, and between $0.15 and $0.18 per diluted share, excluding amortization of $4.4 million, using a 35% tax rate.

Q4 2004 Outlook: Vecco currently expects fourth quarter sales in the range of $115-$125 million, earnings between $0.20 and $0.25 per diluted share on a GAAP basis, and between $0.29 and $0.34 per diluted share, excluding amortization of $4.4 million, using a 35% tax rate. Veeco plans to provide an updated fourth quarter forecast when it announced third quarter results.

Mr. Braun concluded, "We see continued strength in orders, revenue and earnings through the third and fourth quarters based upon opportunities across the data storage, semiconductor, wireless (HB-LEDs) and scientific research markets. The growth in laptop and mobile PCs, together with a new generation of wireless, digital consumer electronic products (1-pod, camera cell phones, video players, etc) which represent the convergence of small format data storage microdrives, semiconductor technology, compound semiconductor blue/green HB-LEDs and high frequency devices, will drive increased use of Veeco's Process Equipment (MOCVD, PVD, IBD, IBE) and Metrology (AFM, optical) products in both research and production applications."

11

29.   Veeco's financial results for the second quarter of 2004, the period ending June 30, 2004, were repeated in the Company's Report on Form 10-Q filed with the SEC on or about August 3, 2004, which was signed by defendants Braun and Rein.

30.   On October 12, 2004, the Company issued a press release announcing its preliminary results. The press release stated, in pertinent part, as follows:

> Veeco Instruments Inc. (Nasdaq: VECO) today announced that weak industry-wide capital equipment conditions, particularly in compound semiconductor, adversely impacted its results for the quarter ended September 30, 2004.
>
> As a result, Veeco's orders for the third quarter of 2004 are expected to be approximately $80 million, compared to $64 million in the third quarter of 2003 and $125 million in the second quarter of 2004. (Veeco's order guidance provided on 7/26/04 was $125-$130 million).
>
> Veeco expects third quarter 2004 revenues to be approximately $93 million, compared to $63 million in the third quarter of 2003 and $103 million in the second quarter of 2004. (Revenue guidance was $105-$110 million).
>
> Veeco's third quarter 2004 GAAP loss is expected to be between ($0.06) and ($0.04) per share, compared to third quarter 2003 GAAP loss of ($0.07) per share and GAAP earnings of $0.05 per diluted share in the second quarter of 2004. (Veeco's third quarter guidance was GAAP earnings between $0.06 and $0.09 per diluted share on a GAAP basis.)
>
> Veeco's third quarter earnings excluding amortization are expected to be between $0.04 and $0.06 per diluted share.   This compares to earnings excluding amortization and certain charges of $0.03 per diluted share for the third quarter of 2003 and $0.15 per diluted share for the second quarter of 2004. (Veeco's third quarter guidance was earnings excluding amortization of between $0.15 and $0.18 per diluted share.)
>
> Like many suppliers in the semiconductor capital equipment industry, Veeco typically books approximately 60% of its orders in the last several weeks of the quarter. However, in the third quarter, many of these late quarter orders did not occur as customers carefully managed their capital spending. Compared to the second quarter, Veeco's orders for MOCVD equipment from light-emitting diode (LED) manufacturers decreased approximately 70%. This dramatic decrease in MOCVD business resulted from spending freezes initiated by many Asian customers at the end of the quarter, as they paused to absorb the significant amount of Veeco equipment purchased in the first half of 2004. Veeco's data storage and

12

semiconductor orders declined approximately 30% from the second quarter, while scientific research orders increased approximately 20% from the same period.

Edward H. Braun, Chairman and CEO of Veeco, commented, "We are disappointed not only by our third quarter performance but by our lack of visibility of this slowdown. In the near-term, we expect our customers' current capital spending reluctance to continue, but believe it will be outweighed by their need to fund their 2005 new product technology roadmaps and to invest in the expected high growth of next-generation consumer electronics. Despite this setback, we still expect 2004 to be a strong growth year for Veeco compared to 2003. Veeco remains well positioned to provide leadership technologies for growth applications in semiconductor, data storage, compound semiconductor and scientific research."

Based upon its current backlog and visibility, Veeco currently projects fourth quarter revenues in the range of $90-$100 million and orders in the range of $90-$95 million. Veeco intends to provide additional guidance for the fourth quarter on its conference call on October 25, 2004.

31. On October 25, 2004, Veeco issued a press release announcing its financial

results for the third quarter of 2004, the period ending September 30, 2004. For the quarter,

the Company reported sales of $92.4 million and a net loss of $1.5 million, or $0.05 per share.

Earnings excluding certain charges were $0.05 per diluted share. Concerning the Company's

outlook, the press release continued, in pertinent part, as follows:

Edward H. Braun, Veeco's Chairman and Chief Executive Officer, commented, "As previously announced, Veeco was adversely impacted this quarter by weak, industry wide capital equipment spending conditions particularly in compound semiconductor and data storage markets. In response to these conditions, we intend to reduce expenses by 10% in order to improve profitability in 2005. While we expect our customers' current capital spending reluctance to continue for several quarters, we believe it will ultimately be outweighed by their need to fund their 2005 new product technology roadmaps and to invest in the expected high growth of next-generation consumer electronics. Veeco remains well positioned to provide leadership technologies for growth applications in semiconductor, data storage, compound semiconductor and scientific research."

Veeco currently expects fourth quarter sales in the range of $93-$100 million and orders in the range of $85 to $95 million. Veeco expects to take a charge of between $4.5 to $5.5 million in the fourth quarter related to the future spending reductions and restructuring and product rationalization costs and in-process R&D write-off related to the acquisition of MTI. The Company currently expects to report a fourth quarter GAAP loss in the range of $0.10 to $0.15 per share.

13

Excluding these charges and amortization, Veeco's fourth quarter earnings per diluted share are expected to be between $0.05 and $0.10 using a 35% tax rate.

32.     Veeco's financial results for the third quarter of 2004, the period ending September 30, 2004, were repeated in the Company's Report on Form 10-Q filed with the SEC on or about August 3, 2004, which was signed by defendants Braun and Rein.

33.     The statements referenced above in ¶¶ 26-32 were each materially false and misleading when made because they failed to disclose and/or misrepresented the follow facts, among others.

(a)     that Veeco was materially overstating its financial results by engaging in improper accounting practices. As detailed herein, Veeco has admitted that its prior financial reports are materially false and misleading as it announced that it is going to restate its results for the first three quarters of 2004;

(b)     that the Company lacked adequate internal controls and was therefore unable to ascertain its true financial condition; and

(c)     that as a result of the foregoing, the values of the Company's inventory, accounts payable, revenue and net income were materially overstated at all relevant times.

## THE TRUTH EMERGES

34.     Then, on February 11, 2005, Veeco announced that it would delay releasing its fourth-quarter and yearly results while it examines improper accounting at its TurboDisc division. According to the press release, the Company's investigation is focusing mainly on the value of inventory, accounts payable and certain revenue items. Concerning the internal investigation, the Company announced, in pertinent part, as follows:

Internal Accounting Investigation

14

Veeco is conducting an internal investigation of improper accounting transactions recorded at its TurboDisc division, causing a postponement in the release of Veeco's earnings. **The investigation focuses principally on the value of inventory, accounts payable and certain revenue items carried on the books of TurboDisc**. Veeco acquired the assets of TurboDisc in November 2003. The investigation was commenced after Veeco's internal audit staff and corporate financial management discovered improper accounting transactions in the course of a Veeco internal audit and transitioning the division to Veeco's SAP accounting system during the fourth quarter of 2004.

The Audit Committee of the Company's Board of Directors has been supervising the accounting investigation and authorized Veeco's outside counsel, Kaye Scholer LLP, to hire Jefferson Wells to be actively involved in performing forensics work as part of the investigation.

**Veeco expects that this investigation will lead to adjustments requiring the restatement of the financial statements previously issued for the quarterly periods and nine months ended September 2004**. While there can be no certainty as to the amount of the adjustment to earnings until the investigation and audited financial statements are completed, Veeco currently expects that the pre-tax earnings impact will be between $5.5 million and $7.5 million for the nine months ended September 30, 2004. Veeco is unable to comment on fourth quarter earnings until the investigation and year-end audit are complete. [Emphasis added.]

35.    After this memo was announced, shares of the Company's stock fell $1.90 per share, or almost 10%, to close at $16.96 per share, on unusually heavy trading volume.

36.    The market for Veeco's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Veeco's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Veeco common stock relying upon the integrity of the market price of Veeco's common stock and market information relating to Veeco, and have been damaged thereby.

37.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of Veeco's common stock, by publicly issuing false and misleading

15

statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

38. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Veeco's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Veeco and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

39. As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Veeco, their control over, and/or receipt

16

and/or modification of Veeco's allegedly materially misleading misstatements and/or their ssociations with the Company which made them privy to confidential proprietary information concerning Veeco, participated in the fraudulent scheme alleged alleged herein.

### Applicability of Presumption of Reliance:
### Fraud on the Market Doctrine

40.     At all relevant times, the market for Veeco's common stock was an efficient market for the following reasons, among others:

(a)     Veeco's stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Veeco filed periodic public reports with the SEC and the NASDAQ;

(c)     Veeco regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Veeco was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

41.     As a result of the foregoing, the market for Veeco's common stock promptly digested current information regarding Veeco from all publicly available sources and reflected such information in Veeco's stock price. Under these circumstances, all purchasers of Veeco's

common stock during the Class Period suffered similar injury through their purchase of Veeco's common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

, 42. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Veeco who knew that those statements were false when made.

## COUNT I

### Violation of Section 10(b) of
### the Exchange Act Against and Rule 10b-5
### Promulgated Thereunder Against All Defendants

43. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44. During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public regarding Veeco's business, operations, management and the intrinsic value of Veeco common stock; and (ii) cause plaintiff and other members of the Class to purchase Veeco's

18

common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

45.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Veeco's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

46.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Veeco as specified herein.

47.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of effort to assure investors of Veeco's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material statements made about Veeco and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Veeco common stock during the Class Period.

19

48.     Each of the Individual Defendants' primary liability, and controlling person liability, from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

49.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Veeco's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

50.     As a result of the dissemination of the materially false and misleading information
and failure to disclose material facts, as set forth above, the market price of Veeco's common
stock was artificially inflated during the Class Period. In ignorance of the fact that market prices
of Veeco's publicly-traded common stock were artificially inflated, and relying directly or
indirectly on the false and misleading statements made by defendants, or upon the integrity of the
market in which the common stock trades, and/or on the absence of material adverse information
that was known to or recklessly disregarded by defendants but not disclosed in public statements
by defendants during the Class Period, plaintiff and the other members of the Class acquired
Veeco common stock during the Class Period at artificially high prices and were damaged
thereby.

51.     At the time of said misrepresentations and omissions, plaintiff and other members
of the Class were ignorant of their falsity, and believed them to be true. Had plaintiff and the
other members of the Class and the marketplace known the truth regarding Veeco's financial
results, which were not disclosed by defendants, plaintiff and other members of the Class would
not have purchased or otherwise acquired their Veeco common stock, or, if they had acquired
such common stock during the Class Period, they would not have done so at the artificially
inflated prices which they paid.

52.     By virtue of the foregoing, defendants have violated Section 10(b) of the
Exchange Act, and Rule 10b-5 promulgated thereunder.

53.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and
the other members of the Class suffered damages in connection with their respective purchases
and sales of the Company's common stock during the Class Period.

**COUNT II**

21

## Violation of Section 20(a) of
## the Exchange Act Against the Individual Defendants

54.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55.     The Individual Defendants acted as controlling persons of Veeco within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

57.     As set forth above, Veeco and the Individual Defendants each violated Section 10(b) and Rule 10-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, plaintiff and

22

other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

        **WHEREFORE**, plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

(b)    Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: March 9, 2005                **COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**

Catherine A. Torell (CT-0905)
150 East 52nd Street, 30th Floor
New York, NY 10022-6017
Telephone: 212-838-7797
Facsimile: 212-838-7745

23

**COHEN, MILSTEIN, HAUSFELD**
 **& TOLL, P.L.L.C.**
Steven J. Toll
Daniel S. Sommers
Julie Goldsmith Reiser
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005-3964
Telephone: 202-408-4600
Facsimile: 202-408-4699

**Attorneys for Plaintiff**

24

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, (print name) PHILIP G. COLLINS ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1.  Plaintiff has reviewed the Complaint and authorizes its filing.

2.  Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.  Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.  Plaintiff's transaction(s) in the Veeco Instruments, Inc. (Nasdaq: VECO) security that is the subject of this action during the Class Period is/are as follows[1]:

| No. of Shares | Buy/Sell | Date | Price Per Share |
|---|---|---|---|
| 300 | BUY | 7/09/2004 | $20.45 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

[1]List additional transactions on a separate sheet of paper, if necessary.

5.  Plaintiff has complete authority to bring a suit to recover for investment losses.

6.  During the three years prior to the date of this Certification, Plaintiff has sought to serve or served as a representative party or a class in the following actions filed under the federal securities laws (if none, so indicate): None .

7.  Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 16 day of FEBRUARY , 2005.