# CV 05 1430

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ MAR 18 2005 ★

BROOKLYN OFFICE

WEXLER. J
BOYLE, M.J.

-------------------------------------------------------X

GERALD J. VOGT AND ELEANOR L. VOGT, :
On Behalf Of Themselves and All Others :
Similarly Situated, :
                              :
              Plaintiffs, :     **CLASS ACTION COMPLAINT**
                              :
     vs. :
                              :
VEECO INSTRUMENTS, INC., EDWARD :
BRAUN, and JOHN REIN, JR., :     **JURY TRIAL DEMANDED**
                              :
            Defendants. :

-------------------------------------------------------X

Plaintiffs Gerald J. Vogt and Eleanor L. Vogt ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by their undersigned attorneys, for their complaint against defendants, allege the following based upon personal knowledge as to themselves and their own acts and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through their attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, Untied States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Veeco Instruments, Inc. ("Veeco" or the "Company"), securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal class action on behalf of the purchasers of the common stock of Veeco between April 26, 2004 and February 10, 2005 (the "Class Period"), seeking to pursue

remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of

the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17

C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to §27

of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1331.

4.      Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15

U.S.C. § 78aa and 28 U.S.C. § 1391(b). Many of the acts and transactions alleged herein,

including the preparation and dissemination of materially false and misleading information,

occurred in substantial part in this Judicial District.  Additionally, the Company maintains a

principal executive office in this Judicial District.

5.      In connection with the acts, conduct, and other wrongs alleged in this complaint,

defendants, directly and indirectly, used the means and instrumentalities of interstate commerce,

including, but not limited to, the United States mails, interstate telephone communications, and

the facilities of the national securities exchange.

## PARTIES

6.      Plaintiffs Gerald J. Vogt and Eleanor L. Vogt purchased shares of Veeco as set

forth on the certification incorporated by reference herein, and have been damaged thereby.

7.      Defendant Veeco is a Delaware corporation that maintains its principal executive

offices at 100 Sunnyside Boulevard, Suite B, Woodbury, New York 11797.

8.      Defendant Edward Braun ("Braun") was, at all relevant times, the Company's Chairman and Chief Executive Officer.

9.      Defendant John Rein, Jr. ("Rein") was, at all relevant times, the Company's Executive Vice President and Chief Financial and Administrative Officer (Principal Financial Officer).

10.     Defendants Braun and Rein are collectively referred to herein as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Veeco's quarterly reports, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them but not to the public, each of these defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations which were being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

11.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure Rule 23(a) and (b)(3) on behalf of Class, consisting of all those who purchased or otherwise acquired the common stock of Veeco between April 26, 2004, and February 10, 2005,

3

inclusive (the "Class Period") and who were damaged thereby. Excluded from the class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

12.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Veeco's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are many thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Veeco and its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

13.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

14.    Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

15.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

A.    whether the federal securities laws were violated by defendants' acts as alleged herein;

4

B.     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Veeco; and

C.     to what extent the members of the Class have sustained damages and the proper measure of damages.

16.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

17.     Veeco designs, manufactures, markets and services a line of equipment primarily used by manufacturers in the data storage, semiconductor, compound semiconductor/wireless and high-brightness light emitting diode industries.  Veeco's line of products allows customers to improve time-to-market of their products.  The Company offers two principal product lines: process equipment and metrology.

### Materially False and Misleading
### Statements Issued During the Class Period

18.     The Class Period starts on April 26, 2004.  At that time, Veeco issued a press release with the headline "Veeco Reports First Quarter 2004 Results."  Therein, the Company, in

5

pertinent part, stated:

> Veeco Instruments, Inc. (Nasdaq:VECO ), today announced its financial results for the first quarter ended March 31, 2004. Veeco reports its results on a GAAP basis, and also provides results excluding certain changes. Investors should refer to the attached table for further details of the reconciliation of GAAP operating income (loss) to earnings excluding certain changes.

> Highlights

> Veeco's first quarter 2004 were $94.5 million, up 23% sequentially from the $76.9 million reported in the fourth quarter of 2003. Veeco reported a net loss of $0.7 million, or a loss of $0.02 per share. Earnings excluding certain charges were $0.11 per diluted shares. The Company's first quarter bookings were $117.1 million, up 21% sequentially. (The Company's first quarter guidance (provided on February 6, 2004) was: revenues $84 to $88 million, net loss between $0.09 and $0.05 per share, earnings excluding certain changes between $0.05 and $0.09 per diluted share, and bookings of $105 million to $109 million.)

> Edward H. Braun, Veeco's Chairman and Chief Executive Officer, commented, "We are pleased to report that first quarter revenues, earnings and bookings all exceeded our quarterly guidance. Revenues were $94.5 million and earnings before interest, taxes and amortization (EBITA) were $7.5 million, representing increases of 44% and 148%, respectively, from last year's first quarter. Revenues increased sequentially in all markets, led by a 60% increase in compound semiconductor/wireless and a 41% increase in semiconductor, and represent Veeco's strongest performance in nine quarters. Veeco's balance sheet remains strong, with a cash balance of $112 million, up $5 million in the quarter."

> "Our first quarter 2004 bookings were $117.1 million - exceeding our guidance and representing a 61% increase over the prior year first quarter and a 21% sequential increase.

***

> First Quarter 2004 Results

> Veeco reported first quarter 2004 sales of $94.5 million compared

6

with $65.8 million one year ago. First quarter Process Equipment sales were $52.9 million compared with $29.6 million in the 2003 first quarter, and Metrology sales were $41.6 million compared with $36.2 million. Veeco's revenues by market were 33% data storage, 14% semiconductor, 22% compound semiconductor/ wireless and 31% scientific research. Revenues by region were 37% N. America, 29% Asia Pacific, 20% Japan and 14% Europe.

Veeco reported first quarter 2004 orders of $117.1 million compared with $72.7 million in the first quarter of 2003. Process equipment orders were $85.2 million compared with $38.3 million, and Metrology orders were $31.9 million compared with $34.4 million. Orders by market were 38% data storage, 9% semiconductor, 33% compound semiconductor/wireless and 20% scientific research. Orders by region were 38% N. America, 37% Asia Pacific, 14% Japan and 11% Europe. Veeco's book-to-bill ratio was 1.24 to 1.0.

Veeco reported operating income of $1.1 million in the first quarter of 2004, compared with an operating loss of $0.8 million in the first quarter of 2003. Included in the first quarter 2004 operating result was a $1.5 million reduction in gross profit from purchase accounting adjustments due to the required capitalization of profit in inventory and permanent elimination of certain deferred revenue from the TurboDisc and Aii acquisitions. First quarter 2003 results were impacted by $0.07 million of restructuring costs. Exclusive of these charges, Veeco's first quarter 2004 EBITA was $7.5 million compared to $3.0 million in the first quarter of 2003. Veeco's first quarter 2004 net loss was $0.7 million (($0.02) per share) compared to a net loss of $1.7 million (($0.06) per share) of the first quarter of 2003. Excluding certain charges, first quarter 2004 earnings were $0.11 per diluted share compared to $0.03 per diluted share one year ago.

Veeco's Outlook

Mr. Braun commented, "Our improved financial results reflect a broad upturn across data storage, semiconductor, wireless and research markets, and we currently expect that 2004 will be a strong growth year for Veeco across all major product lines. We continue to see growth opportunities in all of our core markets: the transition to 100+ GB drives in data storage, sub-90mm development in semiconductor, worldwide investments in blue

7

LED technology and the continued use of Veeco's technology for nanoscience research."

Veeco currently forecasts that second quarter orders are expected to be in the range of $120 to $125 million and that revenues are expected to be in the range of $95 to $100 million. The Company currently forecasts that it will earn between $0.01 and $0.04 per share on a GAAP basis and will earn between $0.11 and $0.14 per share, excluding amortization of $4.6 million, using a 35% tax rate.

19.     On May 3, 2004, Veeco filed its quarterly report with the SEC on Form 10-Q. The Company's Form 10-Q was signed by the Individual Defendants and reaffirmed the Company's previously announced financial results. Additionally, the defendants, in Veeco's Form 10-Q, represented the following: "In the opinion of management, all adjustments considered necessary for a fair presentation (consisting of normal recurring accruals) have been included."

20.     On July 26, 2004, Veeco issued a press release with the headline: "Veeco Reports Second Quarter and Six Month 2004 Results; Results Were Above Prior Quarter and Prior Year and at High-End of Guidance." Therein, the Company, in pertinent part, stated:

Veeco Instruments Inc. (Nasdaq:VECO) today announced its financial results for the second quarter and six months ended June 30, 2004. Veeco reports its results on a GAAP basis, and also provides results excluding certain charges. Investors should refer to the attached table for further details of the reconciliation of GAAP operating income (loss) to earnings excluding certain charges.

Highlights

Veeco's second quarter 2004 sales were $102.9 million with net income of $1.6 million or earnings per diluted share of $0.05 per share. Earnings excluding certain charges were $0.15 per diluted share. The Company's second quarter orders were $124.7 million. The Company's second quarter guidance (provided on April 26,

8

2004) was: revenues of $95 to $100 million, earnings per diluted share of $0.01-$0.04, earnings excluding certain charges of between $0.11 and $0.14 per diluted share, and orders of between $120-$125 million.

Edward H. Braun, Veeco's Chairman and Chief Executive Officer, commented, "We are pleased to report that Veeco's second quarter 2004 orders, revenue and earnings all exceeded the prior year and prior quarter, and met or exceeded our guidance as we continue to experience a multi-market recovery in our core semiconductor, compound semiconductor/wireless and data storage markets."

Veeco's second quarter revenues of $102.9 million increased 9% sequentially from $94.5 million in the first quarter, and included revenue growth in both Process Equipment and Metrology product lines, as well as sequential increases from the data storage (up 13%), semiconductor (up 17%) and compound semiconductor/ wireless (up 19%) markets. Compared with the second quarter of 2003, Veeco's revenues increased 40% and EBITA (earnings excluding certain charges before interest, taxes and amortization) nearly tripled from $3.2 million in the second quarter of 2003 to $9.3 million in the second quarter of 2004. Veeco's backlog at the end of the quarter was approximately $164 million. Veeco's balance sheet remains strong and the Company generated $5.6 million in cash during the quarter."

Mr. Braun continued, "Our second quarter orders of $124.7 million were up 7% sequentially due to strength in both the compound and semiconductor/wireless market (up 31% sequentially) and the semiconductor market (up 121% sequentially). This strong performance included $42.4 million in second quarter 2004 orders for Veeco's TurboDisc® metal organic chemical vapor deposition (MOCVD) products required for high brightness light-emitting diode (HB-LED) manufacturing and a quarterly record $13.7 million in orders for automatic atomic force microscopes (AFM) used by worldwide semiconductor customers for their in-line, 90mm metrology at etch, chemical mechanical planarization (CMP) and photomask steps. Veeco's data storage orders decreased $41 sequentially following a record first quarter, and orders for our scientific research products were up 8% due to normal seasonal increases in university and research buying patterns."

9

Second Quarter 2004 Results

Veeco's sales for the second quarter of 2004 were $102.9 million, a 40% increase from the $73.4 million reported for the second quarter of 2003 and a 9% sequential increase from the $94.5 million reported in the first quarter of 2004. Metrology sales were $42.3 million and Process Equipment sales were $60.6 million. Veeco's sales by marketing the second quarter of 2004 were 34% data storage, 15% semiconductor, 24% compound semiconductor/ wireless and 27% scientific research. Revenues by region were 37% U.S., 30% Asia Pacific, 18% Europe and 15% Japan.

Veeco's orders for the second quarter of 2004 were $124.7 million, a 95% increase from the $64.0 million reported in the second quarter of 2003 and up 7% sequentially from the $117.1 million reported last quarter. Second quarter 2004 Metrology orders were $42.0 million and Process Equipment orders were $82.7 million. Veeco's orders by market in the second quarter were 21% data storage, 18% semiconductor, 41% compound semiconductor/ wireless and 20% scientific research. Orders by region were 46% U.S., 11% Europe, 28% Asia Pacific and 15% Japan. The Company's second quarter book-to-bill ratio was 1.2 to 1.0.

Veeco's second quarter 2004 operating income was $4.7 million compared with an operating loss of $0.7 million in the second quarter of 2003 Veeco's second quarter 2004 EBITA was $9.3 million compared to $3.2 million in the second quarter of 2003. Veeco's second quarter 2004 net income was $1.6 million, or earnings per share of $0.05, compared to a net loss of $1.1 million (($0.04) per share) in the second quarter of 2003. Excluding certain charges, second quarter 2004 earnings were $0.15 per diluted share compared to $0.03 per diluted share a year ago.

*** 

Veeco's Outlook

Veeco's strong backlog provides it with added visibility, and therefore the Company is providing both a forecast for the third quarter and an initial outlook for the fourth quarter, as follows:

Q3 2004 Forecast: Veeco currently forecasts that third quarter 2004 bookings will be in the range of $125-$130 million and that

third quarter 2004 sales will be in the range of $205-$110 million. The Company currently forecasts that it will earn between $0.06 and $0.09 per diluted share on a GAAP basis, and between $0.15 and $0.18 per diluted share, excluding amortization of $4.4 million, using a 35% tax rate.

Q4 2004 Outlook: Veeco currently expects fourth quarter sales in the range of $115-$125 million, earnings between $0.20 and $0.25 per diluted share on a GAAP basis, and between $0.29 and $0.34 per diluted share, excluding amortization of $4.4 million, using a 35% tax rate. Veeco plans to provide an updated fourth quarter forecast when it announces third quarter results.

Mr. Braun concluded, "We see continued strength in orders, revenue and earnings through the third and fourth quarters based upon opportunities across the data storage, semiconductor, wireless (HB-LEDs) and scientific research markets. The growth in laptop and mobile PCS, together with a new generation of wireless, digital consumer electronic products (I-pod, camera cell phones, video players, etc) which represent the convergence of small format data storage microdrives, semiconductor technology, compound semiconductor blue/green HB-LEDs and high frequency devices, will drive increased use of Veeco's Process Equipment (MOCVD, PVD, IBD, IBE) and Metrology (AFM, optical) products in both research and production applications."

21.     On August 3, 2004, Veeco filed its quarter report with the SEC on Form 10-Q. The Company's Form 10-Q was signed by the Individual Defendants and reaffirmed the Company's previously announced financial results. Additionally, the defendants, in Veeco's Form 10-Q, represented the following: "In the opinion of management, all adjustments considered necessary for a fair presentation (consisting of normal recurring accruals) have been included."

22.     On July 26, 2004, Veeco issued a press release announcing preliminary third quarter 2004 financial results. Therein, the Company, in pertinent part, stated:

Veeco Instruments Inc. (Nasdaq:VECO) today announced that

11

weak industry-wide capital equipment conditions, particularly in compound semiconductor, adversely impacted its results for the quarter ended September 30, 2004.

As a result, Veeco's orders for the third quarter of 2004 are expected to be approximately $80 million, compared to $64 million in the third quarter of 2003 and $125 million in the second quarter of 2004. (Veeco's order guidance provided on 7/26/04 was $125-$130 million).

Veeco expects third quarter 2004 revenues to be approximately $93 million, compared to $63 million in the third quarter of 2003 and $103 million in the second quarter of 2004. (Revenue guidance was $105-110 million).

Veeco's third quarter 2004 GAAP loss is expected to be between ($0.06) and ($0.04) per share, compared to third quarter 2003 GAAP loss of ($0.07) per share and GAAP earnings of $0.05 per diluted share in the second quarter of 2004. (Veeco's third quarter guidance was GAAP earnings between $0.06 and $0.09 per diluted share on a GAAP basis.)

Veeco's third quarter earnings excluding amortization are expected to be between $0.04 and $0.06 per diluted share. This compares to earnings excluding amortization and certain charges of $0.03 per diluted share for the third quarter of 2003 and $0.15 per diluted share for the second quarter of $2004. (Veeco's third quarter guidance was earnings excluding amortization of between $0.15 and $0.18 per diluted share.)

Like many suppliers in the semiconductor capital equipment industry, Veeco typically books approximately 60% of its orders in the last several weeks of the quarter. However, in the third quarter, many of these late quarter orders did not occur as customers carefully managed their capital spending. Compared to the second quarter, Veeco's orders for MOCVD equipment from light-emitting diode (LED) manufacturers decreased approximately 70%. This dramatic decrease in MOCVD business resulted from spending freezes initiated by many Asian customers at the end of the quarter, as they paused to absorb the significant amount of Veeco equipment purchased in the first half of 2004. Veeco's data storage and semiconductor orders declined approximately 30% from the second quarter, while scientific research orders increased

12

approximately 20% from the same period.

Edward H. Braun, Chairman and CEO of Veeco, commented, "We are disappointed not only by our third quarter performance but by our lack of visibility of this slowdown. In the near-term, we expect our customer's current capital spending reluctance to continue, but believe it will be outweighed by their need to fund their 2005 new product technology roadmaps and to invest in the expected high growth of next-generation consumer electronics. Despite this setback, we still expect 2004 to be a strong growth year for Veeco compared to 2003. Veeco remains well positioned to provide leadership technologies for growth applications in semiconductor, data storage, compound semiconductor and scientific research."

Based upon its current backlog and visibility, Veeco currently projects fourth quarter revenues in the range of $90-$100 million and orders in the range of $90-$95 million. Veeco intends to provide additional guidance for the fourth quarter on its conference call on October 25, 2004.

23.     On October 25, 2004, Veeco issued a press release with the headline: "Veeco

Reports Third Quarter and Nine Month 2004 Results." Therein, the Company, in pertinent part,

stated:

Veeco Instruments Inc. (Nasdaq:VECO) today announced its financial results for the third quarter and nine months ended September 30, 2004. Veeco reports its results on a GAAP basis, and also provides results excluding certain charges. Investors should refer to the attached table for further details of the reconciliation of GAAP operating (loss) income to earnings excluding certain change.

Highlights

Veeco's third quarter 2004 sales were $92.4 million with a net loss of $1.5 million, or $0.05 per share. Earnings excluding certain charges were $0.05 per diluted share. The Company's third quarter orders were $79.5 million. Results were in line with the Company's October 12, 2004 preannouncement.

13

Third Quarter Results

Veeco's third quarter 2004 revenues were $92.4 million, up 46% from the $63.1 million reported in the prior year third quarter. Third quarter revenues were down 10% sequentially from $102.9 million in the second quarter of 2004 due to customer postponements and shipment delays in data storage, semiconductor and compound semiconductor.

Metrology revenues were $33.7 million and Process Equipment revenues were $58.7 million. Veeco's sales by market in the third quarter of 2004 were 29% data storage, 11% semiconductor, 32% compound semiconductor (LED/wireless) and 28% scientific research. Revenues by region were 33% U.S., 33% Asia Pacific, 18% Europe and 16% Japan.

Veeco's orders for the third quarter of 2004 were $79.5 million, a 24% increase from the $64.0 million reported in the third quarter of 2003, but down 36% sequentially from the $1247 million reported in the second quarter of 2004. Third quarter 2004 Metrology orders were $45.2 million and Process Equipment orders were $34.3 million. Compared to the second quarter, Veeco's orders for MOCVD equipment from light-emitting diode (LED) manufacturers decreased approximately 70%. This decrease in MOCVD business resulted from spending freezes initiated by many Asian customers at the end of the quarter, as they paused to absorb the significant amount of Veeco equipment purchased in the first half of 2004. Veeco's data storage and semiconductor orders declined approximately 30% from the second quarter, while scientific research orders increased approximately 20% from the same period. Veeco's orders by market in the third quarter were 24% data storage, 20% semiconductor, 18% compound semiconductor (LED/wireless) and 38% scientific research. Orders by region were 40% U.S., 22% Europe, 22% Asia Pacific and 16% Japan. The Company's third quarter book-to-bill ratio was 0.86 to 1.0.

Veeco's third quarter 2004 operating loss was $0.4 million compared with an operating loss of $1.8 million in the third quarter of 2003. Veeco's third quarter 2004 earnings excluding certain charges before interest, income taxes and amortization ("EBITA") were $3.9 million compared to $3.3 million in the third quarter of 2003. Veeco's third quarter 2004 net loss was $1.5 million, or loss

14

of $0.05 per share, compared to a net loss of $2.1 million ($0.07 per share) in the third quarter of 2003. Excluding certain charges, third quarter 2004 earnings were $0.05 per diluted share compared to $0.03 per diluted share a year ago.

***

Management Review and Outlook

Edward H. Braun, Chairman and Chief Executive Officer, commented, "As previously announced, Veeco was adversely impacted this quarter by weak, industry-wide capital equipment spending conditions particularly in compound semiconductor and data storage markets. In response to these conditions, we intend to reduce expenses by 10% in order to improve profitability in 2005. While we expect our customers' current capital spending reluctance to continue for several quarters, we believe it will ultimately be outweighed by their need to fund their 2005 new product technology roadmaps and to invest in the expected high growth of next-generation consumer electronics. Veeco remains well positioned to provide leadership technologies for growth applications in semiconductor, data storage, compound semiconductor and scientific research."

Veeco currently expects fourth quarter sales in the range of $93-$100 million and orders in the range of $85 to $95 million. Veeco expects to take charge of between $4.5 to $5.5 million in the fourth quarter related to the future spending reductions and restructuring and product rationalization costs and in-process R&D write-off related to the acquisition of MTI. The Company currently expects to report a fourth quarter GAAP loss in the range of $0.10 to $0.15 per share. Excluding these charges and amortization, Veeco's fourth quarter earnings per diluted share are expected to be between $0.05 and $0.10 using a 35% tax rate.

24.     On November 9, 2004, Veeco filed its quarterly report with the SEC on Form 10-Q. The Company's Form 10-Q was signed by the Individual Defendants and reaffirmed the Company's previously announced financial results. Additionally, the defendants, in Veeco's Form 10-Q, represented the following: "In the opinion of management, all adjustments

15

considered necessary for a fair presentation (consisting of normal recurring accruals) have been including."

25. The statements contained in ¶¶18-24 were materially false and misleading when made because defendants failed to disclose or indicate the following: (1) that improper accounting procedures were in place at the Company's TurboDisc division; (2) that these improper accounting procedures caused the Company to materially overstate its net revenue for the first three quarters of 2004 by at least $7.5 million; (3) that the Company's financial statements were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (4) that the Company lacked adequate internal controls and was therefore unable to ascertain the true financial condition of the Company; and (5) that as a result, the value of the Company's net income and financial results were materially overstated at all relevant times.

### The Truth Begins to Emerge

26. On February 11, 2005, before the market opened, Veeco announced that it would postpone the release of audited results for the fourth quarter and full year 2004 pending completion of an internal investigation of improper accounting transactions at its TurboDisc® division. Veeco expected to complete its investigation and year-end audit and to file its Annual Report on Form 10-K for the year ended December 31, 2004 on or before March 16, 2005. More specifically, the Company stated:

> Internal Accounting Investigation
>
> Veeco is conducting an internal investigation of improper accounting transactions recorded at its TurboDisc division, causing a postponement in the release of Veeco's earnings. The investigation focuses principally on the value of inventory, accounts payable and certain revenue items carried on the books of

16

TurboDisc. Veeco acquired the assets of TurboDisc in November 2003. The investigation was commenced after Veeco's internal audit staff and corporate financial management discovered improper accounting transactions in the course of a Veeco internal audit and transitioning the division to Veeco's SAP accounting system during the fourth quarter of 2004.

The Audit Committee of the Company's Board of Directors as been supervising the accounting investigation and authorized Veeco's outside counsel, Kaye Scholer LLP, to hire Jefferson Wells to be actively involved in performing forensics work as part of the investigation.

Veeco expects that this investigation will lead to adjustments to requiring the restatement of the financial statements previously issued for the quarterly periods and nine months ended September 2004. While there can be no certainty as to the amount of the adjustment to earnings until the investigation and audited financial statements are completed, Vecco currently expects that the pre-tax earnings impact will be between $5.5 million and $7.5 million for the nine months ended September 30, 2004. Veeco is unable to comment on fourth quarter earnings until the investigation and year-end audit are complete.

Commenting on the accounting review, Edward H. Braun, Chairman and CEO of Veeco said, "Errors and improper entries were uncovered by Veeco's internal audit staff and were limited to a single Veeco business unit, TurboDisc, which was acquired in November 2003. We have taken prompt corrective action and are working diligently to finish the audit and report complete financial results in conjunction with our March filings.".

John F. Rein, Jr., Executive Vice President and Chief Financial Officer, added, "We have taken swift action to resolve this accounting issue, including making appropriate staffing changes and transitioning TurboDisc's accounting system to Veeco's SAP system. We will announce revenue and earnings for the fourth quarter and year ended December 31, 2004 once the internal investigation is complete and our results have been audited by Ernst & Young." Veeco intends to release these results and file its Annual Report on Form 10-K for the year ended December 31, 2004 on or before March 16, 2005. However, there can be no assurance that the review will be completed during this timeframe

17

or that, even if completed, the Form 10-K will be finalized in time
to meet such deadline.

27.     News of this shocked the market. Shares of Veeco fell $1.90 per share, or 10.07

percent, to close at $16.96 per share on unusually high trading volume.

## VEECO'S VIOLATION OF GAAP RULES IN ITS
## QUARTERLY REPORTS FILED WITH THE SEC

28.     These financial statements and the statements about them were false and

misleading, as such financial information was not prepared in accordance with GAAP, nor was

the financial information a fair presentation of the Company's operations due to the Company's

improper accounting for and disclosure about its revenues, in violation of GAAP and SEC rules.

29.     GAAP are those principles recognized by the accounting profession as the

conventions, rules, and procedures necessary to define accepted accounting practice at a

particular time. SEC Regulation S-X (17 C.F.R. §210.4-01(a)(1)) states that financial statements

filed with the SEC which are not prepared in compliance with GAAP are presumed to be

misleading and inaccurate, despite footnote or other disclosure. Regulation S-X requires that

interim financial statements such as Forms 10-Q must also comply with GAAP, with the

exception that interim financial statements need not include disclosures which would be

duplicative of disclosures accompanying annual financial statements. 17 C.F.R. §210.10-01(a).

30.     Given these accounting irregularities, the Company announced financial results

that were in violation of GAAP and the following principles:

A.      The principle that "interim financial reporting should be based upon the

same accounting principles and practices used to prepare annual financial statements" was

violated (APB No. 28, ¶10);

18

B.      The principle that "financial reporting should provide information that is useful to present to potential investors and creditors and other users in making rational investment, credit and similar decisions" was violated (FASB Statement of Concepts No. 1, ¶34)

C.      The principle that "financial reporting should provide information about the economic resources of an enterprise, the claims to those resources, and the effects of transactions, events, and circumstances that change resources and claims to those resources" was violated. (FASB Statement of Concepts No. 1 ¶ 40);

D.      The principle that "financial reporting should provide information about an enterprise's financial performance during a period" was violated. (FASB Statement of Concepts No. 1 ¶42);

E.      The principle that "completeness, meaning that nothing is left out of the information that may be necessary to insure that it validly represents underlying events and conditions" was violated. (FASB Statement of Concepts No. 2 ¶79);

F.      The principle that "financial reporting should be reliable in that it represents what it purports to represent" was violated. (FASB Statement of Concepts No. 2, ¶¶58-59); and

G.      The principle that "conservatism be used as a prudent reaction to uncertainty to try to ensure that uncertainties and risks inherent in business situations are adequately considered" was violated. (FASB Statement of Concepts No. 2, ¶95).

31.      The adverse information concealed by defendants during the Class Period and detailed above was in violation of Item 303 of Regulation SK-K under the federal securities law (17 C.F.R. 229.303).

19

32.     Moreover, the adverse information concealed by defendants during the Class

Period and detailed above was in violation of SEC Regulation S-X, which states that "financial

statements filed with the SEC, which are not prepared in compliance with GAAP, are presumed

to be misleading and inaccurate." SEC Regulation S-X also required that "interim financial

statements [i.e., Form 10-Qs] must also comply with GAAP." 17 C.F.R. § 210.10-01(a)

## UNDISCLOSED ADVERSE FACTS

33.     The market for Veeco's securities was open, well-developed and efficient at all

relevant times.  As a result of these materially false and misleading statements and failures to

disclose, Veeco's securities traded at distorted prices during the Class Period.  Plaintiffs and

other members of the Class purchased or otherwise acquired Veeco's common stock relying

upon the integrity of the market price of Veeco's securities and market information relating to

Veeco, and have been damaged thereby.

34.     During the Class Period, defendants materially misled the investing public,

thereby inflating the price of Veeco's securities, by publicly issuing false and misleading

statements and omitting to disclose material facts necessary to make defendants' statements, as

set forth herein, not false and misleading.  Said statements and omissions were materially false

and misleading in that they failed to disclose material adverse information and misrepresented

the truth about the Company, its business and operations, as alleged herein.

35.     At all relevant times, the material misrepresentations and omissions particularized

in this Complaint directly or proximately caused or were a substantial contributing cause of the

damages sustained by Plaintiffs and other members of the Class.  As described herein, during the

Class Period, defendants made or caused to be made a series of materially false or misleading

20

statements about Veeco's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Veeco and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendant's materially false and misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

36.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Veeco, their control over, and/or receipt and/or modification of Veeco's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Veeco, participated in the fraudulent scheme alleged herein.

37.     Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the

21

highest level of the Company, including the Individual Defendants.

## Applicability Of Presumption Of Reliance
## Fraud-On-The-Market Doctrine

38. At all relevant times, the market for Veeco's common stock was an efficient

market for the following reasons, among others:

(a) Veeco's stock met the requirements for listing, and was listed and actively

traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Veeco filed periodic public reports with the SEC

and NASDAQ;

(c) Veeco regularly communicated with public investors via established

market communication mechanisms, including through regular disseminations of press releases

on the national circuits of major newswire services and through other wide-ranging public

disclosures, such as communications with the financial press and other similar reporting services;

and

(d) Veeco was followed by several securities analysts employed by major

brokerage firms who wrote reports which were distributed to the sales force and certain

customers of their respective brokerage firms. Each of these reports was publicly available and

entered the public marketplace.

39. As a result of the foregoing, the market for Veeco's securities promptly digested

current information regarding Veeco from all publicly available sources and reflected such

information in Veeco's stock price. Under these circumstances, all purchasers of Veeco's

securities during the Class Period suffered similar injury through their purchase of Veeco

securities at artificially inflated prices, and a presumption of reliance applies.

## NO SAFE HARBOR

40.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleased herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Veeco  who knew that those statements were false when made.

## FIRST CLAIM

### Violation Of Section 10(b) of
### The Exchange Act Against And Rule 10b-5
### Promulgated Thereunder Against All Defendants

41.     Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

42.     During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (ii) cause Plaintiffs

23

and other members of the Class to purchase Veeco securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

43. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Veeco securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

44. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse information about the business, operations and future prospects of Veeco as specified herein.

45. These defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Veeco value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Veeco and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a

24

course of business which operated as a fraud and deceit upon the purchasers of Veeco securities during the Class Period.

46.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

47.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Veeco's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have

25

actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discovery whether those statements were false or misleading.

48.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Veeco's publicly-traded securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of Veeco's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, Plaintiffs and the other members of the Class acquired Veeco's securities during the Class Period at artificially high prices and were damaged thereby.

49.     At the time of said misrepresentations and omissions, Plaintiffs and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiffs and the other members of the Class and the marketplace known the truth regarding the problems that Veeco was experiencing, which were not disclosed by defendants, Plaintiffs and other members of the Class would not have purchased or otherwise acquired their Veeco securities, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

50.     By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

51.    As a direct and proximate result of defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**

**Violations of Section 20(a) Of
The Exchange Act Against Individual Defendants**

52.    Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

53.    The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, participation in and/or awareness of the Company's operations, and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.    In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged

27

herein, and exercised the same.

55.     As set forth above, Veeco and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**WHEREFORE,** Plaintiffs pray for relief and judgment as follows:

A.     Determining that this action is a proper class action, designating Plaintiffs as Lead Plaintiffs and certifying Plaintiffs as a class representatives under Rule 23 of the Federal Rules of Civil Procedure and Plaintiffs' counsel as Lead Counsel;

B.     Awarding compensatory damages in favor of Plaintiffs and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and experts' fees;

E.     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury.

DATED: March _17_, 2005

Respectfully submitted,

**STULL, STULL & BRODY**

By _____

Jules Brody (JB-9151)
Aaron Brody (AB-5850)
Tzivia Brody (TB-7268)
6 East 45th Street
New York, New York 10017
(212) 687-7230 (Tel)
(212) 490-2022 (Fax)

**WEISS & LURIE**
Joseph H. Weiss (JW-4534)
551 Fifth Avenue
New York, New York 10176
(212) 682-3025 (Tel)
(212) 682-3010 (Fax)

**Attorneys for Plaintiffs**

29

## PLAINTIFF CERTIFICATION

Gerald J. Vogt
Eleanor L. Vogt ("Plaintiff") hereby states that:

1.     Plaintiff has reviewed the complaint and has authorized the filing of the complaint on his/her behalf.

2.     Plaintiff did not purchase any common stock/securities of **Veeco Instruments Inc.** at the direction of his/her counsel or in order to participate in this private action.

3.     Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.     The following includes all of Plaintiff's transactions in **Veeco Instruments Inc.** common stock/securities during the class period specified in the complaint:

| SECURITY (Common Stock, Call, Put, Bonds) | TRANSACTION (Purchase, Sale) | TRADE DATE | PRICE PER SECURITIES/SHARE | QUANTITY |
|---|---|---|---|---|
| Veeco Instruments Inc | Purchase | 11-30-04 | 19.43 | 500 |
| | | | | |
| | | | | |

**Please list other transactions on a separate sheet of paper, if necessary.**

5.     Plaintiff has not served or sought to serve as a representative party on behalf of a class under the federal securities laws during the last three years, unless otherwise stated in the space below:

6.     Plaintiff will not accept any payment for serving as a representative party on behalf of a class except to receive his pro rata share of any recovery, or as ordered or approved by the court including the award to a representative party of reasonable costs and expenses including lost wages relating to the representation of the class.

Plaintiff declares under penalty of perjury that the foregoing is true and correct.

Executed this _12_ day of _March_, 2005.

_Gerald J Vogt_  _Eleanor L Vogt_
Signature