## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
In re VEECO INSTRUMENTS, INC.    :    Case No.: 7:05-md-1695 (CM)
SECURITIES LITIGATION                  :
------------------------------------------------------- x
------------------------------------------------------- x
THIS DOCUMENT RELATES TO       :    _____
ALL ACTIONS                                :
                                                             :
------------------------------------------------------- x    _____


## LEAD PLAINTIFF STEELWORKERS PENSION
## TRUST'S MEMORANDUM OF LAW IN SUPPORT
## OF ITS MOTION FOR CLASS CERTIFICATION

**BERGER & MONTAGUE, P.C.**
Sherrie R. Savett  (I.D. 17646)
Phyllis M. Parker
Douglas M. Risen
Jeffrey Osterwise
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875 - 3000
Fax: (215) 875 - 4604

*Lead Counsel for Lead Plaintiff/*
*Proposed Class Representative Steelworkers Pension Trust*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A.    General Considerations For Class Certification Under Rule 23(a) . . . . . . . . . . . .5

        1.    The Requirements of Rule 23(a) Are Satisfied . . . . . . . . . . . . . . . . . . . . 6

            a.    Rule 23(a)(1): The Members Of The Class Are So Numerous That Joinder Of All of Them Is Impracticable . . . . . . . 6

            b.    Rule 23(a)(2): There Are Questions Of Law And Fact Common To The Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            c.    Rule 23(a)(3): Steelworkers' Claims Are Typical Of The Claims Of The Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            d.    Rule 23(a)(4): Steelworkers Will Fairly And Adequately Protect The Interests Of The Members Of The Class . . . . . . . . . 10

        2.    The Requirements Of Rule 23(b)(3) Are Satisfied . . . . . . . . . . . . . . . . 11

            a.    Common Questions Of Law And Fact Predominate Over Any Individual Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            b.    A Class Action Is Superior To Numerous Individual Actions . . . 13

IV. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

**CASES**

Page

*In re Alco Int'l Group Sec. Litig.*,
    158 F.R.D. 152 (S.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Amchem Products Inc. v. Windsor*,
    521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9, 11, 13

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Cullen v. Whitman Med. Corp.*,
    188 F.R.D. 226 (E.D. Pa. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Cendant Corp.*,
    264 F.3d 201 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Centocor, Inc. Sec. Litig.* III,
    1999 WL 54530 (E.D. Pa. Jan. 27, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*De la Fuente v. DCI Telecomms. Inc.*,
    206 F.R.D. 369 (S.D.N.Y. 2002)(McMahon, J) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 11

*DeMarco v. Nat'l Collector's Mint, Inc.*,
    229 F.R.D. 73 (S.D.N.Y. 2005)(McMahon, J) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 10

*In re Drexel Burnham Lambert Group, Inc.*,
    960 F.2d 285 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
    89 F.R.D. 87 (S.D.N.Y. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Eisenberg v. Gagnon*,
    766 F.2d 770 (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 8,13

*Fox v. Cheminova, Inc.*,
    213 F.R.D. 113 (E.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*German v. Federal Home Loan Mort. Corp.*,
    885 F.Supp. 537 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7, 12

*Kahan v. Rosenstiel*,
    424 F.2d 161 (3d Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

*Korn v. Franchard Corp.*,
    456 F.2d 1206 (2d Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6

*In re NASDAQ Market-Makers Antitrust Litig.*,
    172 F.R.D. 119 (S.D.N.Y. 19997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Petrolito v. Arrow Fin. Servs., LLC*,
    221 F.R.D. 303 (D.Conn. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

*Piel v. National Semiconductor Corp.*,
    86 F.R.D. 357 (E.D. Pa. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Robinson v. Metro-North Commuter R.R.*,
    267 F.3d 147 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Smith v. Dominion Bridge Corp.*,
    1998 WL 98998 (E.D. Pa. March 6, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Somerville v. Major Exploration, Inc.*,
    102 F.R.D. 500 (S.D.N.Y. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Trief v. Dun & Bradstreet Corp.*,
    144 F.R.D. 193 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Veeco Instruments, Inc. Sec. Litig.*,
    No. 7:05-md-1695 (S.D.N.Y Oct. 12, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**STATUTES**

15 U.S.C. 78u-4(a)(2)(B)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Civ. P. 23(a) and 23(b)(3)      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 10, 11

15 U.S.C. §§ 78j(b) and 78(t)(a), 17 C.F.R. § 240.10b-5,
    Sections 10(b) and 20(a) of the Securities Exchange Act and Rule 10-5 . . . . . . . . . . . . 8

I.      **INTRODUCTION**

Lead Plaintiff Steelworkers Pension Trust ("Steelworkers" or "Lead Plaintiff"), by and through its attorneys, respectfully submits this memorandum of law in support of its motion for an Order pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) to: (1) have this action maintained as a class action; (2) certify a plaintiff class as defined below; and (3) certify Steelworkers as Class Representative.

This motion seeks certification of a plaintiff class consisting of all persons who purchased the securities of Veeco Instruments, Inc. ("Veeco" or the "Company") during the period from November 3, 2003 to February 10, 2005, inclusive (the "Class Period"), and were damaged thereby. Excluded from the Class are Veeco, Edward H. Braun, John F. Rein, Jr., John P. Kiernan, and R. Michael Weiss (collectively, the "Defendants"), members of the immediate families of Edward H. Braun, John F. Rein, Jr., John P. Kiernan, and R. Michael Weiss (collectively, the "Individual Defendants"), any parent, subsidiary, affiliate, officer or director of defendant Veeco Instruments, Inc., any entity in which any excluded person has a controlling interest and the legal representatives, heirs, successors and assigns of any excluded person.

The requirements for class certification pursuant to Federal Rule of Civil Procedure 23 are satisfied in this case. As the allegations in Steelworkers' Complaint[1] make clear, this case is a prototypical class action on behalf of hundreds or thousands of investors who, along with Steelworkers, suffered millions of dollars of damages as a result of a series of materially false and misleading statements made by Defendants. The United States Supreme Court, the Second Circuit, courts in this District, and numerous other Circuit and District courts have repeatedly held that securities fraud actions are properly certified as class actions. *See, e.g., Basic Inc. v. Levinson*, 485 U.S. 224 (1988); *Korn v. Franchard Corp.*, 456 F.2d 1206.1209 (2d Cir. 1972); *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985)("Class actions are a particularly appropriate and desirable

---

[1] This Motion for Class Certification is being filed with the Court at the same time as Lead Plaintiff's Consolidated Amended Class Action Complaint for Violation of the Federal Securities Law (the "Complaint'), pursuant to the Court's instruction at the October 6, 2005 hearing.

1

means to resolve claims based on the securities laws, 'since the effectiveness of the securities laws may depend in large measure on the application of the class action device'") (quoting *Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3rd Cir.1970)).

Accordingly, Steelworkers respectfully requests that the Court grant its Motion for Class Certification.

## II. FACTS

On February 11, 2005, before the market opened, Veeco shocked the market by announcing that it would postpone the release of audited results for the fourth quarter and full year 2004 pending completion of an internal investigation of improper accounting transactions at its TurboDisc division which Veeco had acquired from Emcore Corporation in November 2003. The Company stated that it expected that this investigation would lead to adjustments requiring the restatement of the financials statements previously issued for the three quarterly periods and nine months ended September 30, 2004, and that the restatement would be expected to reduce Veeco's pre-tax earnings for the nine months by between $5.5 and $7.5 million. Following the announcement, shares of Veeco fell $1.90 per share, or 10.07%, to $16.96 per share from $18.86 at the close of the previous day's trading, on unusually high trading volume.

On March 16, 2005, the Company announced that it had completed its internal accounting investigation and had determined that its previously issued financial statements were required to be restated to decrease pre-tax earnings by a total of $10.2 million for the three quarterly periods, and attributed the restatement to the actions of a "single individual at TurboDisc whose employment had been terminated." Defendants also admitted in their March 16 press release that TurboDisc was seriously unprofitable. In the Complaint, Lead Plaintiff has alleged the true details of the basis of the improper accounting for revenues and expenses that caused the financial statements to be false and misleading.

As Lead Plaintiff has alleged, Veeco acquired the TurboDisc MOCVD business from Emcore on November 3, 2003, for a total cost of $63.7 million. The $63.7 million was a major cash outlay,

which represented more than twenty percent of Veeco's equity. Announcing the acquisition on November 3, 2004, defendants proclaimed that TurboDisc would yield cost-saving "synergies" under Veeco ownership that would increase TurboDisc's gross margin to 46% and yield an operating profit of 15%, when under Emcore's control gross margin and operating profit was 36% and 3.7%, respectively. Defendants continued to tout the purported "synergies" throughout the Class Period.

Contrary to their public statements, the defendants knew that there was no possible way that Veeco could achieve "synergies" with TurboDisc. Based on their own four months of pre-acquisition due diligence and their knowledge of their own business, Defendants knew that TurboDisc's operations could not be combined with Veeco's. TurboDisc manufactured a totally different product based on a totally different technology, employed a separate work force with unique specialized skills, and was based in a different geographic location. TurboDisc was located in Somerset, New Jersey whereas Veeco's MBE factory was located in St. Paul, Minnesota.

Unbeknownst to the investing public, Defendants hoped to increase TurboDisc's profitability by gambling that Veeco could manufacture component parts in-house instead of buying them. The strategy called for a major change in TurboDisc's manufacturing operations. Immediately after Veeco's acquisition of TurboDisc, the Defendants began to manufacture critical precision components in-house instead of continuing to purchase them from reliable vendors as Emcore had done, despite the fact that Veeco had no previous experience in manufacturing these components. The high-risk "make" as contrasted to "buy" plan placed the newly acquired TurboDisc division in jeopardy, and quickly resulted in higher warranty costs, and an accumulation of unsaleable parts and equipment, and loss of customer confidence.

In addition, Defendants sought to increase TurboDisc's reported margins and profits by initiating an experimental program of building generic MOCVD reactors on speculation - reactors that they hoped to be able to customize later to a customer's specifications. Building generic reactors was an unprecedented and risky experiment for Veeco. Typically, the manufacturing time to build a customized TurboDisc MOCVD reactor was an average of 120 days and they were custom built

3

to the specifications of the customer. Because Defendants wanted to be able to fill hoped-for future orders more quickly, they decided to build and stockpile "generic" reactors that they hoped they could later customize to the customer's specifications. The speculative venture resulted in an accumulation of virtually worthless machines because (a) they were built with Veeco's defective in-house manufactured components, and therefore were non-working; and (b) they could not be sold because customers wanted reliable machines that were built to their specifications.

Also, Veeco improperly recognized revenue on machines that had not yet been sold. Veeco further improperly recognized revenue under a Transitional Services Agreement ("TSA") which Veeco entered into with Emcore as part of the TurboDisc acquisition. The agreement provided that Veeeco would provide equipment and support services to Emcore as a favored customer a year-to-year basis and furnish Emcore with a billing statement at the end of each year. Because no interim billing occurred pursuant to the terms of the TSA, Veeco improperly recorded excessive revenue over the year because the revenue overstatements were assured to be non-detectable for a year.

Veeco's revenues did indeed increase as a result of the above described fraudulently recognized revenues, and expenses did indeed drop as a result of manufacturing parts in-house instead of buying from third-parties. However, the cost-cutting initiatives resulted in serious quality problems which led to rapidly increasing warranty costs, the loss of customers, and the build-up of an inventory of non-saleable part and MOCVD reactors built on speculation. These negative effects more than offset the earnings effect of cost savings and the improperly recognized revenue. The quality problems led to mushrooming warranty claims, the loss of customers and an accumulation of more than $5 million of inventory which should have been written down but was not. TurboDisc's true operating margin dropped dramatically and it suffered losses, but one never learned this by reading Veeco's financial statements or listening to Veeco's conference calls.

Because disclosure of the severe quality problems would undoubtedly have resulted in sales cancellations and adversely impacted TurboDisc's business prospects, Defendants concealed the

adverse information and, instead, filed materially false and misleading reports with the SEC and issued materially false and misleading financial statements which falsely portrayed the TurboDisc division as robust and increasing in profitability. Defendants also failed to disclose that after the acquisition, TurboDisc's accounting department had been reduced to a staff of two people under Veeco. The cutback materially weakened TurboDisc's internal accounting controls and created and fostered an environment that permitted Defendants to conceal the false financial reporting.

On February 11, 2005, when Defendants announced the need to restate Veeco's financial statements and the truth (albeit, lacking certain details, as described in the Complaint) about TurboDisc's unprofitability was revealed, the price of Veeco's stock fell more than 10%, from $18.86 to $16.96 on a day the market rose significantly.

### III.   ARGUMENT

#### A.   General Considerations For Class Certification Under Rule 23(a)

The criteria for class certification are set forth in Rule 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

A class action affords a single forum in which to litigate the same or similar claims, and affords an indispensable mechanism to conserve judicial resources. *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979); *Korn v. Franchard Corp.*, 456 F.2d 1206 (2d Cir. 1972). The Supreme Court as well as courts throughout the country have endorsed the utility and necessity of the class action mechanism in securities law claims. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (Class actions allow the "plaintiff to pool claims which would be uneconomical to litigate individually . . . . [M]ost of the plaintiffs would have no realistic day in court if a class action were not available"); *Green v. Wolf Corp.*, 406 F.2d 291, 296 (2d Cir. 1968)(class actions are the "appropriate means for expeditious litigation" of securities fraud claims); *Eisenberg*, 766 F.2d at 785.

"The Second Circuit has directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation," and, "in an alleged securities fraud case, when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward." *In re Blech Sec. Litig.,* 187 F.R.D. 97, 102 (S.D.N.Y. 1999); *See also Korn,* 456 F.2d at 1208-09; *Green v. Wolf,* 406 F.2d at 298, 301.

As amply demonstrated by the allegations in the Complaint, class certification is appropriate in this case because each of the requirements contained in Rule 23(a) -- numerosity, commonality, typicality and adequacy of representation -- has been satisfied in this action.[2] If the four prerequisites of Rule 23(a) are met, a plaintiff must also demonstrate that the action qualifies for class action treatment under one of three criteria set forth in Rule 23(b).[3] Here, Steelworkers moves for class certification under Rule 23(b)(3), which requires that "questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). As demonstrated below, Steelworkers has met its burden of showing that the requirements of Rule 23(a) and of Rule 23(b)(3) are satisfied.

    1.    **The Requirements Of Rule 23(a) Are Satisfied**

        a.    **Rule 23(a)(1): The Members Of The Class Are So Numerous That Joinder Of All of Them Is Impracticable**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all class members is 'impracticable.'" *See DeMarco v. Nat'l Collector's Mint, Inc.,* 229 F.R.D. 73, 80 (S.D.N.Y. 2005)(McMahon, J.)(quoting *Petrolito v. Arrow Fin. Servs.*, *LLC*, 221 F.R.D. 303, 309 (D.Conn.

---

[2] Indeed, by virtue of its October 12, 2005 Order appointing Steelworkers as Lead Plaintiff, the Court has already made a preliminary finding that Steelworkers satisfies the adequacy and typicality requirements of Rule 23. *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001)("a court must ensure that a movant satisfies both the typicality and adequacy requirements of Rule 23 before conferring upon that movant the status of presumptive lead plaintiff.") *see also* 15 U.S.C. 78u-4(a)(2)(B)(iii).

[3] Rule 23(b) provides three alternative requirements for an action to be maintained as a class action. Rule 23(b)(1) and (2) are not applicable in this case.

2004)("Generally, courts will find a class sufficiently numerous when it comprises 40 or more members"). For the purposes of Rule 23(a)(1), "impracticability does not require impossibility," but only the difficulty or inconvenience of joining all members of the class. *In re Blech Sec. Litig.,* 187 F.R.D. at 103. In determining whether a proposed class meets the numerosity requirement, "a court may make common sense assumptions." *Id.* (quoting *German v. Federal Home Loan Mort. Corp.,* 885 F.Supp. 537, 552 (S.D.N.Y. 1995).

In this case, the numerosity requirement is easily satisfied. Approximately 30 million shares of Veeco common stock were outstanding during the Class Period, and the stock was actively traded on NASDAQ. Steelworkers believes that there are at least hundreds or thousands of members of the Class and that they are geographically dispersed. *See De la Fuente v. DCI Telecomms. Inc.,* 206 F.R.D. 369, 390 (S.D.N.Y. 2002)(McMahon, J.) ("It is unnecessary to state the precise number of investors who are proposed class members, especially in securities litigation")(citing *Somerville v. Major Exploration, Inc.,* 102 F.R.D. 500, 502-03 (S.D.N.Y. 1984)). Joinder is also impracticable because of the relatively small size of each class member's claim, the geographical diversity of the members of the Class and the nature of claims alleged -- i.e., securities fraud. *See In re Alco Int'l Group Sec. Litig.*, 158 F.R.D. 152, 153-54 (S.D. Cal. 1994) ("[w]hether or not the Class numbers in the hundreds or in the thousands, joinder is clearly impractical where a large group of people, dispersed all across the country, are involved").

For the foregoing reasons, the numerosity requirement of Rule 23(a)(1) is satisfied.

      b.      **Rule 23(a)(2): There Are Questions Of Law And Fact Common To The Class**

Like numerosity, the commonality requirement has been construed liberally in securities fraud litigation. *See Blech Sec. Litig.,* 187 F.R.D. at 104 ("The commonality requirement of Rule 23(a)(2) has been applied permissively by courts in the context of securities fraud litigation."). "Commonality is not defeated by slight differences in class members' positions or because 'all of the allegations do not fit together like pieces in a jigsaw puzzle.'" *Id.* (quoting *Green v. Wolf,* 406 F.2d at 300). Rule 23(a)(2) is satisfied where the proposed Class representatives share at least one

7

question of fact or law with the claims of the prospective class. *See DeMarco,* 229 F.R.D. at 80 (citing *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001); *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992); *Fox v. Cheminova, Inc.*, 213 F.R.D. 113, 126 (E.D.N.Y. 2003)). The commonality requirement under Rule 23(a)(2) is easily satisfied in this action because the existence, nature and significance of Defendants' omissions and misrepresentations -- the most important issues in a securities fraud case -- are issues common to all class members, and the Class is bound by a common interest in determining whether Defendants' conduct is actionable. *De la Fuente,* 206 F.R.D. at 390 ("For common issues of fact to exist in the context of securities fraud, it is sufficient that similar material misrepresentations and/or omissions need to have been made to the members of the class–absolute uniformity is not required."); *see also Eisenberg*, 766 F.2d at 786 ("Plaintiffs presented a sufficient number of common questions of law and fact to meet the requirements of Rule 23 (a)(2), in particular the defendants' liability for the alleged omissions and misrepresentations common to the offering and sale of all three limited partnerships."). Securities fraud actions containing such common questions have repeatedly been held to be "prime candidates" for class certification. *Blackie v. Barrack*, 524 F. 2d 891, 902-905 (9th Cir. 1975).

Among the questions of law and fact common to the Class in this action are:

(a) whether Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act and SEC Rule 10b-5;

(b) whether the federal securities laws were violated by Defendants' acts and omissions as alleged in the Complaint;

(c) whether Defendants participated in and pursued the common course of conduct and fraudulent scheme complained of in the Complaint;

(d) whether the documents, reports, filings, releases and statements disseminated to the investing public during the Class Period omitted and/or misrepresented material facts about the business, performance, and prospects of Veeco;

(e) whether Defendants acted knowingly or recklessly in omitting to state and/or misrepresenting material facts;

(f) whether the market price of Veeco securities, during the Class Period, was artificially inflated due to the non-disclosures and/or misrepresentations complained of herein; and

(g) whether the proposed Class representative and the other members of the Class have sustained damages and, if so, the appropriate measure thereof.

For all the foregoing reasons, the commonality requirement of Rule 23(a)(2) is satisfied.

### c. Rule 23(a)(3): Steelworkers' Claims Are Typical Of The Claims Of The Class

The typicality requirement of Rule 23(a)(3) is satisfied if a plaintiff's claims arise from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory. Even "significant factual differences will not preclude a finding of typicality where there is a strong similarity of legal theories." *Cullen v. Whitman Med. Corp.*, 188 F.R.D. 226, 230 (E.D.Pa. 1999); *see also Blech Sec Litig.*, 187 F.R.D. at 105 (quoting *In re NASDAQ Market-Makers Antitrust Litig.,* 172 F.R.D. 119, 126 (S.D.N.Y. 19997)("Typicality, however, does not require that the situations of the named representatives and the class members be identical.")). In this case, Steelworkers purchased Veeco securities at artificially inflated prices and suffered losses as a result of the alleged fraud.

Accordingly, Steelworkers' claims are typical of the claims of the Class within the meaning of Rule 23(a)(3) because it seeks to recover damages caused by the same materially false and misleading statements and course of conduct that give rise to the claims of all members of the proposed Class. Steelworkers, like all other class members, suffered losses from its transactions in Veeco securities during the Class Period and in order to recover, it will have to prove the same wrongful conduct by Defendants as the rest of the Class. *Blech*, 187 F.R.D. at 105 ("The Plaintiffs' claims more than satisfy the typicality requirement because they arise 'from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability'")(quoting *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir. 1992).

### d. Rule 23(a)(4): Steelworkers Will Fairly And Adequately Protect The Interests Of The Members Of The Class

Under Rule 23(a)(4), plaintiff (1) must not have any conflict that might prevent it from representing the interests of the Class and (2) its counsel must be competent to conduct a class action. *DeMarco,* 229 F.R.D. at 80. The requirements of fair and adequate representation in Rule 23(a)(4) are "designed to ensure that absentee class members' interests are fully pursued" by the class representatives before the court. *In re Centocor Sec. Litig. III,* 1999 WL 54530 at *3 (E.D. Pa. Jan. 27, 1999).

Here, both prongs of the adequacy requirement of Rule 23(a)(4) are satisfied. First, there are no conflicts of interest between Steelworkers and the other members of the Class. As stated above, Steelworkers, like the other Class members, was damaged as a result of Defendants' alleged unlawful conduct during the Class Period, and it will have to prove the same wrongdoing as the absent Class members in order to establish Defendants' liability. Steelworkers is a dedicated institutional investor who has already demonstrated that it will vigorously prosecute the claims brought in this action on behalf of itself and the Class, and thus, no Class members will be disadvantaged by Steelworkers' representation in this action.

Second, Steelworkers has retained the law firm of Berger & Montague, P.C., which is qualified, experienced and able to conduct this type of complex securities litigation. In its October 12, 2005 Order appointing Berger & Montague, P.C. to serve as Lead Counsel, this Court noted that "[t]he firm of Berger & Montague, Steelworkers' attorneys, are well known and experienced class counsel." *See In re Veeco Instruments, Inc. Sec. Litig.,* No. 7:05-md-1695 at p. 2 (S.D.N.Y Oct. 12, 2005)(decision and order selecting lead plaintiff and lead counsel).

Given the lack of conflict and the retention of competent counsel, Steelworkers satisfies the "adequacy" requirement of Rule 23(a)(4).

Accordingly, the requirements of Rule 23(a) are satisfied.

### 2.    The Requirements Of Rule 23(b)(3) Are Satisfied

In addition to meeting the requirements of Rule 23(a), Steelworkers is also required to satisfy Rule 23(b)(3), which states:

> (b)    Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> * * *
>
> (3)    the court finds that the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Rule 23(b)(3) is satisfied in this action because (i) questions of law or fact common to the class members predominate over any questions affecting only individual class members and (ii) a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

#### a.    Common Questions Of Law And Fact Predominate Over Any Individual Issues

To ensure that the class action is more efficient than individual actions, Rule 23(b) requires that common issues predominate over issues that are particular to the proposed Class representative. "Although Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of any individual issues." *Smith v. Dominion Bridge Corp.*, 1998 WL 98998 at *5 (E.D. Pa. Mar. 6, 1988); *see Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981) ("To be sure, individual issues will likely arise in this as in all class action cases. But, to allow various secondary issues of plaintiffs' claim to preclude certification of a class would render the rule an impotent tool for private enforcement of the securities laws."); *De la Fuente,* 206 F.R.D. at 391 ("Individual questions of reliance do not preclude class certification."..."Common issues may still predominate even where there are individualized damage issues."). "In determining whether common questions predominate, a court's inquiry is directed towards whether the issue of liability is common to the member of the class." *Blech Sec. Litig.,* 187 F.R.D. at 107. The United States Supreme Court has stated that "[p]redominance is a test readily

met in certain cases alleging consumer or *securities fraud* or violations of the antitrust law." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997) (emphasis added).

In this case, common questions will predominate over any individual issues which theoretically might exist. The Complaint alleges that throughout the Class Period, Defendants engaged in misrepresentations and omissions which had the effect of artificially inflating the price of Veeco's securities. If Steelworkers and each of the Class members were to bring individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability. *See, e.g., Blech Sec. Litig.*, 187 F.R.D. at 107 ("common questions of law and fact relating to liability relating exist as to all members of the Class and predominate over any questions affecting solely individual members."). Indeed, courts have repeatedly held that common issues predominate over individual issues even where the false and misleading representations were issued over significant lengths of time in many different documents. *See Green v. Wolf*, 406 F.2d at 294 (material misrepresentations contained in three prospectuses issued over the course of two and one-half years); *Blackie v. Barrack,* 524 F.2d at 894 (material misrepresentations contained in forty-five documents issued over a two year period); *Piel v. National Semiconductor Corp.*, 86 F.R.D. 357, 368 (E.D. Pa. 1980) ("it should not be permissible for a defendant to escape the possible effect of a class action merely because the wrong alleged was elaborately conducted over a long period of time and by a variety of different activities.").

Common issues also predominate here because Veeco is traded on an efficient market, and because Lead Plaintiff and all other members of the proposed Class enjoy a common presumption of reliance under the fraud-on-the-market theory applicable to cases brought under Rule 10b-5. As alleged in detail in the Complaint, the market for Veeco's securities was open, well-developed, and efficient at all times during the Class Period. Veeco was traded on NASDAQ, a highly efficient market, and was covered by many well known securities analysts employed by major brokerage and investment firms, including Needham & Company, W.R. Hambrech & Co., Smith Barney Citigroup, Adams Harkness Hill and Wells Fargo Securities, all of whom wrote reports which entered the

public marketplace. Veeco regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases carried by national newswires, and through other wide-ranging public disclosures such as with the financial press. The market for Veeco securities promptly digested current information about Veeco from all publicly-available sources and reflected such information in the price of Veeco's securities. Under these circumstances, Lead Plaintiff and other members of the Class it seeks to represent all purchased or otherwise acquired Veeco securities relying on the integrity of the market price of Veeco securities and market information about Veeco, and were damaged thereby.

### b. A Class Action Is Superior To Numerous Individual Actions

A class action is superior to other available methods for the fair and efficient adjudication of this litigation within the meaning of Rule 23(b)(3) because: (i) absent class certification, the Court is faced with the potential burden of litigating potentially thousands of individual lawsuits, all of which would arise out of the same set of operative facts alleged in the Complaint; (ii) the resolution of common issues alleged in one action will both produce an efficient use of judicial resources and result in a single outcome that is binding on all class members; (iii) any administrative difficulties in handling potential individual issues under the class action device are less burdensome than the problems which are likely to arise in handling the claims in thousands of separate actions; and (iv) because of the prohibitive expense of maintaining individual actions, denial of class certification here would effectively prevent numerous individuals from asserting their claims against the Defendants and render meaningless the causes of action provided under the federal securities laws. Accordingly, a class action is the superior way to litigate the claims alleged in this action. *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (class action plaintiffs pool claims that are uneconomical to litigate individually); *Blech Sec. Litig.,* 187 F.R.D. at 107 ("In general, securities suits...easily satisfy the superiority requirement of Rule 23."); *Eisenberg*, 766 F.2d at 785 ("Class actions are a particularly appropriate and desirable means to resolve claims based on the

securities laws, 'since the effectiveness of the securities laws may depend in large measure on the application of the class action device.'") (quoting *Kahan v. Rosenstiel*, 424 F.2d at 169).

## IV. CONCLUSION

For the foregoing reasons, Lead Plaintiff the Steelworkers Pension Trust, respectfully requests that the Court enter an Order: (1) certifying a plaintiff Class as defined herein pursuant to Fed. R. Civ. P. 23(b)(3); (2) certifying this action as a class action on behalf of all persons who purchased Veeco securities during the period from November 3, 2003 and February 10, 2005, inclusive, and were damaged thereby; and (3) certifying Steelworkers as Class Representative.

Dated: November 7, 2005        Respectfully submitted,

**BERGER & MONTAGUE, P.C.**

By:  /s/ *Sherrie R. Savett*
Sherrie R. Savett (I.D. 17646)
Phyllis M. Parker
Douglas M. Risen
Jeffrey Osterwise
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875 - 3000
Fax: (215) 875 - 4604

*Lead Counsel for Lead Plaintiff/*
*Proposed Class Representative Steelworkers Pension Trust*