UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE VEECO INSTRUMENTS INC. SECURITIES LITIGATION

No. 7:05-MD-01695-CM

THIS DOCUMENT RELATES TO: ALL ACTIONS

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Phone: (212) 351-4000
Fax: (212) 351-4035

Counsel for Defendants Veeco Instruments Inc., Edward H. Braun, John F. Rein, Jr. and John P. Kiernan

December 19, 2005

TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 2

I. STEELWORKERS PENSION TRUST ..... 2

II. FOX ASSET MANAGEMENT'S PURCHASE OF VEECO STOCK ..... 3

ARGUMENT ..... 4

I. THE STEELWORKERS PENSION TRUST IS ATYPICAL AND CANNOT ADEQUATELY REPRESENT THE PUTATIVE CLASS ..... 5

II. THE STEELWORKERS PENSION TRUST IS NOT AN ADEQUATE CLASS REPRESENTATIVE ..... 9

III. IF THE ACTION GOES FORWARD, THE CLASS PERIOD SHOULD BE LIMITED TO THE PERIOD FROM APRIL 26, 2004 TO FEBRUARY 10, 2005 ..... 12

CONCLUSION ..... 14

# TABLE OF AUTHORITIES

## Cases

*Ansari v. New York Univ.*, 179 F.R.D. 112 (S.D.N.Y. 1998) .......... 4

*Axelrod v. Cities Serv. Co.*, No. 82 Civ. 4062, 1983 WL 1288 (S.D.N.Y. Mar. 17, 1983) .......... 7

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988) .......... 8

*Beck v. Status Game Corp.*, No. 89 Civ. 2923 (DNE), 1995 WL 422067 (S.D.N.Y. July 14, 1995) .......... 10

*Darvin v. Int'l Harvester Co.*, 610 F. Supp 255 (S.D.N.Y. 1985) .......... 10

*Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. 1968) .......... 5

*Epstein v. Am. Reserve Corp.*, No. 79 C 4767, 1988 WL 40500 (N.D. Ill. 1988) .......... 5, 8

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith*, 903 F.2d 176 (2d Cir. 1990) .......... 4, 6

*Gen'l Tel. Co. v. Falcon*, 457 U.S. 147 (1982) .......... 4

*Greenspan v. Brassler*, 78 F.R.D. 130 (S.D.N.Y. 1978) .......... 7, 10

*In re Colonial P'ship Litig.*, No. H.-90-829 (JAC), 1993 WL 306526 (D. Conn. Feb. 10, 1993) .......... 12

*Irvin E. Schermer Trust v. Sun Equities Corp.*, 116 F.R.D. 332 (D. Minn. 1987) .......... 8

*Koenig v. Benson*, 117 F.R.D. 330 (E.D.N.Y. 1987) .......... 8, 10

*Markewich v. Ersek*, 98 F.R.D. 9 (S.D.N.Y. 1982) .......... 7, 8

*Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66 (E.D.N.Y. 2000) .......... 4

*Weber v. Goodman*, 9 F. Supp. 2d 163 (E.D.N.Y. 1998), *modified*, No. CV-97-1376 (CPS), 1998 WL 1807355 .......... 12

*Wilner v. OSI Collection Servs., Inc.*, 201 F.R.D. 321 (S.D.N.Y. 2001) .......... 11, 12

*Zemel Family Trust v. Philips Int'l Realty Corp.*, 205 F.R.D. 434 (S.D.N.Y. 2002) .......... 10

## Rules

22 N.Y.C.R.R. § 1200.22 .......... 11

Fed. R. Civ. P. 23 .......... passim

## Other Authorities

7A Charles A. Wright, *et al.*, Federal Practice and Procedure § 1766 (2d Ed. 1986) .......... 9

Defendants Veeco Instruments Inc ("Veeco"), Edward H. Braun, John F. Rein, Jr. and John P. Kiernan respectfully submit this memorandum of law in opposition to Plaintiff's motion for class certification.

**PRELIMINARY STATEMENT**

Discovery relating to class certification has been revealing. Although the Steelworkers Pension Trust alleges in the Amended Complaint that Veeco perpetrated a "fraud on the market," its money manager, Fox Asset Management – which was solely responsible for Plaintiff's purchases of Veeco stock during the class period and to whom Plaintiff delegated complete investment authority – testified that it was not misled by Veeco. Thus, Plaintiff is subject to unique defenses based on its apparent lack of reliance that render it atypical of the class members whom it seeks to represent.

Discovery also revealed that the Steelworkers Pension Trust is not an adequate plaintiff. Plaintiff apparently agreed to lend its name to this action after consulting with counsel for less than thirty minutes. Moreover, the Steelworkers' representative is not sufficiently knowledgeable about key aspects of the action – namely the basis for the purported class period – to adequately protect the interests of absent class members. Lastly, the Steelworkers Pension Trust is not prepared to assume any litigation costs in this matter as required by applicable New York rules regarding plaintiff's obligation to absorb certain costs.

For these reasons, this Court should deny Plaintiff's motion for class certification. In the alternative, if this action proceeds (which it should not), the Court should limit the class period to the period from April 26, 2004 through February 10, 2005.

**STATEMENT OF FACTS**

Plaintiff seeks certification of a class consisting of persons who acquired Veeco stock between November 3, 2003 (the day that Veeco announced the TurboDisc acquisition) and February 10, 2005 (the day before the restatement was announced). *See* Amended Complaint ("Am. Compl.") ¶ 22.

**I. STEELWORKERS PENSION TRUST**

The Steelworkers Pension Trust manages the pensions of approximately 50,000 members of the Steelworkers Union. *See* Transcript of December 8, 2005 Deposition of Richard Hoffman ("Hoffman Tr."), House Counsel to the Steelworkers Pension Trust, at 17:15-22 (attached as Exhibit A to the Declaration of Robert F. Serio ("Serio Declaration")). The Steelworkers Pension Trust is managed by a 10 member board of trustees. *Id.* at 12:2-4. The board of trustees retains approximately 20 money managers that invest the Steelworkers Pension Trust's pension funds. *Id.* at 19:16-20-4. The Steelworkers Pension Trust executes an Investment Management Agreement with each money manager that contains general investment guidelines, but all decisions regarding the purchase of individual stocks are left to the unfettered discretion of the money managers. *Id.* at 19:16-20:4, 54:5-14. The Steelworkers Pension Trust also retains a consultant, Richard Dahab & Associates, that monitors the performance of the money managers and provides periodic recommendations to the Steelworkers Pension Trust's board of trustees concerning which money managers to retain or terminate. *Id.* at 41:4-18, 49:14-50:15. Mr. Dahab does not directly manage any of the Steelworkers Pension Trust's investment funds.

Because the Steelworkers Pension Trust delegated all investment authority to its money managers, neither the employees of the Steelworkers Pension Trust nor the board participated in any investment decision by the money managers to purchase Veeco stock. *Id.* at 19:16-20:4.

## II. FOX ASSET MANAGEMENT'S PURCHASE OF VEECO STOCK

Fox Asset Management was the money manager that acquired Veeco stock for the Steelworkers Pension Trust during the alleged class period. *Id.* at 56:9-13. On January 6, 2004, over two months into the class period and 13 months before the restatement was announced, Fox Asset Management sold 40,000 shares of Veeco stock that it acquired on the Steelworkers Pension Trust's behalf prior to the proposed class period, resulting in proceeds of $1,255,197.17 and a substantial gain to the Steelworkers Pension Trust of $222,172.167. *Id.* at 109:13-110:12, 122:3-23.[1] Fox Asset Management subsequently purchased 40,000 shares of Veeco stock in two blocks in May 2004 at an investment cost of $941,595.11. *Id.* at 110:21-112:6.[2] Neither the Steelworkers Pension Trust's employees nor its board members participated in Fox Asset Management's decisions to purchase and sell Veeco stock. *Id.* at 19:16-20:4; Transcript of December 15, 2005 Deposition of William Dodge ("Dodge Tr.") at 32-33 (attached as Exhibit B to the Serio Declaration). Thus, they do not know what factors, if any, Fox Asset Management relied on in deciding to purchase Veeco stock. Hoffman Tr. at 124:4-125:5.

Although the Steelworkers purport to represent persons who purchased Veeco stock during the class period in reliance on allegedly false or misleading statements by the Veeco defendants, Fox Asset Management's President and CEO, William Dodge, made clear in his

---

1 Plaintiff thus benefited from any alleged inflation of the price of Veeco stock throughout the period from November 3, 2003 (the beginning of the alleged class period) to January 6, 2004.

2 As evidenced by the timing of its trades, Fox Asset Management was an "out and in" trader in Veeco stock during the class period. Notably, between January 6, 2004 and May 2004, Veeco's stock price dipped approximately 20% even though there had been no announcement casting doubt on Veeco's prior financial statements. *See* Exhibit C to the Serio Declaration.

deposition, that he did not believe that Veeco misled Fox Asset Management into purchasing Veeco stock on behalf of the Steelworkers:

> Q. Do you believe that Fox Asset Management was somehow misled by Veeco Instruments into purchasing Veeco stock?
>
> A. I have no reason to believe that's correct.

Dodge Tr. at 58:17-21.

## ARGUMENT

It is well-established that "[t]he burden of proving each of the requisite elements of Rule 23 is on the party seeking certification, and failure to prove any element precludes certification." *Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998); *see also Pecere v. Empire Blue Cross & Blue Shield*, 194 F.R.D. 66, 69-70 (E.D.N.Y. 2000) ("Plaintiffs bear the burden of establishing each requirement under Rule 23 for class certification, and their failure to meet any one of Rule 23's requirements destroys the alleged class action.").

To satisfy Rule 23(a), a plaintiff must demonstrate: (1) numerosity of the parties, (2) commonality of legal and factual issues, (3) typicality of the claims and defenses of the class representative, and (4) adequacy of representation. As the Supreme Court has made clear, a class action "may only be certified if the trial court is satisfied, *after a rigorous analysis*, that the prerequisites of Rule 23(a) have been satisfied." *Gen'l Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982) (emphasis added). Here, Plaintiff fails to satisfy its burden under Rule 23(a)(3) and (4).

Plaintiff does not, and cannot, satisfy the typicality requirements of Rule 23(a)(3). As the Supreme Court has made clear, a proposed class representative must, among other things, have "suffer[ed] the same injury as the class members." *Falcon*, 457 U.S. at 156. Thus, "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Gary Plastic Packaging Corp. v. Merrill*

*Lynch, Pierce, Fenner & Smith*, 903 F.2d 176, 180 (2d Cir. 1990) (denying class certification). Here, the Steelworkers Pension Trust is subject to a unique reliance defense because it relied exclusively on the advice of an investment advisor that does not believe it was misled into purchasing Veeco stock.[3] *See Epstein v. Am. Reserve Corp.*, No. 79 C 4767, 1988 WL 40500, at *3 (N.D. Ill. 1988) (refusing to certify class where "named plaintiffs testified that they did not rely directly on any of the challenged financial statements, annual reports or Form 10-Ks").

In addition, to satisfy Rule 23(a)(4)'s adequacy requirement, the proposed class representative must establish that it will adequately represent the class. Indeed, "courts have expressed particular concern for the adequacy of representation in a class suit because the judgment conclusively determines the rights of absent class members." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968). The Steelworkers Pension Trust fails to make the necessary showing that it can adequately represent absent class members.

## I. THE STEELWORKERS PENSION TRUST IS ATYPICAL AND CANNOT ADEQUATELY REPRESENT THE PUTATIVE CLASS

The Steelworkers Pension Trust is an atypical class representative for the simple reason that it relied exclusively on a money manager, Fox Asset Management, that does not believe that it was misled into purchasing Veeco stock on the Steelworkers' behalf. Dodge Tr. at 58:17-21.

As noted above, in order to satisfy the typicality requirement of Rule 23(a)(3), a proposed class representative must, among other things, "suffer the same injury as the other class

---

[3] For this reason, Plaintiff also fails to meet its burden under Rule 23(b)(3), which requires the Court to decide whether "questions of law or fact common to members of the class predominate over any questions affecting only individual members," and whether a "class action is superior to other available methods for the fair and efficient adjudication of controversy."

members." *Falcon*, 457 U.S. at 156. In addition, the putative class representative must not be subject to unique defenses "which threaten to become the focus of the litigation." *Gary Plastics Packaging Corp.*, 903 F.2d at 180. Here, the proposed class representatives are subject to unique defenses relating to reliance that defeat any claim of typicality.

Rather than prove reliance individually, Plaintiff purports "to rely on the fraud-on-the-market doctrine." Am. Compl. ¶¶ 142-43. During his deposition, however, the Steelworkers' representative, Richard Hoffman, admitted that Plaintiff did not review *any* materials of *any* kind – financial statements or otherwise – before purchasing Veeco stock. Hoffman Tr. at 19:16-20:4, 77:10-17. Instead, Plaintiff purchased Veeco stock based *exclusively* on the advice of Fox Asset Management – one of its twenty money managers:

Q: Do you have any responsibility for making investment decision on behalf of Steelworkers Pension Trust?

A: No.

Q: Who within the Steelworkers Pension Trust has responsibility for making those sorts of decisions?

A: Investment decisions?

Q: Yes.

A. The money managers.

Q: Who are the Steelworkers current money managers?

A: Well, we have 20.

*Id.* at 19:16-20:4. Mr. Hoffman likewise made clear during his deposition that the Steelworkers Pension Trust not only relies on its money managers for investment advice, but actively avoids any role in investment decisions:

Q: How common is it for a money manager to consult with the Steelworkers Pension Trust about a particular investment?

A: It is extremely uncommon and discouraged.

Q: Why is it discouraged?

A: Because the trustees are seeking insulation. The trustees do not want to be responsible for investments that go sour.

* * * *

[W]e don't actually make the investment decision. The money manager has the responsibility.

*Id.* at 39:19-40:21. The Steelworkers' exclusive reliance on its money managers renders it atypical of the class. *See Axelrod v. Cities Serv. Co.*, No. 82 Civ. 4062, 1983 WL 1288, at *4 (S.D.N.Y. Mar. 17, 1983) (denying class certification where proposed class representative purchased stock based on his broker's advice that professional traders and arbitragers were also acquiring the stock); *Markewich v. Ersek*, 98 F.R.D. 9, 10-11 (S.D.N.Y. 1982) (refusing to certify class where the proposed class representative relied on the recommendation of a broker who was privy to inside information); *Greenspan v. Brassler*, 78 F.R.D. 130, 132 (S.D.N.Y. 1978) ("Plaintiffs' possible reliance on another's expertise is sufficient to vitiate the typicality of their claims.").

The lack of typicality is underscored by the fact that Fox Asset Management, which was solely responsible for the Steelworkers' purchase of Veeco stock during the class period, does not believe that it was misled into purchasing Veeco stock:

Q. Do you believe that Fox Asset Management was somehow misled by Veeco Instruments into purchasing Veeco stock?

A. I have no reason to believe that's correct.

Dodge Tr. at 50-51.[4] Accordingly, if this case proceeds, the Steelworkers would be subject to a key defense – apparently distinctive to it, but, according to the Amended Complaint (*see* Am. Compl. ¶ 147), not typical of the class – that the sole agent responsible for investing its assets in Veeco stock during the putative class period does not believe that it was misled into purchasing Veeco stock. Plainly, a securities fraud plaintiff subject to the particularized defense that its own agent does not believe that it was misled into purchasing the disputed security for the plaintiff is not a proper class representative. *Epstein*, 1988 WL 40500 at *3 (refusing to certify class where neither the plaintiff nor its broker relied on allegedly misleading financial statements); *see generally Basic Inc. v. Levinson*, 485 U.S. 224, 249 (1988) (holding that presumption of reliance in fraud on the market cases is rebuttable).[5]

Here, moreover, Fox Asset Management appeared to have been a sophisticated trader with respect to Veeco whose interests appeared to focus on very specific pricing trends rather than on the overall "integrity" (*see Basic*, 485 U.S. at 247) of the price set by the market. Thus, just two months into the alleged class period, Fox sold all of the Veeco stock it bought before the beginning of the class period for a profit of over $200,000. Then, just over four months later, it

4 Other than "a few annual reports," Fox Asset Management's President and CEO, William Dodge was unable to locate any documents in Fox Asset Management's files that it used to evaluate its purchase of Veeco stock. Dodge Tr. at 59:7-15. Veeco never restated any of the year-end financial results contained in its annual reports.

5 *See also Koenig v. Benson*, 117 F.R.D. 330, 335 (E.D.N.Y. 1987) ("if a named plaintiff is subject to 'unique defenses' concerning his individual reliance, then attention will be diverted away from issues common to the class," which "would impair his ability to act as a representative for the class"); *Markewich*, 98 F.R.D. at 11 ("the possibility of the decision to purchase being based on one individual's unique information rather than the financial statements, or the market's reaction to those statements, precludes [plaintiff] . . . from adequately advancing the claims of the class"); *Irvin E. Schermer Trust v. Sun Equities Corp.*, 116 F.R.D. 332, 337 (D. Minn. 1987) (holding that "the presence of even an arguable defense peculiar to the proposed representative may destroy typicality").

bought back precisely the same number of shares – 40,000 – when the stock had dipped over 20% (*see* Ex. C) without any suggestion that the old price was inflated. If this case proceeds, Fox Asset Management's "out and in" trading behavior will be far from the typical "fraud-on-the-market" model. Plaintiffs, of course, have the burden to establish typicality, which they have not satisfied.

## II. THE STEELWORKERS PENSION TRUST IS NOT AN ADEQUATE CLASS REPRESENTATIVE

As noted above, a proposed class representatives also must establish that it can adequately represent the class. Plaintiff's ability to adequately represent the class here is suspect for three reasons.

First, the Steelworkers' representative suggested in his deposition that Plaintiff is willing to lend its name to virtually any securities action recommended by Plaintiff's counsel. Plaintiff apparently provides records of its securities holdings to Plaintiff's counsel as a matter of course:

> Q: Were you contacted by counsel in the first instance or did you contact counsel in the first instance?
>
> * * * *
>
> A: Well, the first contact would have come from us when we supplied them the information which is done routinely. We supply Miss Parker [Plaintiff's counsel] with information on our trades, and she will contact me if she thinks we might have an action.
>
> Q: So you provide information to Miss Parker on some sort of regular basis independent of whether there is any impending litigation?
>
> A: Yes.

*Id.* at 131:23-132:14. Plaintiff apparently authorized this action after consulting with counsel for just thirty minutes. *Id.* at 133:13-134:3. Taken together, these facts strongly suggest that Plaintiff is simply lending its name to an action that will be "controlled exclusively by class

counsel." *See Beck v. Status Game Corp.*, No. 89 Civ. 2923 (DNE), 1995 WL 422067, at *6 (S.D.N.Y. July 14, 1995) (quoting 7A Charles A. Wright, *et al.*, Federal Practice and Procedure § 1766 (2d Ed. 1986)). This runs counter to one of the main goals of the Private Securities Litigation Reform Act, which is to avoid lawyer-driven securities litigation. *See Zemel Family Trust v. Philips Int'l Realty Corp.*, 205 F.R.D. 434, 437 (S.D.N.Y. 2002) (denying motion for class certification).

Second, Mr. Hoffman is not sufficiently familiar with key aspects of the Plaintiff's claims to represent the class adequately. *Greenspan*, 78 F.R.D. at 134 ("Plaintiffs' limited personal knowledge of the facts underlying this suit as well as their apparently superfluous role in this litigation to date, indicate their inadequacy as class representatives"); *Darvin v. Int'l Harvester Co.*, 610 F. Supp 255, 257 (S.D.N.Y. 1985) (denying class certification where proposed class representative's deposition testimony indicated his "unfamiliarity with the action").

For example, Mr. Hoffman has no clear understanding as to why the class period set forth in the Amended Complaint runs from November 3, 2003 through February 10, 2005. *See Koenig*, 117 F.R.D. at 337 (holding that plaintiff who showed "little interest in concepts such as class period" was not an adequate class representative); *Darvin*, 610 F. Supp. at 257 (denying class certification where proposed class representative was, among other things, "unsure of who he purported to represent should the suit be certified as a class action"). In fact, during his deposition, Mr. Hoffman stated that the class period ran from April 26, 2004 through February 10, 2005 – the shorter period that Plaintiff's counsel initially proposed and vigorously defended to the Court in connection with its efforts to have the Steelworkers Pension Trust appointed as lead plaintiff. Hoffman Tr. at 94:23-95:17. When shown a copy of the Amended Complaint during his deposition, Mr. Hoffman stated that Plaintiff had changed its mind to assert a longer

class period because Fox Asset Management sold 40,000 shares of Veeco stock on the Steelworkers' behalf between November 3, 2003 and April 26, 2004. *Id.* at 102:20-103:21 and 106:3-20. This is a nonsensical reason for dating the class period because there is no basis for concluding that Plaintiff's sale of 40,000 shares in January 2004 – for a profit of over $200,000 – has any relevance to the claims of fraud in this case (although it does tend to undermine its typicality argument, as noted above).

Predictably, given his confusion regarding the proposed class period, Mr. Hoffman was not aware of any false or misleading statements made by Veeco prior to April 26, 2004. *Id.* at 97:20-25. Indeed, when presented during his deposition with three allegedly false or misleading documents dated prior to April 26, 2004 (*see* Am. Compl. ¶¶ 78-83) – Veeco's November 3, 2003 press release announcing the TurboDisc acquisition; a transcript of a conference call held by Veeco management on November 3, 2003; and Veeco's 2003 10-K filed on March 12, 2004 – Mr. Hoffman was unable to confirm that the documents were false or misleading, much less identify any specific misstatements or omissions in the documents. *Hoffman Tr.* at 98:2-101:8.

Third, the Steelworkers Pension Trust is not prepared to bear any litigation costs in this matter. Under applicable New York rules (*see* 22 N.Y.C.R.R. § 1200.22), a lawyer may advance litigation costs to a client so long as "the client remains ultimately liable" for the costs. In class actions, the class representative must accept "ultimate responsibility for [its] pro rata share of costs and expenses of [the] suit." *Wilner v. OSI Collection Servs., Inc.*, 201 F.R.D. 321, 326 (S.D.N.Y. 2001) (denying class certification). The Steelworkers Pension Trust testified during its deposition that it was unwilling to assume any costs associated with the litigation:

Q: Who[ is] responsible for the cost of this litigation on the plaintiff's side?

A: They are (pointing [to Plaintiff's counsel]). Contingent fee.

Q: Is that contingent fee memorialized in any sort of written agreement?

A: No, I don't believe so.

Q: If this action goes forward, [and] for whatever reason the Steelworkers don't receive any recovery, do you have any idea whether the Steelworkers would have any obligation to assume other costs related to the action?

A: [] we have no obligation to the attorneys in that case.

Q: Essentially what I'm asking is, if the court dismisses the action, do the Steelworkers, are the Steelworkers able to walk away without assuming any of the cost?

A: It costs us nothing.

*Id.* at 135:9-136:3. Plaintiff's unwillingness to accept its share of the litigation costs in this matter precludes it from serving as a class representative. *See Weber v. Goodman*, 9 F. Supp. 2d 163, 173-74 (E.D.N.Y. 1998), *modified*, No. CV-97-1376 (CPS), 1998 WL 1807355 (plaintiff must accept responsibility for his pro rata share of litigation costs in order to serve as a class representative); *Wilner*, 201 F.R.D. at 326 (denying class certification).

## III. IF THE ACTION GOES FORWARD, THE CLASS PERIOD SHOULD BE LIMITED TO THE PERIOD FROM APRIL 26, 2004 TO FEBRUARY 10, 2005

In the event this action survives the pending motion to dismiss, the class period should be limited to the period from April 26, 2004 – the date that Veeco announced its financial results for the first quarter of 2004 – through February 10, 2005. The Court may consider the factual record on a motion for class certification and is not required to credit the factual allegations in the Amended Complaint. *See In re Colonial P'ship Litig.*, No. H-90-829 (JAC), 1993 WL 306526, at *7 (D. Conn. Feb. 10, 1993) ("[T]he court should consider the fruits of class discovery in determining whether to grant certification."). Here, Mr. Hoffman's testimony confirms what was already apparent from the face of the Amended Complaint: there is no basis for a class period

that begins on November 3, 2003. The Amended Complaint is based on Veeco's restatement of its quarterly financial results for the first three quarters of 2004. Veeco announced its financial results for the first quarter of 2004 on April 26, 2004, nearly six months after the beginning of the putative class period. Mr. Hoffman was unable to offer any explanation – other than the unhelpful reference to Plaintiff's sale of stock in January 2004 – for why the alleged class period begins on November 3, 2003. Hoffman Tr. at 102:20-103:21, 106:3-20. Furthermore, he was unable to identify any false and misleading statements made prior to April 26, 2004, much less explain how those statements evidenced fraudulent intent. *Id.* at 97:20-25, 98:2-101:8.

Both the factual record and deficiencies in the Amended Complaint counsel against certification of the putative class. Should this action go forward, the class period should be limited to the period from April 26, 2004 through February 10, 2005.

## CONCLUSION

For all these reasons, Defendants respectfully request that the Court deny Plaintiff's motion for class certification and award such other and further relief as the Court deems appropriate.

Dated: December 19, 2005

Respectfully submitted,

By: [signature]

John A. Herfort (JH-1460)
Robert F. Serio (RS-2479)
J. Ross Wallin (JW-3911)

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166
Phone: (212) 351-4000
Fax: (212) 351-4035

***Counsel for Defendants Veeco Instruments Inc., Edward H. Braun, John F. Rein, Jr. and John P. Kiernan***

80349079_3.DOC