# EXHIBIT A-1

Case 1:05-md-01695-CM-GAY    Document 68-3    Filed 12/22/2005    Page 2 of 6

2004 U.S. Dist. LEXIS 26488, *                                                Page 32

Flemings' current and historical business and operating conditions and that D&T falsely represented that its audit had been conducted in conformity with GAAS and that the statements fairly presented Fleming's financial condition. The plaintiffs n14 brought actions against the 1933 Act Individual Defendants, the Underwriters, and D&T.

> n14 The "1933 Act Plaintiffs" include: Massachusetts State Carpenters Pension Fund ("MSCPF"), Massachusetts State Guaranteed Annuity Fund ("MSGAF"), Alaska Electrical Pension Fund ("Alaska Fund"), Anthony Colarich, David Dickey, Joel Feliciano, Raheela Zaman and Terry Slater.

[*140] The 1933 Act claims do not require a plaintiff to plead or prove fraudulent conduct and the plaintiffs expressly disavow all allegations of fraud or scheme. Therefore, the heightened pleading standards of *Federal Rule of Civil Procedure 9(b)* do not apply. *Lone Star Ladies Inv. Club v. Schlotzsky's Inc., 238 F.3d 363 (5th Cir. 2001)*. Notice pleading under *Rule 8* is all that is required to properly state 1933 Act claims. *In re Enron, 235 F. Supp. 2d at 596*. That said, the court now turns to a discussion of liability under the 1933 Act. Specifically, these plaintiffs assert claims under *sections 11* and *12(a)(2)* of that act.

*Section 11* imposes liability if any part of a registration statement or prospectus contains an untrue statement of a material fact or omits to state a material fact required to be stated therein or necessary to make the statements therein not misleading and grants standing to sue to any person acquiring such security. *15 U.S.C. § 77k(a)*. *Section 11* imposes a stringent standard of liability on the parties who play a direct role in a registered offering. [*141] *Herman & MacLean v. Huddleston, 459 U.S. 375, 381-82, 74 L. Ed. 2d 548, 103 S. Ct. 683 (1983)*. A plaintiff who purchased a security issued pursuant to a registration statements need only show a material misstatement or omission to establish his *prima facie* case. *Id. at 382*. The plaintiffs do not have to allege knowingly or intentionally false statements in registration statement because *section 11* claims do not sound in fraud. *Schlotzsky's, 238 F.3d at 369*. *Section 11* does not require a plaintiff to plead or prove scienter. *Id.* Congressional policy underlying *section 11* was to create liability regardless of fault. *Id.* If there is a material misstatement or omission in the registration statement, the buyer may sue the issuer, underwriter, or signor of the registration statement.

The Fifth Circuit interprets the operative language of *section 11* to allow suits to be brought by direct buyers on the day an offering closes, as well as subsequent purchasers who can trace their securities to the challenged registration statement. [*142] *Rosenzweig, 332 F.3d at 872-73*. To establish standing, the plaintiffs must allege facts to show that all stock for which they claim damages was actually issued pursuant to a defective statement, not just that it might have been, probably was, or most likely was, issued pursuant to a defective statement. *Krim v. pcOrder.com, Inc., 210 F.R.D. 581 (W.D. Tex. 2002)*. Where there have been multiple offerings of the same type of securities, plaintiffs do not satisfy their tracing burden by showing they probably bought stock issued pursuant to the allegedly false registration statement. *Id. at 586*.

Under *section 11* an expert has an affirmative defense if it shall sustain the burden of proof that after reasonable investigation it had reasonable ground to believe and did believe, at the time such part of the registration statement became effective, that the statements therein were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statement therein not misleading. *15 U.S.C. § 77k(b)*. A defendant may be shielded from *section 11* liability if the defendant [*143] reasonably, and without actual knowledge of any inaccuracies, relies on parts of a registration statement "purporting to be made on the authority of an expert." *15 U.S.C. § 77k(b)(3)(C)*. Expertised portions of a registration statement and prospectus include those, such as financial statements, that have been examined, reported upon and audited by independent auditors. *In re Enron, 235 F. Supp. 2d at 598*. An underwriter may rely on expertised portions of a registration statement or prospectus, such as financial statements certified by an accountant, unless it had reasonable grounds to believe the statements were untrue. *Id. at 613*. The fact-specific determination of the reasonableness of a defendant's investigation or of his reliance on the opinion of an expert is not a question properly resolved on a motion to dismiss unless the affirmative defense clearly appears on the face of the complaint. *In re Enron, 258 F. Supp. 2d at 639*.

*Section 12(a)(2)* imposes liability on a person who offers or sells a security by means of a prospectus or oral communication, which includes an untrue statement of a material fact. [*144] *Lewis v. Fresne, 252 F.3d 352, 357 (5th Cir. 2001)*. A seller is one who either passes title of the securities to the buyer or one who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner. *Pinter v. Dahl, 486 U.S. 622, 647, 100 L. Ed. 2d 658, 108 S. Ct. 2063 (1988)*. To count as solicitation, the seller must, at a minimum, directly communicate with the buyer. *Rosenzweig, 332 F.3d at 871*. An issuer may be liable only if the plaintiff can allege and prove that an issuer's role was not the usual one, that it

went farther and became the vendor's agent. *Id.* Virtually all issuers routinely promote a new issue, if only in the form of preparing a prospectus and conducting a road show. *Lone Star Ladies, 238 F.3d at 370. Section 12(a)* does not require a plaintiff to prove scienter either and the pleadings need only satisfy the liberal pleading requirements of *Rule 8 of the Federal Rules of Civil Procedure.* [*145] *In re Enron, 235 F. Supp. 2d at 596.*

As several of the 1933 Act Defendants raise limitations arguments, the court addresses in general the applicable limitations period. The 1933 Act requires plaintiffs to bring claims under *section 11* or *12(a)(2)* "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." *15 U.S.C. § 77m.* The Sarbanes-Oxley Act does not extend the limitations period for the 1933 Act claims to two years. The plain language of the Sarbanes-Oxley Act states that the extended limitations period applies "to a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance . . . as defined in section 3(a)(47) of the Securities Exchange Act of 1934." The courts have rejected the argument that the Sarbanes-Oxley limitations period applies to 1933 Act claims. *In re Merrill Lynch & Co. Research Reports Sec. Litig., 272 F. Supp. 2d 243, 265 (S.D.N.Y. 2003);* [*146] *Friedman v. Rayovac Corp., 295 F. Supp. 2d 957, 974-75 (W.D. Wis. 2003).* Instead, the applicable limitations period to these claims is one year after the plaintiffs were put on inquiry notice of their claims as required by *Section 77m of the 1933 Act.*

It is well-settled the inquiry notice may be determined as a matter of law. *Jensen v. Snellings, 841 F.2d 600, 607 (5th Cir. 1988)*(affirming a dismissal where record revealed that the plaintiffs had notice of claims); *Rahr v. Grant Thornton LLP, 142 F. Supp. 2d 793, 796 (N.D. Tex. 2000).* In this regard, one court has observed that "where . . . the facts needed for determination of when a reasonable investor of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers . . . integral to the complaint, resolution of the issue on a motion to dismiss is appropriate. . . ." *LC Capital Partners, LP v. Frontier Ins. Group, Inc., 318 F.3d 148, 156 (2d Cir. 2003).*

In this case, the plaintiffs plead that Fleming issued a press release on July 30, 2002, announcing that its retail segment was suffering from declining prices (TAC, [*147] P 264). The plaintiffs also allege that on July 31, 2002, analysts downgraded Fleming's investment rating and questioned its reported per-share earnings (TAC, P 270-71). Finally, most importantly, the plaintiffs allege that the Wall Street Journal published an article on September 5, 2002, that revealed Fleming's practice of taking unauthorized, improper, and unsustainable deductions from vendor's invoices. (TAC, P 281). As a matter of law, the plaintiffs' own allegations reveal that, at the latest, the plaintiffs' were on inquiry notice of their claims by September 5, 2002, the date of the Wall Street Journal article exposing the practice of vendor deductions. Thus, limitations expired on the 1933 Act claims September 5, 2003, one year later. Against this backdrop, the court examines the various limitations arguments.

The 1933 Act Individual Defendants and D&T assert that the plaintiffs' claim against them relating to the March 2002 offering of 10.625% Notes is time-barred. In their response, the plaintiffs appear to concede that Terry Slater is the only plaintiff with standing to assert a *section 11* claim relating to the March 2002 Registration Statement because he is the only named [*148] plaintiff to have obtained notes in an offer made pursuant to that statement. The plaintiffs argue that Terry Slater filed a lawsuit in Oklahoma state court on November 14, 2002, within the limitations period. But, what the plaintiffs fail to appreciate is that Slater did not sue the *1933 Act Individual Defendants or D&T* in that case. Slater's case joined only the Fleming Companies, Hansen, Rider, and Dahlen. Slater failed to join the 1933 Act Individual Defendants and D&T until September 12, 2003, more than one year after limitations commenced. Therefore, the claims against the 1933 Act Individual Defendants and D&T are time-barred unless saved by an exception, which, as the court will explain, they are not.

*Rule 15(c)(3),* governing the relation back of pleadings, does not apply. The explicit language of the rule states that an amendment adding a new defendant relates back only if, among other things, the new defendant "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." The rule does not protect plaintiffs who "knew of the late-named party at all times but failed to include that [*149] party in the original filing." *In re Xchange Inc. Sec. Litig., 2002 U.S. Dist. LEXIS 15909, 2002 WL 1969661, at *4 (D. Mass. Aug. 26, 2002).* In this case, the identities of the 1933 Act Individual Defendants and D&T were readily ascertainable. All of the Individual Defendants (save and except Hernandez) actually signed the March 2002 Registration statement, and D&T's role as the auditor was plain from the face of the statement. (*See, e.g.,* March Registration Statement, p. 106, identifying independent auditor as D&T). And, even with respect to Hernandez, the plaintiffs here make no argument that they were mistaken as to his identity or that it was not readily ascertainable. The court grants the 1933 Act Individual Defendants' and D&T's motions to dismiss the plaintiffs' claims under the 1933 Act relating to the March 2002 offering because they are barred by the applicable one-year statute of limitations. Resolution of the limitations

question makes it unnecessary to consider the 1933 Act Individual Defendants' and D&T's alternative argument that the March 2002 exchange offer is exempt from the provisions of *section 11*.

The 1933 Act Individual Defendants, Defendant [*150] D&T, and the Underwriter Defendants (collectively, "1933 Act Defendants") also contend that the *section 11* claim should be dismissed because the claims based on the June 2002 offering are time barred. The 1933 Act Defendants urge, with respect to the June 2002 offering, that the plaintiffs' claims relating to the purchase of 9.25% Notes are barred because one of the original plaintiffs, MSCPF, did not purchase notes in the offering and plaintiff Alaska Fund, which did purchase notes in that offering, was not joined as a party-plaintiff until September 12, 2003, after limitations had expired. The court disagrees.

The linchpin of the 1933 Act Defendants' argument is that MSCPF lacked standing to pursue claims on behalf of the note purchasers when it filed its February 20, 2003, complaint because it only purchased stock. It is not disputed that MSCPF filed suit within the limitations period and its pleading, on behalf of a class, alleging violations of federal law in connection with the sale of "Fleming Securities" issued in or traceable to the June 2002 Offering, placed the defendants named therein plainly on notice of these claims. There is authority that suggests that a *class representative* [*151] who purchased stocks can represent purchasers of debt instruments in the same lawsuit. *In re Enron Corp. Sec. Litig., 206 F.R.D. 427, 445 (S.D. Tex. 2002)*(noting "there is no requirement that the claims of all plaintiffs and class members must be identical"); *Endo v. Albertine, 147 F.R.D. 164, 167 (N.D. Ill. 1993)*("[A] class of plaintiffs who purchased different types of securities may properly be certified with a representative party who only purchased one type of security."); *In re Saxon Sec. Litig., 1984 U.S. Dist. LEXIS 19223, 1984 WL 2399, at *7 (S.D.N.Y. Feb. 23, 1984)*(holding that "debenture holders have an interest identical to that of the holders of common stock in demonstrating a common course of fraudulent conduct").

The 1933 Act Defendants contend these cases are distinguishable, and these parties say that the cases concerned the propriety of class representation under *Rule 23*, not jurisdictional standing. The 1933 Act Defendants point to the holding in *In re Paracelsus Corp., 6 F. Supp. 2d 626 (S.D. Tex. 1998)*, where the court held that purchasers of stock issued pursuant to one registration statement [*152] did not have standing to sue on behalf of purchasers of notes issued out of a companion statement. It is true that *Paracelsus* addressed the concept of standing and dismissed, on standing grounds, the claims of plaintiffs who had not purchased bonds pursuant to the registration statement at issue. In that case, however, the two types of securities were issued pursuant to separate registration statements. The claims of the note purchasers had to be linked under *section 11* to the registration statement pursuant to which the company issued the notes. Otherwise, the statutory requirements of *section 11* failed.

The point of Article III standing and the more specific statutory standing concept addressed in *Paracelsus* is to ensure that the named plaintiff has a personal stake in the outcome of the litigation and that the plaintiff purchases "securities" as that term is defined by the Act issued pursuant to a particular registration statement. In this case, it is not disputed that the stocks and the notes were issued pursuant to a single registration statement, nor is it disputed that MSCPF bought securities issued pursuant to the registration statement. MSCPF had in February [*153] 2003, and continues to have a personal stake in the outcome of the case sufficient to warrant Article III standing on the *section 11* claims.

Contrary to the 1933 Act Defendants' argument, the case law holds that purchasers of one type of security have *standing* to sue on behalf of purchasers of other types of security issued pursuant to a single registration statement. The court in *In re Worldcom, Inc. Sec. Litig., 2004 U.S. Dist. LEXIS 4240, 2004 WL 555697, at *6-7 (S.D.N.Y. March 19, 2004)*, recently rejected a similar argument when it held that purchasers of one type of debt security (domestic) had standing to pursue claims of purchasers of a second type of debt security (foreign) issued pursuant to the same registration statement). Similarly, the court in *In re MobileMedia Secs. Litig., 28 F. Supp. 2d 901, 911 (D.N.J. 1998)* was faced with an argument that stock purchasers lacked standing to represent the interests of note purchasers and held that the plaintiffs had "sufficiently alleged individual cognizable injuries pursuant to *section 11* and *section 12(a)(2)*" to confer standing. [*154] The court therefore rejects the argument that *section 11* claims related to notes issued pursuant to the June 2002 Registration Statement are barred by the statute of limitations. Resolution of this question in this manner renders it unnecessary to consider the plaintiffs' alternative arguments that *American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 551, 38 L. Ed. 2d 713, 94 S. Ct. 756 (1974)* applies to this case to toll limitations until the addition of Alaska Fund to this case in the September, 2003 or that *Rule 15* permits the relation back of Alaska Fund's claims to the date of MSCPF's February 2003 complaint.

The 1933 Act Defendants also argue that aftermarket purchasers of Fleming's common stock cannot "trace" their purchases to the June 2002 Registration Statement, and therefore, *section 11* claims asserted on their behalf should be dismissed. In the Fifth Circuit, aftermarket

Case 1:05-md-01695-CM-GAY    Document 68-3    Filed 12/22/2005    Page 5 of 6

Page 35
2004 U.S. Dist. LEXIS 26488, *

purchasers who can trace their purchase to the challenged registration statement have standing to bring a *section 11* claim. *Rosenzweig, 332 F.3d at 873*. Bearing in mind that the case is still in the pleading stage, the court rejects the 1933 Act Defendants' argument. Here, [*155] the TAC specifically alleges that "Plaintiffs and the other members of the Subclasses purchased the Fleming Securities that were issued pursuant and traceable to the March and June 2002 Registration Statements." (TAC, P 509). The plaintiffs have sufficiently pleaded *section 11* standing with their allegation that the members of the class purchased the securities that were "issued pursuant and traceable to" the pertinent registration statements. Whether and to what extent the plaintiffs will be able to *prove* tracing is a different question and is one which, in any event, is not susceptible to decision in the current posture of this case.

The 1933 Act Individual Defendants and D&T also contend that the plaintiffs' *section 12(a)(2)* claims should be dismissed because they are not "sellers" of securities. *Section 12(a)(2)* provides that a person who "offers or sells" a security by means of a prospectus or oral communication that contains a materially false statement or that omits to state certain material facts shall be liable to any person purchasing such security from him. *15 U.S.C. § 77l(a)*. A *section 12(a)(2)* "seller" is either (1) the person who actually passes [*156] title to the buyer, or (2) "the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Pinter, 486 U.S. at 647*.

The March and June 2002 offerings were firm commitment underwritings. As such, investors purchased securities not from Fleming, but from the underwriters or broker-dealers who purchased from the underwriters. Consequently, as a matter of law, the 1933 Act Individual Defendants and D&T cannot be sellers under the title-passing definition adopted by the Supreme Court.

As to the second definition, the plaintiffs allege in conclusory fashion that each defendant named in Count V "solicited and/or was a substantial factor in the purchase by plaintiffs of securities in the offerings." (TAC, P 517). What is required under *Pinter* is that the named defendant "successfully solicit" the purchase. To that end, the court agrees with the defendants that solicitation is a legal term of art and that conclusory allegations in a pleading or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. [*157] *Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993)*.

The Fifth Circuit has narrowly circumscribed the scope of *section 12(a)(2)* liability under the second *Pinter* definition. The court has held that to count as "solicitation," the seller must, at a minimum, directly communicate with the buyer. *Rosenzweig, 332 F.3d at 871*. An issuer, like Fleming (and, by extension, its directors and its auditor), is liable under *section 12(a)(2)* only if the plaintiff can allege and prove "that an issuer's role was not the usual one; that it went farther and became a vendor's agent." *Id.* (quoting *Lone Star Ladies Inv. Club v. Schlotzsky's, Inc., 238 F.3d 363, 370 (5th Cir. 2001)*). This is because virtually all issuers promote their securities in some fashion, either by preparing prospectuses or conducting road shows. *Lone Star Ladies, 238 F.3d at 370*. The TAC is bereft of allegations that the 1933 Act Individual Defendants or D&T directly communicated with the purchasers of the securities or assumed the unusual role of the vendors' agents. The plaintiffs have failed to allege sufficient facts to prevent [*158] dismissal of the *section 12(a)(2)* claims against the 1933 Act Individual Defendants and D&T, and the court grants the motion to dismiss those claims.

The Underwriter Defendants are named as defendants under *sections 11* and *12(a)(2)* of the 1933 Act with respect to their role in the June 2002 Offering. Most of their arguments have been addressed previously; however, they make a separate, distinct argument which they assert entitles them to a dismissal of all of the 1933 Act claims against them. According to the Underwriter Defendants, they were entitled to rely on the accuracy of Fleming's financial statements because those statements were "expertised."

As noted above, *section 11 of the 1933 Act* contains a safe harbor from liability for underwriters who reasonably rely upon "expertised" portions of a registration statement. *15 U.S.C. § 77k(b)(3)(C)*. Likewise, underwriters are shielded from liability for a claim under *section 12(a)(2)* if they rely on the "expertised" portions of an offering prospectus. *In re Worlds of Wonder Sec. Litig., 814 F. Supp. 850, 867-68 (N.D. Cal. 1993), aff'd in relevant part, 35 F.3d 1407 (9th Cir. 1994)* [*159]. Unfortunately for the Underwriter Defendants, this question is generally not proper for resolution by a motion to dismiss, because the underwriter bears the burden of proof to show that it had no reason to believe and did not believe that the expertised portions of the registration statement were untrue. *In re Enron Corp. Sec. Derivative & ERISA Litig., 258 F. Supp. 2d 576 (S.D. Tex. 2003); Griffin v. PaineWebber, Inc., 84 F. Supp. 2d 508, 512-13 (S.D.N.Y. 2000); In re Chambers Development Sec. Litig., 848 F. Supp. 602, 624 (W.D. Pa. 1994)*. The court rejects the Underwriter Defendants' argument that their entitlement to this affirmative defense is apparent from the face of the TAC and therefore denies the Underwriter Defendants' motion to dismiss the 1933 Act claims leveled against them.

Finally, the Underwriter Defendants assert that the plaintiffs have not sufficiently alleged standing to pursue their *section 12(a)(2)* claim against them. As noted, *section 12(a)(2)* liability is narrow. Standing exists under *section 12(a)(2)* and *Pinter* when a plaintiff can plead and prove that a seller actually passed title to a buyer. The [*160] Underwriter Defendants argue that the TAC fails to allege that the plaintiffs acquired title in their securities from the Underwriter Defendants, such that the first definition of "seller" under *Pinter* is satisfied.

The TAC alleges that "the Underwriter Defendants offered for sale and sold the securities purchased by plaintiffs and the members of the Subclass. . . ." (TAC, P 516). This allegation is susceptible to two constructions: the first is that the Underwriter Defendants offered for sale and sold the securities *directly to* the plaintiffs; the second is that the Underwriter Defendants offered for sale and sold the securities *first to another* who *then* sold to the plaintiffs. As *section 12(a)(2)* only permits a purchaser to recover against his direct seller, the court agrees with the Underwriter Defendants that the plaintiffs have not sufficiently alleged *section 12(a)(2)* standing with this allegation. Nor have the plaintiffs sufficiently articulated how or if they had direct communication with the Underwriter Defendants such that they satisfy the second *Pinter* definition. It may be, however, that the plaintiffs are able to satisfy these requirements. They are [*161] granted leave to do so within ten (10) days after the date of the entry of this opinion if they can. The court has canvassed the remaining arguments in support of the various motions to dismiss and, to the extent they have not been specifically addressed in this opinion, they are now rejected.

## V. CONCLUSION

In accordance with the above opinion and for the reasons more fully expressed herein the court **ORDERS** that the following motions be disposed of as indicated below:

. Defendant Mark D. Shapiro's Motion to Dismiss Plaintiffs' Third Consolidated Amended Class Action Complaint and Brief in Support (Docket # 15) **GRANTED IN PART AND DENIED IN PART**

. Defendant E. Stephen Davis' Motion to Dismiss Third Consolidated Amended Class Action Complaint and Brief in Support Thereof (Docket # 16) **GRANTED**

. 1934 Act Defendants' Joint Motion to Dismiss Pursuant to *Rules 9(b)* and *12(b)(6)* and the Private Securities Litigation Reform Act of 1995 and Memorandum of Law in Support (Docket # 17) **GRANTED IN PART AND DENIED IN PART**

. Defendant Neal Rider's Supplemental Motion to Dismiss Pursuant to *Rules 9(b)* and *12(b)(6)* and the Private Securities Litigation [*162] Reform Act of 1995 and Memorandum of Law in Support (Docket # 18) **GRANTED IN PART AND DENIED IN PART**

. Defendant Thomas Dahlen's Individual Motion to Dismiss Plaintiffs' Third Consolidated Amended Class Action Complaint and Brief in Support (Docket # 19) **GRANTED IN PART AND DENIED IN PART**

. Motion to Dismiss Third Consolidated Amended Class Action Complaint and Brief in Support Thereof of Defendant Mark Hansen (Docket # 20) **GRANTED IN PART AND DENIED IN PART**

. Motion to Dismiss of Defendants Lehman Brothers Inc., Deutsche Bank Securities Inc., Wachovia Securities, Inc., and Morgan Stanley & Co. Incorporated (Docket # 21) **GRANTED IN PART AND DENIED IN PART**

. Defendant Deloitte & Touche LLP's Motion to Dismiss and Supporting Brief (Docket # 22) **DENIED**

. 1933 Act Individual Defendants' Motion to Dismiss Plaintiffs' Third Consolidated Amended Class Action Complaint and Supporting Brief (Docket # 25) **GRANTED IN PART AND DENIED IN PART**

So **ORDERED** and **SIGNED** this 10th day of June, 2004.

T. JOHN WARD

UNITED STATES DISTRICT JUDGE