# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------- x
In re VEECO INSTRUMENTS, INC.        :        Case No.: 7:05-md-01695 (CM)
SECURITIES LITIGATION                 :
------------------------------------------------------- x
------------------------------------------------------- x
THIS DOCUMENT RELATES TO             :
ALL ACTIONS                           :
------------------------------------------------------- x
```

## LEAD PLAINTIFF STEELWORKERS PENSION TRUST'S
## REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS
## MOTION FOR CLASS CERTIFICATION

**BERGER & MONTAGUE, P.C.**
Sherrie R. Savett  (I.D. 17646)
Phyllis M. Parker (I.D. 77336)
Jeffrey L. Osterwise (I.D. 201859)
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875 - 3000
Fax: (215) 875 - 4604

*Lead Counsel for Lead Plaintiff*
*Steelworkers Pension Trust and the Class*

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................... 1

STATEMENT OF FACTS ...................................................... 1

    I.      Steelworkers is an Adequate Class Representative ........................ 1

    II.     Consistent With its Fiduciary Duties, Steelworkers Invested in Veeco Stock
           Through a Money Manager Carefully Selected and Monitored by the
           Steelworkers' Trustees ................................................... 2

    III.    Steelworkers' Decision To Prosecute This Action Underscores Its Adequacy
           to Represent the Class .................................................. 3

ARGUMENT ................................................................ 3

    I.      Delegation of the Decision to Purchase Veeco Stock Through Its
           Investment Advisor Does Not Render Steelworkers "Atypical" .............. 3

    II.     Steelworkers Will Protect the Interests of the Class ........................ 7

    III.    Defendants' Inappropriate Attempt to Shorten the Class Period Should be
           Rejected ............................................................... 9

CONCLUSION ............................................................. 10

i

## TABLES OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Basic Inc. v. Levinson,* 485 U.S. 224 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283 (2d Cir. 1999) . . . . . . . . . . . . . . . . . 10

*Cromer Finance Ltd. v. Berger,* 205 F.R.D. 113 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . 8

*Cross v. 21st Century Holding Co.,* 2004 WL 307306 (S.D.N.Y. Feb. 18, 2004) . . . . . . . . . . 7, 8

*DeMarco v. Nat'l Collector's Mint, Inc.,* 229 F.R.D. 73 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . 10

*DeMarco v. Robertson Stephens Inc.,* 228 F.R.D. 468 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . 6, 10

*In re Donnkenny Inc. Sec. Litig.,* 171 F.R.D. 156 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . 4

*In re Frontier Ins. Group, Inc. Sec. Litig.,* 172 F.R.D. 31 (E.D.N.Y. 1997) . . . . . . . . . . . . . . . . 8

*In re Initial Pub. Offering Sec. Litig.,* 227 F.R.D. 65 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . 6, 8

*In re Natural Gas Commodities Litig.,* 231 F.R.D. 171 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . 10

*In re NeoPharm, Inc. Sec. Litig.,* 225 F.R.D. 563 (N.D. Ill. 2004) . . . . . . . . . . . . . . . . . . passim

*In re Transkaryotic Therapies, Inc. Sec. Litig.,* 2005 WL 3178162 (D.Mass. Nov. 28, 2005) . . 10

*In re WorldCom, Inc. Sec. Litig.,* 219 F.R.D. 267 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . passim

*Koenig v. Benson,* 117 F.R.D. 330 (E.D.N.Y. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Saddle Rock Partners Ltd. v. Hiatt,* 2000 WL 1182793 (S.D.N.Y. Aug. 21, 2000) . . . . . . . . . . 7

*Yang v. Odom,* 2005 WL 2000156 (D.N.J. Aug. 19, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**STATUTE**

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 9

**FEDERAL RULES**

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

## PRELIMINARY STATEMENT

Lead Plaintiff, Steelworkers Pension Trust ("Steelworkers") is precisely the sort of knowledgeable and committed large institutional investor that Congress, in passing the Private Securities Litigation Reform Act ("PSLRA"), encouraged to prosecute securities litigation on behalf of a class of investors. Steelworkers, through its House Counsel Richard Hoffmann, is actively prosecuting this action on behalf of the Class, and is knowledgeable about and committed to the claims it is pursuing, all of which establish its adequacy to represent the Class.

Defendants mischaracterize the facts and law, engage in baseless attacks on Steelworkers, and improperly suggest that the Court delve into the merits of the case and factual issues unrelated to any of the Rule 23 requirements. As demonstrated below, however, it is beyond reasonable dispute that Steelworkers is not only an adequate class representative, but one who will more than effectively represent the interests of the plaintiff Class.

## STATEMENT OF FACTS

### I.    Steelworkers is an Adequate Class Representative

The deposition testimony of Mr. Hoffmann, House Counsel for Steelworkers, demonstrates that Steelworkers is a model class representative and clearly satisfies the requirements of Rule 23. Mr. Hoffmann has served as House Counsel to Steelworkers since 1958, and attends all meetings of the Steelworkers Board of Trustees (the "Trustees"). Hoffmann Tr. at 12: 11-13; 42: 6-12.[1] Particularly in view of its experience as a fiduciary to members of the Steelworkers Pension Trust,

---

[1] "Hoffmann Tr." and "Dodge Tr." refer to the transcripts of the depositions of Richard S. Hoffmann and William Dodge appended in their entirety as Exhibit A and Exhibit B, respectively, to Decl. of Robert F. Serio in Support of Defendants' Opposition to Plaintiff's Motion for Class Certification.

1

Steelworkers clearly understands its fiduciary and other obligations to absent Class members. Thus, Mr. Hoffmann testified that as a class representative, Steelworkers is required to "make sure that any settlements that are proffered are reasonable and suitable," to ensure "that the fees and expenses charged by plaintiff's counsel are fair and reasonable," and to "make [itself] available to testify for depositions and in court," and "gather all kinds of information by being [a] fiduciary for all the other class members." *Id.* at 30: 9-19. As Mr. Hoffmann explained, the advantages of serving as a Lead Plaintiff include "keeping abreast of what is going on and to some extent being able to influence it." *Id.* at 31: 22-24; 32: 1-5.

Contrary to Defendants' assertions, Mr. Hoffmann is exceptionally familiar with the relevant facts and claims at issue in this case. He knows, for example, where the present action is pending; that Judge McMahon is presiding over the case; who the named Defendants are; and the industry within which Veeco operates. *Id.* at 35: 12-17; 36: 7-13; 60: 9-19. He knows that Veeco restated its earnings for "the first three quarters of 2004" (84: 20-21), and correctly testified that Defendants' fraud was first revealed "early in 2005," "when it became known [that] they were going to restate their earnings[.]" *Id.* at 88: 20-22; 89: 2-5. *See also e.g., id.* at 97, 126-127.

## II.    Consistent With its Fiduciary Duties, Steelworkers Invested in Veeco Stock Through a Money Manager Carefully Selected and Monitored by the Steelworkers' Trustees

In accordance with its fiduciary duties to its beneficiaries, and consistent with the law and the usual practice of most, if not all, public pension funds, Steelworkers relies on sophisticated investment professionals to make investment decisions and transactions in individual stocks. Indeed, Mr. Hoffmann specifically testified that Steelworkers' practice of carefully selecting and monitoring the investment advisors or "money managers" responsible for Steelworkers' investments

2

was "in accordance with the law," and emphasized that this procedure ensured that Steelworkers was fulfilling its fiduciary duties to the fund's participants. *Id.* at 40: 2-24. As Mr. Hoffmann explained, the Trustees take many steps to fulfill their fiduciary responsibilities in this regard, including conducting due diligence of the money managers; requiring detailed written agreements with the money managers; employing an outside investment management consultant to measure and report on the performance of each of the money managers; and requiring each money manager to report to the Trustees on a regular basis. *Id.* at 40-44, 49-51, 54-55. These precise facts are "more than sufficient" to demonstrate, for an institutional investor, "involvement in and awareness of the financial affairs at issue." *In re NeoPharm, Inc. Sec. Litig.,* 225 F.R.D. 563, 567-568 (N.D. Ill. 2004).

### III. Steelworkers' Decision To Prosecute This Action Underscores Its Adequacy to Represent the Class

Just as the drafters of the PSLRA intended, Steelworkers, which represents 50,000 active pension participants who collectively have $1.5 billion under investment by the Steelworkers, has taken an active interest in this and other cases in which it has a significant financial interest. *See* Hoffmann Tr. at 17: 15-25. Accordingly, Steelworkers has engaged Berger & Montague, P.C., over "at least a couple of years," to represent it in other securities class actions, and has followed a procedure by which it requests counsel to monitor various securities matters in which it may have an economic interest. *Id.* at 129, 132-133. Following this procedure, Mr. Hoffmann, on behalf of Steelworkers, properly determined to prosecute this action after consulting with counsel. *Id.*

### ARGUMENT

### I. Delegation of the Decision to Purchase Veeco Stock Through Its Investment Advisor Does Not Render Steelworkers "Atypical"

Defendants' argument that the use of money managers automatically disqualifies an

3

institutional investor from representing a class of defrauded investors is in direct conflict with the PSLRA and is wholly unsupported by any post-PSLRA law. *See In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 282 (S.D.N.Y. 2003); *NeoPharm*, 225 F.R.D. at 567. The legislative history of the PSLRA demonstrates that Congress intended to encourage large investors and institutions -- such as Steelworkers -- to serve as lead plaintiffs and class representatives. As the Statement of Managers explained, "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." H.R. Rep. No. 104-369, 104th Cong. 1st Sess., at 32, 34 (1995). *See WorldCom*, 219 F.R.D. at 282 ("The PSLRA was designed to 'increase the likelihood that institutional investors will serve as lead plaintiffs'"); *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997).

As Defendants surely know, many institutions -- and particularly public pension funds -- delegate responsibility for managing their money to asset managers or investment advisors. *See WorldCom*, 219 F.R.D. at 282 (noting that institutional investors "are likely to use advisors...to invest conservatively in securities they consider undervalued by the market"); *NeoPharm*, 225 F.R.D. at 567. However, "to prohibit such an institutional investor from serving as a class representative merely because it delegated investment responsibilities to a money manager" would "be in tension with" the PSLRA's purpose to increase the participation of institutional investors as lead plaintiffs. *NeoPharm*, 225 F.R.D. at 567; *see also WorldCom*, 219 F.R.D. at 282. Defendants also ignore the crucial point that Steelworkers' fiduciary duties to its members *require* Steelworkers to refrain from making investment decisions on behalf of the plan's participants. *See* Hoffmann Tr. at 40: 2-24; *see also* Dodge Tr. at 38: 17-19 ("it's quite normal that the fiduciaries would not ask questions about additional securities in the portfolio"). As the court in *NeoPharm* explained in

4

rejecting the exact argument Defendants proffer here, "a pension fund..lacks investment expertise, and, more likely than not, *its fiduciary duties would preclude it from making investment decisions on behalf of its beneficiaries.*" *NeoPharm*, 225 F.R.D. at 567 (emphasis added).[2]

Defendants' suggestion that Steelworkers did not rely on the integrity of the market in purchasing Veeco stock because its money manager, Fox Asset Management ("Fox"), was "a sophisticated trader" who "appeared to focus on very specific pricing trends rather than the overall 'integrity'...of the price set by the market," is nonsense. *See* Defs. Br. at 8. First, reliance is not an issue to be decided on a motion for class certification because reliance on the integrity of the market is presumed. *See Basic Inc.*, 485 U.S. at 241-49. Second, even if the Court were to consider Defendants' reliance arguments, the record precludes any finding, at this stage of the litigation, that Steelworkers did not rely on the integrity of the market. Defendants never asked Mr. Dodge or Mr. Hoffmann whether Fox or Steelworkers relied on the market price for Veeco securities, but Mr. Dodge did testify that Fox relies on public information including "Wall Street research, in particular, industry reports and general news services and standard federal filing[s]" in making investment decisions for its clients. Dodge Tr. at 42: 2-7; 59: 7-15. Mr. Dodge also confirmed that Fox did *not* have any access to nonpublic information concerning Veeco during the Class Period. *Id.* at 43: 17-21. Thus, Defendants cannot argue that Fox intended to take advantage of information that was not incorporated into the market price of Veeco stock because it was undisclosed to the public. *See WorldCom*, 219 F.R.D. at 281.

The record is also devoid of any suggestion that Fox is an "out and in" trader. *See* Defs. Br.

---

[2] Defendants rely almost exclusively on cases which pre-date the PSLRA as well as the Supreme Court's decision in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). Many of their authorities are not securities cases, and involve individuals, not institutional lead plaintiffs like Steelworkers.

at 9. In fact, Steelworkers purchased 40,000 shares of Veeco stock in May, 2004, and held those shares *for over a year* - until it sold the shares on May 25, 2005, after the close of the Class Period, when Veeco's stock price and price/earnings ratio were falling "outside of [Fox's] acceptable range." Dodge Tr. at 53: 16-20.[3] Defendants also make much of the fact that Mr. Dodge, the current CEO and President of Fox, testified that he had "'no reason to believe'" that Veeco misled Fox into purchasing Veeco stock on behalf of the Steelworkers, *see* Defs. Br. at 7, but fail to mention that Mr. Dodge *was not employed by Fox until March 9, 2005, i.e.,* after the close of the Class Period. Dodge Tr. at 13: 19-21. Mr. Dodge did not have any responsibility for managing Steelworkers' assets until "May or June" of 2005 – *one year after* Steelworkers' Veeco shares were purchased. *Id.* at 16: 4-9. Thus, Mr. Dodge would not have any knowledge as to whether Veeco misled Fox into purchasing Veeco stock on behalf of the Steelworkers.

Third, while the record shows that Steelworkers' investment strategies were very typical of those employed by other large investors, courts in this District have explicitly held that "reli[ance] on highly sophisticated investment managers" and the use of sophisticated trading strategies do not render an investor atypical for purposes of serving as a class representative. *See, e.g., WorldCom,* 219 F.R.D. at 281-282; *DeMarco v. Robertson Stephens Inc.,* 228 F.R.D. 468, 471 (S.D.N.Y. 2005)(a plaintiff's "relative sophistication and the particulars of his investment strategy do not suffice to render [the investor] inadequate or atypical of the class"); *In re Initial Pub. Offering Sec. Litig.,* 227 F.R.D. 65, 96 (S.D.N.Y. 2004)("*In re IPO*")("unique" investment strategies do not defeat

---

[3] Mr. Hoffmann testified that the usual hold period for an equity investment by the Steelworkers is "pretty long," "almost a year" unless something "catastrophic" happens, as when Veeco restated its earnings. Hoffmann Tr. at 64-65. Similarly, Mr. Dodge testified that Fox's "average holding period for securities in our account is three to four years." Dodge Tr. at 29: 22-24. In other words, Fox is *anything but* an "out and in" trader.

typicality); *Saddle Rock Partners Ltd. v. Hiatt*, 2000 WL 1182793, at *5 (S.D.N.Y. Aug. 21, 2000)("sophisticated" plaintiff who "traded...on the basis of short term price drops which [it] believed to reflect market inefficiencies" was not atypical); *see also Cross v. 21st Century Holding Co.*, 2004 WL 307306, at *3 (S.D.N.Y. Feb. 18, 2004).

In *WorldCom,* 219 F.R.D. at 281, defendants asserted that certain public pension funds were atypical because they relied on, among other things, "the advice of highly sophisticated investment managers" and "the assessment that the market price was not accurate but in fact understated WorldCom's value." The *WorldCom* court "swiftly rejected" defendants' arguments, explaining:

> Each of these methods of making investment decisions is representative of methods used by many other investors. Each of the methods reflects an evaluation of the publicly available information about WorldCom, whether by the named plaintiff, the advisor, or a computer model. There is no suggestion that any of the named plaintiffs had access to non-public information and learned that there was a fraud afoot and decided nonetheless to invest in WorldCom. None of the different strategies that these institutional plaintiffs, each of whom is a fiduciary, used to make investment decisions on behalf of their beneficiaries suggests that these plaintiffs will be vulnerable at trial to a unique defense that will defeat the presumption that they relied on the public statements about WorldCom that are at issue here, or that will threaten to become the focus of the litigation.

219 F.R.D. at 281-282. Here, as in *WorldCom*, Steelworkers' investment strategy and use of investment advisors creates no unique defenses, nor does it defeat the presumption of Steelworkers' reliance on the integrity of the market.

## II.    Steelworkers Will Protect the Interests of the Class

Defendants' gratuitous attacks on Steelworkers' adequacy are without basis in fact or law. As set forth above, Steelworkers has played and continues to play an integral role in the prosecution of this litigation, and cannot by any stretch of the imagination be characterized as simply "lending its name to an action that will be 'controlled exclusively by class counsel.'" Defs. Br. at 9- 10.

Steelworkers understands both its responsibilities as a class representative and the key aspects of Plaintiff's claims in this case.

Defendants, not surprisingly, are unable to cite any post-PSLRA authority for the denial of class certification of a public pension fund. In *WorldCom*, 219 F.R.D. at 286-288, the court rejected the very same argument Defendants make here, emphasizing that "[a]ttacks on the adequacy of a class representative based on the representative's ignorance, . . . have been 'expressly disapproved of' by the Supreme Court." *WorldCom*, 219 F.R.D. at 286 (citations omitted). The court further stated that "Plaintiffs are entitled to rely on the 'expertise of counsel,'" and "a class representative will be found inadequate due to ignorance only when they 'have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.'" *Id.* at 286. *See also In re IPO*, 227 F.R.D. at 96-98; *Cromer Finance Ltd. v. Berger*, 205 F.R.D. 113, 124 (S.D.N.Y. 2001); *Cross*, 2004 WL 307306, at *4 . Here, Mr. Hoffmann's testimony that he did not remember the exact dates of the Class Period hardly amounts to the "alarming unfamiliarity" required to disqualify a plaintiff from representing a class.[4]

Moreover, with respect to Steelworkers' entirely appropriate reliance on its counsel, Berger & Montague, P.C., to prosecute the Class claims, Mr. Hoffmann clarified that "[i]f there is any disagreement between the Steelworkers Pension Trust and the law firm, we make the decision."

---

[4] *See Koenig v. Benson,* 117 F.R.D. 330, 336 (E.D.N.Y. 1987)(cited in Defs. Br. at 8 n.5). In their desperation to attack Steelworkers, Defendants completely disregard the wealth of recent case law cited herein by Plaintiff and the other cases contradicting every one of the arguments Defendants advance. *See, e.g., In re Frontier Ins. Group, Inc. Sec. Litig.,* 172 F.R.D. 31, 46-47 (E.D.N.Y. 1997); *Yang v. Odom,* 2005 WL 2000156, at *6-7 (D.N.J. Aug. 19, 2005). Instead, Defendants rely on pre-PSLRA cases involving plaintiffs who displayed *"alarming unfamiliarity"* with their respective cases, or who exhibited disabling credibility and other flaws totally absent here.

8

Hoffmann Tr. at 135: 3-5. Thus, Steelworkers' active participation in this action will further the PSLRA's objective of encouraging institutional investors to control securities litigation on behalf of the investor Class.[5]

Defendants' contention that Steelworkers must "accept its share of the litigation costs in this matter" in order to serve as a class representative, borders on frivolous. *See* Defs. Br. at 12. This Court, in *WorldCom,* 219 F.R.D. at 284-285, *explicitly rejected* both Defendants' argument and the authorities upon which Defendants rely. As the *WorldCom* court explained, New York ethics rules regarding advancing costs do not apply to securities class actions "since the PSLRA and Rule 23 together provide even greater assurance than the Code that the clients and not their attorneys control the litigation." *Id.* at 284. Further, requiring compliance with such rules and requiring named plaintiffs to pay litigation expenses "can have deleterious effects on the federal class action device," and for this reason the Committee on Professional Responsibility of the Association of the Bar of the City of New York has rejected application of these rules to class actions. *Id.* at 285.

### III.    Defendants' Inappropriate Attempt to Shorten the Class Period Should be Rejected

Defendants argue that the Class Period should be shortened because, in their view, Veeco's November 3, 2003 press release and conference call were not materially false and misleading. *See* Defs. Br. at 12-13. This assertion is wholly unsupported by any legal authority or the factual record, is entirely premature at the class certification stage, and would require the Court to make unwarranted factual determinations not relevant to the requirements of Rule 23.

---

[5] *See NeoPharm*, 225 F.R.D. at 568 (pension fund properly "retained counsel on an on-going basis to monitor its investment portfolio in order to gain advice as to any potential securities laws violations").

9

The Second Circuit has explicitly "cautioned district courts against considering the merits of the claims at the class certification stage and has indicated that the plaintiff is only required to make 'some showing' beyond the complaint in support of class certification." *In re Natural Gas Commodities Litig.*, 231 F.R.D. 171, 181 (S.D.N.Y. 2005)(citations omitted). Under the law of this Circuit, "a motion for class certification is not an occasion for examination of the merits of the case." *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999); *see also DeMarco v. Nat'l Collector's Mint, Inc.,* 229 F.R.D. 73, 81 (S.D.N.Y. 2005)(McMahon, J.)(on class certification motion, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met"); *DeMarco v. Robertson Stephens,* 228 F.R.D. at 476 ("arguments as to ... the temporal extent of the fraud" involve merits inquiry inappropriate at class certification stage); *see also In re Transkaryotic Therapies, Inc. Sec. Litig.,* 2005 WL 3178162, at *5 (D. Mass. Nov. 28, 2005).

The issue of the falsity of the November 3, 2003 statements is common to all Class members, thus supporting class certification. Defendants' suggestion that the Class Period should be shortened because Mr. Hoffmann could not specifically recall "false and misleading statements made prior to April 26, 2004," (Defs. Br. at 13), is little more than a re-hash of their erroneous argument that Mr. Hoffmann is insufficiently knowledgeable about Plaintiff's claims. The start of the Class Period should remain November 3, 2003.

## CONCLUSION

Defendants' attacks on Steelworkers are without merit. Plaintiff respectfully requests that the Court grant Plaintiff's motion for class certification, and that Steelworkers be certified as the representative of the Class.

10

Dated: January 10, 2006

**BERGER & MONTAGUE, P.C.**

Sherrie R. Savett  (I.D. 17646)
Phyllis M. Parker (I.D. 77336)
Jeffrey L.Osterwise (I.D. 201859)
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875 - 3000
Fax: (215) 875 - 4604
*Lead Counsel for Lead Plaintiff*
*Steelworkers Pension Trust and the Class*

401648_02.wpd

11