UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE VEECO INSTRUMENTS INC.
SECURITIES LITIGATION
       No. 7:05-MD-01695-CM

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

EDWARD J. HUNEKE, derivatively on behalf
of VEECO INSTRUMENTS, INC.,
       No. 7:05-CV-10224-CM

            Plaintiff,

   v.

EDWARD H. BRAUN, et al.,

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AUGUST SCHUPP, III, derivatively on behalf
of VEECO INSTRUMENTS, INC.,
       No. 7:05-CV-10225-CM

            Plaintiff,

   v.

EDWARD H. BRAUN, et al.,

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DAVID ALTMAN, derivatively on behalf
of VEECO INSTRUMENTS, INC.,
       No. 7:05-CV-10226-CM

            Plaintiff,

   v.

EDWARD H. BRAUN, et al.,

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
Phone: (212) 351-4000
Fax: (212) 351-4035

May 5, 2006

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 2

    I.     Veeco's Directors .............................................................................................. 2

    II.    In February 2005, Veeco Announces
           An Internal Investigation Of TurboDisc ....................................................... 2

    III.   In March 2005, Veeco Announces A Restatement ....................................... 3

    IV.   Plaintiffs File Suit Almost Immediately After Veeco Issues Its Restatement ............. 3

ARGUMENT ............................................................................................................................. 4

    I.     Plaintiffs Cannot Excuse Demand Based On A Conclusory
           Assertion That All Of The Directors Would Have To Sue Themselves....................... 6

    II.    Plaintiffs Have Failed To Allege Facts Raising Sufficient Doubt As To The
           Interest Or Independence Of The Outside Directors On The Audit Committee ......... 6

    III.   The Alleged Business Relations Of Messrs. Elftmann, Fridrich, Simone
           And Pfister Do Not Create A Reasonable Doubt About Their Independence............ 9

CONCLUSION......................................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

*Beam v. Stewart*, 845 A.2d 1040 (Del. 2004) ...............................................................................10

*Caruana v. Saligman*, 1990 WL 212304 (Del. Ch. Dec. 21, 1990)...................................................6

*Caviness v. Evans*, 229 F.R.D. 354 (D. Mass. 2005)...............................................................6, 7, 9

*Fink v. Komansky*, 2004 WL 2813166 (S.D.N.Y. Dec. 8, 2004)................................................9, 10

*Fink v. Weill*, 2005 WL 2298224 (S.D.N.Y. Sept. 19, 2005) ..................................................4, 6, 9

*Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003)..........................................................................7

*Harbor Finance Partners v. Huizenga*, 751 A.2d 879 (Del. Ch. 1999) .......................................10

*In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996).....................................5

*In re Cendant Corp. Derivative Action Litig.*, 189 F.R.D. 117 (D.N.J. 1999) ................................8

*In re Citigroup Shareholders Litig.*, 2003 WL 21384599 (Del. Ch. June 5, 2003)........................8

*In re New Valley Corp. Deriv.*, 2001 Del. Ch. LEXIS 13 (Del. Ch. Jan. 11, 2001) ......................10

*In re Oxford Health Plans, Inc. Secs. Litig.*, 51 F. Supp. 2d 290 (S.D.N.Y. 1999).........................9

*In re Oxford Health Plans, Inc.*, 192 F.R.D. 111 (S.D.N.Y. 2000) .............................................8, 9

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991)..................................................................1

*Orman v. Cullman*, 794 A.2d 5 (Del. Ch. 2002)...........................................................................10

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993) ...........................................................................1, 5

*Rattner v. Bidzos*, 2003 WL 22284323 (Del. Ch. Oct. 7, 2003)..................................................5, 8

*Stone v. Ritter*, 2006 WL 302558 (Del. Ch. Jan. 26, 2006) ...........................................................8

*White v. Panic*, 783 A.2d 543 (Del. 2001).....................................................................................5

Defendants respectfully submit this reply memorandum of law in support of their motion to dismiss Plaintiffs' Consolidated Amended Verified Shareholder Derivative Complaint ("CAC" or "Amended Complaint").

## PRELIMINARY STATEMENT

The Amended Complaint has fundamental flaws. In the absence of a demand on the board – and there was none here – the complaint must allege particularized facts showing that the non-officer directors (who are eight of the nine current directors) are likely incapable of exercising independent judgment regarding the subject matter of the suit. No such facts are alleged. Indeed, the undisputed facts show the reverse – namely, that the directors, including the members of the Audit Committee, are capable of exercising independent judgment to rectify mistakes that have come to their attention.

The facts are undisputed that the directors, particularly those on the Audit Committee, have demonstrated their ability to confront problems and deal with them in a forthright manner. In late 2003, Veeco announced that it had reached an agreement to acquire a business unit called TurboDisc. In late 2004, during the course of integrating TurboDisc into its business, Veeco discovered potential accounting errors in the financial records of TurboDisc. Veeco's board of directors promptly authorized an internal investigation supervised by the Audit Committee. After a thorough investigation by the Audit Committee and outside counsel and accountants retained for the investigation, Veeco issued a restatement of its financial reports for the first three quarters of 2004 correcting those accounting errors. Veeco's board of directors should be lauded for its swift and voluntary response. Instead, it was slapped with this derivative lawsuit.

This suit against Veeco's directors should be dismissed for the simple reason that Plaintiffs have no standing to sue. Eight out of nine members of Veeco's board are outsiders who come from private industry and academia and not company management. Nonetheless, Plaintiffs have

failed to plead, as the law requires, any particularized facts that could justify excusing their failure to make a pre-suit demand. The demand requirement in shareholder derivative actions "implements the basic principle of corporate governance that the decisions of a corporation – including the decision to initiate litigation – should be made by the board of directors," and not by shareholders. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 101 (1991). Where, as here, plaintiffs allege a failure of oversight, demand is excused *only* where the shareholder plaintiffs plead particularized facts – not conclusory assertions – that demonstrate that a *majority* of the corporation's directors are interested or lack independence, and therefore, are "incapable of making an impartial decision." *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993). Plaintiffs' conclusory allegations do not come close to demonstrating that even a single outside director of Veeco's board – let alone a majority of them – is "interested" or incapable of making an impartial decision.

**STATEMENT OF FACTS**

### I.    Veeco's Directors

Defendants are nine current directors and one former director of Veeco. CAC ¶¶ 16-25. Defendant Edward Braun, the CEO, is the only member of the board who is in management. *Id.* ¶ 16. Defendants Peter Simone, Richard D'Amore, Joel Elftmann, Heinz Fridrich, Douglas Kingsley, Paul Low, Roger McDaniel and Irwin Pfister currently serve as directors. *Id.* ¶¶ 17-24. Defendant Walter Scherr served as a director until May 2005. *Id.* ¶ 25.

### II.    In February 2005, Veeco Announces An Internal Investigation Of TurboDisc

On February 11, 2005, Veeco announced that an internal investigation had been commenced after its internal audit staff "discovered improper accounting transactions in the course of a Veeco internal audit and transitioning the [TurboDisc] division to Veeco's SAP accounting system during the fourth quarter of 2004." Veeco Form 8-K, dated February 11, 2005,

2

Ex. 99.1 (attached as Exhibit A to the Declaration of Robert F. Serio, dated May 5, 2006 ("Serio Decl.")); CAC ¶ 67. Veeco also announced that "the Audit Committee of the Company's Board of Directors has been supervising the accounting investigation and authorized Veeco's outside counsel, Kaye Scholer LLP, to hire Jefferson Wells to be actively involved in performing forensics work as part of the investigation." Serio Decl. Ex. A.

Within days of the February 11, 2005 announcement, the first of several securities class action lawsuits was filed. They were subsequently consolidated. None of the outside directors is named as a defendant in the consolidated securities action.

## III.    In March 2005, Veeco Announces A Restatement

On March 16, 2005, Veeco announced that the Audit Committee's investigation had been completed. Veeco issued a restatement of its financial results for the first three quarters of 2004, which resulted in a $10.2 million adjustment to pre-tax earnings. Veeco 2004 Form 10-K, dated March 16, 2005, at 5 (Serio Decl. Ex. B). The Company also made "a number of personnel changes to help strengthen the management of the epitaxial process equipment group and the TurboDisc business." *Id.*

## IV.    Plaintiffs File Suit Almost Immediately After Veeco Issues Its Restatement

Plaintiffs are three individuals who each filed a derivative lawsuit almost immediately after Veeco issued its restatement. None of them made a pre-suit demand.

The derivative actions were consolidated. On September 26, 2005, Plaintiffs filed their Amended Complaint. Plaintiffs assert in the Amended Complaint that Veeco's directors "breached their fiduciary duties to Veeco's shareholders by failing to prevent financial statements from being issued that misrepresented . . . the Company's actual financial results; and failing to prevent and/or adequately investigate the Company's violations of export laws." CAC ¶ 33.

The allegations in the Amended Complaint relating to the TurboDisc division restatement and export law violations track the allegations from a securities class action complaint filed prior to consolidation. Significantly, however, on November 7, 2005, plaintiffs in the consolidated securities action filed a Consolidated Amended Class Action Complaint based on counsel's further investigation, including extensive interviews with confidential sources allegedly employed by Veeco during relevant time periods. Notably, that class action complaint dropped all allegations relating to any supposed export law violations. Moreover, though Plaintiffs assert that "a single violation of export laws . . . can lead to fines and suspension of the Company's export privileges" (Ps' Br. at 7 n.17), Plaintiffs do not and cannot allege that Veeco has ever been charged with or found to have violated any export law, much less been fined for a violation of any export law, or that Veeco's export privileges have ever been suspended. Their notion of export law violations is one apparently tailor-made for their complaint; it is unsupported by any public document, admission or finding by any agency.

## ARGUMENT

Under Federal Rule of Civil Procedure 23.1, a would-be derivative plaintiff must "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort." "Because Rule 23.1 requires that Plaintiff make particularized allegations, *it imposes a pleading standard higher than the normal standard applicable to the analysis of a pleading challenged under Rule 12(b)(6)*." *Fink v. Weill*, 2005 WL 2298224, at *3 (S.D.N.Y. Sept. 19, 2005) (dismissing derivative action) (emphasis added).

Thus, the threshold inquiry is whether the plaintiff has made a demand on the board or identified concrete reasons why demand would have been futile. Because Plaintiffs here concede that they made no pre-suit demand, they must establish (through particularized allegations)

4

"demand futility" in order to proceed with a derivative action. *White v. Panic*, 783 A.2d 543, 550-51 (Del. 2001) (dismissing derivative action). Plaintiffs do not, and cannot, do so.

Plaintiffs do not allege that the director defendants engaged in self-dealing, appeared on both sides of a transaction, or expected to derive a personal benefit from a transaction that is not equally shared by the stockholders. Instead, Plaintiffs assert a so-called *Caremark* claim – *i.e.*, "that the directors allowed a situation to develop and continue which exposed the corporation to enormous legal liability and that in so doing they violated a duty to be active monitors of corporate performance." *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996). A *Caremark* claim is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Id.*; *see also Rattner v. Bidzos*, 2003 WL 22284323, at *12 (Del. Ch. Oct. 7, 2003) ("[A] claim for failure to exercise proper oversight is one of, if not the, most difficult theories upon which to prevail.").

Where, as here, the directors are not being sued for a specific action or decision but for an alleged failure to exercise oversight, this Court "must determine whether or not the particularized factual allegations of [the] derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales*, 634 A.2d at 934. "[T]he *Rales* test, in examining the 'interest' of the challenged directors, asks whether the directors face a '*substantial likelihood*' of personal liability." *Rattner*, 2003 WL 22284323, at *12.

Plaintiffs do not come close to meeting the particularity requirements of Rule 23.1 or satisfying their burden under *Rales* to create a reasonable doubt about the directors' independence or disinterestedness.

5

**I.      Plaintiffs Cannot Excuse Demand Based On A Conclusory
          Assertion That All Of The Directors Would Have To Sue Themselves**

Plaintiffs' conclusory assertion that "Veeco's directors are not disinterested or independent

because they are personally liable . . . [and therefore] cannot exercise independent objective

judgment in deciding whether to bring this action" (CAC ¶ 101) is patently insufficient:

> Plaintiff further argues that demand should be excused because making a demand
> on the board would require the directors to sue themselves. Simply naming
> directors as defendants, however, is not a sufficient basis on which to claim
> demand futility. In addition, the mere threat of personal liability does not create
> a reasonable doubt as to the director's interestedness or independence.

*Fink*, 2005 WL 2298224, at *4.[1]

**II.     Plaintiffs Have Failed To Allege Facts Raising Sufficient Doubt As To The
          Interest Or Independence Of The Outside Directors On The Audit Committee**

Plaintiffs' conclusory allegation that the five outside directors on the Audit Committee

"breached their fiduciary duties to the Company by failing to ensure Veeco had an adequate

system of internal controls . . . [and] cannot be expected to bring an action against themselves"

(CAC ¶ 104) is also insufficient. *See Caviness v. Evans*, 229 F.R.D. 354, 359 (D. Mass. 2005)

("[W]hile McArdle served on the Audit Committee from fiscal years 2000 through 2004,

Plaintiff's conclusory allegation that McArdle breached her supervisory duties, without more, fails

to raise a reasonable doubt that McArdle is interested.").

---

[1]  As an apparent throwaway, Plaintiffs argue that demand would be futile because "if these
directors were to sue themselves or certain of the officers of Veeco, there would be no directors'
and officers' insurance protection." CAC ¶ 111. This precise argument has been rejected many
times before as "nothing more than variations on the 'directors suing themselves' and
'participating in the wrongs' refrain" and "provid[ing] no particularized facts creating a
reasonable doubt that the directors are disinterested or independent." *Caruana v. Saligman*,
1990 WL 212304, at*4 (Del. Ch. Dec. 21, 1990); *see also Caviness v. Evans*, 229 F.R.D. at 360
(same).

Indeed, the Amended Complaint "is empty of the kind of fact pleading that is critical to a *Caremark* claim, such as contentions that the company lacked an audit committee, that the company had an audit committee that met only sporadically and devoted patently inadequate time to its work, or that the audit committee had clear notice of serious accounting irregularities and simply chose to ignore them or, even worse, to encourage their continuation." *Guttman v. Huang*, 823 A.2d 492, 507 (Del. Ch. 2003).

Far from alleging that the Audit Committee met sporadically or failed to function, Plaintiffs concede that the Audit Committee met at least 27 times in 2003 and 2004. *See* Ps' Br. at 15. And, far from ignoring any accounting irregularities brought to their attention, the Audit Committee led the investigation of TurboDisc that resulted in the restatement. *See Caviness*, 229 F.R.D. at 360 (dismissing derivative action because, *inter alia*, "AspenTech had an Audit Committee that met thirty-nine times from fiscal years 2000 through 2004, and Plaintiff has not pled that the Audit Committee had 'clear notice' of the accounting improprieties").

Plaintiffs do not allege that any accounting errors or deficiencies in internal controls at the TurboDisc division were brought to the attention of the Audit Committee, but then ignored.[2] There also are no allegations that any export law violations were brought to the attention of the Audit Committee, but then ignored. Indeed, Plaintiffs do not even allege (and cannot) that Veeco has been found to have violated any export law. Without particularized allegations indicating that "red flags" were brought to the attention of the directors, but ignored, Plaintiffs do not come close to raising sufficient doubt as to the interest or independence of the Audit Committee members, as confirmed by relevant case law:

---

[2]   Thus, whether Plaintiffs' allegation that "a single employee had total control over TurboDisc's accounting policies and practices" (Ps' Br. at 3) is true or not, Plaintiffs do not allege that the Board was aware of alleged insufficiencies in TurboDisc staffing at the divisional level.

- *Stone v. Ritter*, 2006 WL 302558, at *2 (Del. Ch. Jan. 26, 2006) ("[P]laintiffs contend that the board was not disinterested and independent because the defendants 'face a substantial likelihood of liability' for their failure to implement adequate internal controls. Plaintiffs' complaint is devoid of the particularized allegations of fact needed to tie the defendants to any of the alleged wrongdoing. Plaintiffs fail to point to any facts either showing how the Hamric and Nance scheme, or any other problems at AmSouth, waved a 'red-flag' in the face of the board. Nor do plaintiffs point to facts suggesting a conscious decision to take no action in response to red flags. Without these well-pled allegations, there is no possibility the defendants faced a substantial likelihood of liability.").

- *Rattner v. Bidzos*, 2003 WL 22284323, at *13 (Del. Ch. Oct. 7, 2003) ("[I]t is again important to recall the structure of the Board, in that only one Director Defendant is alleged to have been a senior manager of the Company at the time this action was filed. There is nothing alleged with particularity in the Amended Complaint that would either demonstrate or permit me to draw the reasonable inference that the Director Defendants were aware of a possibly onerous elevation in a single financial statistic. As has been noted, claimed red flags 'are only useful when they are either waived in one's face or displayed so that they are visible to the careful observer.'").

- *In re Citigroup Shareholders Litig.*, 2003 WL 21384599, at *2 (Del. Ch. June 5, 2003) ([T]hese "red flags" are comprised of a series of internal corporate memoranda and e-mails disseminated at the level of Citigroup's operating subsidiaries. There is nothing in the Amended Complaint to suggest or to permit the court to infer that any of these ever came to the attention of the board of directors or any committee of the board. How, exactly, a member of the Citigroup board of directors was supposed to be put on inquiry notice by something he or she never saw or heard of is not explained. The answer to the question is obvious. 'Red flags' are only useful when they are either waived in one's face or displayed so that they are visible to the careful observer.").

None of the outside directors are named as defendants in the consolidated securities class action, *In re Veeco Instruments Inc. Secs. Litigation*. By contrast, in *In re Cendant Corp. Derivative Action Litigation*, 189 F.R.D. 117 (D.N.J. 1999) (Ps' Br. at 15), the district court determined that "[e]ach of the sixteen Director Defendants is interested because he is a defendant in other pending class action suits arising out of the accounting irregularities." *Id.* at 129.[3]

---

[3] Plaintiffs' reliance on *In re Oxford Health Plans, Inc.*, 192 F.R.D. 111 (S.D.N.Y. 2000) (Ps' Br. at 15) also is misplaced. In *Oxford*, the plaintiffs alleged specific facts demonstrating the directors' "*intentional* nonfeasance and acquiescence with *knowledge* of management's repeated misrepresentations to the financial markets." *Id.* at 115. In addition, there was significant

[Footnote continued on next page]

In sum, the Amended Complaint is devoid of particularized allegations of fact raising

sufficient doubt as to the interest or independence of the directors on the Audit Committee.[4]

### III. The Alleged Business Relations Of Messrs. Elftmann, Fridrich, Simone And Pfister Do Not Create A Reasonable Doubt About Their Independence

Plaintiffs' assertion that "Elftmann, Fridrich, Simone and Pfister had long-standing

business ties" (Ps' Br. at 16) does not create a reasonable doubt about their independence:

> Plaintiff lists Defendants' business associations with each other, specifically stating
> that they are friends, and in some cases, business partners. The Complaint does not,
> however, include any allegations as to how the connections would likely impede the
> board members' ability to assess independently a demand for corrective action as to the
> matters complained of here. Such generalized allegations of connections are not
> sufficient to create reasonable doubt that a majority of the board is disinterested.

*Fink v. Weill*, 2005 WL 2298224, at *3.

"[T]o establish a lack of independence, plaintiff must show that the directors are 'beholden'

to [interested directors] or so under their influence that their discretion would be sterilized." *Id.*

---

[Footnote continued from previous page]

doubt as to the Oxford directors' independence because they awarded a "substantial severance
package" to the CEO "*after* the Directors knew of his responsibility for the alleged problems"
and continued to support the CEO *after* "regulatory actions by the Governor of New York and
the Superintendent of Insurance of New York." *Id.* Moreover, "two of the Director Defendants
sold Oxford stock while in possession of material non-public adverse information." *Id.* at 116.
And, in contrast to the modest restatement of $10.2 million in pre-tax earnings here, "Oxford
took over one-half *billion* dollars in total charges relating to the fraudulent activities." *In re
Oxford Health Plans, Inc. Secs. Litig.*, 51 F. Supp. 2d 290, 293 (S.D.N.Y. 1999). There are no
allegations in Plaintiffs' Complaint that are even remotely comparable in terms of impugning
the directors' disinterestedness.

[4]   Plaintiffs understandably do not mention in their brief the conclusory allegation that Messrs.
Simone, Elftmann, Fridrich, Kingsley, Pfister and Scherr would never bring suit against the
outside directors on the Compensation Committee. *See* CAC ¶ 99. This allegation is plainly
insufficient. *See Fink v. Komansky*, 2004 WL 2813166, at *7 (S.D.N.Y. Dec. 8, 2004)
(rejecting argument that "Director Defendants receive compensation for their membership on
the Merrill Lynch board and therefore would not jeopardize their position by initiating a suit
against the Board"); *Caviness*, 229 F.R.D. at 361 (same).

*See also Orman v. Cullman*, 794 A.2d 5, 25 n.50 (Del. Ch. 2002) (lack of independence requires

showing that director might be threatened with loss of significant benefit from another director).

Plaintiffs do not allege any particularized facts establishing such influence or domination

by any interested director. Instead, plaintiffs simply list various outside business connections[5]

that do not remotely suggest dependence and assert that "it would be contrary to human nature

. . . to evaluate claims asserted against . . . friends and business associates in an independent and

disinterested manner." Ps' Br. at 16. That is patently insufficient. *See Beam v. Stewart*, 845 A.2d

1040, 1050-51 (Del. 2004) ("Allegations that Stewart and the other directors moved in the same

social circles, attended the same weddings, developed business relationships before joining the

board, and described each other as 'friends,' even when coupled with Stewart's 94% voting power,

are insufficient, without more, to rebut the presumption of independence.").[6]

---

[5]  The following relationships are alleged: (a) prior service by three directors on board of another
company and prior employment by two of them at yet another company; (b) prior service by
four directors on board of non-commercial trade association; (c) service by Braun and a non-
officer director on board of another company; (d) service by two directors on board of another
company; (e) service by one director as consultant to company in which another director is a
partner; and (f) that a company in which one director is a partner does work for another
company where other directors are board members. CAC ¶ 106. None of this indicates that
any director is "beholden" to another. *See, e.g., Komansky*, 2004 WL 2813166, at *6 (rejecting
argument that directors lacked independence because "Komansky and Luciano served together
as directors on the board of another company").

[6]  Both *In re New Valley Corp. Derivative*, 2001 Del. Ch. LEXIS 13 (Del. Ch. Jan. 11, 2001) and
*Harbor Finance Partners v. Huizenga*, 751 A.2d 879 (Del. Ch. 1999) are inapposite. In *New
Valley*, the court found that certain directors were beholden to the Chairman and CEO because
he had paid each of them $30,000 to agree to be director nominees in the Chairman's proxy bid
for another company. 2001 Del. Ch. LEXIS 13, at *25. In *Harbor Finance*, the court found
that a director could not be expected to impartially consider a demand to file a lawsuit against a
director with whom he had worked intimately for over thirty years because that director was his
brother-in-law. 751 A.2d at 889.

## CONCLUSION

For all these reasons, defendants respectfully request that this Court dismiss plaintiffs'

Consolidated Amended Verified Shareholder Derivative Complaint and award such other and

further relief as the Court deems appropriate.

Dated:  New York, New York
        May 5, 2006

GIBSON, DUNN & CRUTCHER LLP

By: _____

John A. Herfort (JH-1460)
Robert F. Serio (RS-2479)
Aric H. Wu (AW-0252)
J. Ross Wallin (JW-3911)

200 Park Avenue
New York, New York 10166-0193
Phone: (212) 351-4000
Fax: (212) 351-4035

Attorneys for Defendants

11