UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
———————————————————————x
                                                    :
In re VEECO INSTRUMENTS, INC.                       :   05-MD-1695 (CM) (GAY)
SECURITIES LITIGATION                               :
                                                    :
———————————————————————x
                                                    :
DAVID ALTMAN, derivatively on behalf of             :
VEECO INSTRUMENTS, INC.,                            :   05-CV-10225 (CM) (GAY)
                                                    :
             Plaintiff(s),                          :
                                                    :
    vs.                                             :
                                                    :
EDWARD H. BRAUN, et al.,                            :
                                                    :
             Defendant(s),                          :
                                                    :
———————————————————————x
                                                    :
AUGUST SCHUPP, III, derivatively on behalf of       :
VEECO INSTRUMENTS, INC.,                            :   05-CV-10226 (CM) (GAY)
                                                    :
             Plaintiff(s),                          :
                                                    :
    vs.                                             :
                                                    :
EDWARD H. BRAUN, et al.,                            :
                                                    :
             Defendant(s).                          :
———————————————————————x

**MEMORANDUM OF LAW IN SUPPORT OF DERIVATIVE
PLAINTIFFS' MOTION TO EXTEND DISCOVERY DEADLINE**

Plaintiffs David Altman and August Schupp, III (the "Derivative Plaintiffs"), shareholders of Veeco Instruments, Inc. ("Veeco" or the "Company"), respectfully submit this memorandum in support of their Motion To Extend Discovery Deadline. Derivative Plaintiffs seek an order from the Court setting the new fact-discovery cut-off date as April 30, 2007, three months after the currently scheduled close of fact discovery.

## INTRODUCTION

On December 11, 2006, Derivative Plaintiffs served their Notice Of Taking Depositions, identifying nine fact witnesses. On December 27, 2006, counsel for defendants sent a letter stating, inter alia, that they would instruct their clients not to appear for deposition. With the conclusion of fact-discovery looming at the end of this month, defendants imposed an impenetrable barrier to the expeditious resolution of fact discovery.

Accordingly, Derivative Plaintiffs seek a discovery extension for three purposes: (1) to ascertain whether there will be further document productions responsive to the outstanding document requests; (2) to establish guidelines pursuant to which the parties can, in good faith, engage in the orderly scheduling and taking of depositions of fact witnesses; and (3) if the Court grants Derivative Plaintiffs' previously filed motion to amend the derivative complaint, to provide Derivative Plaintiffs sufficient time to seek discovery with respect to the additional allegations therein.

## FACTUAL BACKGROUND

On July 28, 2006, the Court approved defendants' request for an amendment to the April 6, 2006 Scheduling Order.[1] Defendants, who had initiated mediation discussions, suggested that the

---

[1] Derivative Plaintiffs and plaintiffs in the coordinated securities action (the "Securities Plaintiffs") also joined in the request.

adjournment "would greatly increase the likelihood of a successful mediation."[2] Also representing that document production would be complete within the first three weeks of August, defendants explained that the adjournment would provide the parties "time to study the documents and prepare written submissions in advance" of the two-day mediation beginning on October 11, 2006. *Id.*

Derivative Plaintiffs utilized the time wisely, pursuing an investigation of their claims and discovery while studying the produced documents. In addition to developing their claims and preparing for mediation, Derivative Plaintiffs also prepared and presented to defendants a comprehensive outline of suggested corporate governance reforms for mediation discussion purposes. Defendants never responded to Derivative Plaintiffs' proffer. Indeed, the mediation was an utter failure. Unfortunately, the mediation took valuable time and effort away from pursuing discovery.

**Defendants' Delinquent Document Productions**

By mid-October, Derivative Plaintiffs resumed their discovery efforts. On October 26, 2006, defendants produced additional documents. *See* Harwood Decl., Exhibit A. On December 1 and December 12, defendants produced yet more documents. *Id.*, Exhibits B, C.[3] Each letter that accompanied defendants' late productions stated: "Upon further review, these documents are responsive and should have been included in Defendants' earlier document productions." *Id.* To

---

[2] *See* Letter dated July 27, 2006 to the Court, attached as Exhibit A to the Declaration of Robert I. Harwood In Support Of Derivative Plaintiffs' Motion To Extend Discovery Deadline (the "Harwood Decl.").

[3] The July 28, 2006 Order provided that document production was to be completed by August 21, 2006. Defendants sent at least two different productions in September, the month preceding the mediation. The second of the two productions took place on September 29, 2006, five days before mediation statements were due.

date, and despite several requests to do so, defendants have not confirmed that they have finished locating, identifying, and producing responsive documents to the discovery requests.

**Obstructing The Orderly Scheduling Of Depositions**

In pre-trial discovery, it is commonsensical that plaintiffs in shareholder derivative actions will require the depositions of senior officers and/or directors comprising the board of directors of the company (or subcommittees thereof) on whose behalf plaintiffs initiated suit. Indeed, it would be foolhardy not to seek testimony that serves as the basis for breach of fiduciary duty claims on the part of each defendant implicated in the challenged board action. Oftentimes, as the number of directors on a board exceeds the number of depositions proscribed by the Federal Rules, *see, e.g.*, Fed. R. Civ. P. 30 (setting presumptive ten-deposition limit), the parties either seek leave of court to notice more than ten depositions, or they reach an understanding that the complexity of the litigation necessitates noticing more than ten fact witnesses.

This derivative action is a complex litigation. The claims, as they presently stand, implicate every member of the Company's Audit Committee as well as several of its key senior officers.[4] The securities action is also a complex litigation, and its claims implicate certain of the same defendants. Not all defendants in each action are the same, however. The witnesses whose testimony sought by Derivative Plaintiffs and Securities Plaintiffs do not overlap so substantially that the prosecution of the two actions could viably adhere to the imposition of the ten-deposition limit.

---

[4] Mindful of the need to conserve litigative resources, Derivative Plaintiffs have presently endeavored to limit their notice to less than ten prospective deponents in spite of the complexity of the allegations. Should the Court grant the Motion To Amend, filed November 7, 2006, Derivative Plaintiffs may need to seek leave to notice additional defendants, notably, the members of Veeco's compensation committee in connection with the proposed claims relating to options backdating.

Although the two actions are coordinated for discovery purposes, contrary to defendants' contention, there is no state or federal law, rule or order entered limiting the Derivative Plaintiffs and the Securities Plaintiffs to the ten-deposition-limit *in the aggregate*. Nor could there be. Such an imposition is unconscionable, as it would deny both sets of plaintiffs their rights to adequately prosecute their respective cases.

After Derivative Plaintiffs served their Notice of Depositions on December 11, 2006 (*see* Harwood Decl., Exhibit E), counsel for defendants wrote a responsive letter setting forth just such an inflexible stance. "[T]he derivative plaintiffs and the securities action plaintiffs are limited to a total of ten depositions. * * * We trust that you will work expeditiously with counsel for the securities action plaintiffs to decide on which ten depositions you collectively wish to take . . . ." *See* Harwood Decl., Exhibit F.

Derivative Plaintiffs responded as follows:

> The Actions are coordinated for discovery purposes. To the extent the Actions involve common questions of fact, such coordination has been implemented for the purpose and convenience of the parties and witnesses and to promote the just and efficient conduct of both litigations. This does not mean that the Securities Action and the Derivative Action are consolidated into one action, nor could they be. The purpose of placing the Actions before the same judge is to allow the judge and the parties to together devise a pretrial structure so that discovery of all non-common issues may proceed concurrently with [*sic*] all common issues.
>
> As you know, the Actions involve different claims, different defendants and, most importantly, different elements of proof. If counsel for Defendants takes issue with each Action noticing not more than ten fact deponents, even while Plaintiffs' counsel for the Securities Action and the Derivative Action have worked to coordinate their efforts with respect to all overlapping witnesses, it is defendants' burden to take the issue up with the [Court].

*See* Harwood Decl., Exhibit G. On December 27, 2006, counsel to defendants responded, reiterating their inflexible stand:

> [W]e intend to instruct our clients not to attend the depositions that you noticed on December 11, and expect you to coordinate with the securities plaintiffs and decide on which ten depositions you collectively wish to take. If you wish to take a deposition that, when combined with the depositions being taken by the securities plaintiffs, exceeds the ten-deposition limit, then we expect you to abide by Rule 30 and seek to obtain leave of court before doing so.

*See* Harwood Decl., Exhibit H.

Plaintiffs in the derivative and securities actions never agreed to a combined ten-deposition limit. As stated in the letter to defendants, "the Actions involve different claims, different defendants and, most importantly, different elements of proof." *See* Harwood Decl., Exhibit H. To expect any differently would, at the very least, severely prejudice the ability of both the Derivative and Securities Plaintiffs to groom their claims for trial.

## ARGUMENT

Derivative Plaintiffs hereby move the Court for a three-month extension in the fact-discovery deadline. As detailed above, defendants are still producing documents and have yet to confirm that their production is complete. Given defendants' tardy production, Derivative Plaintiffs are still in the process of reviewing the documents and evaluating whether the documents are responsive to their discovery requests.

Moreover, defendants' refusal to produce witnesses for *any* of the depositions noticed by the Derivative Plaintiffs makes completing discovery by the January 31st deadline all but impossible, even if the Court resolves this issue in very short order.

Defendants' dilatory production is only one part of the problem; refusal to set a deposition schedule with the Derivative Plaintiffs further impedes Derivative Plaintiffs' fact-gathering goals. Put simply, the ten-deposition limit, in the aggregate, severely compromises Derivative Plaintiffs' rights to prosecute this case, making all but impossible the expeditious resolution of the action. Defendants should not be permitted to improperly exploit the Federal Rules to gain a tactical advantage in the discovery process.

Additionally, *sub judice* is Derivative Plaintiffs' motion to amend their complaint to add new allegations regarding backdated, or otherwise manipulated, option grants to certain senior executives and directors at Veeco. If the Court grants the motion to amend, Derivative Plaintiffs will pursue additional discovery related to those allegations.[5] As set out in that motion, the pursuit of those allegations in this action, without severing the claim, promotes the most expeditious resolution of those claims as well as the claims currently subject to the discovery process.

Derivative Plaintiffs maintain that an additional three-month extension in the fact-discovery schedule shall suffice not only in disposing of the varying disputes between the parties, but it will also provide them with the opportunity to carefully and methodically pursue their claims to which they are rightfully entitled.

---

[5] To that end, Derivative Plaintiffs have already propounded discovery requests -- a third document request and first set of interrogatories -- relating to the backdating options allegations. Defendants have responded predictably: "[T]he deadline to complete document production . . . was August 21, 2006. We therefore consider your request for production of documents dated December 18, 2006 -- almost four months after the Court's deadline -- to be a nullity." *See* Harwood Decl., Exhibit I.

## CONCLUSION

For all the reasons stated above, the Court should grant Derivative Plaintiffs' Motion To Extend The Discovery Deadline.

DATED: January 3, 2007

                                    HARWOOD FEFFER LLP

                                    s/ Robert I. Harwood
                                  Robert I. Harwood (RH-3286)
                                  Samuel K. Rosen (SR-3287)
                                  488 Madison Avenue, 8th Floor
                                  New York, New York 10022
                                  Telephone: (212) 935-7400

                                  FARUQI & FARUQI LLP
                                  Shane T. Rowley
                                  Jamie R. Mogil
                                  320 East 39th Street
                                  New York, New York 10016
                                  Telephone: (212) 983-9330

                                  GOLDMAN SCARLATO & KARON
                                  Paul J. Scarlato
                                  Brian P. Penny
                                  Carly J. Rittenhouse
                                  101 West Elm Street
                                  Conshohocken, Pennsylvania 19428
                                  Telephone: (484) 342-0700

                                  THE WEISER LAW FIRM, P.C.
                                  Robert B. Weiser
                                  Brett D. Stecker
                                  121 North Wayne Avenue
                                  Wayne, Pennsylvania 19087
                                  Telephone: (610) 225-2677

                                  *Counsel for Derivative Plaintiffs*