UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------------------- x
In re VEECO INSTRUMENTS, INC.          :        Case No.: 7:05-md-01695 (CM)(GAY)
SECURITIES LITIGATION                  :
----------------------------------------------- x
----------------------------------------------- x
THIS DOCUMENT RELATES TO               :
ALL ACTIONS                            :
----------------------------------------------- x
```

**LEAD PLAINTIFF'S  MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE AND REVERSE THE DISCOVERY ORDER OF MAGISTRATE JUDGE GEORGE A. YANTHIS SIGNED JANUARY 24, 2007**
<u>**PURSUANT TO  FEDERAL RULE OF CIVIL PROCEDURE 72**</u>

BERGER & MONTAGUE, P.C.
Sherrie R. Savett
Carole A. Broderick
Phyllis M. Parker
Jeffrey L. Osterwise
Shoshana T. Savett
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4674

*Lead Counsel for Lead Plaintiff and the Class*

## **TABLE OF CONTENTS**

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     A.    The Legal Standard For Review of a Magistrate's Ruling Under
Fed. R. Civ. P. 72 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     B.    The Magistrate's Ruling is Clearly Erroneous and Contrary to the
Controlling Precedent in This Circuit in That the Ruling is Based Solely
on Two Conclusory Affidavits Which Defy Credulity and Contain
Materially Misleading Statements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          1.    Burden of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          2.    Conclusory Assertions Cannot Establish a Claim of
Privilege in This Circuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          3.    The Affidavits Defy Credulity And Are Intentionally Misleading . . . . . 11

          4.    The Magistrate Erred in Relying on Boiler-Plate Declarations as
the Only Basis for His Ruling, Which Conflict With Other Evidence
in the Record, Including the Defendants' Own Statements . . . . . . . . . . 13

     C.    Regardless of Whether the Disputed Documents Have a Litigation Purpose,
They Are Not Subject to the Qualified Immunity of Rule 23(b)(3) Because
They Were Generated for the Purpose of Complying With Regulatory
Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

     D.    The Magistrate's Ruling that the Documents that Defendants Withheld And
Caused Others To Withhold Were Privileged Work Product Is Contrary to
Controlling Precedent in This Circuit and Clearly Erroneous . . . . . . . . . . . . . . 14

     E.    The Magistrate's Ruling that Plaintiff Did Not Demonstrate
Substantial Need to Overcome the Work Product Privilege is Clearly
Erroneous . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

     F.    Any Claim of Attorney Client Privilege is Meritless . . . . . . . . . . . . . . . . . . . . . 22

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

i

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Allied Irish Banks v. Bank of America,* - F. Supp. 2d -,
2007 WL 177870 (S.D.N.Y., Jan. 25, 2007) .............................. passim

*Berger v. Iron Workers Reinforced Rodmen Local 201,*
843 F.2d 1395 (D.C.Cir.1988) .......................................... 10

*Catskill Dev. , LLC v. Park Place Entm't Corp.,*
206 F.R.D. 78 (S.D.N.Y. 2002) ....................................... 9, 10

*DeBeers LV Trademark Ltd. v. DeBeers Diamond Syndicate Inc.,*
2006 WL 357825 (S.D.N.Y. Feb. 15, 2006) ............................. 16

*Diesel v. Town of Lewisboro,*
232 F.3d 92 (2d Cir. 2000) ............................................ 18

*Goosman v. A. Duie Pyle, Inc.,*
320 F.2d 45 (4th Cir. 1963) ......................................... 2, 14

*Harris v. Provident Life & Accident Insurance Co.,*
198 F.R.D. 26 (N.D.N.Y. 2000) ........................................ 13

*Holland v. Island Creek Corp.,*
885 F. Supp. 4 (D.D.C. 1995) ......................................... 10

*In re Grand Jury Subpoena dated January. 4, 1984,*
750 F.2d 223 (2d Cir. 1984) ........................................ 1, 11

*In re Grand Jury Subpoenas dated March 19, 2002 and August 2, 2002*
*Mercator Corp. v. United States (In re Grand Jury Subpoenas)*
318 F.3d 379 (2d Cir. 2002) .......................................... 10

*In re Kidder Peadbody,*
168 F.R.D. 459 (S.D.N.Y. 1996) ....................................... 18

*In re Leslie Fay Cos. Inc. Sec. Litigation,*
161 F.R.D. 274 (S.D.N.Y. 1995) ....................................... 16

*In re Otal Investments Ltd. v. Capital Bank Public Ltd. Co.,*
2005 WL 1473925 (S.D.N.Y. June 22, 2005) ............................ 16

*Lucente v. IBM,*
    262 F. Supp. 2d 109 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*MSF Holding Ltd. v. Fiduciary Trust Co., Intern.,*
    2005 WL 3046287 (S.D.N.Y. Dec. 10, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*NLRB v. G & T Terminal Packaging Co.,*
    246 F.3d 103 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Parker v. Sony Pictures Entertainment, Inc.,*
    260 F.3d 100 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ramsey v. NYP Holdings, Inc.,*
    2002 WL 1402055 (S.D.N.Y. June 22, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*S.E.C. v. Thrasher,*
    1995 WL 456402 (S.D.N.Y. Aug. 2, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*U.S. v. U.S. Gypsum Co.,*
    333 U.S. 364, 68 S. Ct. 525 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Adlman,*
    134 F.3d 1194 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*United States v. Constr. Prods. Research, Inc.,*
    73 F.3d 464 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Verizon Directories Corp. v. Yellow Book USA, Inc.,*
    2004 WL 4054842 (E.D.N.Y. July 22, 2004) . . . . . . . . . . . . . . . . . . . . . . . . 1, 11, 16

*Young v. Conductron Corp.,*
    899 F. Supp. 39 (D.N.H. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## FEDERAL RULES AND STATUTES

Fed. R. Civ. P. 26(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Civ. P. 72 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

SEC Regulation S-X, 17 C.F.R. § 210 Ct. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

Sarbanes-Oxley Act of 2002.  15 U.S.C. § 7241(a) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## I.    INTRODUCTION

Lead Plaintiff Steelworkers Pension Trust ("Plaintiff"), pursuant to Fed. R. Civ. P. 72, appeals the discovery order by Magistrate Judge George A. Yanthis (the "Magistrate") dated January 24, 2007, denying Plaintiff's' motion to compel discovery, which the Magistrate denied on the grounds that (1) all documents withheld by Defendants are protected by work product privilege; and (2) Plaintiff had not demonstrated substantial need for any of the documents because Defendants had produced "voluminous amounts" of "accounting-related documents" (containing wholly different information) (the "Order").[1] Plaintiff appeals on the following grounds:

(1)    Although the Magistrate purported to recognize that "the party claiming the privilege has the burden of demonstrating that privilege exists" (Parker Decl., Ex. A, Order at 2), he contravened controlling precedent in this Circuit by ruling that all of the documents withheld by Defendants and by third parties (including Defendants' public accountant) at Defendants' direction were protected by work product privilege based solely on conclusory boilerplate statements in a declaration by a Defendant in this action, which is contradicted by his statements at the time of the events in question and defies credulity. In this Circuit the proponent of a privilege does not discharge its burden with conclusory or *ipse dixit* assertions. *See In re Grand Jury Subpoena dated Jan. 4, 1984*, 750 F.2d 223, 225 (2d Cir. 1984); *Verizon Directories Corp. v. Yellow Book USA Inc.*, 2004 WL 4054842 at *2 (E.D.N.Y. July 22, 2004). It is undisputed that the documents at issue consist primarily of accounting workpapers

---

[1] Plaintiff has attached hereto the Magistrate's January 24, 2007 Memorandum Decision and Order as Ex. A to the Declaration of Phyllis M. Parker ("Parker Decl."). Other Exhibits are also attached to the Parker Declaration, and are referred to as "Parker Decl., Ex.____".

that were created to adjust the accounting records of Defendant Veeco Instruments, Inc.'s TurboDisc subsidiary to correct errors so as to provide corrected information for the preparation of Veeco's 2004 financial statements which were required to be included in Veeco's Annual Report to be filed with the SEC. Thus, the bald assertion in the affidavit of Veeco CFO Defendant John R. Rein, Jr. (Parker Decl., Ex. B, Rein Affid., ¶11) that the documents "would not have been prepared by Veeco in the ordinary course of business" impliedly asserts that Veeco would not have corrected the erroneous TurboDisc accounting records but for the prospect of litigation, but would, instead, have sought to file false financial statements with the SEC - a criminal act - or that Veeco would instead, have violated SEC regulations by failing to file its Form 10-K altogether, which can lead to sanctions including a halt in trading of the company's stock.[2] Thus, the assertion in the affidavit defies credulity.

(2)    The Magistrate contravened Rule 26(b)(3) by ruling that documents which were created to meet SEC filing requirements, *i.e.* regulatory requirements, meet the standards for work product protection. As the Advisory Committee Notes to the 1970 Amendments to Rule 26(b)(3) state, *documents created pursuant to public requirements . . . are not under the qualified immunity provided by [Rule 26(b)(3)]* (emphasis added). *See also Goosman v. A. Duie Pyle, Inc.*, 320 F.2d 45, 52 (4th Cir. 1963).

---

[2]  In fact, Veeco would not be able to file its Form 10-K with false financial statements without the complicity of its independent accountant, because SEC Regulation S-X, 17 C.F.R. § 210 et seq. requires that financial statements in reports filed with the SEC must be accompanied by the opinion of a Certified Public Accountant.

(3)    The Magistrate denied production of all of the documents that are the subject of Plaintiff's motion in the face of the undisputed fact that, *as stated by Defendant Rein and Veeco's outside counsel Rory Greiss* of Kaye Scholer, whose Declarations provided the sole basis for the Magistrate's ruling, most of the withheld documents were prepared by Veeco and Jefferson Wells "to determine the amount of the adjustments which might be required in prior quarter financial statements." *See* Parker Decl., Ex. H at 2. Indeed, Defendants' counsel told the Magistrate that "we were using Jefferson Wells to help make sure that . . . our 10-Ks were right . . ." *See* Parker Decl., Exhibit G at 17. Moreover, the Magistrate made *no* mention of the Veeco-prepared documents, and found, contrary to the evidence, that the sole purpose of the Jefferson Wells documents was to assist Rory Greiss, Veeco's counsel, in providing legal advice to Veeco. A finding of fact that is contrary to undisputed evidence is clearly erroneous.

(4)    The Magistrate misapplied the law in this Circuit by failing to consider whether there were any reasons other than litigation for the creation of any of the documents, and failing to require Defendants to carry their burden of proving that Veeco's financial statements would not have been corrected but for the prospect of litigation. He did not require Defendants to describe any of the withheld documents, much less each and every one of them, as the case law requires. He did not review *any* of the documents. In short, there was no basis for the Magistrate's ruling.

(5)    The Magistrate's ruling contravenes Rule 23(b)(3) in that the investigation of the reasons for the errors in TurboDisc's accounting records included an examination of

3

TurboDisc's internal controls, which was necessary for and was used by Veeco's auditor for its certificate concerning Veeco's internal controls. That certificate was required by SEC regulations pursuant to the Sarbanes-Oxley Act of 2002. 15 U.S.C. § 7241(a). Therefore, all of the documents concerning TurboDisc's internal controls were prepared for the purpose of complying with regulatory authority - "public requirements" - and do not meet the standards for protection under Rule 26(b)(3).

(6)    The Magistrate stated no basis for his failure to compel production of the Veeco and Jefferson Wells workpapers that are included in the workpapers of Ernst & Young, Veeco's auditor, for Ernst & Young's audit of Veeco's 2004 financial statements that were filed with the SEC as part of Veeco's 2004 Annual Report on Form 10-K. These documents were clearly intended for and were used for the required audit and regulatory purposes. Defendants did not meet their burden of proving that those withheld documents meet the standards for Rule 26(b)(3) protection.[3]

(7)    The Magistrate's ruling that Plaintiff had failed to demonstrate substantial need for any of the documents that are the subject of Plaintiff's motion because Defendants had "already produced voluminous amounts of non-privileged accounting-related documents" (Order at 3) is clearly erroneous in that (a) it misconceives the elements

---

[3] In their motion to compel, Plaintiff sought an order compelling Defendants to produce "all reports, workpapers, interview notes, memoranda, correspondence, and any other documents, electronic or otherwise, created or prepared by Veeco, Jefferson Wells International, Inc., Veeco's outside counsel Kaye Scholer LLP, Veeco's outside auditor Ernst & Young LLP, or anyone else in connection with the investigation of TurboDisc accounting and the restatement of Veeco's financials for the first, second, and third quarters and first nine months of 2004, referenced in ......Veeco's press releases and as requested in Plaintiff's First Request for Production of Documents." *See* Parker Decl., Ex. C, Memorandum of Law in Support of Plaintiff's Motion to Compel Production of Documents Concerning Veeco's Internal Investigation.

of a claim under the federal securities laws as well as the claims asserted in this case by Plaintiff; (b) it ignores the fact that Plaintiff needs discovery with respect to Defendants' defenses as well as to Plaintiff's claims; and (c) it ignores that the "voluminous amounts of . . . accounting related documents" produced by Defendants were all dated *before* Veeco and Jefferson Wells uncovered the additional accounting errors that are the subject of the withheld accounting documents and thus contain wholly different information from the withheld documents. *See* Parker Decl., Ex. E, Defendants' Brief in Oppos. to Pl. Motion to Compel, at 1.

Defendants state that "Veeco engaged Jefferson Wells to assist management in . . . identifying the cause for the [TurboDisc] accounting errors." (Parker Decl., Ex. E, Defs. Brief at 13) Further, Defendants state that *"[i]dentifying the cause of the accounting errors goes to the heart of Veeco's defenses in this litigation." Id.* Because the Jefferson Wells documents provide evidence that "goes to the heart of Veeco's defenses," and because that evidence is not available elsewhere, plainly, Plaintiff has substantial need for that evidence.

The "voluminous amounts of . . . accounting-related documents" do not address Plaintiff's claim that Defendants misrepresented facts about TurboDisc's and Veeco's internal and disclosure controls, nor do they provide the evidence of Defendants' scienter that is an element of Plaintiff's claims and which is available from the documents withheld by Defendants.[4] Further, Plaintiff notes that since

---

[4] Indeed, if it was only necessary for Plaintiff to show that Veeco's financial statements were false, Plaintiff would be entitled to summary judgment, as Defendants have admitted that fact by restating the financial statements.

Defendants did not know about all the accounting errors which are addressed in the documents Defendants withheld when they created the "voluminous documents" that they did produce, those "voluminous documents" could not have discussed those errors and do not provide the same information sought by Plaintiff.

For the foregoing reasons, and as discussed below, Plaintiff asks the Court to set aside the Magistrate Judge's order because it is clearly erroneous and contrary to law. Moreover, the Magistrate overlooked the contemporaneous statements by Mssrs. Rein and Greiss in which they stated - contrary to their affidavit statements - that Jefferson Wells was actively engaged in correcting TurboDisc accounting to compute the adjustments for the year-end financial statements. The Magistrate also overlooked the deposition testimony of Thomas Vollmer, Jefferson Wells engagement manager, the person most knowledgeable about the purpose and nature of the accounting activities that generated the documents at issue, who testified that Jefferson Wells was hired to perform accounting-correction and for adjustment purposes for issuance of the Company's consolidated financials with the SEC pursuant to established regulatory requirements.

In its Motion to Compel, Plaintiff sought two categories of documents leading up to the public disclosure on February 11, 2006 and the announcement of the Restatement on March 16, 2007. First, Plaintiff sought the accounting documents, which were generated by the correction and adjustment of the accounting records to prepare financials statements (the "Accounting Documents"). Second, Plaintiff sought the documents involving and identifying the internal controls at TurboDisc that either did not exist or which constituted internal control violations which caused the accounting errors, and which necessitated the accounting adjustments (the "Internal Control

6

Documents"). The Company needed to create and generate both of these categories of documents to meet regulatory requirements.

## II.    PROCEDURAL HISTORY

In this action for violation of the federal securities laws against Veeco, and Individual Defendants including, its Chief Executive Officer, its Chief Financial Officer, and its Corporate Controller, Plaintiff asserts that (1) Defendants knowingly or recklessly caused Veeco to issue financial statements for the first, second and third quarters of 2004 which were materially false and misleading because, *inter alia,* those financial statements included materially overstated revenues and income of Veeco's TurboDisc subsidiary which were included in Veeco's quarterly reports on Form 10-Q that were filed with the SEC and disseminated in abbreviated form in press releases; (2) Veeco's Chief Executive and Chief Financial Officers each filed certifications required by the Sarbanes-Oxley Act with each of the foregoing Forms 10-Q, which were false in that they assured the investing public that they had caused disclosure controls to be designed for the Company to ensure that all material information about the Company was made known to them, and had evaluated those controls at the end of the period covered by the report, and assured investors that there was good reason to believe that their certifications were made with the knowledge of all material facts. Those certificates further represented that, to those Defendants' knowledge, the financial statements in the report fairly presented the Company's financial position and that the report itself was not misleading in any respect; and (3) Defendants made other false and misleading glowing representations about Veeco's TurboDisc business at other times and places.

On February 11, 2005, the last day of the Class Period, Veeco issued a press release announcing that it would "postpone the release of audited results for the fourth quarter and full year

2004 pending completion of an internal investigation of improper accounting transactions at its TurboDisc division," and that the Company expected the "investigation" to lead to the restatement of the Company's financial statements for the first three quarters of 2004 which would reduce the Company's reported income by $5.5-7.5 million. In the following month, the size of the restatement grew, as Veeco announced in a March 16, 2005 press release. *See* Parker Decl., Ex. C, at sub-exhibit C at 1. The March 16 press release announced a $10.2 million restatement of Veeco's financial statements for the first three quarters of 2004 and said that all of the erroneous accounting entries were "made by a single individual at TurboDisc whose employment had been terminated prior to the investigation." *Id.*

It is not surprising that all of the erroneous TurboDisc accounting entries were made by a single person because at all relevant times all accounting entries for TurboDisc, a $70 million per year business, were made by a single person, who was wholly unqualified for his position in that he was not a college graduate and had no relevant experience. Moreover, when Veeco acquired TurboDisc, it slashed its accounting staff from 6 - 8 people to only two people, so that the one person who did the accounting entries was vastly overworked as well as incompetent. *See e.g.* Parker Decl., Ex. K, Complaint at ¶¶39, 91.

Discovery has shown that Defendants made no examination of TurboDisc's internal controls until late July 2004, when they began to learn that the TurboDisc controller was signing off on controls he had not performed and that there were control deficiencies, or worse, where testing was done. For example, Defendants admit that no bank reconciliations were done at TurboDisc from November 2003 when it was acquired until the summer of 2004.

8

TurboDisc accounting errors became evident to Defendants, beginning at least as early as the spring of 2004. By early November, the accumulated errors were such that management had decided to fire the controller, whose termination agreement was dated December 2, 2004.

By that time, as Defendants state, they were aware of the "potential" for a restatement. As the numbers of errors uncovered by Veeco mushroomed, and Defendants expected a restatement, Defendants hit upon the not uncommon idea of calling the audit and adjustment of TurboDisc's accounting records an "investigation" nominally supervised by a lawyer, in the hope that they could cloak with privilege, accounting documents that would otherwise be discoverable.

Aware that the documents concerning the internal investigation of TurboDisc would provide vital evidence of Plaintiff's claims, Plaintiff sought the documents concerning the investigation of TurboDisc from Veeco itself and from third parties Ernst & Young and Jefferson Wells at the outset of discovery in Plaintiff's First Request for Production of Documents to Defendants in April 2006, and in subpoenas to Ernst & Young and Jefferson Wells. Defendants refused to produce the documents on privilege grounds and directed Ernst & Young and Jefferson Wells not to produce such documents to Plaintiff on the same purported grounds. After repeated futile efforts to obtain the documents, Plaintiff filed a motion to compel to the Magistrate in August 21, 2006.

## III.    ARGUMENT

### A.    The Legal Standard For Review of a Magistrate's Ruling Under Fed. R. Civ. P. 72

A District Court reviewing a non-dispositive pretrial order of a Magistrate Judge, such as discovery orders, may modify or set aside any part of that order if it is clearly erroneous or contrary to the law. Fed. R. Civ. P. 72(a); *see also Catskill Dev., LLC v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)(McMahon, J.); *Lucente v. IBM*, 262 F.Supp. 2d 109, 111 (S.D.N.Y.

2003)(McMahon, J.). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542 (1948); *see also Young v. Conductron Corp.*, 899 F.Supp. 39, 40 (D. N.H.1995)(a Magistrate's finding of fact is clearly erroneous when it is contrary to clear weight of evidence or when court has definite and firm conviction that mistake has been committed). An order is deemed contrary to law "when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *S.E.C. v. Thrasher*, 1995 WL 456402, at *12 (S.D.N.Y. Aug. 2, 1995); *Catskill Dev.*, 206 F.R.D. at 86 (Magistrate misapplied the law by failing to give weight to explicit statements by a party which contradicted the ruling in that party's favor). In addition, where the Magistrate's decision "does not offer a reasoned explanation for its decision, and merely adopts one party's arguments in their entirety, 'it is incumbent on the Court to check the adopted findings against the record 'with particular, even painstaking, care.' " *Holland v. Island Creek Corp.*, 885 F.Supp. 4, 6 (D. D.C. 1995)(quoting *Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1408 (D.C.Cir.1988).

**B.    The Magistrate's Ruling is Clearly Erroneous and Contrary to the Controlling Precedent in This Circuit in That the Ruling is Based Solely on Two Conclusory Affidavits Which Defy Credulity and Contain Materially Misleading Statements**

**1. Burden of Proof**

"The party asserting work product protection 'bears the burden of establishing its applicability to the case at hand.' . . . The burden is a 'heavy one'." *Allied Irish Banks v. Bank of America, N.A.*, 2007 WL 1777870 at *8 (citing *In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2002). *See also United States v. Constr. Prods.*

10

*Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996)(the party resisting disclosure bears the burden of establishing the factual basis for its claim of privilege).

### 2. Conclusory Assertions Cannot Establish a Claim of Privilege in This Circuit

The proponent of a privilege does not discharge its burden with conclusory or *ipse dixit* assertions. *See In re Grand Jury Subpoena dated Jan. 4, 1984*, 750 F.2d 223, 225 (2d Cir. 1984); *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 2004 WL 4054842, at * 2 (E.D.N.Y. July 22, 2004).

Nevertheless, the Magistrate found that Defendants had met their burden of proving that work product applied, relying *solely* on conclusory self-serving affidavits, violating controlling precedent in this Circuit.

### 3. The Affidavits Defy Credulity And Are Intentionally Misleading

It is undisputed that the documents at issue consist primarily of accounting workpapers that were created to adjust the accounting records of Defendant Veeco Instruments, Inc.'s TurboDisc subsidiary to correct errors so as to provide corrected information for the preparation of Veeco's 2004 financial statements which were required to be included in Veeco's Annual Report to be filed with the SEC. Thus, the bald assertion in the affidavit of Veeco CFO Defendant John R. Rein, Jr. (Parker Decl., Ex. B, Rein Affid. ¶11) that the documents "would not have been prepared by Veeco in the ordinary course of business" impliedly asserts that Veeco would not have corrected the erroneous TurboDisc accounting records but for the prospect of litigation, but would, instead, have sought to file false financial statements with the SEC - a criminal act - or that Veeco would instead, have violated SEC regulations by failing to file its Form 10-K altogether, which can lead to sanctions

11

including a halt in trading of the company's stock.[5] Thus, the assertion in the affidavit defies credulity.

The Rein affidavit is also misleading in its representation that '[h]ad we been concerned solely with the accuracy of Veeco's financial results . . . we would have continued to rely on Veeco's internal finance professionals and Veeco's outside auditors, Ernst & Young, to ensure that the company's financial statements were accurate." Parker Decl., Ex. B, Rein Aff. ¶11. Correcting the Company's financial statements to ensure their accuracy is precisely the work for which Jefferson Wells was engaged. For Mr. Rein to imply that Jefferson Wells was not performing this work and, that if the work was to be performed, the Company would have proceeded in a manner different then it in fact did proceed, is nonsensical.

In addition, the Greiss declaration is misleading on multiple counts. First, Mr. Greiss refers to Jefferson Wells as a forensic accounting firm, when Jefferson Wells performs a wide range of services including tax services, technology risk management services, finance and accounting services, and internal audit and controls services. Forensic accounting is only one aspect of one of Jefferson Wells' larger practice areas. Furthermore, by his own words, Mr. Greiss should be fully aware that Jefferson Wells is much more than a forensic accounting firm since his declaration states that he supervised and directed the work of Jefferson Wells. If this statement is to be believed, and Mr. Greiss did in fact supervise and direct the work of Jefferson Wells, then he would know that the

---

[5] In fact, Veeco would not be able to file its Form 10-K with false financial statements without the complicity of its independent accountant, because SEC Regulation S-X, 17 C.F.R. § 210 et seq. requires that financial statements in reports filed with the SEC must be accompanied by the opinion of a Certified Public Accountant.

Jefferson Wells' employees working on the correction of Veeco's financial statements were auditors and not forensic accountants.

### 4. The Magistrate Erred in Relying on Boiler-Plate Declarations as the Only Basis for His Ruling, Which Conflict With Other Evidence in the Record, Including the Defendants' Own Statements

The Magistrate committed a fundamental error by relying solely on the two affidavits submitted by Defendants as exhibits to their opposition to Plaintiff's motion to compel and totally ignoring all of Plaintiff's evidence regarding the nature of the Jefferson Wells engagement which triggered the documents sought by Plaintiff in their motion. *See Harris v. Provident Life & Accident Ins. Co.,* 198 F.R.D. 26, 30 (N.D.N.Y. 2000)(The decision of a Magistrate Judge that a document was created for a litigation purpose was clearly erroneous where circumstantial evidence created doubt regarding the reliability of an affidavit).

In order for the Magistrate to conduct an adequate analysis of this dispute, he should have reviewed some of the withheld documents *in camera.* Plaintiff suggested that this would be a proper course of action in their reply brief. In fact, that Defendants did not, themselves, request that the Magistrate conduct an *in camera* review "raises at least an inference" that they are aware that the withheld materials are not worthy of work product protection. In *Harris,* the court found that it was "curious" that withholding party did not request an *in camera* review and that an inference was raised that the documents would not support the withholding party's position because the contents of the withheld documents were solely within the knowledge of the withholding party. *Harris,* 198 F.R.D at 31.

13

**C.    Regardless of Whether the Disputed Documents Have a Litigation Purpose, They Are Not Subject to the Qualified Immunity of Rule 23(b)(3) Because They Were Generated for the Purpose of Complying With Regulatory Requirements**

The Advisory Committee Notes to the 1970 Amendment to Rule 26(b)(3) state that:

> Materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision.

Here, the disputed documents were generated in the course of correcting TurboDisc's financial records to prepare financial statements intended to be included in Veeco's 2004 Annual Report on Form 10-K, which was required by law and regulation to be filed with the SEC. These documents would have been created regardless of whether Defendants expected litigation because SEC regulations applicable to public companies require Veeco to file accurate audited financial statements in reports filed with the SEC. Thus, they were "assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation" and are not protected work product under Rule 26(b)(3). *See Goosman v. A. Duie Pyle, Inc.*, 320 F.2d at 52. Accordingly, the Magistrate's Order was clearly erroneous and contrary to law.

**D.    The Magistrate's Ruling that the Documents that Defendants Withheld And Caused Others To Withhold Were Privileged Work Product Is Contrary to Controlling Precedent in This Circuit and Clearly Erroneous**

Although the Magistrate cites the controlling precedent in this Circuit, *United States v. Adlman*, 134 F. 3d 1194 (2d Cir. 1998), the Magistrate misapplied the *Adlman* standard to the facts of this case by failing to make the analysis *Adlman* requires - - to determine whether each document would have been created "irrespective of the expected litigation." *Adlman*, 134 F.3d at 1204. Instead of making any analysis of the underlying facts or conflicting evidence, the Magistrate simply said

14

that if the conclusory affidavits say so, therefore it must be, so no matter what other evidence is in the record and regardless of any inaccuracies therein. The Magistrate baldly stated:

> Based upon the Greiss Declaration and Rein Affidavit, I conclude that the documents at issue are eligible for protection under Rule 26(b)(3).

*See* Parker Decl., Ex. A, Order at 3.

In contrast to the Order in this action, the court's analysis in a similar case, *Allied Irish Banks,* – F. Supp. 2d – , 2007 WL 177870 (S.D.N.Y. Jan. 25, 2007), is instructive because that court, unlike the Magistrate here, conducted a careful analysis of the underlying facts to determine whether the documents would have created in the absence of litigation.

In *Allied Irish Banks*, the defendants, as do these Defendants, asserted that the involvement of a law firm to assist with or supervise an investigation suffices to prove that documents generated in the course of the investigation were prepared in "anticipation of litigation," and transforms otherwise discoverable documents into work product. To determine whether the documents meet the *Adlman* standard, the court in *Allied Irish Banks* carefully analyzed the " nature of the document and the factual situation in the particular case" as required by *Adlman. Id.* at *8 (*citing Adlman*, 134 F. 3d at 1202), noting that "[w]hether there is work product protection turns on whether the material '*would have been prepared irrespective of the expected litigation.* '" *Id.* at *8 (*citing Adlman*, at 134 F. 3d at 1204)(emphasis added).

The court noted that the company no doubt had reason to believe that shareholder ligation would result as soon as the company announced it had found fraud and initiated an investigation - such fraud frequently triggers litigation - but that the contemplation of litigation was not enough to cloak the investigation materials with work product protection under *Adlman*; rather, the relevant question is whether these materials "would have been prepared in essentially similar form

15

irrespective of litigation, " which, the court said, <u>requires the court</u> to consider *"whether there existed any reasons other than anticipation of litigation for generating the materials." Id.* at \*9. The court in *Allied Irish* found, after careful factual analysis, that there were non-litigation "business reasons" - the need to uncover the reasons for the fraud and the people responsible, and to alleviate public concerns about the company's business in the time of crisis - which compelled the commissioning of the investigation and report. The court thus held, after careful factual analysis, that because of existence of the non-litigation purposes underlying the creation of the documents, the documents were not protected work product under Rule 26(b)(3), stating:

> [a]ll of the circumstances surrounding the creation of the Report point to **the ineluctable conclusion that [the company] would have prepared the Report,** along with the materials used to generate it, simply because of its 'business-related purposes' - that is, **regardless of the potential for litigation.**

*Id.* at \*10 (emphasis added).

The court in *Allied Irish* further noted that the analyses on which it based its decision is one which *Adlman* requires, and is one regularly performed by the courts, citing *DeBeers LV Trademark Ltd. v. DeBeers Diamond Syndicate Inc.,* 2006 WL 357825, at \*1 (S.D.N.Y. Feb. 15, 2006)(documents created by management consultant not work product where consultant "would have been created" them in a similar form "even if the potential for litigation had been remote"); *MSF Holding Ltd. v. Fiduciary Trust Co., Intern.* 2005 WL 3046287, at \*2 (S.D.N.Y. Dec. 10, 2005)(e-mail not work product where no showing was made that it "would not have been prepared without the threat of litigation"); *In re Otal Invs. Ltd. v. Capital Bank Pub. Ltd. Co.,* 2005 WL 1473925, at \*1 (S.D.N.Y. June 22, 2005)(factual statement prepared following collision of boats not work product where "business reasons for obtaining a statement from their captain" would have completed the report regardless of litigation); *Verizon Directories Corp. v. Yellow Book USA, Inc.,* 2004 WL

4054842, at *2 (E.D.N.Y. July 22, 2004)(e-mail released where no showing was made that it would not have been created in essentially similar form irrespective of the litigation); *In re Leslie Fay Cos. Sec. Litig.*, 161 F.R.D. 274, 281 (S.D.N.Y. 1995)(pre-*Adlman* case finding no work product protection because "had there been no ongoing or anticipated litigation, [the company] would have conducted an investigation anyway."

Finally, the court in *Allied Irish* summarily rejected the argument that hiring a law firm to "assist" in the investigation transforms investigative documents into work product was "of no moment." *Id.* at *12. Citing authority, the Magistrate noted that a party may not insulate itself from discovery by hiring an attorney to conduct an investigation that would otherwise not be accorded work product. *Id.* Accordingly, the Magistrate concluded that the party had not met its burden of showing that the material sought were protected by the work product doctrine and granted the opposing party's motion to compel. *Id.* at *13.

Similarly, in *Ramsey v. NYP Holdings, Inc.*, 2002 WL 1402055 (S.D.N.Y, June 22, 2002), the court summarily rejected the argument that in "dual motivation" cases - where there is a plausible legal and non-legal reason for generating the documents - work product protection automatically applies, as Defendants argue here. *Id.* at *10 n. 9. In *Ramsey*, like here, the Ramseys sought work product protection for investigative documents and proffered affidavits of attorneys representing that they undertook investigative efforts that resulted in creation of disputed documents solely to anticipate and prepare for defense in possible litigation for the murder of their child. However, they also conceded that they also undertook the investigation to discovery who killed their daughter, a non-litigation purpose. *Id.* at *10. The Court found that the purposes were "not mutually exclusive" but are "distinct" and that it was "entirely plausible" that the bereaved parents would pursue an

17

investigation "even if there were not a hint of a suspicion that the parent themselves were involved in the murder." *Id.* at *10.    The court stated:

> In view of this state of the record, we believe that both the Ramseys' own original explanation and the one now proffered by their attorneys are plausible under the circumstances. Indeed, the Ramseys' counsel has conceded this dual motivation. . . . As a result, we are left with the conclusion that the documents were created for two separate, if related, purposes, one of which is inconsistent with work product immunity. In such a circumstance, we are guided by the analysis of the Second Circuit in *Adlman*, in which the court indicated that documents would have been created even absent the prospect of litigation are not protected. . . .

*Id.* at *10 (citing *Adlman*, 134 F.3d at 1202).    The court instructed that such an inquiry is "mandated by *Adlman*" in all cases where there are plausible distinct reasons for generating documents.

> We recognize that this form of analysis leads the parties, and the court, into a hypothetical inquiry that necessarily involves some degree of speculation. That said, **such an inquiry appears to be mandated by the standards elucidated in *Adlman*** and is, in any event, unavoidable in assessing most work product claims since the rule itself defines its protection in terms of the subjective purposes of the creator of the documents. *See In re Kidder Peabody*, 168 F.R.D. 459, 462-66 (S.N.D.Y. 1996). Although in most cases the assessment of the reasons for the creation of a document is reasonably straightforward, that is not the case when there is more than one reason for its creation. Nonetheless, such dual-motivation analysis is frequently required in a litigation context, and in those circumstances the court, or a jury, is typically required to engage in a comparable "but for" assessment. *See, e.g. Parker v. Sony Pictures Entertainment, Inc.*, 260 F.3d 100, 108 (2d Cir.2001); *NLRB v. G & T Terminal Packaging Co.*, 246 F.3d 103, 1116 (2d Cir.2001); *Diesel v. Town of Lewisboro*, 232 F.3d 92, 108 (2d Cir.2000).

*Id.* The court thus found that the Ramseys had not met their burden of proving facts to demonstrate that the contested documents would not have been created simply to serve the purpose of finding their daughter's murderer, a purpose which is inconsistent with work product immunity. *Id.* at *10.

Here, it is undisputed that most of the "investigation" was conducted for the purpose of making adjustments to correct TurboDisc accounting records to prepare financial statements for inclusion in Veeco's 2004 Annual Report and Form 10-K to be filed with the SEC. That is what the Jefferson Wells engagement manager said in this deposition testimony (*see* Parker Decl., Ex. F at

18

47-52). That is also what Defendants' counsel told the Magistrate, stating "we were using [Jefferson

Wells] to help make sure that . . . our 10-Ks were right." *See* Parker Decl., Ex. G at 17. Because

those financial statements and that report <u>must</u> be filed with the SEC according to law, there is no

question that the documents in connection with the correction of TurboDisc's accounting records

would have been created irrespective of the prospect of litigation. For that reason, there is no

question that the Magistrate's ruling violates the controlling precedent in this Circuit.

This is the clearest imaginable case where failure to correct the financial records and filing

of uncorrected and thus false financial statements (assuming that Ernst & Young would certify the

false financials) could result in criminal penalties. Thus, this was not a viable option. Moreover,

Ernst & Young would not certify uncorrected financials. Thus, Veeco had to adjust and correct the

financial records and they and Jefferson Wells indeed jointly did so. To suggest, as the Magistrate's

decision does by relying on the affidavits which constitute the sole basis of his ruling, that failure

to correct the records is a truly viable option, is clearly erroneous and defies credulity. Moreover,

although the affidavits refer only to one Jefferson Wells report as privileged work product prepared

in anticipation of litigation, the Magistrate relied on the affidavits to hold that *all* the other

documents sought by Plaintiff in its motion to compel were also work product and thus denied

Plaintiff access to any of the documents "at issue," as though Plaintiff had sought only that one

report. Order at 3. While the Magistrate correctly stated that "[t]he party claiming the [work

product privilege] has the burden of demonstrating that the privilege exists and that it has not been

waived," (Order at 2) (citation omitted), the Magistrate did not show that the Defendants had met

their burden. Plaintiff had asked that the Magistrate examine the documents *in camera* to determine

19

if any privilege existed in part of a document and, if so, to permit Plaintiff access to the unprivileged portions. *See* Parker Decl., Ex. D at 2 n.1.

> ### E.    The Magistrate's Ruling that Plaintiff Did Not Demonstrate Substantial Need to Overcome the Work Product Privilege is Clearly Erroneous

After erroneously concluding that the work product privilege applied, the Magistrate erroneously found that Plaintiff had failed to demonstrate a substantial need, given that Defendants had already produced "voluminous amounts of non-privileged accounting-related documents." Order at 3. The Magistrate assumed that all accounting-related documents are fungible, therefore, if Defendants produced many documents, they need not produce all documents and can select the documents they choose to produce so long as they are "voluminous." In so doing, the Magistrate overlooked the facts before him.

For example, it is undisputed that the Company and Jefferson Wells found millions and millions of dollars of errors in TurboDisc's accounting records from the time Jefferson Wells was hired, in addition to the earlier-identified accounting errors found by Veeco's internal audit, and that the later discovered errors were included in the Restatement of Veeco's financials. The "voluminous" documents provided by Defendants do not provide all of the evidence Plaintiff needs to prove its claims, and do not provide evidence concerning the nature and extent of the absence of, deficiencies in and violations of internal controls that gave rise to the errors and how those documents relate to Defendants' scienter, including such matters as Defendants' knowledge of the deficiencies in TurboDisc's accounting system. Indeed, for the most part, there is no evidence at all that has been produced by Defendants concerning these later-discovered errors, after Jefferson Wells was hired, which represent almost one-half of the $10.2 million Restatement, and, therefore, are critical to Plaintiff's claims. Moreover, evidence regarding the internal control deficiencies is

critical to Plaintiff's claims regarding scienter with respect to the other elements of the Restatement as well. Defendants knew that the accounting for TurboDisc depended entirely upon an incompetent and inexperienced individual who was signing off on controls he was not performing, and that therefore, TurboDisc's financial information could not be relied upon. Defendants further knew that from the time that TurboDisc was acquired, contrary to their public representations, except for a limited purpose engagement by Veeco's internal audit consultant in June-July 2004, there was no examination nor monitoring of Turbodisc's internal controls at all until August 2004, despite evidence that demonstrated or strongly suggested improper accounting at TurboDisc.

It is Defendants' position that they did not know of the particular errors that gave rise to the Restatement. Plaintiff's position is that Defendants knew or recklessly disregarded red flags indicating that Defendants had no reasonable basis to believe that TurboDisc's financial statements were accurate. Plaintiff has no other possible way to obtain these documents from any other source, and have a substantial need for them. Yet the Magistrate ignored this argument, unquestioningly and erroneously accepting Defendants' argument that they had provided "voluminous" documents to Plantiffs which provided all the information Plaintiff needed on these core issues. As discussed above, the Magistrate's lumping all "accounting-related documents" into one category demonstrates that the Magistrate was unfamiliar with the accounting claims in this case, which are based on an accounting fraud and deficient internal controls over financial reporting resulting in restatement of financials. Plaintiff is entitled to evidence to support their claims. As Plaintiff argued in their motion to compel before the Magistrate, by withholding Veeco's documents concerning the internal audit, and by directing non-parties Ernst & Young and Jefferson Wells to withhold their documents, such as the report prepared by Jefferson Wells, Defendants have barred Plaintiff from any ability to

gain a complete understanding of the cause of each element of the Restatement and the breaches of internal controls at TurboDisc that are the gravamen of their case. In thus ignoring the entirety of the evidence before him, the Magistrate's decision was clearly erroneous.

Moreover, Defendants state that "Veeco engaged Jefferson Wells to assist management in . . . identifying the cause for the [TurboDisc] accounting errors." (Parker Decl., Ex. E, Defs. Brief at 13) Further, Defendants state that *"[i]dentifying the cause of the accounting errors goes to the heart of Veeco's defenses in this litigation." Id.* Because the Jefferson Wells documents provide evidence that "goes to the heart of Veeco's defenses," and that evidence is not available elsewhere, plainly, Plaintiff has substantial need for that evidence.

### F.     Any Claim of Attorney Client Privilege is Meritless

As Plaintiff argued in its motion to compel, Defendants waived any attorney-client privilege by, *inter alia,* having disclosed to an independent auditor the workpapers, reports and analyses of Veeco's audit and accounting personnel and of Jefferson Wells. *See* Parker Decl. Ex. C.

## IV.     CONCLUSION

Plaintiff requests that the Court overturn the Magistrate's Order and compel Defendants to produce all documents withheld by Defendants described in Plaintiff's Motion to Compel and to instruct non-parties to produce those documents that Defendants directed them to withhold.

22

Dated: February 7, 2007

**BERGER & MONTAGUE, P.C.**

By: _____

Sherrie R. Savett
Carole A. Broderick
Phyllis M. Parker
Jeffrey L. Osterwise
Shoshana T. Savett
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4674

*Lead Counsel for Lead Plaintiff and the Class*

412826.wpd

23