# EXHIBIT D

1622 LOCUST STREET 19103 phone 215.875.3000 fax 215.875.4604 www.bergermontague.com

# Berger&Montague, P.C.
ATTORNEYS AT LAW

SHERRIE RAIKEN SAVETT

WRITER'S DIRECT DIAL | 215/875-3071
WRITER'S DIRECT FAX | 215/875-5715
WRITER'S DIRECT E-MAIL | ssavett@bm.net

January 18, 2007

**Via Facsimile (914) 390-4095 and Overnight Mail**

Honorable George A. Yanthis
United States Magistrate Judge
United States Courthouse
300 Quarropas Street, Room 118
White Plains, New York 10601-4150

Re:   *In re Veeco Instruments Inc. Sec. Litig.*, 05 MD 1695 (CM)(GAY)

Dear Judge Yanthis:

We represent Lead Plaintiff and the Class ("Plaintiffs") in the Securities Class Action. We write this letter in response to the letter from Defendants' counsel to the Court, dated January 4, 2007, in which Defendants requested that the Court grant them permission to file a motion to compel Lead Plaintiff's answers to Defendant Veeco Instruments' First Set of Interrogatories to Lead Plaintiff. At the January 11, 2007 status conference, your Honor asked Lead Plaintiff to consider Defendants' letter as a motion to compel and respond by January 18, 2007. We understood that our response should be by letter as well. This letter constitutes Lead Plaintiff's response.

Defendants' motion to compel should be denied with respect to each interrogatory. As described more fully below, Defendants' interrogatories seek information that is protected from discovery by the work-product doctrine and Defendants have not demonstrated a substantial need for compelling discovery of this information. Further, Defendants' interrogatories are contention interrogatories that are premature at this time because they are contention interrogatories which were served prematurely (more than 30 days before the end of discovery), and, under Local Rule 33.3 need not be answered before the end of discovery.

Defendants demand that Plaintiffs answer most of their interrogatories asserting that fact discovery is nearly complete. Even if true, that would not excuse the prematurity of Defendants' attempt to move to compel answers. However, Defendants' repeated abuses of the discovery process and failure to abide by the trial Court's pretrial discovery deadlines have frustrated the fact discovery process. Defendants have improperly withheld on purported privilege grounds a large volume of

**Berger&Montague,P.C.**
ATTORNEYS AT LAW

Honorable George A. Yanthis
January 18, 2007
Page 2

documents that are critical to Plaintiffs' core claims in this case, instructed non-party accountants Ernst & Young, LLP and Jefferson Wells International, Inc. to withhold responsive documents, instructed witnesses at depositions not to answer Plaintiffs' questions, and demanded the return of documents during the questioning of the a deponent on spurious and vague claims of privilege.[1] Finally, Defendants prematurely seek information regarding damages although expert discovery has yet to be conducted. As such, Plaintiffs respectfully ask the Court to deny Defendants' motion to compel as to each interrogatory.

**Defendants' Motion to Compel Responses to Interrogatory Nos. 1-3 Should be Denied**

Defendants' arguments opposing Lead Plaintiff's objections to Interrogatory Nos. 1-3 have no legal or factual support. Courts protect the identity of confidential witnesses from disclosure. *See In re Cigna Corp. Secs. Litig.*, 2006 WL 263631 (E.D. Pa., Jan. 31, 2006). In its recent decision denying defendants' motion to compel plaintiff to identify its confidential sources during discovery, the *Cigna* court stated: "The Court concludes that requiring specific identification of confidential sources from among the universe of individuals with relevant knowledge in a securities fraud case would chill informants from providing critical information which may end up being in the public eye . . . Plaintiff should not be put under any compulsion to disclose the specific identity of its confidential informants." *See also In re Veeco Instruments Inc. Secs. Litig.*, 235 F.R.D. 220, 229 (S.D.N.Y. 2006). Non-disclosure of confidential sources is also supported by the policy set forth in

---

[1] Defendants' of discovery is particularly notable in their abuse of the parties' agreed-upon protective order and dubious claims of privilege. Defendants' have shown a pattern of ripping documents out of Plaintiffs' hands at the very moment that Plaintiffs attempt to use these documents during a deposition or to support a motion, on the grounds that Defendants "inadvertently produced" these documents. For example, Defendants demanded that Plaintiffs hand over documents that Plaintiffs were attempting to introduce as exhibits and to show the witness during the January 10, 2007 deposition of non-party Jefferson Wells accountant Thomas Vollmer. On a previous occasion, Defendants phoned Plaintiffs on the day Plaintiffs were filing a motion to compel and made a claim that a document had been "inadvertently produced" in an attempt to prevent Plaintiffs from using this document in support of the motion. When Plaintiffs challenged Defendants regarding the grounds for their privilege claim, Defendants apparently withdrew their claim that the document had been "inadvertently produced." This practice is especially abusive and unconscionable because Defendants provided comprehensive lists of "inadvertently produced" on September 8, 2006 and September 14, 2006, and Plaintiffs have taken great care that the documents listed not be used in the litigation. The Vollmer document, described above, did not appear on these lists.

## Berger & Montague, P.C.
ATTORNEYS AT LAW

Honorable George A. Yanthis
January 18, 2007
Page 3

Section 1107 of the Sarbanes-Oxley Act of 2002, 18 U.S.C.A. section 1513(e), requiring penalties for retaliation against informants.

Moreover, Defendants have misrepresented the court's holding in *In re Initial Public Offering Sec. Litig.*, 220 F.R.D. 30 (S.D.N.Y 2003), and, as a result, Defendant's reliance on this opinion is misplaced. Defendants contend the *In re Initial Public Offering* court denied a "motion for a protective order against interrogatories seeking identity of confidential sources." *See* Def. Letter at p. 2-3. Contrary to Defendants' reading of the opinion, the court in *In re Initial Public Offering* declined to impose a protective order where the parties had "already addressed plaintiffs' confidentiality concerns." *Id.* at 38. Moreover, *In re Initial Public Offering* simply does not concern the identity of confidential witnesses who provided information for a complaint because plaintiffs in that case had already provided the identity of the confidential witnesses to defendants. *Id.* at 32-33. Thus, the dispute in *In re Initial Public Offering* was totally different from the one before this Court. Furthermore, the court in *In re Initial Public Offering* specifically acknowledged that the dispute before it was distinguishable from other cases holding that a "party may not specifically demand the identities of witnesses interviewed or relied upon by counsel." *Id.* at 35-36.

Defendants' additional authority for their position is similarly flawed and Defendants' assertion that their position is supported by "the preponderance of the case law" is therefore misleading. The court in *In re Priceline.com Inc. Sec. Litig.*, 2005 WL 1366450, at *4 (D. Conn. June 7, 2005) specifically stated that "the identity of witnesses with whom plaintiffs or their counsel have had contact and individuals referenced in the complaint is attorney work product." The *Priceline.com* court also identified other decisions where the courts protected the identity of confidential witnesses from discovery, thus supporting Lead Plaintiff's position. *Id.; see, e.g., In re Ashworth Sec. Litig.*, 213 F.R.D. 385, 389 (S.D. Cal. 2002) (holding that the names of individuals who provided information to plaintiffs' counsel that was used in the complaint was immune from discovery as work product); *In re MTI Tech. Corp. Sec. Litig. II*, 2002 U.S. Dist. LEXIS 13015, at *18-19 (C.D. Cal. June 13, 2002) (holding that the identity of six individuals referenced in the complaint was immune from discovery as work product).

With respect to Interrogatory Nos. 1-3, Defendants also fail to inform the Court of a number of important facts which defeat their argument that Defendants have the substantial need required to overcome the work product doctrine protecting the identity of the witnesses. Lead Plaintiff provided the information sought by these interrogatories over five months before the interrogatories were first served on Lead Plaintiff. On April 10, 2006, over nine months ago, in its initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1), Lead Plaintiff provided to Defendants a list of all persons whom Lead Plaintiff believed had knowledge of the allegations in the Complaint. *See* Ex. A. This list included the names of CW1, CW2 and CW3. Currently, in their letter to your Honor

# Berger&Montague,P.C.
ATTORNEYS AT LAW

Honorable George A. Yanthis
January 18, 2007
Page 4

of January 4, 2007, Defendants assert that complete responses to requests Nos. 1-3 were not intended to "enable Defendants to isolate the individuals whom Lead Plaintiff solicited for information" rather, the **"interrogatories seek only 'the names of individuals who have personal knowledge of [the allegations in the complaint.'"** (emphasis added) See Def. Letter at p. 3. Since Lead Plaintiff has provided this information, Defendants' need for this information has been satisfied.

Defendants' claim that a self-imposed limit of 10 depositions per party supports their substantial need for answers to Interrogatory Nos. 1-3 is nothing short of outrageous. Lead Plaintiff has repeatedly asked *Defendants* to stipulate to an increased number of depositions. Defendants have refused every request, even though such agreements are common in complex securities litigation. Defendants' assertion that they will experience an undue hardship from their own lack of cooperation is absurd and unfounded. It is Defendants who have access to Veeco management and employees, as well as former employees, and can readily interview these individuals in order to determine who best to depose. The hardship that exists here is suffered only by Lead Plaintiff, who is unfairly limited by Defendants in the number of permissible depositions, limited in its access to Veeco, and, as described above, hampered at every turn by Defendants' withholding relevant documents and other abuses of the discovery process.

As discussed above, Lead Plaintiff's initial disclosures include the names of CW1, CW2 and CW3 among a list of only fifty-five individuals described as "Other Veeco Officers, Directors and Employees." Furthermore, the Complaint identifies each of the confidential witnesses as a "former employee," and it also provides a description of each former employee's function at Veeco. See Complaint ¶ 7. The court in *In re MTI Tech. Corp. Sec. Litig. II* held that the identities of confidential witnesses are protected by the work product doctrine and that defendants did not have a substantial need for the information sought where plaintiffs had provided a list of seventy-one names that included current and former employees who apparently had knowledge of plaintiffs' claims. *In re MTI Tech. Corp. Sec. Litig. II*, 2002 U.S. Dist. LEXIS 13015, at *13. The court reasoned that seventy-one current and former employees was not an unmanageable number and that defendants were "in the best position to know what type of information each individual may possess." *Id.*

By contrast, in the cases that Defendants have cited, the number of potential witnesses with knowledge was much higher than that identified in Lead Plaintiff's initial disclosures. *See In re Aetna Sec. Litig.*, 1999 WL 354527, at *4 (E. D.Pa. May 26, 1999)(plaintiffs named approximately 750 individuals who had knowledge pertaining to the allegations); *American Floral Services Inc. v. Florists' Transworld Delivery Assoc.*, 107 F.R.D. 258, 260 (N.D. Ill. 1985)(at least 200 people with knowledge of the allegations); *Miller v. Ventro Corp.*, 2004 U.S. Dist. LEXIS 6913, at *1 (N.D. Cal. Apr. 21, 2004)(200 people with discoverable information identified in initial disclosures).

## Berger&Montague,P.C.
ATTORNEYS AT LAW

Honorable George A. Yanthis
January 18, 2007
Page 5

Consequently, Defendants cannot claim a substantial need for Lead Plaintiff to specifically identify the confidential witnesses, nor can Defendants assert that they will endure an undue burden. In the more than nine months since Lead Plaintiff provided Defendants with its initial disclosures, Defendants could have easily interviewed the few people that were both included in Lead Plaintiff's initial disclosures and fit the descriptions contained in the Complaint.

Defendants also assert that they are entitled to the identity of documents provided to Lead Plaintiff. As discovery has progressed, Lead Plaintiff has delivered to Defendants all documents it received in response to subpoenas served on non-parties. Further, Lead Plaintiff has responded promptly and fully to each and every one of Defendants' requests for production of documents. Lead Plaintiff does not possess any documents regarding this litigation that it has received from non-parties that it has not delivered to Defendants. In contrast, as described above, Defendants have failed to meet the Court's August 21, 2006 strict deadline for document production by continuing to produce documents long after that date, most recently on December 12, 2006. Further, it has recently become clear that Defendants have not produced the complete files of Defendant Jack Rein. In response to Plaintiffs' subpoena for his deposition and documents, on December 13, 2006, non-party Herman Birnbaum produced e-mail communications between Mr. Birnbaum and Defendant Rein which had not previously been produced by Defendants, although the documents were clearly responsive and should have been produced. Lead Plaintiff has asked Defendants to explain their failure to produce these critical e-mails, to confirm that they have provided all responsive e-mails, and to describe the manner in which they conducted their search for electronic documents. *See* Ex. B. Lead Plaintiff has not received a response.

Accordingly, because Defendants are not able to demonstrate a substantial need for answers to Interrogatory Nos. 1-3 and because Defendants will not suffer an undue burden without these answers, Defendants' motion to compel Lead Plaintiff to answer Interrogatory Nos. 1-3 should be denied.[2]

### Defendants' Motion to Compel Responses to Interrogatory Nos. 4-13 Should be Denied

Defendants' Interrogatory Nos. 4-13 are contention interrogatories. Contention interrogatories "seek information about the factual bases underlying the claims and contentions of

---

[2] Lead Plaintiff's response to Interrogatory No. 5 is also protected by the work-product doctrine and, thus, Defendants' motion to compel Lead Plaintiff's response to Interrogatory No. 5 should be denied for the reasons discussed above because the request seeks the identity of confidential witnesses.

## Berger & Montague, P.C.
ATTORNEYS AT LAW

Honorable George A. Yanthis
January 18, 2007
Page 6

an adverse party." *Tribune Co. v. Purcigliotti*, 1997 WL 540810, at *1 (S.D.N.Y Sept. 3, 1997). While Defendants may attempt to cloak their contention interrogatories as simply requests for information about persons with knowledge and relevant documents, each of Interrogatory Nos. 4-13 is linked to specific allegations in the Complaint, often with reference to paragraph numbers, and seeks the information which Lead Plaintiff contends supports those allegations.[3] Interrogatories which track specific allegations and which request plaintiffs to state the factual basis for those allegations sound like a "classic characterization of contention interrogatories." *See In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328, 346 (N.D. Cal. 1985). Defendants' interrogatories clearly "track specific allegations" in the Complaint and, in effect, call upon Lead Plaintiff to identify the factual support for those allegations.[4]

These contention interrogatories are premature. The Southern District of District of New York has codified the principle that contention interrogatories need not be answered until the end of the discovery period. Under Local Rule 33.3, "[a]t the conclusion of discovery, and at least 30 days prior to the discovery cut-off date, interrogatories seeking the claims and contentions of the other opposing party may be served unless the court has ordered otherwise."[5] It is clear from the language of this rule that the Southern District of New York intends for contention interrogatories to be answered **"at the conclusion of discovery."** January 31, 2007, the deadline for fact discovery, is the earliest date which could conceivably be **"the conclusion of discovery."** As that date has not yet arrived, Defendants' motion to compel is premature as to the contention Interrogatory Nos. 4-15.

---

[3] Defendants' attempt to characterize Lead Plaintiff's objection to Interrogatory Nos. 4-13 as "pure gamesmanship" is specious. Lead Plaintiff's First Set of Interrogatories, dated August 2, 2006 simply asked Defendants to identify documents and to whom they were delivered. Lead Plaintiff's interrogatories were not linked to any claim or defense of the parties.

[4] Defendants concede that Interrogatory Nos. 10-13 are "arguably contention interrogatories."

[5] The case *DOT Com Entm't Group, Inc. v. Cyberbingo Corp.*, 237 F.R.D. 43 (W.D.N.Y. 2006), cited by defendants, was decided in a jurisdiction that, unlike this District, does not restrict the service of contention interrogatories, to a date which is no greater than 30 days before the end of discovery. Thus, the decision is inapplicable to this motion. Moreover, in *DOT Com*, the court found that the interrogatories were not contention interrogatories, and that a special rule applicable to issues of "prior art and obviousness" in patent cases governed the issues before the court. *Id* at 45. It is hard to imagine a less relevant case. The fact that Defendants were reduced to citing *DOT Com* demonstrates that their attempt to file a premature motion to compel is legally and procedurally unwarranted.

**Berger & Montague, P.C.**
ATTORNEYS AT LAW

Honorable George A. Yanthis
January 18, 2007
Page 7

Not surprisingly, at least one Southern District of New York court has held that contention interrogatories are not proper until after depositions have been taken. *See Shannon v. NYC Transit Authority*, 2001 WL 286727 (S.D.N.Y. 2001).

Even where there is no local rule deferring contention interrogatories to the end of discovery, courts consistently interpret Rule 33(c) as establishing a policy of "deferring contention interrogatories until the end of the discovery period." *B. Braun Med., Inc. v. Abbott Laboratories*, 155 F.R.D. 525, 526, citing *In re Convergent Technologies*, 108 F.R.D. at 336; *see also, Nestle Foods Corp. v. Aetna Casualty & Surety Co.*, 135 F.R.D. 101, 110 (D.N.J. 1990) ("The interests of judicial economy and efficiency for the litigants dictate that contention interrogatories are more appropriate after the conclusion of discovery."). Indeed, even courts that have required parties to answer contention interrogatories in the middle of discovery embrace the idea that the general policy is to defer contention interrogatories until the conclusion of discovery. *See generally, Ziemack v. Centel Corporation*, 1995 WL 729295 (N.D. Ill. 1995) ("The general policy is to defer contention interrogatories until discovery is near an end, in order to promote efficiency and fairness.").[6]

Furthermore, not only does Local Rule preclude requiring answers to Defendants' contention interrogatories at this time, it would be unfair to require Lead Plaintiff to respond to these interrogatories now. Defendants have withheld, on spurious privilege grounds, filing false declarations in support of their baseless claims of privilege, a large volume of documents, not only Defendants' own documents, but also those created by their auditor Ernst & Young, LLP and by the accounting firm Jefferson Wells International, Inc. Defendants have also severely limited Lead Plaintiff's ability to conduct meaningful depositions by instructing witnesses not to answer certain questions. These withheld documents and deposition answers concern subjects central to the Plaintiffs' case and Lead Plaintiff has filed a motion to compel the documents which is currently pending before the Court. Lead Plaintiff should not be compelled to answer contention interrogatories before the issues presented in its motion to compel are resolved. For this reason and

---

[6] Defendants' assertion that document discovery was substantially completed more than four months ago not only ignores the fact that Defendants have continued to produce documents months after the August 21, 2006 deadline for document production, as recently as December 12, 2006, which offers no assurance that their production has been completed even to date, but their assertion also wrongfully assumes that document discovery entails only the production of documents and not the time that it takes for the receiving party to review those documents. Furthermore, while depositions have begun, Lead Plaintiff has noticed several depositions which are still to be taken. Moreover, one of Lead Plaintiff's depositions was almost completely obstructed by counsel for Defendants instructing the non-party witness not to answer.

## Berger&Montague, P.C.
ATTORNEYS AT LAW

Honorable George A. Yanthis
January 18, 2007
Page 8

those discussed above, Defendants' motion to compel Lead Plaintiff to answer Interrogatory Nos. 4-13 should be denied.[7]

### Defendants' Motion to Compel Responses to Interrogatory Nos. 14-15 Should be Denied

Finally, Defendants seek to compel Lead Plaintiff's responses to Interrogatory Nos. 14 and 15, related to loss causation and damages. Defendants assert that these are not premature contention interrogatories. Defendants assert that they do not seek Lead Plaintiff's legal theory about damages. However, in the same breath, they assert that they do seek "the way in which those damages are calculated." Defendants apparently fail to comprehend that "the way in which those damages are calculated" is inextricably linked to Lead Plaintiff's legal theories about damages.

Even if these interrogatories are not contention interrogatories, they are still premature since the parties have yet to conduct expert discovery regarding damages. In fact, the one case that Defendants cite to support their position demonstrates that these interrogatories are premature. *See Convolve, Inc. v. Compaq Computer Corp.*, 223 F.R.D. 162, 173 (S.D.N.Y. 2004)(ordering parties to answer interrogatories regarding damages after the close of "damage discovery").

Moreover, that discovery should be reserved for expert discovery, as authority cited by Defendants holds. *Tribune Co. v. Purcigliotti*, 1997 WL 540810, at *2 (S.D.N.Y Sept. 3, 1997), denied interrogatory discovery which would be the subject of expert testimony on the ground that "the more practical means of securing that information is through expert discovery." Accordingly, Defendants' Interrogatory Nos. 14 and 15 are premature and Defendants' motion to compel their answers should be denied.

---

[7] In addition, Defendants' assertion that Lead Plaintiff has refused to answer Defendants' interrogatories because of the deposition testimony of Bruce Huff on December 20, 2006, is absurd. Lead Plaintiff served its objection to the interrogatories on October 23, 2006, two months before Defendants took Mr. Huff's deposition. Mr. Huff's deposition testimony has no impact on Lead Plaintiff's objections.

# Berger&Montague,P.C.
ATTORNEYS AT LAW

Honorable George A. Yanthis
January 18, 2007
Page 9


For the foregoing reasons, Defendants' request for leave to file a motion to compel Lead Plaintiff to answer their interrogatories should be denied.

Respectfully submitted,

*Sherrie R. Savett/cg*

Sherrie R. Savett

Enclosures

cc:   John A. Herfort, Esq./Robert F. Serio, Esq./J. Ross Wallin, Esq. (via e-mail)
      Robert I. Harwood, Esq. (via e-mail)
      Shane T. Rowley, Esq. (via e-mail)
      Paul J. Scarlato, Esq. (via e-mail)

412620_01.wpd