UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
In Re VEECO INSTRUMENTS, INC.,     :    05-MD-1695 (CM)
SECURITIES LITIGATION             :
———————————————————— x
THIS DOCUMENT RELATES TO:     :
———————————————————— x
EDWARD J. HUNEKE, derivatively on behalf of :   05-CV-10224 (CM)
VEECO INSTRUMENTS, INC.,          :
                                :
          Plaintiff(s),       :
                                :
     vs.                    :
                                :
EDWARD H. BRAUN, et al.,          :
                                :
          Defendant(s),     :
———————————————————— x
AUGUST SCHUPP, III, derivatively on behalf of :   05-CV-10225 (CM)
VEECO INSTRUMENTS, INC.,          :
                                :
          Plaintiff(s),       :
                                :
     vs.                    :
                                :
EDWARD H. BRAUN, et al.,          :
                                :
          Defendant(s),     :
———————————————————— x
DAVID ALTMAN, derivatively on behalf of   :   05-CV-10226 (CM)
VEECO INSTRUMENTS, INC.,          :
                                :
          Plaintiff(s),       :
                                :
     vs.                    :
                                :
EDWARD H. BRAUN, et al.,          :
                                :
          Defendant(s).     :
———————————————————— x

## DECLARATION OF ROBERT I. HARWOOD
## IN SUPPORT OF FINAL SETTLEMENT AND FEE APPLICATION

I, Robert I. Harwood, declare pursuant to 28 U.S.C. § 1746, as follows:

1.      I am a member of Harwood Feffer LLP, co-lead counsel for plaintiffs in the above-captioned shareholders' derivative action (the "Action"). I am fully familiar with all phases of the prosecution and settlement of the Action and submit this declaration in support of the final approval of the proposed settlement and fee application. Memoranda in support of the settlement and fee application are being filed contemporaneously herewith.

2.      The Action was prosecuted jointly by me and my co-lead counsel Faruqi & Faruqi LLP and Goldman Scarlato & Karon, P.C., as well as The Weiser Law Firm, P.C. Plaintiffs' counsel are highly experienced in prosecuting complex shareholder litigation, including stockholder derivative actions.

## FACTUAL BACKGROUND OF THE ACTION

3.      The Action was brought for the benefit of Veeco Instruments, Inc. ("Veeco" or the "Company") against certain of its current and former officers and directors based on alleged internal control issues in connection with the Company's financial reporting practices.[1] Veeco is incorporated in Delaware and maintains its headquarters at 100 Sunnyside Blvd., Woodbury, New York. Cmpt. ¶ 15.[2]

4.      According to Veeco's public filings, the Company designs, manufactures, markets and services a line of equipment primarily used by manufacturers in the data storage,

---

[1]     Named as defendants are Edward H. Braun, Peter J. Simone, Richard A. D'Amore, Joel A. Elftmann, Heinz K. Fridrich, Douglas A. Kingsley, Paul R. Low, Roger D. McDaniel, Irwin H. Pfister, and Walter J. Scherr.

[2]     References to the Consolidated Amended Verified Shareholder Derivative Complaint (the "Complaint") filed on September 26, 2005 will be made herein as "Cmpt. ¶ __".

semiconductor, compound semiconductor/wireless and high-brightness light emitting diode industries. Cmpt. ¶ 34.

5.    On November 3, 2003, Veeco announced that it purchased the TurboDisc division from Emcore Corporation. Veeco praised the deal as a "key acquisition" that would purportedly allow it to significantly broaden its product and technical offerings to its key customers. TurboDisc was undeniably a substantial acquisition for Veeco. It added 120 new employees to its then workforce of approximately 1,100, as well as assets necessary to the engineering, design and manufacturing of MOCVD products, including a physical plant in New Jersey. Cmpt. ¶¶ 35-36, 42.

6.    Throughout the Relevant Period (November 3, 2003 through February 10, 2005), TurboDisc became one of Veeco's largest and most important divisions, and it had a material impact on Veeco's financial results, allowing Veeco to report quarter after quarter of positive results aided, purportedly, by TurboDisc's strong business. The positive results caused a substantial increase in Veeco's stock price. *See, e.g.,* Cmpt. ¶¶ 38-39, 42-44, 48-50, 52-56, 62-65.

7.    On February 11, 2005, Veeco announced that it was postponing the release of its financial results for the fourth quarter and fiscal year 2004 pending completion of an internal investigation of improper accounting transactions at TurboDisc. Veeco revealed that "[t]he investigation focuses principally on the value of inventory, accounts payable and certain revenue items carried on the books of TurboDisc." Cmpt. ¶ 67.

8.    Shares of Veeco common stock dropped by roughly 10% on the news to close at $16.96 per share. Cmpt. ¶ 68.

rest in the hands of only one employee. During that period, the foreseeable consequences of those inadequacies came to fruition. Defendants' delayed response to Veeco's insufficient oversight, controls and corporate checks was too little, too late and came after substantial harm to the Company was already done. Cmpt. ¶¶ 4-5.

14.    Plaintiffs alleged that as a result of the Board's failure to ensure that a proper system of internal controls was in place, Veeco was forced to restate its reported financial results for the three quarters subsequent to the TurboDisc acquisition, significantly reducing its previously reported earnings. The restated financial results revealed that Veeco was not nearly as profitable as it had previously reported to investors. Cmpt. ¶ 6.

15.    Plaintiffs alleged that Veeco's restatements eroded market confidence in the Company and led to the filing of numerous securities fraud class action lawsuits, potentially exposing the Company to debilitating judgments or settlements.[3] Plaintiffs also alleged that defendants' reckless stewardship of Veeco, particularly their failure to institute appropriate controls and oversight of all areas of the Company's business, exposed the Company to potentially significant fines and legal liability, substantially impaired the Company's market capitalization, eroded the Company's goodwill and trust in the market place, and threatened the Company's overseas sales. Cmpt. ¶ 7.

16.    Plaintiffs further alleged that the inadequacies in Veeco's internal control system were more wide-spread than disclosed in Veeco's public statements, and according to a former Veeco employee, Veeco repeatedly committed serious violations of export laws in connection with its overseas sales, which constitute a material portion of Veeco's total sales. Plaintiffs

---

[3]    These securities class action lawsuits would ultimately be consolidated in this Court and captioned as *In re Veeco Instruments, Inc. Sec. Litig.*, No. 7:05-MD-01695-CM-GAY (the "Securities Action").

alleged that if proven, such violations could lead to fines and/or a suspension of the Company's export licenses, which could threaten the Company's future viability.   Cmpt. ¶¶ 83-92.

17.   Plaintiffs also alleged that defendants' conduct caused Veeco to waste valuable corporate assets, and as a result of their wrongful acts, the defendants were unjustly enriched.

## PROCEDURAL BACKGROUND OF THE ACTION

18.   The Action was initiated on March 15, 2005 by the filing of a complaint in the United States District Court for the Eastern District of New York (the "Eastern District") captioned *Huneke v. Braun*, No. 7:05-CV-10224-CM (originally No. 1:05-CV-01384-LDW-ETB). Two additional shareholder derivative complaints were filed thereafter in the Eastern District: *Schupp v. Braun*, No. 7:05-CV-10225-CM (originally No. 1:05-CV-01624-LDW-ETB) and *Altman v. Braun*, No. 7:05-CV-10226-CM (originally No. 1:05-CV-01986-LDW-ETB). The shareholder derivative cases were consolidated into a single action, *i.e.*, the Action, (No. 1:05-CV-01384-LDW-ETB) in the Eastern District on July 29, 2005.

19.   After the initial complaints were filed, plaintiffs continued their comprehensive investigation of Veeco and defendants.  This undertaking included a review of the Company's financial filings, press releases, and analyst reports, and the identification of witnesses that likely possessed information related to the claims at issue in the Action.

20.   After plaintiffs' preliminary investigation was completed, plaintiffs filed the Complaint on behalf of Veeco against defendants on September 26, 2005.   The Complaint superseded all prior complaints filed in the Action.

21.   On November 30, 2005, the Multi-District Litigation Panel transferred the Action from the Eastern District to this Court for "coordinated or consolidated pretrial proceedings" with the related Securities Action.

22.    On April 24, 2006, defendants moved to dismiss the Action.  Defendants argued that the Complaint should be dismissed because plaintiffs failed to state a claim upon which relief could be granted, failed to make demand on the Board prior to commencing the Action as required by Delaware law, and failed to demonstrate that such a demand was futile.

23.    Plaintiffs carefully analyzed defendants' arguments, conducted necessary legal research, and filed their opposition to defendants' motion to dismiss.  Plaintiffs argued that they had adequately alleged claims for breach of fiduciary duties. More importantly, plaintiffs argued that they adequately alleged demand futility because, *inter alia*, certain of the defendants lacked independence and/or disinterest, and, particularly, the members of the Audit Committee faced a substantial likelihood of personal liability as a result of their conduct and/or failure to act in connection with the Company's admitted internal control deficiencies.

24.    On June 14, 2006, this Court entered an Order denying defendants' motion to dismiss the Complaint for failure to make pre-suit demand, finding that plaintiffs' allegations raised a reasonable doubt as to whether the defendants were disinterested and capable of objectively deciding to pursue the litigation on behalf of the Company.

## INVESTIGATION AND DISCOVERY

25.    After the Court denied defendants' motion to dismiss, plaintiffs conducted additional investigation of the facts and circumstances relating to the Action.  This investigation included, *inter alia*, (i) inspecting, reviewing, and analyzing the Company's financial filings; (ii) researching corporate governance issues; and (iii) researching the applicable law with respect to the claims alleged in the Action and the potential defenses thereto.

26.    Plaintiffs also aggressively pursued discovery.  On July 27, 2006, plaintiffs entered into a stipulation with defendants and with the plaintiffs in the Securities Action to coordinate

discovery in the Action and the Securities Action. Thereafter, in response to plaintiffs' document requests, defendants produced, and plaintiffs analyzed, almost 200,000 pages of documents.

27.    Plaintiffs also served certain requests pursuant to the Freedom of Information Act ("FOIA") and obtained and inspected additional documents related to plaintiffs' allegations of export law violations at Veeco.

28.    Thereafter, plaintiffs prepared for and took depositions. In all, plaintiffs took eight depositions, and also participated in six depositions taken by plaintiffs' counsel in the Securities Action. These depositions included directors and officers of Veeco and third parties, including Veeco's auditors and the firm hired to perform forensic and reconstructive accounting regarding Veeco's integration of TurboDisc.

### THE MEDIATION

29.    On several occasions after discovery commenced, the parties discussed the possibility of a settlement. These initial discussions showed promise, and as a result, the parties retained a highly-experienced mediator, the Honorable (Ret.) Nicholas Politan to assist their efforts. Plaintiffs and defendants scheduled a mediation session for October 11-12, 2006.

30.    In advance of the mediation, plaintiffs retained an expert to provide a preliminary damage analysis in connection with the Securities Action to assist plaintiffs in estimating the damages in the Action. Plaintiffs also prepared detailed pre-mediation submissions containing a thorough analysis of the underlying facts, liability, and damages.

31.    A formal mediation session was held with Judge Politan on October 11, 2006. However, the mediation discussions ended abruptly and, thereafter, plaintiffs continued to aggressively pursue the litigation of the Action.

## THE LITIGATION CONTINUES

32.    On November 7, 2006, after the settlement discussions failed, plaintiffs moved for leave to file a proposed Second Consolidated Amended Verified Shareholder Derivative Complaint to include allegations of, and claims based on, stock option backdating.[4]  Defendants adamantly opposed this motion, resulting in substantial briefing by both sides.[5]

33.    Thereafter, plaintiffs began trial preparation.  Plaintiffs and defendants exchanged expert reports and scheduled expert depositions.  Plaintiffs submitted two expert reports: one by a damages expert, and another by an expert in corporate governance who opined on the underlying conduct.  Defendants submitted three expert reports; one by a damages expert and two by experts in corporate governance, concluding there were no damages and no liability for the underlying conduct.

34.    Plaintiffs also undertook the substantial task of preparing a final pre-trial order, that necessarily required a re-review and analysis of the underlying documents and a thorough review of the deposition transcripts to designate trial exhibits and testimony.

## THE SETTLEMENT

35.    With a trial of the Action quickly approaching, the parties renewed their settlement discussions. By the beginning of November 2007, as the parties were preparing a final pre-trial order, after vigorous, good faith, arm's-length negotiations, the parties had reached an agreement in principle on the terms of settlement as reflected in a Memorandum of Understanding which was executed on November 5, 2007.    Several weeks later, the parties formalized their

---

[4]    In connection therewith, plaintiffs also sought to add the following persons as new defendants to the Action: John F. Rein, Jr., Francis Steenbeke, John P. Kiernan, Don R. Kania, Anthony L. Martinez, Emmanuel N. Lakios, and Timothy J. Stultz.

[5]    Ultimately, this Court denied plaintiffs' motion for leave to file a Second Consolidated Amended Verified Shareholder Derivative Complaint on February 23, 2007.

understanding, which was reflected in a Stipulation and Agreement of Settlement (the "Stipulation") dated December 19, 2007 (the "Settlement").

**THE SETTLEMENT TERMS**

36.    The Settlement provides for substantial corporate governance enhancements that will confer a very significant benefit on Veeco and current Veeco stockholders.  As set forth in the Stipulation, the Settlement terms are highlighted by the following changes to Veeco's corporate governance practices: (1) independent directors must now comprise two-thirds of the Board membership; (2) the Board has designated a "Lead Independent Director" to assist both the Chairman of the Board and the coordination of activities of the Board's other independent directors; (3) a material enhancement of the Company's internal audit function; (3) the Board will create the position of, and designate, a Chief Compliance Officer having important monitoring duties; and (4) Veeco agrees to follow the "best practices," as defined in the Corporate Governance Guidelines, in connection with the Company's stock option awards.  The Stipulation also provides that plaintiffs' counsel's prosecution of the Action was a material factor in the Board's decision to adopt the corporate governance provisions set forth therein.

37.    Pursuant to the terms of the Stipulation, defendants have agreed to pay plaintiffs' counsel's attorneys' fees and reimburse their expenses in the aggregate amount of $515,000.00 (the "Fee Award").

38.    The foregoing corporate governance changes directly address many of the allegations in the Complaint.  As such, added independent oversight and the improved corporate

processes as provided by the Settlement have benefited and will continue to materially benefit Veeco and current Veeco stockholders.[6]

## PLAINTIFFS' REASONS FOR SETTLEMENT

39.     Plaintiffs believe that the claims asserted in the Action have merit and that the discovery completed to date supports this view. Plaintiffs' counsel, however, recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against the defendants through trial and, potentially, through appeals. Plaintiffs' counsel also have taken into account the uncertain outcome inherent in any litigation, especially in complex actions such as the Action, as well as the difficulties and delays of such litigation. Plaintiffs' counsel are also mindful of the inherent problems of proof, particularly regarding damages, and possible defenses to the claims asserted in the Action. Plaintiffs' counsel believe that the Settlement confers substantial benefits upon Veeco and its current shareholders. Based on a thorough investigation of the facts, plaintiffs' counsel have determined that the Settlement set forth in the Stipulation is fair, reasonable, and adequate and in the best interests of plaintiffs, Veeco, and current Veeco stockholders.

40.     Although plaintiffs believed that their claims were meritorious, they also recognized that they faced material risks with the continued prosecution of the Action. Most significantly, at trial, plaintiffs would have had to overcome the protections afforded the Board under the so-called "business judgment rule." Undoubtedly, defendants would have tried to rely

---

[6]     Plaintiffs' counsel note that, due to the nature of the claims asserted, even had plaintiffs obtained a monetary judgment on the Company's claims at trial, they would not necessarily have been able to secure the therapeutic relief provided in the Settlement. Plaintiffs' counsel believe that a compelling argument could be made that the corporate governance relief in the Settlement is, and will be, more valuable to the Company and its shareholders over the long-term than having defendants make any modest payment to the Company as part of the Settlement.

on the protections by the rule with respect to many of the acts challenged by plaintiffs in the Action.

41.    In light of the business judgment rule, in order to prove their claims at trial, plaintiffs would have had to overcome the powerful presumption that there were legitimate business reasons for the Board's actions.  This would have been a difficult task, even assuming, *arguendo*, that defendants' decisions later proved to be "incorrect."

42.    Arguably, at least with respect to some of the claims which this Court upheld,[7] plaintiffs would have had to prove that the Board acted in "bad faith," a very high proof of standard under virtually any circumstances.[8]  Thus, for example, plaintiffs would have had to demonstrate that the Board was actually aware of internal control problems at TurboDisc, and that its directors failed to address them in any manner, or that they addressed them in an irrational manner.  Although plaintiffs believe that internal control deficiencies at TurboDisc were known at Veeco, it is unclear as to when those issues became known to the Board and to what extent  its directors attempted to design and implement controls that would address TurboDisc's issues.  Plaintiffs believe that this claim against the nominally-independent directors on the Board (who were not responsible for the day-to-day operations of the Company) would have been particularly difficult to prove.

---

[7]    In addition, with respect to plaintiffs' proposed allegations and claims arising from stock option backdating, plaintiffs did not make a demand on the Board.  Thus, absent Settlement, there is, at the least, an open question as to whether plaintiffs would have standing to bring any such claims on the Company's behalf.  In order to pursue any claims based on alleged stock option backdating, plaintiffs would first have had to establish that demand on the Board was excused as a matter of law.  As detailed in the accompanying memorandum of law submitted in support of the Settlement, establishing demand futility is always an uncertain proposition, and this has proven true in the "option backdating" context as well.

[8]    Although plaintiffs do not concede that their claims would have been necessarily tested by Delaware's bad faith standard, they acknowledge that, had the Court employed this standard of review, they would have faced the very real possibility that some or all of these claims would have lost at trial (if not earlier at summary judgment).

Case 1:05-md-01695-CM-GAY     Document 309     Filed 03/24/2008     Page 12 of 16

43.     In short, although plaintiffs believed in their arguments against the protections afforded by the rule with respect to many of the acts challenged in the Action, the prospect that defendants could have been shielded by this protective umbrella made establishing liability in the Action uncertain.  Thus, plaintiffs believed, and still believe, that settlement of the Action was advantageous.

44.     In addition to facing certain challenges in proving liability, plaintiffs believed that they faced material risks in proving that Veeco suffered non-exculpable damages at trial.[9] Throughout the Action, defendants continuously maintained that Veeco had not suffered any damages as result of the conduct alleged in the Complaint, a view which was supported by defendants' expert reports.  Although it was clear to plaintiffs that the Company suffered *losses* as result of the conduct alleged in the Complaint, the question of whether the Company actually suffered non-exculpated *damages* was a much more complicated issue.  Thus, plaintiffs believed they faced exposure on this obviously key issue and they fully expected that defendants would strenuously contest this point at trial.

45.     Although plaintiffs had completed a substantial amount of discovery, they still believed that they faced material risks in establishing both liability and damages at trial.  Thus, for all of the foregoing reasons, plaintiffs and plaintiffs' counsel submit that the Settlement should be finally approved.

---

[9]     Because Veeco's Articles of Incorporation contain an exculpatory clause, permissible under 8 Del. C. § 102(b)(7), plaintiffs may have ultimately proved their claims, only to see defendants exculpated.

**NOTICE**

46.    The Court entered an Order preliminarily approving the Settlement of the Action on January 24, 2008 (the "Order").  Among other things, the Order approved the proposed form and manner of notice.  Pursuant to the Order, on January 31, 2008: (i) the Notice of the Settlement and Fee Award was published by Veeco as a current report on SEC Form 8-K; and (ii) Veeco provided a link on its corporate website to the Notice.

47.    The Notice: (i) advised Veeco shareholders that a hearing to determine whether the proposed Settlement should be approved will be held on March 28, 2008 at 10:00 a.m.; (ii) provided a summary of the material allegations in the Complaint; (iii) provided a summary of the terms of the Settlement and the Fee Award; (iv) advised that shareholders could appear at the hearing and show cause, if any, why the Settlement, or the Fee Award, should not be approved; and (v) advised that if the Settlement is approved, the claims that were or could have been raised in the Action will be dismissed with prejudice.  To date, there have been no objections to the Settlement or the Fee Award, which strongly indicates that Veeco's shareholders support the final approval of the Settlement and the Fee Award.

**THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE**

48.    As set forth above, while plaintiffs believe that the claims asserted in the Action have merit, they also recognize and acknowledge that they faced certain serious risks in the continued prosecution of the Action.

49.    Balancing these risks and the uncertainty they created with the immediate benefits of the Settlement, plaintiffs believe that the Settlement easily meets the "fair, adequate, and reasonable" test that the Court will employ in evaluating shareholder litigation settlements.

50.    Thus, as discussed at length in the Settlement Brief, plaintiffs' counsel respectfully submit that the Court should finally approve the Settlement.

### THE FEE AWARD IS FAIR AND REASONABLE

51.    In connection with the Settlement, the parties also agreed to resolve all issues related to attorneys' fees and reimbursement of expenses. As provided for in the Stipulation, defendants have agreed to pay the Fee Award, subject to the Court's approval.

52.    As discussed in the accompanying memorandum submitted in support of the fee application, plaintiffs' counsel believes that the requested Fee Award is justified in light of the significant corporate governance benefits in the Settlement and the amount of time which was required to obtain this relief.

53.    Plaintiffs' counsel believes that the Company has materially improved its independent oversight of its corporate governance practices.

54.    Further, as demonstrated herein, a significant amount of time, expense, and expertise was expended to produce the Settlement now before the Court. Collectively, from inception of the Action to date, as summarized in Exhibit A, plaintiffs' counsel have spent more than 5,500 hours prosecuting the Action for a cumulative total lodestar of $2,595,385. *See also* Exhibits B-E annexed hereto.

55.    As set forth in Exhibits B-E, plaintiffs' counsel have incurred un-reimbursed expenses in the amount of $119,525.13. *See also* Exhibit A.

56.    Plaintiffs respectfully submit that the Fee Award is reasonable and as described in the accompanying memorandum of law consistent with awards in similar settlements both in this Court and in Delaware, Veeco's state of incorporation.

DATED, this 21st th day of March, 2008.

Robert I. Harwood

### SUMMARY OF TIME AND EXPENSES

| FIRM | HOURS | LODESTAR | EXPENSES |
|------|-------|----------|----------|
| Faruqi & Faruqi LLP | 1,564.10 | $ 799,597.50 | $ 29,533.28 |
| Goldman, Scarlato & Karon, P.C. | 1,544.00 | $ 688,290.00 | $ 23,356.89 |
| Harwood Feffer LLP | 1,608.30 | $ 740,322.50 | $ 40,562.96 |
| The Weiser Law Firm | 831.00 | $ 367,175.00 | $ 26,072.00 |
| **TOTAL:** | 5,547.40 | $2,595,385.00 | $119,525.13 |

# Exhibit A